ACCEPTED
14-14-00979-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
1/6/2015 6:21:20 PM
CHRISTOPHER PRINE
CLERK

## NO. 14-14-00979-CV

_____

**IN THE COURT OF APPEALS
FOR THE FOURTEENTH DISTRICT OF TEXAS
AT HOUSTON**

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
1/6/2015 6:21:20 PM
CHRISTOPHER A. PRINE
Clerk

_____

**In Re ALBERT ORTIZ**

_____

**Original Proceeding From the
Harris County District Court,
164th Judicial District**

_____

**RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

_____

**JOEL W. MOHRMAN**
**State Bar No. 14253500**
**STEPHANIE LAIRD TOLSON**
**State Bar No. 11795430**
**1001 McKinney, Suite 1500**
**Houston, Texas 77002**
**Telephone: (713) 520-1900**
**Facsimile: (713) 520-1025**

**ATTORNEYS FOR RESPONDENTS**

490948.3; 102869.0019

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................. ii

STATEMENT OF THE CASE ..............................................................................1

STATEMENT OF FACTS ....................................................................................5

    A.    The Mandate of the Court of Appeals...................................................5

        1.    Portions of Judgment Reversed by Court of Appeals.................5

        2.    Portions of Judgment Affirmed by the Court of Appeals...........6

        3.    Limited Remand Order .........................................................7

    B.    The Summary Judgment and the Court of Appeals' Opinion..............8

    C.    Ortiz's New Claims .............................................................................9

ARGUMENT ......................................................................................................10

    A.    Introduction .......................................................................................10

    B.    Ortiz Attempts to Mislead The Court of Appeals as to His "New Claims"......................................................................................11

    C.    Court of Appeals Issued a Limited Remand .......................................13

    D.    Law of the Case Also Bars the "New Claims" ...................................21

CONCLUSION AND PRAYER ...........................................................................24

CERTIFICATE OF SERVICE .............................................................................25

CERTIFICATE OF COMPLIANCE.....................................................................25

RECORD INDEX ...............................................................................................26

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Finance Co. v. Shaw*,
373 S.W.2d 100 (Tex.Civ.App.—Ft. Worth 1963, writ ref'd n.r.e.)..................22

*Baptist Memorial Hosp. System v. Smith*,
822 S.W.2d 67 (Tex. App. –San Antonio 1991, writ denied) ...........................22

*Barrows v. Ezer*,
624 S.W.2d 613 (Tex.Civ.App.—Houston [14th Dist.] 1981, no
writ)..................................................................................................................22

*Bonilla v. Roberson*,
918 S.W.2d 17 (Tex.App.—Corpus Christi 1996, no writ) ..............................12

*Briscoe v. Goodmark Corp.*,
102 S.W.3d 714 (Tex. 2003) ...........................................................................21

*Cessna Aircraft Co. v. Aircraft Network*,
LLC, 345 S.W.3d 139 (Tex.App.—Dallas 2011, no pet.)..........13, 19, 20, 22, 23

*Denton County v. Tarrant County*,
139 S.W.3d 22, 23 (Tex.App.—Fort Worth 2004, pet. denied)........................13

*In re Henry*,
388 S.W. 3d 719 (Tex. App.—Houston [1st Dist.] 2012, no pet.)....................22

*Hudson v. Wakefield*,
711 S.W.2d 628 (Tex. 1986) ....................................................13, 15, 16, 18, 22

*Hurd Enterprises, Ltd. v. Bruni*,
828 S.W. 2d 101 (Tex. App.- San Antonio 1992, writ denied)..........................22

*Jim Walter Homes Inc. v. Reed*,
711 S.W.2d 617 (Tex. 1986) ...........................................................................11

*Kahn v. Seely*,
37 S.W. 3d 86 (Tex.App.—San Antonio 2000, no pet.) ...................................22

*Leake v. Half Price Books*,
918 S.W.2d 559 (Tex.App.—Dallas 1996, no writ)...........................................21

*In re Lesikar*,
285 S.W.3d 577 (Tex.App.—Hous. [14th Dist.] 2009, no writ).......................21

*Lifshutz v. Lifshutz*,
199 S.W.3d 9 (Tex. App.—San Antonio 2006, pet. denied).......................22, 23

*Martin v. Credit Protection Assoc., Inc.*,
824 S.W.2d 254 (Tex.App.—Dallas 1992, writ dism'd w.o.j.)....................20, 23

*National City Bank of Indiana v. Ortiz*,
401 S.W. 3d 867 (Tex.App.—Houston [14th Dist.] 2013, pet.
denied).......................................................................................................1, 5, 8, 9

*Price v. Gulf Atlantic Ins. Co.*,
621 S.W.2d 185 (Tex. Civ. App.-Texarkana, 1981) ...........................................7

*Reynolds v. Murphy*,
266 S.W.3d 141 (Tex. App.—Fort Worth 2008, pet. denied)......................16, 17

*Simulis, LLC v. General Electric Capital Corp.*,
392 S.W.3d 729, 736 (Tex. App.—Houston [14th Dist.] 2011,
pet denied)..............................................................................................3, 17, 18, 19

*Southwestern Bell Telephone Co. v. DeLanney*,
809 S.W.2d 493 (Tex. 1991) ...........................................................................11

*In re Team Rocket, L.P.*,
256 S.W.3d 257 (Tex. 2008) ...........................................................................21

*Thomas v. Allstate Ins. Co.*,
2006 WL 2290840 (Tex.App.-Houston [14th Dist.] Aug. 10, 2006,
no pet.) ...........................................................................................................19

*University of Texas System v. Harry*,
948 S.W.2d 481 (Tex.App.—El Paso 1997, no pet.) .......................................13

*Wall v. Wall*,
143 Tex. 418 (1945)..........................................................................................13

**Statutes**

TEX. BUX. & COM. CODE § 3.604 (West 2005)........................................................9

TEX. CIV. PRAC. & REM. CODE. § 41.003 (West 2003)..............................................12

Tex. Ins. Code § 21.55 ..............................................................................19

**Other Authorities**

Tex. R. App. P. 33(a)(1)(A)...........................................................................2

Tex. R. Civ. P. 272-274 ...............................................................................2

490948.1; 102869.0019                    iv

## STATEMENT OF THE CASE

Respondents PNC, N.A. as successor-in-interest to National City Bank of Indiana ("National City") and Home Loan Services, Inc. ("HLS") (referred to together as the "Bank") provide this Honorable Court of Appeals with a Statement of the Case because Relator Albert Ortiz ("Ortiz") failed to fully describe the relevant proceedings before the trial court. The Bank also files a Supplemental Record because Ortiz failed to file all of the documents pertinent to the proceedings before the Court.[1]

After the first trial to a jury in June of 2010, the judgment of the trial court was appealed to the 14th Court of Appeals. The Court of Appeals issued its initial opinion on November 20, 2012 (R. M). Following motions for rehearing by both parties, the Court of Appeals withdrew its original opinion and issued its final opinion on rehearing on May 16, 2013 (R. B).[2] Ortiz filed a Petition for Review to the Texas Supreme Court which was denied.[3] Thereafter, the Court of Appeals issued its limited mandate to the trial court remanding the case for retrial on specific limited issues (R. B).

The parties appeared before the trial court on August 1, 2014 for a scheduling conference at which time this matter was set for trial for January 26,

---

[1] The Bank's Supplemental Record begins with document "M" as the last document in Ortiz's Record is document "L." The Bank's Record reference will follow the form "R.M at p. ___."
[2] *National City Bank of Indiana v. Ortiz,* 401 S.W. 3d 867 (Tex.App.—Houston [14th Dist.] 2013, pet. denied).
[3] *Id.*

2014 (R. N.).[4]  Prior to the scheduling conference, Ortiz filed a motion to Set Aside Order Denying Leave to Supplement Pleadings ("Motion to Set Aside") (R. O). By this motion, Ortiz sought to set aside an order the trial court entered shortly before the first trial denying a motion by Ortiz to amend his pleadings to add causes of actions purportedly arising out of a rescission deed (*Id.*).  The trial court had denied the motion prior to trial because the trial court determined any claims involving the rescission deed were already plead (R. P at p. 2).[5]  The rescission deed was admitted as an exhibit at trial and Ortiz was allowed to submit testimony regarding the existence of the instrument and argue the document before the jury (*Id.*).

The Bank objected to Ortiz's Motion to Set Aside because Ortiz failed to raise any issue on appeal regarding the trial court's denial of his motion to amend his pleading or any failure to include an issue regarding the rescission deed to the jury (*Id*).[6]  The Bank also asserted any new claims arising out of the rescission deed were beyond the mandate of the court of appeals and any "old claims" had either been tried or were already before the trial court (*Id.*).  During the hearing, Ortiz withdrew his motion stating he intended to assert the rescission deed based

---

[4] The trial court removed the case from this trial docket due to the pending mandamus proceeding.

[5] Attached as exhibits to R. P are the trial transcript in which the rescission deed was admitted as evidence at the first trial and the copy of the rescission deed admitted at trial as Exhibit 19.

[6] *See* Brief of Cross Appellant Albert Ortiz filed in No. 14-10-01125-CV.  Furthermore, Ortiz failed to object during the first trial to any failure by the trial court in excluding a question to the jury relating to the rescission deed although Ortiz filed objections to the jury charge with the court (*See* CR in No. 14-10-01125-CV at CR 01453).  In fact, Ortiz failed to submit any proposed issues specifically related to the rescission deed as required by Tex. R. Civ. P. 272-274; Tex. R. App. P. 33(a)(1)(A).

claims and some new claims in a subsequent pleading (R. N at p. 12-14). At this point the trial court encouraged the parties to amend their pleadings to file dispositive motions so the scope of the remand order court be ascertained and law of the case issues could be addressed (*Id.* at p. 23-24).

The parties subsequently entered into an agreed scheduling order to allow the parties to amend their pleadings and then file dispositive motions on the pleadings by October 3, 2014. Both Ortiz and the Bank amended their pleadings (R. E and R. J).[7]

After the parties amended their pleadings, the Bank timely filed a motion for partial summary judgment (not a motion to strike as Ortiz asserts) seeking to dispose of portions of Ortiz's 10th Amended Petition barred by the remand order, the law of the case and/or *res judicata* (R. G).[8] On October 24, 2010, Ortiz responded to the motion for summary judgment and filed a notice of partial non-suit without prejudice purporting to non-suit the following causes of action: trespass to try title, trespass to realty, quiet title, fraud, unlawful debt collection, breach of letter agreements, request for declaratory relief and equitable subrogation (R. H and R. F). In his response to the Bank's motion for summary judgment Ortiz stated he non-suited the listed claims so he can bring them as a new lawsuit (R. H

---

[7] Ortiz claims Bank has added causes of action in violation of the trial court's order. While not directly relevant to Ortiz's petition the allegation is untrue. Bank has added no new causes of action and has amended its defenses in accordance with the mandate.

[8] The Court in *Simulis, LLC v. General Electric Capital Corp.*, suggests that summary judgment is the proper procedural mechanism to raise these issues. 392 S.W.3d 729, 736 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

at p. 1).[9]  On October 28, 2014, Ortiz filed a lawsuit against Bank of America, NA and PNC Bank, NA in 133rd District Court, Harris County, Texas, Cause No. 2014-63579 (R. Q) (the "New Lawsuit").[10]  The causes of action in the new lawsuit arise out of the rescission deed and include trespass to try realty, quiet title, fraud, unlawful debt collection, breach of letter agreements, declaratory relief, equitable subrogation, punitive damages and attorney's fees which were all litigated to judgment in the first trial (*Id.*).

The Bank filed a reply to Ortiz's response to the Bank's Motion for Partial Summary Judgment (R. R).  The trial court heard the motion on October 31, 2014 at which time the trial court granted the Bank's motion (R. U).  The trial court entered an order granting the motion for summary judgment largely tracking the language of the court of appeals mandate (R. I).

Ortiz filed this mandamus proceeding on December 11, 2014.

Following his filing of this Mandamus proceeding, Ortiz filed amended disclosures in this action in which he made the following statement, "These disclosures include Ortiz's claims that have not been non-suited or disposed by the Court and that are not listed in the Court's order of November 12, 2014.  Ortiz is presently seeking to have this summary judgment order vacated or set aside by the

---

[9] Bank in its Reply Brief pointed out that its Motion for Summary Judgment was directed to causes of action which are finally decided and not appealed.  Therefore, Ortiz could not non-suit what was already finally disposed of.

[10] Contrary to Ortiz's representations in his Mandamus Brief, a copy of the petition in this lawsuit was not included in Ortiz's Mandamus Record.  Accordingly, the Bank provides a copy in its record.  As of the date of the filing of this Response, the Bank is unaware of the New Lawsuit having been served on the defendants.

court of appeals and makes these disclosures conditional on prevailing in that proceeding; if successful in establishing the appellate court's mandate in not limited, Ortiz intends to take such claims to trial and to re-plead and try many or all of the non-suited claims." (R. S).

## STATEMENT OF FACTS

### A.    The Mandate of the Court of Appeals

After a trial to a jury, a jury verdict and judgment, an appeal to the 14th Court of Appeals, motions for rehearing by both parties, and a Petition to the Supreme Court, the Court of Appeals issued a mandate based upon an opinion on rehearing with specific and detailed language instructing the trial court how to proceed (R. B).[11]

#### 1.    Portions of Judgment Reversed by Court of Appeals

In the remand order, the Court of Appeals reversed the following portions of the judgment:

- "holding National City liable to Ortiz for damages and attorney's fees,"

- "providing that National City take nothing by its claims,"

- "denying National City a request for judicial foreclosure," and;

- "declaring the Note and Deed of Trust fully, completely and finally satisfied and no past, present, or further obligations sums are or shall become due and owing under said Note and Deed of Trust." (R. B).

---

[11] *Ortiz,* 401 S.W.3d at 867.

The Court of Appeals reversed the portion of the judgment providing "that all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment." (*Id.*) This means that any summary judgment previously entered by the trial court are no longer effective and controlling. Finally, the Court of Appeals reversed the portion of the judgment specifying the amount of actual damages awarded against HLS (*Id.*).

2.      Portions of Judgment Affirmed by the Court of Appeals

The Court of Appeals affirmed portions of the judgment that were not challenged on appeal or otherwise addressed by their opinion (*Id.*). Specifically, this included all the causes of action for which the trial court granted the Defendants directed verdict including "fraud, common-law unreasonable debt-collection, statutory debt-collection violations, statutory deceptive trade-practice violations, breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy and defamation per se." (*Id.*) (*See also* trial transcript where the trial court grants the Bank's directed verdict which is attached as Exhibit "G" to the Bank's Motion for Summary Judgment at R. G).

The judgment for damages awarded Ortiz was not appealed by the Defendants (other than the correct application of the one satisfaction rule) (R. B at 34-37).[12] Ortiz was awarded damages against HLS on his causes of action for

---

[12] *See also* Brief of Appellant on file in No. 14-10-01125-CV.

trespass and trespass to personalty, conversion, negligence and gross negligence and punitive damages (*Id. at* 7, 34-37*).*

### 3. Limited Remand Order

The Court of Appeals issued a limited remand order identifying the causes of action to be retried. Specifically, the Court of Appeals ordered the Trial Court to:

- "retry Ortiz's claim against National City for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure, <u>and, with the exception of Ortiz's limitations defense discussed in [the Court of Appeal's] opinion, permitting the parties to assert defenses to these claims</u>,";

- "after applying the one-satisfaction rule and any settlement credits, determine the total amount of HLS's liability to Ortiz for actual damages and the amounts, if any, that are owned by National City to Ortiz or by Ortiz to National City," and;

- "render final judgment that is consistent with this court's opinion." (R. B) [Emphasis added].

First, the Court of Appeals' language is very specific and therefore the remand is limited.[13] That the Court of Appeals was focused on the language of its mandate is evidenced not only by its specificity but also by comparing the language of its original opinion to that of the final opinion following rehearing. In its original opinion, the Court of Appeals stated that the Court of Appeals

---

[13] The *Price* Court states that a case is not remanded on all "issues of fact" where the appellate court limits the remand "by specific instructions." *Price v. Gulf Atlantic Ins. Co.*, 621 S.W.2d 185, 187 (Tex. Civ. App.-Texarkana, 1981).

"[remanded] the case with instructions to the trial court to (1) sever National City's claims from the remainder of the case; 2) retry National City's severed claims (R. M at p. 35-36). Following motions for rehearing by both parties, the Court of Appeals provided the much more specific language "retry Ortiz's claim against National City for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure, and, with the exception of Ortiz's limitations defense discussed in [the Court of Appeal's] opinion, permitting the parties to assert defenses to these claims." (R. B at p. 2). This is a significant and very specific change in the language of the remand order reflecting the Court of Appeals' careful attention to the claims to be retried on remand. It is hard to imagine that, with this considered change in language, the Court of Appeals intended that any and all claims be subject to retrial as Ortiz suggests, rather than a limited remand and retrial of specific named claims.

## B. The Summary Judgment and the Court of Appeals' Opinion

The Court of Appeal's opinion focused on an incorrect summary judgment ruling (included in the final judgment) by the trial court that the letter agreements between the parties released all of the Bank's claims arising out of the notes and deed of trust (R. B).[14] The trial court granted a judgment notwithstanding the verdict to Ortiz explicitly incorporating its summary judgment rulings on these

---

[14] 401 S.W. 3d at 875-876. A copy of the published opinion is attached as Exhibit "C" to Defendant's Motion for Summary Judgment which is included at R. G.

letter agreements in the final judgment and dealt with whether UCC § 3.604 applied to the letter agreements (*Id.*).[15] In its opinion, the Court of Appeals found the trial court improperly granted Ortiz summary judgment based on the letter agreements and thus the parties' breach of contract claims and National City's judicial foreclosure claims must be remanded and retried (*Id.*).[16] The summary judgment, its incorporation into the final judgment, reversal, and remand were unrelated to any tort claims (*Id.*).[17]

## C.   Ortiz's New Claims

Ortiz's 10th Amended Petition far exceeds the scope of the Court of Appeal's limited remand (R. E). Ortiz seeks to retry causes of action which were dismissed in a take nothing judgment which was not appealed or for which he received a final judgment award of damages which was not appealed. The claims Ortiz seeks to retry are barred by the remand order or the law of the case doctrine.

Ortiz now claims, following his ineffective non-suit, there are only six claims remaining in his 10th Amended Petition subject to the trial court's summary judgment order that Ortiz is seeking to have tried in the second trial of this case: negligent performance of a contract (paragraphs 58 and 59); breach of contract (paragraphs 61 and 62); request for declaratory relief (paragraph 63) and punitive damages (paragraph 66) (Mandamus Brief at p. 13). Ortiz further claims none of

---

[15] 401 S.W. 3d at 875-876.

[16] *Id.* at 884-885.

[17] In fact, Ortiz raised issues on appeal related to his tort claims on cross-appeal. *See* 401 S.W. 3d at 887.

these claims involve trespass upon personal property or real property or any other claims that were disposed on during trial. However, Ortiz makes it clear he intends to bring these additional tort claims including "new claims" again by consolidating his new lawsuit or by amending the pleadings in the underlying case should this Court grant him mandamus relief (R. S at fn 1).

Ortiz's "new claims" arise largely out of a rescission deed that was admitted as an exhibit at the prior trial (*See* p. 23-36 of Ortiz's 10th Amended Petition at R E). Ortiz elicited testimony regarding this document and referred frequently to the document in his closing argument (R. O). The trial court did not allow Ortiz to amend his pleading prior to trial to add causes of action specific to this deed for trespass to try title, trespass to realty, quiet title, fraud, unlawful debt collection and sanctions because Ortiz already plead those claims (R. O). These claims, including facts surrounding the rescission deed, were submitted to the jury and Ortiz either recovered damages and/or the Bank obtained a directed verdict (neither of which were appealed) (R. O).

## ARGUMENT

### A. Introduction

The Bank filed a motion for summary judgment asking the trial court to recognize the Court of Appeals' limited mandate and try only the causes of action and defenses identified in the mandate. (R. G and R. R). Ortiz seeks to thwart the

mandate of the Court of Appeals, first by his Motion to Modify referenced *supra*, second by amending his pleading, and next by presumably consolidating the "new lawsuit." The trial court did not abuse its discretion when it entered the order granting the Bank's summary judgment, but rather, was following the specific instructions of the Court of Appeals as set forth in its mandate.

## B. Ortiz Attempts to Mislead The Court of Appeals as to His "New Claims"

Ortiz asserts that the claims that remain following his non-suit are not "new claims", but rather relate to the contract which the parties were ordered to relitigate and do not involve relitigation of issues already tried and litigated (Mandamus Brief at p. 13-14). Each assertion by Ortiz is wrong. These claims were not in his live pleading at the time of trial (*See* Eighth Amended Pleading at R. T).[18] If these are indeed not new claims, Ortiz has no need to raise them in new pleadings.

Further, as recognized by the trial court, two of the causes of action, negligent performance of a contract (paragraphs 58 and 59 of Ortiz's 10th Amended Petition), cannot be maintained as a matter of law (R. U at p. 5-6, 8).[19] The remaining claims are breach of contract (paragraphs 61 and 62), request for declaratory relief (paragraph 63) and punitive damages (paragraph 66). The contract and declaratory judgment claims are within the mandate and not at issue

---

[18] Ortiz's Eighth Amended Petition was his live pleading prior to the first trial.

[19] Ortiz's non-contractual claims provide no basis for recovery because under the economic loss doctrine a party cannot assert tort claims for matters which are the subject of a contractual relationship and for which the damages are purely economic in nature. *Jim Walter Homes Inc. v. Reed,* 711 S.W.2d 617 (Tex. 1986); *Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493 (Tex. 1991).

here.  Ortiz cannot recover punitive damages for breach of contract or declaratory judgment the only claims allowed by the mandate.[20]  Accordingly, the only causes of action these damages could relate to have already been tried (the tort claims) and were not appealed.  Further, Ortiz was awarded $100 in punitive damages the amount of which was not appealed by the Bank or Ortiz.[21]

Post appeal, Ortiz amended to add claims and then non-suited the claims for trespass to try title, trespass to realty, quiet title, fraud, unlawful debt collection, breach of letter agreements, request for declaratory relief and equitable subrogation claim all arising out of the rescission deed (R. E and F) in a failed attempt to avoid the trial court's summary judgment limiting claims to those stated in the Court of Appeals' mandate.  In his "New Lawsuit", which Ortiz intends to consolidate with the underlying suit, Ortiz reasserts these same claims and asserts that he suffered the loss of use of his property as a result of the issuance of the rescission deed by the substitute trustee following the foreclosure of the property (R. Q).[22]  However, his claims arising out of the rescission deed were previously tried and Ortiz obtained damages for the claims.  The rescission deed was an exhibit at trial, Ortiz

---

[20] Tex. Civ. Prac. & Rem. Code. 41.003.

[21] *See also* the parties briefs filed in No. 14-10-01125-CV.

[22] The rescission deed was not valid at the time it was executed as the borrower was not a party to the instrument. Further, the substitute trustee had no authority to execute the rescission deed and thus it was void at execution. *Bonilla v. Roberson,* 918 S.W.2d 17 (Tex.App.—Corpus Christi 1996, no writ).  Once a sale is complete, there is no further express or implied authority to act as the mortgagor's agent in the cancellation or rescission of a sale. A trustee does not have the power to execute a "Cancellation of Deed" purporting to take back title to the property and resurrect the underlying debt. To imply a power in the trustee to nullify a sale after the sale is complete and the trustee's deed has been executed, delivered, and filed, would be to give the trustee powers never specified or contemplated by the deed of trust.

elicited testimony regarding the document and argued the rescission deed during closing arguments (R. P and exhibits). Ortiz recovered damages for his loss of use of the property.[23] The trial court awarded the defendants directed verdict on the causes of action for fraud and unlawful debt collection (R. O at exhibits 2-5 and R. G at exhibit G).[24]

## C.    Court of Appeals Issued a Limited Remand

The Supreme Court stated in *Hudson v. Wakefield* that when a court of appeals issues a limited remand, the trial court is restricted to the specific remanded issues on retrial.[25] Thus, in a subsequent appeal, instructions given to a trial court by the court of appeals will be adhered to and enforced.[26] In interpreting the mandate, a trial court should look not only to the mandate itself, but also to the opinion of the court.[27] When an appellate court remands a case with specific instructions , the trial court is limited to complying with the instructions and cannot relitigate issues controverted at the former trial.[28]

---

[23] The only issue that remains regarding Ortiz's damages is the application of the one satisfaction rule after the contract claims are tried.

[24] Ortiz may argue that the rescission based clams are "new claims" because he did not get to submit a jury question on the issue. Ortiz failed to object during the first trial to any failure by the trial court in excluding a question to the jury relating to the rescission deed although Ortiz filed objections to the jury charge with the court (*See* CR in No. 14-10-01125-CV at 01453).

[25] *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986); *See University of Texas System v. Harry,* 948 S.W.2d 481, 482-483 (Tex.App.—El Paso 1997, no pet.) (on appeal following jury trial on a workers compensation claim, the court of appeals issued limited remand when it stated that retrial was limited to issue of whether plaintiff incurred an injury on a certain date and, if so, whether she received the injury in the scope of her employment. Trial court went beyond remand when it tried other issues).

[26] *Hudson,* 711 S.W.2d at 630., *citing, Wall v. Wall,* 143 Tex. 418 (1945).

[27] *Id.* at p. 630.

[28] *Cessna Aircraft Co. v. Aircraft Network,* LLC, 345 S.W.3d 139, 144 (Tex.App.—Dallas 2011, no pet.), citing, *Denton County v. Tarrant County,* 139 S.W.3d 22, 23 (Tex.App.—Fort Worth 2004, pet. denied).

Ortiz incorrectly states the Bank failed to identify in its motion for summary judgment any language in the mandate limiting the claims to be retried (Mandamus Brief at p. 9). To the contrary, the Bank pointed to language in the mandate in which the Court of Appeals specifically identified the claims to be retried stating, "We therefore . . . REMAND the case with instructions to the trial court to retry Ortiz's claim against National City for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure, and, with the exception of Ortiz's limitations defense discussed in [the Court of Appeal's] opinion, permitting the parties to assert defenses to these claims. . ," (R. B). This language identifies exactly what claims are to be retried. The language of the mandate cannot be read as a license to litigate new claims.

Ortiz further claims that the Court of Appeals must use magic words of some sort to state that no claims other than those listed can be tried upon remand (Mandamus Brief at p. 9-10). But, the mandate here states exactly what the parties are allowed to amend: to assert defenses to the previously stated claims, i.e. Ortiz's claim for breach of contract and National City's claim for breach of contract and judicial foreclosure. Why would the Court of Appeals be so specific

in its instructions if the remand is unlimited?  Why wouldn't the Court of Appeals simply say the case is remanded –period—if all claims can still be brought?[29]

Ortiz selectively cites language from *Hudson v. Wakefield* for the proposition that "the cases are rare and exceptional in which this court is warranted in limiting the issues of fact . . ." (Mandamus Brief at  p. 8).   In *Hudson v. Wakefield,* a case involving specific performance of a contract for the sale of property, the case initially had been disposed of at early juncture by summary judgment.[30]  After reversal and remand by the Supreme Court, the seller amended to add fraud in the inducement prior to a full trial before a jury.  The decision in *Hudson v. Wakefield* discusses at length how a critical factor in determining whether a mandate is limited is whether the case involves a review of a case disposed by summary judgment versus a case disposed of by a full trial on the merits.[31]   Since *Hudson v. Wakefield* involved a case disposed of following a motion for summary judgment, the court of appeals determined the mandate allowed for amendment following remand.[32] The *Hudson v. Wakefield* case as cited by Ortiz does not apply to a case fully tried as the case at hand.

---

[29] Ortiz makes much of the Mandate's language expressly prohibiting the retrial of Ortiz's statute of limitations defense.  But, this language actually favors reading the Mandate as being limited.  When the Court of Appeals wants to allow retrial of certain issues (defenses to the contract claims) it says so.  When it wants to limit such retrial (no retrial of statute of limitations) it also says so.  One simply cannot read such language and conclude all issues are open for retrial.

[30] *Id.*at 629.

[31] *Id*. at p. 630-631.

[32] *Id.*

Similarly, Ortiz's reliance on *Reynolds v. Murphy* is misplaced.[33] In *Reynolds*, the appellant sued the appellee for negligence, fraud, and DTPA for losses arising out of stock market losses.[34] The trial court granted appellee final summary judgment on all of these claims and appellee appealed.[35] The court of appeals affirmed most of the summary judgment but reversed and remanded as to one claim upon which the appellee had failed to specifically move for summary judgment.[36] Upon remand, the appellant sought to take depositions and amend its petition to add two new causes of action—violations of Texas Securities Law and the Texas Business and Commerce Code—while retaining his previously plead claims.[37] The trial court, upon special exceptions filed by appellee, struck the new claims asserted by appellant stating that the mandate of the court of appeals only allowed the retrial of the previously plead claims.[38]

The appellant filed a mandamus petition which the court of appeals granted. As in *Hudson v. Wakefield*, the court distinguished between cases in which the case proceeded to a full trial to a jury (as in the case at hand) and cases in which the matter was disposed by summary judgment.[39] The court noted that in summary judgment cases, the case is still in the pretrial stage, with discovery ongoing, and if

---

[33] *Reynolds v. Murphy,* 266 S.W.3d 141 Tex. App.—Fort Worth 2008, pet. denied.
[34] *Id.* at 142-143.
[35] *Id.* at 143-144
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.* at 147-148.

the trial court had denied summary judgment initially, the party would have been free to amend his pleadings and add new claims subject to any scheduling orders of the court.[40]  Because the mandate in *Reynolds v. Murphy* involved the reversal and remand of a final summary judgment, the court of appeals determined the appellant should have been allowed to amend his pleadings.[41]  In contrast, the parties here have completed discovery, made final amendments to pleadings, and must bring all the claims they intend to assert for a trial to a jury.  Upon remand after a full trial on the merits, the parties do not get a complete do over.

The final case primarily relied upon by Ortiz, *Simulis, L.L.C.  v. General Electric Capital Corp.*, again involved a judgment rendered upon summary judgment, rather than final judgment rendered following a jury trial.[42]  The trial court had granted summary judgment on a promissory estoppel and *quantum meruit* counter-claim.[43]  The court of appeals reversed and remanded the *quantum meruit* counter-claim finding there was a fact issue.[44]  On remand, rather than pursue the *quantum meruit* claim, the defendant amended its pleading to add various new claims.[45]  The plaintiff filed a motion to dismiss the new claims as not consistent with the mandate, which the trial court granted.[46]  The court of appeals

---

[40] *Id.* at 148.
[41] *Id.*
[42] *Simulis, L.L.C.,* 392 S.W. 3d at 729.
[43] *Id.* at 731.
[44] *Id.* at 732.
[45] *Id.*
[46] *Id.* at 735.

reversed noting that it had not included any language limiting defendant to *quantum meruit* only thus the defendant was free to amend its claims "*except as to those claims on which we rendered summary judgment in [plaintiff's favor]*" (the application of law of the case will be discussed in detail below).[47]

Again, the case at hand does not involve a final judgment arising out of a summary judgment motion. Additionally, unlike *Simulis*, the mandate in this case DOES include language limiting the parties, including Ortiz, to specific causes of action.

In the instant case a two week trial was held after years of discovery and extensive motion practice. Only a narrow portion of the claims were appealed relating to contract causes of action. Tort based claims were appealed and they became final. *Hudson* notes that:

> By narrowing issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency.[48]

This case has been narrowed by the Court of Appeals and its mandate should be followed.

Ortiz asserts he can rely on the above-referenced line of cases because one of the basis for reversal in the case at hand was the incorporation of a partial summary judgment into the final judgment entered in this case following a jury

---

[47] *Id.* at p. 735.
[48] *Id.* at 630.

trial (Mandamus Brief at p. 15). In contrast to the cases cited by Ortiz, the case at hand was pending for four years before it went to trial, was fully discovered and proceeded to a full jury trial. The summary judgment which was the subject of the appellate court's decision was issued prior to the jury trial, incorporated into the final judgment and is not even relevant to the "new claims" Ortiz seeks to assert following remand (the new claims relate to the rescission deed). [49] Ortiz was allowed to introduce evidence regarding the rescission deed to the jury. Ortiz tried his tort claims and obtained an award of damages and did not appeal this portion of the judgment. He does not get to retry those claims on a second trial because he did not like the outcome.

The mandate in this case is very similar to the mandate issued following the jury trial in *Cessna Aircraft Company v. Aircraft Network, LLC*.[50] In *Cessna*, an airplane owner brought a case against an airplane repairer for damage to an airplane.[51] The case proceeded to a jury trial and Cessna was awarded damages for breach of bailment, breach of reimbursement contract, breach of implied warranty,

---

[49] A court can issue a limited remand from an appeal of a summary judgment if it includes the correct limiting language. *See Thomas v. Allstate Ins. Co.,* 2006 WL 2290840, *3 (Tex.App.-Houston [14th Dist.] Aug. 10, 2006, no pet.) in which the court held that following an appeal of a motion for summary judgment, the court of appeals remanded on claims for misrepresentation claims and misrepresentation claims under the Texas Insurance Code, and not claims for unreasonable delay, bad faith, unfair settlement practices and article 21.55 remedies. The remand language stated the following, "We also hold Allstate's summary judgment motion does not establish the absence of a genuine issue of material fact in relation to Thomas's claims for misrepresentation under the Texas Insurance Code. We therefore reverse the judgment on those claims, and remand them to the trial court for further proceedings consistent with this opinion. *Thomas v. Allstate Ins. Co.,* 2004 WL 1574542 (Tex.App.-Houston [14th Dist.] July 15, 2004)).

[50] *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 145 (Tex. App.--Dallas 2011, no pet.).
[51] *Id.* at 142.

negligent misrepresentation, pre and post judgment interest and attorney's fees.[52]

On appeal, the, the court of appeals issued the following mandate:

> We REFORM the trial court's judgment to delete the $166,000.00 award for breach of bailment contract ... We REVERSE the trial court's awards for breach of reimbursement contract, negligent misrepresentation, and breach of implied warranty, and RENDER judgment that Aircraft Network take nothing on those claims ... We REFORM ... the judgment to reinstate the award of $210, 517.66 for Aircraft Network ... on its promissory estoppel claim. We REVERSE the trial court's award of attorney's fees and costs and REMAND those issues to the trial court for proceedings consistent with this Court's opinion. In all other respects, we AFFIRM the trial court's judgment.[53]

Like the case at hand, the court of appeals reversed certain portions of the judgment in *Cessna*, rendered that Cessna take nothing on those claims and reversed and remanded a specifically identified claim to the trial court, the issue of attorney's fees. Although the mandate in *Cessna* did not specifically state that the parties could not amend their pleadings, on a second appeal, the court held that contrary to Cessna's assertion, the trial court had no authority to enter a judgment addressing any other issues other than attorney's fees and costs.[54] "To do otherwise would have exceeded the scope of the mandate."[55]

The Court of Appeals makes it clear in both its mandate and its opinion the claims that the parties are to retry: Ortiz and the Bank's breach of contract claims

---

[52] *Id.*

[53] *Id.* at 145.

[54] *Id.* at 145.

[55] *Id.; See also Martin v. Credit Protection Assoc., Inc.,* 824 S.W.2d 254 (Tex.App.—Dallas 1992, writ dism'd w.o.j.).

and the Bank's judicial foreclosure claims. The only amendment allowed by the mandate is that the parties may assert affirmative defenses to these claims. Retrial following a full jury trial is not meant to start the entire litigation process over. Rather remand after a jury trial seeks to retry only the issues remaining after appeal. The trial court did not abuse is discretion when it granted the Bank's motion for summary judgment and the Court of Appeals should deny Ortiz's Petition for Writ of Mandamus.[56]

## D.    Law of the Case Also Bars the "New Claims"

In addition to being excluded from retrial by the limited remand, many of the claims Ortiz attempts to reassert are barred by the law of the case. These include claims Ortiz asserts following Ortiz's non-suit and the claims Ortiz intends to bring back into this action either by consolidating the "new lawsuit" or amending his petition again.

The law of the case doctrine provides that a question of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages.[57]    The law of the case doctrine applies only to questions of law, not

---

[56] Ortiz fails to even mention one of the elements required to obtain  mandamus relief.  To be entitled to the extraordinary relief of a writ of mandamus, the relator must show the trial court clearly abused its discretion and left him no adequate remedy by appeal. *In re Team Rocket, L.P.,* 256 S.W.3d 257, 259 (Tex. 2008); *In re Lesikar*, 285 S.W.3d 577, 582 (Tex.App.—Hous. [14th Dist.] 2009, no writ) (applied to scope of remand order).  Ortiz failed to show that the trial court's abuse of discretion left him no adequate remedy by appeal (*See* Mandamus Brief at p. 5-8).  For this reason, Ortiz's Petition should be denied.

[57] *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex. 2003);  *Leake v. Half Price Books,* 918 S.W.2d 559, 562-63 (Tex.App.—Dallas 1996, no writ) (point established on remand of earlier summary judgment was properly made the basis of second summary judgment, and appellate court would not revisit the issue on appeal of second summary judgment).

questions of fact.[58] Moreover, the doctrine may not be applied to subsequent stages of the case if the issues presented or the facts presented are not substantially the same as presented in the first trial.[59] **A determination by an appellate court that the evidence is legally insufficient to support a finding involves a question of law and falls within the ambit of the law of the case doctrine.**[60] Once a case has been appealed to the Supreme Court and the Supreme Court declined to accept the petition for review, the law of the case applies.[61]

On issues that a court of appeals affirms, the judgment of the trial court becomes the judgment of the court of appeals and the trial court is not required to make any further orders as to those issues.[62] The court of appeals' decision is binding on the trial court on those points that have already been decided by the court of appeals.[63]

In this case, the court of appeals affirmed the trial court's judgment of Ortiz's causes of action for: fraud, common-law unreasonable debt collection,

---

[58] *Hudson,* 711 S.W.2d at 630 (Tex. 1986).
[59] *Id.*
[60] *Lifshutz v. Lifshutz,* 199 S.W.3d 9, 20 (Tex. App.—San Antonio 2006, pet. denied).
[61] *See Baptist Memorial Hosp. System v. Smith,* 822 S.W.2d 67, 73 (Tex. App. –San Antonio 1991, writ denied); *Allied Finance Co. v. Shaw*, 373 S.W.2d 100, 106 (Tex.Civ.App.—Ft. Worth 1963, writ ref'd n.r.e.); *Hurd Enterprises, Ltd. v. Bruni,* 828 S.W. 2d 101, 106 (Tex. App.- San Antonio 1992, writ denied); *But see, In re Henry,* 388 S.W. 3d 719, 727 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("Because neither party filed a motion for rehearing or a petition for review with the Texas Supreme Court challenging these holdings, our ruling became the law of the case and controlling on remand."); *See also, Barrows v. Ezer,* 624 S.W.2d 613, 616-617 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) (where law of the case was applied when decision of court of appeals in original appeal was not challenged by petition for writ to the Supreme Court).
[62] *Cessna Aircraft Co.,* 345 S.W. 3d at 145.
[63] *Kahn v. Seely,* 37 S.W. 3d 86, 88 (Tex.App.—San Antonio 2000, no pet.). In *Kahn v. Seely*, Kahn attempted to relitigate points of error related to the post-dissolution compensation of his business that had been affirmed on appeal. The court of appeals, on a second appeal, determined Kahn could not relitigate those matters under the law of the case doctrine

statutory debt collection violations, statutory deceptive trade practices violations, breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy and defamation *per se* (R. B). The trial court disposed of these claims on directed verdict by the Bank which was not appealed by Ortiz (R. G at exhibit G). The dismissal of these causes of action by directed verdict became law of the case and Ortiz cannot attempt to relitigate them in the retrial of this matter.[64] If the trial court allowed Ortiz to retry any of the claims for which the Bank already obtained a final judgment, the trial court would be interfering with the Court of Appeals' jurisdiction which would be an abuse of discretion.[65]

Further, any claims involving the rescission deed have already been tried to a jury in the first trial. The rescission deed was an exhibit at trial, Ortiz elicited testimony at trial and argued the effect of the rescission deed at closing arguments (R. O at exhibits 2-5). Ortiz recovered damages for his loss of use of the property and the only issue that remains is the application of the one satisfaction rule once the breach of contract claims are tried (R.B). On remand, the trial court is limited to complying with the instructions of the mandate and cannot relitigate issued controverted at the prior trial.[66]

---

[64] *Lifshutz*, 199 S.W.3d at 20; *Cessna Aircraft Co.*, 345 S.W.3d at 145.
[65] *See Martin* , 824 S.W.3d at 255-256.
[66] *Id.* at 256.

## CONCLUSION AND PRAYER

The trial court did not abuse its discretion when it granted the Banks' motion for summary judgment. The Court of Appeals issued a limited remand and Ortiz seeks to litigate on retrial causes of action beyond the scope of the mandate and/or barred by the law of the case. This Court should thus deny Ortiz's Petition for Writ of Mandamus.

Respectfully submitted,

McGLINCHEY STAFFORD, PLLC

By: */s/ Stephanie Laird Tolson*
     JOEL MOHRMAN
     State Bar No. 14253500
     STEPHANIE LAIRD TOLSON
     State Bar No. 11795430
     1001 McKinney, Suite 1500
     Houston, Texas 77002
     Telephone: (713) 520-1900
     Facsimile: (713) 520-1025

*Attorneys for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2015, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing has been forwarded to all attorneys of record, by operation of the Court's electronic filing system as follows:

**VIA ECF NOTIFICATION**
Michael C. Donovan
6300 Dixie Drive
Houston, Texas 77087
mdonovanesq@yahoo.com

**VIA ECF NOTIFICATION**
Gary Michael Block
6942 FM 1960 East, Suite 132
Humble, Texas 77346-2706
judgeblock@gmail.com

*/s/ Stephanie Laird Tolson*
STEPHANIE LAIRD TOLSON

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2010 and contains 6,791 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure.

*/s/ Stephanie Laird Tolson*
STEPHANIE LAIRD TOLSON

# RECORD INDEX

14th Court of Appeals' Opinion issued 11/20/12 regarding
Original Proceeding Writ of Mandamus ................................................................................... M

164th District Court Transcript of 8/1/14 Court Hearing ............................................. N

Plaintiff's Motion to Set Aside Order Denying Leave to
Supplement Pleadings filed 7/18/14 ....................................................................................... O

Defendants' Response to Plaintiff's Motion to Set Aside Order
Denying Leave to Supplement Pleadings filed 7/31/14 .......................................... P

Albert Ortiz's Original Petition filed 10/28/14
in Cause No. 2014-63579 ........................................................................................................ Q

Defendants' Reply to Plaintiff's Response to Defendants' Motion
for Partial Summary Judgment to Dismiss Portions of Plaintiff's
10th Amended Petition filed 10/30/14 ................................................................................... R

Albert Ortiz's Supplemental Disclosures Subsequent to Appellate
Court's Remand of the Case dated 12/26/14 ............................................................. S

Plaintiff's Eighth Amended Original Petition filed 4/12/10 ..................................... T

164th District Court Transcript of 10/31/14 Motions Hearing ................................. U

Verification of Stephanie Laird Tolson ................................................................................... V

# TAB – M

Petition Denied; Affirmed in Part; Affirmed as Modified in Part; Reversed in Part; Remanded; and Opinion and Dissenting Opinion filed November 20, 2012.



In The

# 𝕱ourteenth Court of Appeals

---

## NO. 14-10-01125-CV

---

## NATIONAL CITY BANK OF INDIANA AND HOME LOAN SERVICES, INC., Appellants/Cross-Appellees

## V.

## ALBERT ORTIZ, Appellee/Cross-Appellant

---

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2006-61178

---

## NO. 14-10-01262-CV

---

## IN RE ALBERT ORTIZ, Relator

---

ORIGINAL PROCEEDING
WRIT OF MANDAMUS

---

## O P I N I O N

In this opinion, we address cross-appeals and a mandamus petition arising out of the foreclosure of a residential property. The borrower, Albert Ortiz, sued the bank and its mortgage servicer for a variety of claims including wrongful foreclosure, breach of contract, negligence, trespass to real property, trespass to personalty, and conversion. The bank counterclaimed to recover on the note and to judicially foreclosure the deed-of-trust lien, and the borrower responded that the bank's representative had signed letter agreements waiving and releasing the bank's claims. The trial court granted summary judgment in favor of the borrower on his wrongful-foreclosure claim, set aside the foreclosure sale, and restored title in the property to the borrower. The trial court also granted partial summary judgments allowing the bank to pursue claims under the deed of trust, but not to pursue claims arising from the promissory note. After a jury trial, the trial court rendered judgment in the borrower's favor on his claims for breach of contract, trespass to personalty, and gross negligence, and ruled against the bank and mortgage servicer on all of their claims, instead declaring that the borrower had no further obligations under the note and deed of trust.

The effect of the trial court's judgment was to award the home to the borrower free and clear of all debt on this loan (on which he had repaid none of the $472,000 principal) and to additionally award him damages and attorney's fees in the amount of $497,600.

We conclude that the trial court erred in (a) granting summary judgment in Ortiz's favor on his argument that the bank waived or released its claims, and in incorporating the erroneous interlocutory rulings into the final judgment; (b) denying the bank's motions challenging the legal sufficiency of the evidence to support the jury's finding that the bank breached the deed of trust before the borrower did; (c) denying the bank's claim for judicial foreclosure; and (d) declaring that the note and deed of trust are "fully, completely and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing." The trial court did not err, however, in (e) applying the

2

one-satisfaction rule to limit the damages awarded to the borrower, (f) failing to render judgment that the bank's judicial-foreclosure claim was time-barred, or (g) denying the borrower's motion to expunge the notice of lis pendens. In light of our disposition of these issues, we deny the borrower's petition for a writ of mandamus, reverse the judgment in part, affirm it in part, affirm it as modified in part, and remand the case for retrial of the bank's claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2004, Albert Ortiz, the plaintiff below, purchased a house ("the Birdsall Property" or "the Property"), and financed it by executing a promissory note ("the Note") secured by a deed of trust ("the Deed of Trust"). At all material times, defendant National City Bank of Indiana ("National City") was the owner and holder of the Note and the beneficiary of the Deed of Trust, and defendant Home Loan Services, Inc. ("HLS") was the mortgage servicer.

Ortiz consistently paid late or missed payments. On November 1, 2005, HLS mailed Ortiz a notice of its intent to accelerate the loan, but sent the letter to an incorrect address. On December 21, 2005, HLS notified Ortiz by mail that it had accelerated the loan, but once again, the letter was misaddressed. During this same time period, HLS caused the locks at the home on the Property to be changed, and although Ortiz did not reside there, he kept personal property there that was never returned to him.

At the request of Ortiz's attorney, HLS faxed the misaddressed documents to Ortiz's attorney on January 13, 2006. By that time, a foreclosure sale had been scheduled for February 7, 2006. Although that sale did not take place, Ortiz continued to miss payments, and the Property was posted for a foreclosure sale to occur on June 6, 2006. That morning, Ortiz filed a lawsuit against National City and HLS (collectively, the "Bank Parties") to enjoin the sale. The trial court denied Ortiz's request for a temporary restraining order, and National City purchased the Property.

Less than three weeks later, Ortiz's attorney Michael Donovan bypassed HLS's counsel and contacted an HLS employee directly, asking the employee to execute a

proposed letter agreement that Donovan had drafted. The employee was not an attorney, and he forwarded the letter to another non-attorney employee who signed the letter agreement as an "Authorized Representative" of HLS and of National City's predecessor. Two weeks later, Donovan again bypassed HLS's attorney and sent a proposed amendment to the letter agreement to the employee who had signed the first letter. The employee signed and returned the amendment as the authorized representative of National City. In these two letters ("the Letter Agreements"), National City stated that it "releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of [Ortiz], in connection with the [Property], including the note and deed of trust associated with such property."

Two months later, Ortiz filed another suit against the Bank Parties. Over the course of the litigation, he amended his petition eight times to add more parties and causes of action. As relevant here, he ultimately asserted that National City was liable to him for wrongful foreclosure and breach of the Deed of Trust, and that both of the Bank Parties were liable for negligence, conversion, trespass to realty, and trespass to personalty. Ortiz also requested a declaratory judgment that (a) he owes no further debt whatsoever to National City under the Note, the Deed of Trust, or otherwise, even if the trial court were to set aside the foreclosure sale; (b) through the Letter Agreements, National City waived or released its claims against Ortiz concerning his indebtedness under the Note and the Deed of Trust; and (c) the Letter Agreements do not fail for lack of consideration. In response to Ortiz's allegations regarding the Letter Agreements, National City raised the affirmative defense that the purported agreements were unsupported by consideration. National City also asserted counterclaims for breach of the Note and for judicial foreclosure of its lien on the Birdsall Property. In addition, National City asked for declaratory judgment that (a) the Letter Agreements are void because Ortiz's counsel obtained them by directly contacting a party that he knew was represented by counsel, thereby violating Texas Disciplinary Rule of Professional Conduct 4.02; and (b) if the foreclosure sale is void, then National City's deed-of-trust lien is valid, the debt is revived, and National City may proceed with a new foreclosure.

4

The trial court granted a partial summary judgment in Ortiz's favor as to his wrongful-foreclosure claim. In an order signed October 28, 2008, the trial court set aside the trustee's deed conveying title in the Property to National City and ordered title in the Property restored to Ortiz. That ruling is not challenged in this proceeding.

In a number of different explicit and implicit rulings, the trial court addressed the parties' arguments about the validity and effect of the Letter Agreements. In April 2009, the trial court granted Ortiz's motion for partial summary judgment on "Defendants' counterclaims" concerning the Letter Agreements. In June 2010, the trial court ruled again on the same summary-judgment motion and on an additional summary-judgment motion concerning Ortiz's claims and affirmative defenses on the same subject. In the June 2010 ruling, the trial court stated "findings" that the Letter Agreements (a) "lack consideration, and accordingly are not valid contracts to be enforced for all purposes; and (b) contain a "valid agreement to release/waive [Ortiz's] obligation on the Note." The trial court concluded that the Bank Parties were "to take nothing for any claim arising from the Note" but were "entitled to pursue claims as to the Deed of Trust."

Despite these rulings construing the effect of the Letter Agreements as a matter of law, the trial court submitted a question to the jury for a finding of fact concerning the meaning of the Letter Agreements. The jury found in pertinent part as follows:

- In the Letter Agreements, neither National City nor HLS "validly agree[d] that [Ortiz] would receive ownership and possession of the [Property] without obligation for further payments on the Note and that [HLS] and [National City] would not pursue any claims, lawsuits and/or obligations that they could have asserted against [Ortiz]."

The jury also found the following:

- Ortiz and National City each materially breached the Deed of Trust.

- National City breached the Deed of Trust first.

- National City's breach caused Ortiz damages of $100,000 in loss of rental income for his loss of use of the Property.

- HLS trespassed upon the Property, causing Ortiz damages of $77,000 in loss of rental income for his loss of use of the Property.

5

- HLS's negligence proximately caused Ortiz the loss of personal property having a fair market value of $10,000.

- HLS converted Ortiz's personal property having a fair market value of $1,500.

- HLS committed trespass upon personalty, causing Ortiz's loss of personal property having a fair market value of $1,500.

- HLS was grossly negligent, and should be assessed exemplary damages of $100.

- $400,000 is a reasonable fee for the necessary services of Ortiz's attorneys for preparation and trial of the case. The jury failed to assess any appellate attorneys' fees.

Both Ortiz and the Bank Parties filed motions in which they asked the trial court to disregard certain jury findings and to grant judgment on the verdict in other respects. Although the jury rejected Ortiz's contention that National City agreed not to pursue any claims concerning his indebtedness, the trial court granted Ortiz's motion to disregard the finding and explicitly incorporated the interlocutory summary judgments into the final judgment. The trial court impliedly granted the portion of the Bank Parties' motion in which they argued that, under the one-satisfaction rule, Ortiz was not entitled to recover multiple damage awards for each injury. The trial court also impliedly granted the portion of the Bank Parties' motion in which they argued that they were entitled to a settlement credit of $12,500, representing the amount paid by their alleged agent, Keystone Asset Management, Inc., to settle Ortiz's claims against it.

After applying the settlement credit, the trial court rendered judgment that Ortiz recover actual damages $87,500 from National City and $10,000 from HLS; exemplary damages of $100 from HLS; attorneys' fees of $400,000 from National City; pre- and post-judgment interest; and costs. In addition to the monetary awards, the trial court declared that the "Note and Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust," and that the Substitute Trustee's Deed of June 6, 2006 "resulting from Defendants' wrongful foreclosure of the Property[] is set aside,

6

rescinded, deemed null and void and of no effect."

Both Ortiz and the Bank Parties have appealed.

On the same day that it rendered final judgment, the trial court signed an order denying Ortiz's motion under Texas Property Code section 12.0071 to expunge a notice of lis pendens filed by the Bank Parties. Ortiz filed an original proceeding in this court seeking mandamus relief regarding this order. We consolidated the mandamus proceeding with the appeal.

## II. ISSUES PRESENTED

In their appeal, the Bank Parties assert the following two issues:

(1)    The trial court erred in granting judgment that Ortiz had no obligation on the Note and Deed of Trust because the Letters are not enforceable agreements.

(2)    Ortiz's prior breach of the Deed of Trust bars him from recovery for any alleged breach by National City; thus, the trial court erred in rendering judgment for Ortiz for breach-of-contract damages and attorney's fees.[1]

In his cross-appeal, Ortiz asserts the following cross-issues:

(1)    The trial court committed reversible error by failing to award Ortiz appellate attorney's fees against National City.

(2)    The trial court committed reversible error by failing to award Ortiz the amount of damages that the jury awarded Ortiz against HLS.

(3)    The trial court committed reversible error by applying a $12,500 settlement credit to the amount of Ortiz's damages against National City.

(4)    The trial court committed reversible error by failing to grant Ortiz judgment on his statute-of-limitations defense to National City's judicial-foreclosure claim.

In his original proceeding, Ortiz contends that the trial court clearly abused its discretion in denying his motion to expunge the Bank Parties' notice of lis pendens.

---

[1] HLS appealed the trial court's judgment, but it has not assigned any error or presented any argument challenging the trial court's money judgment against it.

7

## III. CLAIMS AGAINST NATIONAL CITY

### A.     Who Breached the Deed of Trust First?

In its answers to separate questions, the jury found that National City and Ortiz both materially breached the Deed of Trust, but that National City breached the Deed of Trust first. The Bank Parties contend that they conclusively established that Ortiz was the first to materially breach the Deed of Trust, and thus, the trial court erred in impliedly denying their motion to disregard this finding.

We review this challenge to the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's findings, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable jury could, and disregarding contrary evidence unless a reasonable jury could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005). The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review. *Id.* at 827. Evidence is legally insufficient only if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810.

After reviewing the record under the applicable standard of review, we agree with the Bank Parties that the evidence is legally insufficient to support the jury's finding that National City breached the Deed of Trust first.

#### 1.     National City materially breached the Deed of Trust no earlier than November 1, 2005.

The central dispute in this issue involves the construction of Section 15 of the Deed of Trust. Under the terms of this section, the Bank Parties were required to send notices to Ortiz at the "notice address," which the parties agreed "shall be the Property Address unless [Ortiz] has designated a substitute notice address." It is undisputed that Ortiz designated a substitute notice address, and therefore, his notice address was not the address of the Property.

8

But, under the unambiguous language of the Deed of Trust, sending a notice to Ortiz at an address other than his notice address could be a breach of the Deed of Trust only if the Deed of Trust required a notice to be sent. On November 1, 2005, HLS sent a notice of acceleration to Ortiz at the Property Address rather than to the notice address that Ortiz had designated. Because the terms of the Deed of Trust required any notice of acceleration to be sent to Ortiz's "notice address," the failure of National City's agent to send the notice to the correct address was a breach of the Deed of Trust. Although Ortiz offered evidence that the Bank Parties sent other documents and notices to him at the wrong address before November 1, 2005, this was the first time that a notice required under the Deed of Trust was misaddressed. As a matter of law, National City first breached the Deed of Trust by failing to send a required notice to Ortiz at his designated address on November 1, 2005. Although the jury also could have concluded that National City breached the Deed of Trust by declaring that Ortiz abandoned the property, or by securing or possessing the property without providing Ortiz proper advance notice of the intent to do so, there is no evidence that either of these events occurred before November 1, 2005. According to the undisputed evidence, the Birdsall Property was declared abandoned on November 8, 2005, and was secured on November 27, 2005. Thus, based on the unambiguous language of the Deed of Trust and the evidence adduced at trial, no rational jury could conclude that National City breached the Deed of Trust before November 1, 2005.

**2.      Ortiz materially breached the Deed of Trust not later than October 1, 2005.**

Based on the instructions in the court's charge, the jury could have found that Ortiz materially breached the Deed of Trust by (a) "failing to occupy the Birdsall Property as his principal residence and/or secure the property pursuant to the terms of the Deed of Trust," (b) "failing to make payments as required under the Deed of Trust," or (c) "failing to keep the Birdsall Property insured." No reasonable jury could have found that Ortiz first breached the Deed of Trust in one of these ways after November 1, 2005.

The Deed of Trust provided that Ortiz "shall occupy, establish, and use the

9

Property as [his] principal residence within 60 days after the execution of [the Deed of Trust] and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy." Although Ortiz executed the Deed of Trust on March 15, 2004, he never resided at the Birdsall Property. Under the terms of his contract with the prior owners, he was required to lease the Property to them through July 2004 unless they notified Ortiz of their intent to vacate the premises earlier. Ortiz testified that the Bank Parties were informed of this at the closing on the Property, and it is undisputed that the prior owners vacated the premises without extending the lease. As a result, Ortiz could have established the Property as his principal residence at any time on or after August 1, 2004, but he did not do so. Thus, if the jury's finding that Ortiz materially breached the Deed of Trust was based on his failure to "occupy, establish, and use the Property as [his] principal residence," then the jury could not reasonably find that this breach first occurred later than October 1, 2004, i.e., sixty days after the expiration of the prior owners' lease.

The Deed of Trust further provided that Ortiz "shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." The Note specified that payments were due on the first day of every month. It is undisputed that Ortiz never made a monthly payment on or before its due date, and that he last made a payment in September 2005. If the jury based its finding that Ortiz materially breached the Deed of Trust on his failure to make payments when due, then the jury could not reasonably conclude that the breach first occurred later than October 1, 2005.

Finally, Ortiz was required under the terms of the Deed of Trust to keep the Birdsall Property insured. He admitted at trial that he purchased a year of coverage when he purchased the home in March 2004, but failed to renew coverage when it expired in April 2005. He did not reinsure the property for several months. Thus, he breached the insurance requirements of the Deed of Trust in April 2005.

Because National City breached the Deed of Trust no earlier than November 1, 2005, and Ortiz breached the same agreement not later than October 1, 2005, the

10

evidence is legally insufficient to support the jury's finding that National breached the Deed of Trust first. The trial court therefore erred in denying the Bank's motion to disregard this finding and in rendering judgment in Ortiz's favor on his breach-of-contract claim.

We accordingly sustain the Bank Parties' second issue,[2] and we reverse the portion of the judgment in which the trial court held National City liable to Ortiz for breach of contract and for attorney's fees. In light of our disposition of this issue, the first and third issues presented in Ortiz's cross-appeal are moot.

## B.      Did the Bank Parties Unambiguously Renounce Any Rights to Further Payment or Foreclosure If the June 2006 Foreclosure Were Reversed?

In their first issue, the Bank Parties contend that the trial court erred in rendering judgment that Ortiz has no obligation on the Note and the Deed of Trust. In making this argument, they effectively challenge the legal sufficiency of the evidence on which the following rulings were based: (1) the interlocutory partial summary judgment of April 9, 2009; (2) the trial court's interlocutory order of June 14, 2010 granting in part and denying in part the parties' cross-motions for partial summary judgment; (3) the trial court's ruling, incorporated in the final judgment, granting in part and denying in part the parties' cross-motions for entry of judgment and to disregard certain jury findings; (4) the denial of the Bank Parties' motion to modify the judgment; (5) the denial of their motion for judgment notwithstanding the verdict; and (6) the denial of their motion for new trial.

When reviewing the legal sufficiency of the evidence, we apply the same standard of review regardless of the procedural vehicle used to raise the issue. *See City of Keller*, 168 S.W.3d at 823. That is, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that supports it. *Id.* at 822. We credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827.

---

[2] We have not addressed the issues in the same order in which they were presented by the parties.

11

1. **The trial court erred in granting Ortiz partial summary judgment as to "any claim arising from the Note mentioned in the Letter Agreements."**

A party who has raised an affirmative defense and moves for summary judgment on that basis bears the burden of proving each essential element of the defense. *See Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012). Here, the Bank Parties asserted claims for amounts due under the Note and the Deed of Trust, to which Ortiz raised the affirmative defenses of waiver and release. *See* TEX. R. CIV. P. 94 (listing "waiver" and "release" as separate affirmative defenses). The Bank Parties then asserted an additional counterclaim in which they asked the trial court to "declar[e] the legal significance of the Letter Agreements." They asserted that the Letter Agreements were "null and void *ab initio* for failure of consideration and/or due to the fraud committed by Donovan, Ortiz's attorney, in obtaining the Letter Agreement[s]." They additionally argued that by retaining the benefits of the Letter Agreements, Ortiz ratified the foreclosure.

In the first summary-judgment motion at issue in this appeal, Ortiz sought judgment on the following grounds:

(a)     In the Letter Agreements, the Bank Parties expressly waived all claims against Ortiz;

(b)     The Bank Parties' claims for declaratory judgment were impermissible attempts to recast affirmative defenses as counterclaims;

(c)     No evidence supported the assertion that Ortiz ratified the foreclosure;

(d)     Failure of consideration does not render a waiver void because waivers require no consideration;

(e)     With respect to the Bank Parties' assertion that Donovan's alleged fraud in obtaining the Letter Agreements rendered those contracts void, Ortiz argued that

(i)     a violation of the Texas Disciplinary Rules of Professional Conduct does not give rise to a private cause of action, and

12

(ii)   the Bank Parties could not establish that they relied on Donovan's failure to inform them of the lawsuit because their attorney's actual knowledge of the lawsuit was imputed to them, and because the lawsuit was filed as a matter of public record.

(f)   In a supplement to the summary-judgment motion, Ortiz asserted that the evidence conclusively showed that National City breached the Deed of Trust, and thus, National City was liable for breach-of-contract damages and attorney's fees in an unspecified amount.

The Bank Parties responded that "[t]he Letter Agreements represent a release of liability which requires consideration," and that "[t]he only consideration possible for the Letter Agreements would be [Ortiz's] ratification of the foreclosure." They argued that because Ortiz moved to set aside the foreclosure,[3] there was no consideration. The Bank Parties had stated in their pleadings that the Letter Agreements were ambiguous, and although they denied in their summary-judgment response that the Letter Agreements were ambiguous, they nevertheless argued that if the agreements were ambiguous, then the ambiguity should be construed against Ortiz because his attorney drafted the letters. In addition, they argued that because Ortiz circumvented the Bank Parties' counsel in violation of the Texas Disciplinary Rules of Professional Conduct in order to obtain the Letter Agreements, there was at least a question of fact as to the parties' intentions. As for Ortiz's breach-of-contract claim, the Bank Parties asserted that as a result of Ortiz's repudiation and material breach of contract by failing to make payments when due, they were discharged from performing under the contract. They further asserted that Ortiz failed to plead or prove damages from the alleged breach.

In April 2009, the trial court granted Ortiz's partial summary-judgment motion without stating the grounds for the ruling; however, the trial court allowed the Bank Parties to amend their pleadings to assert claims for all amounts due "under the Deed of Trust." Ortiz then moved for summary judgment again, arguing that the Letter Agreements were express waivers of all claims against him, and that at the time the Bank

---

[3] Two years after the Letter Agreements were signed, the trial court set aside the sale because the required foreclosure notices were sent to the wrong address.

13

Parties executed the agreements, they were aware of Ortiz's lawsuit challenging the foreclosure. The Bank Parties again asserted that the Letter Agreements were releases that were unenforceable due to the absence of consideration, or alternatively, that the consideration for the releases was Ortiz's ratification of the foreclosure.

On June 14, 2010, the day before the start of the jury trial in this case, the trial court issued an order providing in pertinent part as follows:

> The Court has reviewed the following pleadings: Defendants' Motion for Partial Summary Judgment on their Declaratory Judgment Claim and Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims and as to Plaintiff's Declaratory Judgment Claim. After review of the foregoing pleadings, all responses, and arguments made during the Thursday June 3, 2010 pre-trial conference[, t]he Court enters the following findings and Orders:
>
> Both Motions are Granted in Part and Denied in Part.
>
> The Court finds,
>
> 1.     That the Letter Agreements making basis [sic] of the motions lack consideration, and accordingly are not valid contracts to be enforced for all purposes.
>
> 2.     That the portion of the afore-mentioned Letter Agreements concerning the Note on the subject property is a valid agreement to release/waive Plaintiff's obligation on the Note, under the tenants [sic] of Texas Business and Commerce Code § 3.604 and as of the date of the Letter Agreements.
>
> It is ORDERED, that [the Bank Parties] are entitled to take nothing for any claim arising from the Note mentioned in the Letter Agreements.
>
> It is ORDERED, that [the Bank Parties] are entitled to pursue claims as to the Deed of Trust on the subject property.

The basis for the trial court's ruling is stated in its "findings." As we previously have explained, "If summary judgment is proper, there are no facts to find and the legal conclusions have already been stated in the motion and the response." *Golden v. McNeal*, 78 S.W.3d 488, 495 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing

14

*IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997)). Thus, "[t]he trial court should not make, and the appellate court cannot consider, such findings and conclusions in connection with a summary judgment." *Id.* Here, however, the trial court stated in its final judgment "that all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment." In light of the pleadings requesting a declaratory judgment on the legal effect of the Letter Agreements, we construe the trial court's "findings" incorporated into the final judgment as the requested declaration.

Summary judgments may only be granted upon grounds expressly asserted in the summary-judgment motion. TEX. R. CIV. P. 166a(c); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). Here, however, the trial court ruled based on grounds that were not properly before it. Thus, we conclude that the trial court erred in granting Ortiz's motions for summary judgment concerning the Bank Parties' claims under the Note because the rulings were not supported by grounds raised in the motions.

    **a.    The trial court erred in granting partial summary judgment on a statutory ground that was not encompassed in Ortiz's summary-judgment motions.**

At a pretrial conference on June 3, 2010, less than two weeks before trial, Ortiz argued for the first time that the Letter Agreements were governed by a provision in this state's codification of the Uniform Commercial Code. During the hearing, Ortiz argued that the Letter Agreements were enforceable even in the absence of consideration because Texas Business and Commerce Code section 3.604 provides that "[a] person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument . . . by agreeing not to sue or otherwise renouncing rights against the party by a signed record." TEX. BUS. & COM. CODE ANN. § 3.604(a)(2) (West Supp. 2012). No such grounds for summary judgment were presented in his written summary-judgment motions. Although Ortiz argues on appeal that this basis for judgment was properly before the trial court based on the waiver arguments presented in his summary-judgment motions, those arguments were based solely on the common law,

as can be seen by the authorities he cited.

Ortiz argued in his summary-judgment motions that the Letter Agreements were express waivers for which no consideration was required. In support of this position, he cited cases showing that, under the common law, waiver can be express or can be established through a parties' actions. *See, e.g., Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999) (per curiam) ("Although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law."); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643–44 (Tex. 1996) (explaining that although "[w]aiver ordinarily is a question of fact," it becomes a question of law when "the facts and circumstances are admitted or clearly established," and holding that testimonial admissions proved waiver as a matter of law); *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) (explaining that "the waiver of a condition precedent may be inferred from a party's conduct").

Although Ortiz characterized the Letter Agreements as express waivers for which no consideration was required, the parties were already in litigation with one another; thus, Ortiz was asking the trial court, in effect, to treat the Letter Agreements as releases. A release is a writing providing that a duty or obligation owed to one party to the release is discharged immediately. *See Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Fire Ins. Co.*, 20 S.W.3d 692 (Tex. 2000); RESTATEMENT (SECOND) OF CONTRACTS § 284 (1981). A release of a claim or cause of action extinguishes the claim or cause of action. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). But, none of the grounds expressly presented in Ortiz's summary-judgment motions or replies addresses the Bank Parties' summary-judgment responses that the Letter Agreements are releases for which consideration is required. *See U.S. Fire Ins. Co. v Republic Nat'l Life Ins. Co.*, 602 S.W.2d 527, 529–30 (Tex. 1980) (release requires consideration); *Torchia v. Aetna Cas. & Sur. Co.*, 804 S.W.2d 219, 223 (Tex. App.—El Paso 1991, writ denied) (same); *Leonard v Texaco, Inc.*,

16

422 S.W 2d 160, 165 (Tex. 1967) (settlement agreement requires consideration). *See also McLernon v. Dynegy, Inc.,* 347 S.W.3d 315, 335 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Generally, a contract must be supported by consideration to be enforceable."). *Cf. Pate v. Eversole,* No. 14-03-00250-CV, 2004 WL 582319, at *1 n.1 (Tex. App.—Houston [14th Dist.] Mar. 25, 2004, pet. denied) (mem. op.) (settlement agreement concerning amount due under promissory note was supported by consideration in the form of a promise to postpone the foreclosure sale). In particular, Ortiz did not contend that there is a statutory exception to the common-law rule that a release requires consideration.

The common-law arguments in Ortiz's motion cannot support summary-judgment based on the Uniform Commercial Code because the U.C.C. "preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.'" *AMX Enters., Inc. v. Bank One, N.A.,* 196 S.W.3d 202, 207 (Tex. App.— Houston [1st Dist.] 2006, pet. denied) (quoting TEX. BUS. & COM. CODE ANN. § 1.103 cmt. 2). If, as Ortiz belatedly argued, section 3.604 rendered the Letter Agreements enforceable in the absence of consideration, then that provision conflicts with the common law that a release requires consideration. We then could not read Ortiz's motion for summary judgment based on the common law to encompass an argument that he is entitled to judgment based on a statute that preempts the common law. On the other hand, if section 3.604 does not apply to releases when, as here, claims between the parties are being actively litigated, then the statute and the common law do not conflict because the statute does not apply at all. Ortiz then would be not entitled to summary judgment based on the common law because there was no consideration for the release.[4]

---

[4] In his responsive brief, Ortiz contends that the there is a legal presumption that a written agreement was supported by consideration, and thus, the Bank Parties bore the burden to respond to the summary-judgment motion with evidence rebutting the presumption. This is incorrect. As the summary-judgment movant, Ortiz bore the burden in the trial court to establish his right to summary judgment as a matter of law. Because the Bank Parties pleaded the lack of consideration, Ortiz could not prove his right to judgment as a matter of law unless he conclusively established that the Letter Agreements were supported by consideration, or that no consideration was required. *See Brocail v. Detroit Tigers, Inc.,* 268 S.W.3d 90, 109 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (movant for traditional summary-

### b. The grounds expressly presented in the motions also do not support summary judgment.

Because the Letter Agreements are ambiguous, we also cannot affirm the summary-judgment rulings based on the grounds expressly raised in the summary-judgment motions. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (explaining that even when the trial court identifies the basis for its summary-judgment ruling, the appellate court may consider other summary-judgment grounds that have been preserved for review).[5] When we interpret a written contract, "our primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract." *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding) (per curiam). To understand the parties' intent as expressed in the agreement, it is essential that courts examine the contract as a whole in light of the circumstances present when the contract was entered. *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 450, 451 (Tex. 2011); *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008) (per curiam); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)). No single provision is given controlling effect; instead, we consider all the provisions in all parts of the contract. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We also bear in mind the particular business activity to be served, and when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank v. L & F. Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *U.S. Denro Steels, Inc. v. Lieck*, 342 S.W.3d 677, 682 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). If the contract is

---

judgment is required to disprove allegations pleaded by nonmovant that would defeat summary judgment). On appeal, the summary-judgment movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

[5] The Bank Parties raised the issue of ambiguity in response to the first summary-judgment motion, but not the second motion; however, the trial court stated in its order that it considered both summary-judgment motions and "all responses." The trial judge submitted a jury question on intent. In addition, the parties before us have presented arguments about whether the Letter Agreements unambiguously expressed an intent to waive or release all of the Bank's claims, or conversely, whether there was a question of fact about the Bank's intent.

subject to two or more reasonable interpretations after applying the pertinent rules of construction, then the contract is ambiguous. *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). A contract is not ambiguous if it can be given a certain or definite meaning as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). The determination that a contract is or is not ambiguous is decided by the court as a matter of law. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

After reviewing the express language of the Letter Agreements in light of the circumstances present when they were signed and the business activity they were intended to serve, we conclude that there is more than one reasonable interpretation of the scope and conditions of the release. Although parts of the Letter Agreements use broad and sweeping language, other parts of the agreement identify the release as the result of the Bank Parties' foreclosure of the Birdsall Property in 2006. Thus, there is a question of fact as to whether the Letter Agreements express an intent to release Ortiz from all claims related to the property and to his indebtedness, or only an intent to release him from the indebtedness remaining after the sale of the Property.

In his letter of June 23, 2006, Ortiz's attorney Michael Donovan wrote as follows:

> This Agreement shall confirm that Lender has completed and will file an Internal Revenue Service Form 1099-A *in connection with its foreclosure* on the above-referenced property. *As a result*, it does not intend to and shall not file or pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise. Lender agrees to and does fully release Borrower from any and all obligations and liability that Borrower may have or may have had to Lender, and Lender waives any and all demands and claims regarding any such obligation or liability. It is agreed that no *further* sums will be made or owed by Borrower, and no *further* sums will be demanded or litigated by Lender.

(emphasis added). The letter was signed and returned by an employee of HLS, together with the requested information regarding Ortiz's Form 1099-A.

We find it significant that the Form 1099-A forms a part of the Letter Agreements.

19

Under federal income-tax laws, one who, in connection with his trade or business, lends money secured by property must provide a borrower with a Form 1099-A if the lender "in full or partial satisfaction of any indebtedness, acquires an interest in any property which is security for such indebtedness . . . ." 26 U.S.C. § 6050J(a)(1).[6] As a result of the initial foreclosure, National City acquired an interest in the property on June 6, 2006 by purchasing it for $351,356.77; thus, it was required to provide Ortiz with a Form 1099-A. At that time, the amount of Ortiz's indebtedness exceeded both the purchase price and the home's value; thus, there was an unanswered question as to whether National City would treat the foreclosure as full satisfaction of Ortiz's indebtedness, or only as partial satisfaction of the debt. In other words, there was an open question of whether National City would pursue a judgment against Ortiz for the deficiency, i.e., the difference between the amount of indebtedness and the value of the property. *See Kolbo v. Blair*, 379 S.W.2d 125, 130 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.) ("Deficiency is that part of the secured obligation which remains after crediting it with the net proceeds accruing from a valid sale of the security by the creditor."). In response to the letter, HLS provided Ortiz with the information about the foreclosure to be included on the Form 1099-A, and in this material, HLS identified the "debt outstanding" as $537,207.83. In the Letter Agreement, HLS agreed that "as a result" of the foreclosure, it would not pursue "further" sums from Ortiz. Thus, drawing all inferences in favor of the summary-judgment respondents, and considering the circumstances present at the time the Letter Agreement was executed, the document reasonably can be read as expressing HLS's intent to release only the deficiency by accepting the property as full satisfaction of the debt. On the other hand, HLS stated that it would not pursue any legal proceeding "for any deficiency *or otherwise*." This language reasonably could be read as an expression of the intent to release every claim related to the property. Thus,

---

[6] *See also* INTERNAL REVENUE SERV., DEP'T OF THE TREASURY, 2006 INSTRUCTIONS FOR FORMS 1099-A AND 1099-C, Cat. No. 27991U, *available at* http://www.irs.gov/pub/irs-prior/i1099ac--2006.pdf ("File Form 1099-A, Acquisition or Abandonment of Secured Property . . . for each borrower if you lend money in connection with your trade or business and, *in full or partial satisfaction of the debt, you acquire an interest in property* that is security for the debt, or you have reason to know that the property has been abandoned.") (emphasis added).

the agreement is ambiguous.

This ambiguity was not resolved by the second Letter Agreement, which provided as follows:

> Thank you for providing a copy of the 1099-A and executing the letter agreement I sent regarding the above-referenced matter. It has come to my attention that National City Bank of Indiana was the current mortgagee and that First Franklin Financial Corporation was the original mortgagee. The letter agreement did not specifically reference National City Bank of Indiana.[7]

> Out of an abundance of caution, I am requesting that you please confirm, by signing where indicated below, that all of the terms and conditions of the June 23, 2006 letter agreement also apply to National City Bank of Indiana, as the Lender, and that National City Bank of Indiana also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of the Borrower, Albert Ortiz, in connection with the above-referenced property, including the note and deed of trust associated with such property.

This letter incorporates "all of the terms and conditions" of the earlier letter—including those that made the first letter ambiguous. Moreover, the proposed amendment is ambiguous because it reasonably can be read as an agreement merely to add another party to the original agreement, or as an agreement expanding the scope of the claims released.

A narrow interpretation is suggested by the use of the phrase, "out of an abundance of caution." When a person states that he is taking some action "out of an abundance of caution," he saying, in effect, that the action likely is unnecessary, but is employed to remove any uncertainty. He is saying, in effect, "I think that I already have taken sufficient steps to achieve the same result, but I am taking this additional step to remove any doubt." *See e.g., Fort Stewart Sch. v. Fed. Labor Relations Auth.,* 495 U.S. 641, 646, 110 S. Ct. 2043, 2047, 109 L. Ed. 2d 659 (1990) (explaining that "technically

---

[7] In the first letter, Donovan incorrectly identified the "Lender" as "First Franklin Financial Corporation / National City Home Loan Services, Inc."

unnecessary" provisions sometimes are "inserted out of an abundance of caution—a drafting imprecision venerable enough to have left its mark on legal Latin (*ex abundanti cautela*)."); *In re City of Georgetown*, 53 S.W.3d 328, 335–36 (Tex. 2001) (orig. proceeding) (explaining that although statutory redundancies were unnecessary, the legislature "repeated itself out of an abundance of caution, for emphasis, or both"); *Wright v. Macdonell*, 88 Tex. 140, 146, 30 S.W. 907, 909 (1895) ("[I]t is not unusual for the parties to a contract, out of abundance of caution, to express that which the law would have implied . . . .").

A narrow interpretation also is implied by the use of the word, "confirm." "[T]o confirm is to establish as true that which was doubtful or uncertain." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 292 (3d ed. 1996). The use of this word suggests that the intent was to *verify* that the same terms present in the first Letter Agreement apply to National City, not to enlarge the scope of the release.

On the other hand, one reasonably could read the second paragraph of the Letter Agreement as expressing an intent to agree to two things: first, to confirm that the terms of the first letter agreement apply to National City, and second, to expand the scope of the release. This interpretation is based on the statement that National City "*also* releases and waives any and all actual and potential demands and claims" against Ortiz. Because both of these interpretations are reasonable, the second Letter Agreement is ambiguous. The ambiguity of the Letter Agreements precluded summary judgment.

The trial court took one step to partially correct this error. Despite its interlocutory rulings on the partial motions for summary judgment, the trial court recognized that the Letter Agreements were ambiguous before the case was submitted to the jury, and included in the charge a question about the meaning of the Letter Agreements. *See Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008) ("[B]y sending the interpretation of the [agreements] to the jury, the trial court implicitly held that the [agreements] were ambiguous."). The question was presented as follows:

22

"With respect to the Letter Agreements, did HLS or National City validly agree that Albert Ortiz would receive ownership and possession of the Birdsall Property without obligation for further payments on the Note, and that HLS and National City would not pursue any claims, lawsuits and/or obligations that they could have asserted against Albert Ortiz?" The jury answered, "No."[8] In effect, the jury found that in executing the Letter Agreements, the Bank Parties did not agree to release Ortiz from any further obligation to make payments on the Note if he received ownership and possession of the Birdsall Property. This finding was supported by the evidence in the case. At trial, HLS's representative testified that the intent of the agreements was to release the deficiency. Ortiz's lawyer testified that he wanted to ensure that Ortiz did not owe any more money to the bank. After receiving the verdict, however, the trial court reversed its implicit holding that the Letter Agreements were ambiguous, and instead reinstated its earlier erroneous rulings on the summary-judgment motions and incorporated them into the final judgment. In a ruling that appears to have been based in part on the interlocutory summary judgments, the trial court further declared in the final judgment that Ortiz had no past, present, or future obligations under the Note and the Deed of Trust, a declaration that is contrary to the jury's finding, which the trial court apparently disregarded.[9]

---

[8] This question presents a mixed question of law and fact (i.e., the legal determination of whether the contract was valid and the factual determination of the Bank's intent). Mixed questions of law and fact are appropriate for the factfinder to decide. *See, e.g., Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006); *Valence Operating Co. v. Anadarko Petroleum Corp.*, 303 S.W.3d 435, 441 (Tex. App.—Texarkana 2010, no pet.). If the trial court asks the jury to make a factual finding on a matter essential to a claim or defense, the jury's answer is not rendered immaterial merely because the question may have been defective. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). In such a situation, the trial court may grant a motion for a new trial, but it may not disregard the jury's finding. *Id.*

[9] The trial court did not expressly state that it disregarded any findings, but this is apparent from other language in judgment and from the result. In the final judgment, the trial court stated that "the motion of [Ortiz] for judgment on the verdict is GRANTED in part and that the motion of Defendants for judgment on the verdict is DENIED in part." Ortiz's motion actually was titled, "Plaintiff's Motion for Judgment on the Verdict *with Motion to Disregard Immaterial Jury Finding*," and the Bank Parties' motion was called "Defendants' Motion for Entry of Judgment *and to Disregard Certain Jury Findings*." (emphasis added). Although the trial court refers to both motions only as motions for judgment, the

23

We therefore conclude that the trial court erred in granting summary judgment and in incorporating those rulings in the judgment.

### c. The trial court's erroneous summary-judgment rulings were neither waived nor harmless.

On appeal, Ortiz asserts that the Bank Parties waived any error by the trial court in considering summary-judgment grounds that were not presented in the motion but were raised orally at the summary-judgment hearing. He points out that the Bank Parties failed to object that the issue was untimely, but no such objection was necessary. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) ("Even if the non-movant fails to except or respond, if the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient as a matter of law."). Ortiz also argues that because the trial court permitted the parties to address these grounds, we should presume that the trial court gave him leave to amend his summary-judgment motion; however, he has not identified an amended summary-judgment motion in the record.

Ortiz further contends that even if the trial court erred in granting the summary judgments based on section 3.604, the error was harmless because the Bank Parties had an opportunity to brief the issue and the trial court fully considered the brief. But, summary-judgment grounds must be "expressly set out in the [summary-judgment] motion or in an answer or any other response." TEX. R. CIV. P. 166a(c). The Bank Parties' brief was not a "motion," and it was not an "answer or response" to a summary-judgment motion. Instead, it was a response to an oral argument, and summary judgment on a ground that is not expressly presented in the written motion, answer, or response is not properly before the trial court simply because it is addressed in a brief. *McConnell*,

---

substance of the ruling demonstrates that the trial court granted the portion of Ortiz's motion in which he asked the trial court to disregard the jury finding interpreting the Letter Agreements, and denied the portion of the Bank Parties' motion in which they stated, "In accordance with the jury's answer to Question 6 in the negative, the court should enter a judgment allowing National City to foreclose under the Deed of Trust."

858 S.W.2d at 341.

We also disagree with Ortiz's contention that the rulings, even if erroneous, were harmless. He reasons that the same result reached by the trial court was reached by the jury, because the jury found that National City breached the Deed of Trust before Ortiz did, and thus, failed to assess any monetary damages for Ortiz's breach. But as we have previously discussed, the evidence supporting this finding was based on legally insufficient evidence. Moreover, the trial court did not only fail to award monetary damages; it also denied the claim for judicial foreclosure, a result that is not supported by the jury's verdict. We further note that Ortiz's statutory argument was raised after the time for amending pleadings had passed, but the trial court denied the Bank Parties leave to amend their answers to plead mistake—even though this is a defense to renunciation of a debt under the statute. *See Gibraltar Sav. Ass'n v. Watson*, 624 S.W.2d 650, 653 (Tex. App.—Houston [14th Dist.] 1981, no writ). Finally, because the Letter Agreements are ambiguous, summary judgment based on section 3.604 was not just procedurally incorrect; it was substantively incorrect. *See Burton v. Nat'l Bank of Commerce of Dall.*, 679 S.W.2d 115, 118 (Tex. App.—Dallas 1984, no writ). In *Burton*, a bank sued a borrower for the deficiency remaining on a promissory note after the bank sold the collateral securing the loan. *Id.* at 116. Relying on the predecessor to the statute at issue here, the borrower argued that the bank waived the right to a deficiency judgment, and the bank argued that this was not its intent. *Id.* at 118.[10] The court concluded that determining the bank's intent was a question of fact to be resolved by the jury. We reach the same result here.

As the foregoing shows, the erroneous summary-judgment rulings were one of several ways in which the trial court addressed the interpretation of the Letter Agreements. We turn now to the trial court's ruling disregarding the jury's finding on

---

[10] The substantive text of Texas Business and Commerce Code section 3.604 formerly appeared at section 3.605. *See* Act of May 19, 1965, 60th Leg., R.S., ch. 785, § 1, Sec. 3-605, 1965 TEX. GEN. LAWS 1, 80; Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, Sec. 3.605, 1967 TEX. GEN. LAWS 2343, 2438; Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, Sec. 3.604, 1995 TEX. GEN. LAWS 4582, 4606.

25

that issue.

## 2. The trial court erred in disregarding the jury's finding interpreting the Letter Agreements.

A trial court may disregard a jury finding only if it is unsupported by evidence or if the issue is immaterial. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *Lee v. Hasson*, 286 S.W.3d 1, 17 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings. *Spencer*, 876 S.W.2d at 157. A jury question also can be considered immaterial when its answer cannot alter the effect of the verdict. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995); *Hernandez v. Atieh*, No. 14-06-00582-CV, 2008 WL 2133193, at *3 (Tex. App.—Houston [14th Dist.] May 20, 2008, no pet.) (mem. op.).

Here, Ortiz asserted that the trial court should disregard the jury's finding interpreting the Letter Agreements for several reasons. We conclude, however, that none of these arguments have merit.

First, Ortiz asserted that the finding would not change the effect of the verdict and that it does not concern a controlling issue. But, Ortiz's argument that the Bank Parties had released all claims for amounts due under the Note and the Deed of Trust was an affirmative defense to their claim for judicial foreclosure. In rejecting Ortiz's interpretation of the agreements, the jury rejected his affirmative defense. This finding on a controlling issue therefore made a difference in the effect of the verdict.

Ortiz also argued that the finding that the Bank Parties did not agree to forego all claims under the Deed and the Note was rendered immaterial by the jury's finding that Ortiz owes nothing under the Deed of Trust. This argument is factually incorrect; the jury did not answer the question regarding the amount due under the Deed of Trust, because the jury erroneously concluded that National City breached the Deed of Trust first and National City's damage issue was predicated on an answer that Ortiz breached

26

first.[11] The absence of a finding is not a finding.

Finally, Ortiz asserted that "the jury took into consideration and accounted for any amounts it may have found were owed by [Ortiz] in its award of damages to [him]." We presume, however, that the jury followed the instructions in the charge. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009). Here, each of the questions regarding Ortiz's actual damages was accompanied by the instruction, "Do not increase or reduce the amount in one answer because of your answer to any other question about damages." The single question concerning exemplary damages to be assessed against HLS was accompanied by a list of the factors to be considered, and this list did not include consideration of the amount Ortiz owed to National City under the Deed of Trust.

Because no valid basis was asserted for disregarding the jury's finding interpreting the agreement, we conclude that the trial court reversibly erred in partially granting Ortiz's post-verdict motions and denying the Bank Parties' post-verdict and post-judgment motions concerning this question. Although Ortiz used a variety of motions in asserting that the Letter Agreements prevented the Bank Parties from pursuing any claims against him, we have examined each of the challenged rulings and concluded that none are supported by the record. We therefore sustain the Bank Parties' first issue.

The Bank Parties argued that if we sustained this issue, then we should render judgment in favor of National City in the amount of $1,012,982.90, which they state is the amount of the indebtedness established by the uncontroverted evidence. Because we do not consider the record to be so clear that the amount of Ortiz's indebtedness is conclusively established, we conclude that remand is necessary to correct the error and

---

[11] The parties submitted the breach question in accordance with *Mustang Pipeline Co. v Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004) and Texas Pattern Jury Charge 101.2 and then further conditioned damages so that jury would make a damage finding only for the party who did not breach first. Practitioners should be careful not to over-predicate, especially if one party asserts a prior material breach as a matter of law.

27

establish the amount owed.

The trial court's rulings created an artificial distinction between the Note and the Deed of Trust; the disjunction between the two was so pronounced that there were different jury questions proposed for each, and the trial court submitted one question (predicated on a finding that a particular party breached first) and refused one of the questions (without such a predication). But, "in order to ascertain the entire agreement between contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together." *See Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984) (citing *Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981)); *Nevels v. Harris*, 129 Tex. 190, 195, 102 S.W.2d 1046, 1048 (1937) (deed of trust and notes for principal and interest must be treated as one contract because the borrowers executed them at the same time and for the same purpose of obtaining a loan secured by real property). National City's claims cannot be parsed fairly into claims under the Note and claims under the Deed of Trust, because the two documents form a single contract. *See* TEX. R. APP. P. 44.1(b) ("If the error affects part of, but not all, the matter in controversy and that part is *separable without unfairness* to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error.") (emphasis added). Both must be considered on remand in retrying National City's claims for breach of contract and judicial foreclosure.

But, just as National City's breach-of-contract claim must be retried to treat the Note and the Deed of Trust as a single contract, so too must Ortiz's breach-of-contract claim against National City be retried, because the cross-claims are not separable without unfairness to the parties. Moreover, the parties must be allowed to assert defenses to one another's claims; thus, for example, if Ortiz asserts that by executing the Letter Agreements, National City released of all of its claims without regard to whether the foreclosure was set aside, then the jury must be allowed to determine, as a question of fact, whether this was National City's intent. And, just as Ortiz may assert affirmative defenses to National City's claims, National City may assert any counter-affirmative

28

defenses, such as mistake.

## C. Is Judicial Foreclosure Time-Barred?

In response to the Bank Parties' counterclaim to judicially foreclose on the Birdsall Property, Ortiz raised the affirmative defense that the claim was time-barred. He moved unsuccessfully for a directed verdict on this basis, and his motion to modify the judgment on the same ground was overruled by operation of law. On appeal, he contends that this defense has been conclusively established, and thus, the trial court erred in failing to grant either motion. We address this issue because the resolution of this question of law affects the issues to be addressed on remand.

In appealing the denial of a motion for directed verdict, Ortiz in effect challenges the legal sufficiency of the evidence. *See Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 265 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The test for legal sufficiency is the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review. *City of Keller*, 168 S.W.3d at 823. Where, as here, a party moves for a directed verdict on an issue on which he bore the burden of proof, he must demonstrate that that he conclusively proved all facts necessary to establish his right to the requested verdict. *See Montgomery v. Byrd*, No. 14-07-01015-CV, 2009 WL 2589431, at *3 (Tex. App.—Houston [14th Dist.] Aug. 25, 2009, no pet.) (mem. op.).

Ortiz points out that on December 21, 2005, the Bank Parties sent Ortiz a notice that the debt had been accelerated, but the letter was mailed to the wrong address. The Bank Parties faxed the same letter to Ortiz's attorney on January 13, 2006. Ortiz contends that the cause of action for judicial foreclosure accrued on one of these dates. Because National City did not file its judicial-foreclosure claim until February 3, 2010, which is more than four years after each of these dates, Ortiz contends that the claim is time-barred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a) (West 2002) ("A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.").

29

Where, as here, a deed of trust contains an optional debt-acceleration clause, a cause of action for judicial foreclosure accrues when the note holder actually exercises its option to accelerate. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *CA Partners v. Spears*, 274 S.W.3d 51, 65 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." *Holy Cross*, 44 S.W.3d at 566. "Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure." *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982). A notice that the debt actually has been accelerated is ineffective if it was not preceded by proper notice of intent to accelerate the debt. *Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674 (Tex. 1987). In addition, both the Note and the Deed of Trust in this case provided that a notice of acceleration "shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 [of the Deed of Trust] within which Borrower must pay all sums secured by [the Deed of Trust]." Under the terms of Section 15 of the Deed of Trust, all notices were to be mailed or otherwise delivered to "Borrower's notice address," which was defined to be "the Property Address unless Borrower has designated a substitute notice address by notice to Lender."

At no time before accelerating the debt did the Bank Parties provide proper notice to Ortiz of the intent to accelerate. According to the undisputed testimony presented at trial, Ortiz properly notified the Bank Parties that all required notices to him were to be sent to his business address. The Bank Parties failed to send the required notice of intent to accelerate and notice of acceleration to the specified address, and instead mailed the notices to the address of the Birdsall Property. On January 13, 2006, the attorney for the Bank Parties faxed to Ortiz's attorney copies of the following documents: (1) a default letter dated November 1, 2005 stating that the debt would be accelerated if it was not brought current by December 1, 2005; (2) a notice of acceleration, dated December 21, 2005; (3) a file-stamped notice of the foreclosure sale scheduled to take place on February 7, 2006, i.e., twenty-five days from the date of the fax; and (4) a "payoff quote

30

good through February 6, 2006," in which the total amount due from Ortiz was said to be $490,882.19. All of this material was sent to Ortiz's attorney at the same time, after the debt had been accelerated and less than 30 days before a scheduled foreclosure sale. Thus, the cause of action for judicial foreclosure did not accrue on December 21, 2005 or on January 13, 2006 as Ortiz contends, because there was no effective notice of acceleration at either of these times.[12]

Because Ortiz failed to establish conclusively that the judicial-foreclosure cause of action accrued more than four years before the claim was filed, the trial court did not err in denying Ortiz's motion for directed verdict. For the same reason, the trial court did not abuse its discretion in failing to modify the judgment to specify that the judicial-foreclosure claim is time-barred. We accordingly overrule Ortiz's fourth issue.

## D. Lis Pendens

In Ortiz's petition for a writ of mandamus, he argued that the trial court clearly abused its discretion by denying his motion to expunge the post-trial notice of lis pendens. By statute, "[a] party to an action in connection with which a notice of lis pendens has been filed may . . . apply to the court to expunge the notice . . . ." TEX. PROP. CODE ANN. § 12.0071(a)(1) (West Supp. 2012). "The court shall rule on the motion for expunction based on the affidavits and counteraffidavits on file and on any other proof the court allows." *Id.* § 12.0071(e). "The court shall order the notice of lis pendens expunged if the court determines that . . . the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim . . . ." *Id.* § 12.0071(c)(2).

In light of our determination of the issues presented in the Bank Parties' appeal and "the probable validity of the real property claim," we cannot conclude that the trial court abused its discretion in denying Ortiz's motion to expunge the notice of lis pendens.

---

[12] Indeed, in a motion for summary judgment, Ortiz stated,

Ortiz never received . . . a notice of intent to accelerate the Note before learning that the Note had been actually accelerated and was being posted for sale. Thus, Ortiz never received the opportunity to avoid acceleration, as required by law and . . . the Deed of Trust.

31

We accordingly deny Ortiz's petition for writ of mandamus. *See* TEX. R. APP. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment . . . .").

## IV. CLAIMS AGAINST HLS

In the remaining issue asserted in Ortiz's cross-appeal, he points out that he presented three different theories of liability entitling him to damages from HLS for the loss of his personal property, and the jury answered a damage question associated with each theory. He argues that the trial court erred in awarding him the largest amount of damages assessed by the jury for this injury, rather than awarding him the sum of all three damage calculations for this loss.[13] Ortiz similarly asserts that he is entitled to recover damages from HLS for the loss of use of the real property, even though the trial court granted judgment against National City for that injury. As a result of our disposition of the other issues in this case, Ortiz is partially correct.

Absent an election, the trial court is required to render judgment "so framed as to give the party all the relief to which he may be entitled either in law or in equity." TEX. R. CIV. P. 301. But, under the one-satisfaction rule, a claimant is entitled to only one recovery for any damages suffered. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991)). The rule applies when different parties commit the same act or when different acts cause the same injury. *Id.* When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the prevailing party has a right to a judgment on the theory that affords him the greatest or most favorable relief. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).

Ortiz contends that he is entitled to recover the sum of all of the damages found by the jury for each injury under the various theories of liability submitted because the Bank

---

[13] HLS has not appealed the portion of the judgment in which the trial court held it to be liable to Ortiz for $100 in exemplary damages and $10,000 in actual damages, which represents the maximum amount found by the jury to be the fair market value of his personal property.

Parties (1) did not plead the one-satisfaction rule as an affirmative defense, (2) did not object to the submission of more than one acceptable measure of his damages, and (3) did not request a limiting instruction to prevent the possibility of a double recovery. No such actions were required. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) ("'There can be but one recovery for one injury, and the fact that . . . there may be more than one theory of liability[] does not modify this rule.'" (alterations in original) (quoting *Stewart Title Guar. Co.*, 822 S.W.2d at 8)).

Here, the jury found that Ortiz suffered two injuries: the loss of personal property, measured by the property's fair market value, and the loss of the use of the real property, measured as lost rental value. Because the one-satisfaction rule no longer applies to one of these injuries, we discuss them separately.

## A.     Damages for Lost Personal Property

Ortiz asserted three different theories of liability for this injury, and the jury made favorable findings for each of them. Under a negligence theory of liability, the jury found that the fair market value of Ortiz's lost personal property was $10,000. Under theories of conversion and trespass to personalty, the jury found that the fair market value of the lost personal property was $1,500. The trial court rendered judgment against HLS for $10,000 in actual damages, which is the largest amount of damages assessed by the jury for this injury. Because an additional award for the same injury would be an impermissible double recovery, we overrule Ortiz's second cross-issue as it pertains to his damages for lost personal property.

## B.     Loss of the Use of Real Property

In the trial court, Ortiz alleged that National City's breach of contract and HLS's trespass to real property caused him to lose the use of the Birdsall Property. The jury agreed, and for each of these claims, the jury was asked to measure the damage by the property's lost rental value. Under the breach-of-contract theory, the jury found that the property's lost rental value was $100,000; under the trespass theory, the jury found that the lost rental value was $77,000. After applying a $12,500 settlement credit from a

33

defendant who settled before trial, the trial court rendered judgment against National City $87,500. The trial court did not render judgment against HLS for the damages for the same injury, because this would have constituted a double recovery.

On appeal, Ortiz argues that he is entitled to recover the damages assessed by the jury against HLS for loss of use of real property because the one-satisfaction rule does not apply. The Bank Parties respond that Ortiz is not entitled to recover from HLS for this damage because damages for the same injury were awarded against National City, and thus, an additional award against HLS for loss of use of the real property would constitute a double recovery. But, this is no longer the case. Because we have eliminated Ortiz's recovery against National City for loss of use of his real property, the one-satisfaction rule no longer applies to bar Ortiz's recovery for this injury from HLS.

We sustain this issue only as it pertains to the jury's finding that HLS caused Ortiz $77,000 in loss-of-use damages as a result of its trespass to real property. To the extent that Ortiz complains that the trial court erred in awarding him the greatest fair market value found by the jury for his lost personal property rather than awarding him an amount equal to the sum of the jury's three personal-property fair market-value findings, we overrule this issue. Because Ortiz is entitled to recover the highest amount that the jury found HLS caused Ortiz for (1) loss of use of the real property and (2) loss of the fair market value of his personal property, we modify the judgment to order that Ortiz recover actual damages from HLS in the amount of $74,500 (i.e., $10,000 for personal-property loss, plus $77,000 for loss of use of real property, minus the $12,500 settlement credit).[14]

## V. CONCLUSION

Regarding Ortiz's claims against National City, we hold that the evidence is

---

[14] On appeal, Ortiz argued that the settlement credit should not have been applied as an offset to any recovery for his breach-of-contract claim against National City. In response, the Bank Parties correctly pointed out that Ortiz sued National City, HLS and Keystone, the settling party, for trespass to real property. Moreover, Ortiz alleged that the Bank Parties were liable with Keystone because its acts or omissions were committed as the Bank Parties' agent, and because the Bank Parties ratified, adopted, and accepted the benefits of Keystone's actions. Ortiz does not contend that the settlement credit does not apply to the real-property damages assessed against HLS for its trespass, and he points out that a nonsettling defendant can claim a settlement credit for damages for which all joint tortfeasors are jointly liable.

34

legally insufficient to support the finding that National City breached the Deed of Trust before Ortiz did. Moreover, the Letter Agreements signed by National City's representative are ambiguous; thus, Ortiz did not establish as a matter of law that National City is barred from recovering amounts owed under the Note and the Deed of Trust or from judicially foreclosing on the Property. Instead, there is a question of fact regarding the parties' intentions. Ortiz also did not establish that National City's claims for judicial foreclosure are time-barred. Although the trial court's rulings erroneously divided the parties' breach-of-contract claims into claims under the Note and claims under the Deed of Trust, the two documents must be construed as a single contract. Because these parties' various breach-of-contract claims against one another are not separable without unfairness to the parties, we must remand both of their contract claims for retrial.

As for Ortiz's claims against HLS, we hold that the trial court did not err in limiting Ortiz to one recovery for loss of the use of the real property, and one recovery for the loss of his personal property; however, as a result of our conclusion that there is legally insufficient evidence to support the jury's finding that National City breached the Deed of Trust first, the damages based on this finding cannot stand. This leaves only one damage award for the loss of the use of the real property; thus, Ortiz is no longer barred by the one-satisfaction rule from recovering those damages from HLS.

For these reasons, we deny Ortiz's petition for a writ of mandamus, and we

    (a)    reverse the portions of the judgment

        (1)    holding National City liable to Ortiz for actual damages, interest, and attorneys' fees;

        (2)    providing that National City takes nothing by its claims;

        (3)    denying National City's request for judicial foreclosure;

        (3)    declaring that the "Note and the Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust"; and

35

(4) providing that "all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment";

(b) modify the amount of the actual damages awarded against HLS, replacing the award of $10,000 in actual damages with an award of $74,500, which represents the largest amounts found by the jury for the injuries caused by HLS (i.e., $10,000 for the fair market value of Ortiz's personal property and $77,000 for the loss of the use of the real property, reduced by the $12,500 settlement credit);

(c) affirm the remainder of the judgment as modified; and

(d) remand the case with instructions to the trial court to

(1) sever National City's claims from the remainder of the case; and

(2) retry National City's severed claims.


/s/    Tracy Christopher
       Justice


Panel consists of Justices Frost, Brown, and Christopher (Frost, J., dissenting).

36

# TAB – N

CAUSE NUMBER 2006-61178

ALBERT ORTIZ : IN THE DISTRICT COURT

v. : HARRIS COUNTY, TEXAS

FRED LOMBARDO, et al. : 164th JUDICIAL DISTRICT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*AUGUST 1, 2014*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On the 1st day of August, 2014, the following proceedings came on to be heard in the above-entitled and -numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.

*A P P E A R A N C E S*


*FOR THE PLAINTIFF:*
Mr. David M. Medina, SBN 00000088
Mr. Gary M. Riebschlager, SBN 16902200
THE LAW OFFICES OF BRENT COON & ASSOCIATES
300 Fannin Street, Suite 200
Houston, Texas  77002
Telephone: 713-225-1682
Facsimile: 713-225-1785

Mr. Michael Donovan, SBN 00796478
Attorney at Law
6300 Dixie Drive
Houston, Texas  77087
Telephone: 713-956-4043
Facsimile: 713-956-4042


*FOR THE DEFENDANTS:*
Mr. Joel Mohrman, SBN 14253500
Ms. Stephanie L. Tolson, SBN 11795430
McGLINCHEY STAFFORD, P.L.L.C.
1001 McKinney, Suite 1500
Houston, Texas  77002
Telephone: 713-520-1900
Facsimile: 713-520-1025

DONNA KING, CSR
164TH OFFICIAL REPORTER
(713) 368-6256

*P R O C E E D I N G S*

*THE COURT:* We're on the record in Cause Number 2006-61178, *Albert Ortiz and Fred Lombardo*, and appearance for the record, Counsel.

*MR. MEDINA:* David Medina for Albert Ortiz.

*MR. RIEBSCHLAGER:* Good morning, Your Honor. My name is Gary Riebschlager, for Albert Ortiz.

*MR. DONOVAN:* Good morning, Your Honor. Mike Donovan. I represent Albert Ortiz.

*THE COURT:* Uh-huh.

*MR. MOHRMAN:* Your Honor, Joel Mohrman for the defendant.

*MS. TOLSON:* And Stephanie Tolson for the defendants also.

*THE COURT:* All righty. Well, you're back. I'm so excited. Can you tell how excited I am? Been waiting with bated breath to see this come across my docket. So, you guys want to go back to trial again, or at least the Fourteenth Court of Appeals saw fit to make me put y'all back to trial again. Yes?

*MR. MOHRMAN:* Yes, Your Honor. And obviously our motion was to get in front of the Court

to schedule the trial and anything else that might need to be done. Our position is that the re -- that the Court remanded in its mandate on a limited basis, and when you have a limited remand, it is our position that you can't just open the case up again and start doing discovery and start adding new causes of action and effect -- effectively not taking care of what the Court of Appeals said for us to take care of, but deciding, "Well, we're just going to start a whole new case," in effect. And so that's what we're here today -- we think what the Court ought to do -- or what we're asking the Court to do is set a trial date, to set a date for the amendment of defensive pleadings, affirmative pleadings, because the Court of Appeals, in its mandate and its opinion, specifically said that with regard to the very limited remand on the contract issue here, that the parties could in fact assert defenses, such as for the bank mistake, such as release on the part of the -- of the plaintiff, that sort of thing.

In addition, we think that we should set a motion for summary judgment deadline because I think there will probably -- we'll probably join -- issue on exactly what the meaning of the appellate opinion is, and the mandate, and we think that

essentially the only thing that we have left to try here, Judge, is -- well, actually, it's probably two things, one, the contract issue, that is, does Mr. Ortiz owe on the note and can we foreclose on the house, or is he right, that somehow these two letter agreements have said that he gets a free house? That's -- that's what I think the main issue that we're going to join on is.

One other issue would be -- as you may recall, the jury entered a verdict and the Court entered a judgment on the tort causes of action as against HLS, which was the servicer.

*THE COURT:* Okay.

*MR. MOHRMAN:* I think it was around 85,000 once the credits and everything shook out. We did not appeal that, and so that's done. But the basis of those damages was loss of use of the house. Over on the contract side there's also an argument for loss of use of the house, and under the one -- one complete satisfaction rule, one complete judgment rule that this Court used in determining that judge -- judgment last time -- which, the Court of Appeals said, "That's correct. That's -- that's exactly what you should do." I think what the Court will have to do is, if the jury comes back with loss-

of-use damages under the contract, then compare the two and see which one is more favorable for the plaintiff and then award that version of loss-of-use damages. So it's sort of a two-stage process, the contract and then loss-of-use damages. If we win, of course, then the loss-of-use damages would be just what it was under the torts.

THE COURT: Uh-huh.

MR. MOHRMAN: One final thing I'll say, Judge, is with regard to this issue of -- of the torts, if I'm understanding in talking with opposing counsel, what they want to do is they want to amend or at least supplement their petition with the same supplemental petition that was offered to the Court right before trial, and that supplemental petition was based upon this rescission deed, which you may remember, that came up in discovery towards the end.

THE COURT: Uh-huh.

MR. MOHRMAN: We found it in their expert's folder and then turned it over, and everybody got all excited about it.

So they basically used all their same causes of action, said, "Well, because of the rescission deed -- these causes of action are -- are sort of different because of the rescission deed."

Court did not allow them to supplement. They say that's because it was untimely, but we provided the transcript for the Court of what -- Court's ruling, and what the Court said was, "You've already got all those causes of action. There's no reason to have double fraud and double trespass to try title," and in fact, as we also cite in our response to their motion, they -- the deed -- the rescission -- it was actually entered as an exhibit at trial. Quick witnesses -- multiple witnesses were questioned on the rescission deed, and Mr. Junell spent quite a bit of his closing argument talking about the rescission deed and how it ties into everything.

And so our view is, number one, the mandate of the Court prevents any amendment to add new causes of action because it's -- and, of course, we attached it there. It says, "retry Ortiz's claims against National City" Bank "for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure, and, with the exception of Ortiz's limitations defense," which they said was not good, "discussed in this Court's opinion, permitting the parties to assert defenses to these claims."

Then it says, "after applying the one-satisfaction rule" -- then it goes into what I talked about just a moment ago about comparing the two awards there, and then, "render a final judgment...consistent with this..."

It affirms, immediately before that, "the portions of the judgment that were neither challenged on appeal nor affected by our disposition of the issues as set forth," and those are "Ortiz's claims for fraud, common-law unreasonable debt-collection, statutory-debt collection violations, statutory deceptive trade-practice violations" --

*THE COURT:* Slow down, Mr. Mohrman.

*MR. MOHRMAN:* Okay. Sorry. -- "breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy, and defamation per se." And so our position would be an amendment deadline for defensive pleadings that people can bring with regard to the contract causes of action, a deadline for a motion for summary judgment so that we can resolve what the Court believes is law of the case and exactly what is going to go to the jury, then ultimately a trial date, with any pre-trial deadlines, such as pre-trial order, that the Court thinks is appropriate.

THE COURT: And with respect to a trial date, what were you envisioning?

MR. MOHRMAN: Well, we're happy to -- to go as quickly as the Court can accommodate us, but I know -- busy docket, and so -- I was hearing your earlier hearing. It sounds like we're probably into next year sometime.

THE COURT: I'm sure you're almost definitely into next year. And your feeling -- and I'm going to ask them the same questions. Your feelings with respect to how long it will take? Because if memory serves, last time I think I was told, you know, week and a half or something, and it ended up going, like, well into, like -- if not finishing the second week, I feel like we went into a third -- we went on forever with trial. So how long do we think this trial will go?

MR. MOHRMAN: If -- if -- if, in fact, the trial is limited to contract issues and loss of use on the contract and that sort of thing -- some of the other testimony that related to the torts obviously will come in. Jury needs background, but I honestly think that we -- we can get it done in a week and I think for sure a week and a half.

THE COURT: Okay.

MR. MOHRMAN: I think -- I think you're right, Judge. I think we went two weeks and a day or something last time.

THE COURT: We did. I remember. It was, like, the never-ending trial, much like the never-ending case.

All right. Mr. Medina or Mr. Riebschlager.

MR. MEDINA: David Medina for Mr. Ortiz. Judge, I'm not certain if this issue is ripe.

THE COURT: Uh-huh.

MR. MEDINA: You know, there's a remand there. And we haven't filed any pleadings, and it's clear that when Your Honor considers a pleading that's on file, you take into consideration the remand and the instructions in the mandate.

We haven't filed anything, and it's certainly clear, according to the opinion written by Justice Raul Gonzalez, with a "z," writing for the Court in *Hudson versus Wakefield*, 711 S.W.2d 628, where he wrote: Cases are rare and very exceptional in which the Court is warranted in limiting the issues of fact, in reversing and remanding a case where there's been a trial by jury; and to authorize

such interpretation, it must be clearly -- must clearly appear from the decision that it was so intended.

And, Judge, I think when you take that analysis and review any pleading that we may file, then you can make your decision, and I think that is well supported by an opinion that came out February 15th, 2011, where Justice Brown, now a justice on the Texas Supreme Court, in a panel that consisted of now Chief Justice Frost and Justice Christopher -- this is Justice -- Justice Christopher's opinion, I believe, in the *Ortiz* case. -- pretty much says the same analysis, a general versus specific mandate, and -- and I think both of those cases would at some point support our pleadings. We certainly have the right to amend the pleadings as long as we're not specifically excluded in the Court of Appeals' mandate, and we intend to do that. And to the extent that there are some law issues that may or may not be a law of the case, there are also some new factual issues that happened post-judgment which need to be added to the complaint. And so I think it's too early to have a discovery or scheduling deadline. We intend to get that filed as soon as possible, and then we'll be

guided by Your Honor's decision.  Certainly, a trial date -- I think opposing counsel is correct.  Length of time?  Week and a half, two weeks, ir -- irrespective of our amended pleadings.

THE COURT:  Okay.  So let me see if I got this straight.  You have not filed any supplemental pleadings?

MR. MEDINA:  No.  No, we haven't, Judge.

MR. MOHRMAN:  Your Honor, may I respond?

THE COURT:  Yeah.

MR. MOHRMAN:  They filed a motion to set aside your earlier order which denied the --

MR. MEDINA:  Your Honor --

MR. MOHRMAN:  -- the filing of the supplemental petition.  And so my understanding was that meant they wanted that supplemental petition to come in, and that's sort of the point here, I think.

MR. MEDINA:  Mr. Mohrman's correct. We -- we withdraw that, Judge, and --

THE COURT:  Oh, well, see, now --

MR. MEDINA:  -- because, Judge --

THE COURT:  -- you should've told me that before we started our soliloquy there of cases.

Okay. Now I understand. So you're withdrawing that motion?

MR. MEDINA: Yes, Judge. I mean, we -- we intend to assert some of that -- those claims, but we're also going to assert other claims, which -- which the law allows us to do and the rules allow us to do.

MR. MOHRMAN: Judge -- Judge, may I briefly respond?

THE COURT: No. Hold on.

MR. MOHRMAN: Okay.

THE COURT: No.

Let -- let me see if I got this straight. You're going to assert some of those claims that you were talking about asserting in the pleading which you've now withdrawn, but you're not sure which of those you were --

MR. MEDINA: To the extent they're not --

THE COURT: -- talking about asserting?

MR. MEDINA: Yes, Judge, to the extent they're not excluded by the mandate.

THE COURT: Okay. So he's saying he's going to follow the mandate.

MR. MOHRMAN: Judge, I -- you may have

a copy of the mandate up there, but -- may I approach?

THE COURT: Sure. And it may be in this stack of paper I have --

MR. MOHRMAN: Second page is, sort of, I think, where the facts of it is.

THE COURT: All right. So it's sounding like -- if they're withdrawing their original motion that they filed for today, it sounds like really all that's ripe for today is figuring out what your trial date is and working back from there, and getting you a summary judgment date as well.

And call it whatever motion you want to call it, whenever I have these remands I end up with, like, a day of, "What exactly did the Court of Appeals mean when they wrote this?" So I recognize that's going to happen in this case, as it does in all of these cases, and generally somewhere in there we start going, "Well, blah" -- and then it turns into a nightmare. But fine.

So, yes. We're going to have to have a hearing, whether we call it a motion for summary judgment or something else, to basically say, "What exactly did" -- who wrote this? -- "Justice Frost and Justice Christopher mean when they wrote all this

stuff?"

MR. MOHRMAN: Your Honor, may I address just one point here?

THE COURT: Uh-huh.

MR. MOHRMAN: With regard to these causes of action -- and we cite the *Hudson v. Wakefield* case also, and it says, "When this Court remands a case and limits a subsequent trial to particular issues," which I think that mandate does, quite honestly --

THE COURT: Uh-huh.

MR. MOHRMAN: -- "the trial court is restricted to a determination of that particular issue."

THE COURT: Now, Mr. Mohrman, you've been in front of me before, and Mr. Medina hasn't been, which is why I let him get away with the reading to me thing. Generally, as you know, just give me a copy of the case so I can read it.

MR. MOHRMAN: I've got it right here, Judge.

THE COURT: Thank you. For future reference --

MR. MEDINA: Judge, I was just trying to -- just trying to protect my record on appeal.

THE COURT: No. I know you're trying to protect your record. I just always like to see a hard copy because I was never good at listening to my mother when she read to me as a child, so it's generally better if I just read the words as you read them. So yes.

MR. MOHRMAN: And so, Judge, that's one point. But in our response to their motion to set aside your order so they could have their supplemental petition --

THE COURT: Uh-huh.

MR. MOHRMAN: -- the second point that we made is that the Court of Appeals' opinion has set up some things that are law of the case, and, as an example, as you saw in the mandate, the -- Subsection B on Page 2 says these claims are done.

THE COURT: Right.

MR. MOHRMAN: "These claims are done because either they weren't -- weren't appealed or we affirmed the Court's directed verdict on them." And those claims are all these tort claims that are in the supplemental petition that they say "maybe we want to raise again, or maybe some new tort claims."

And so my argument would be that they're precluded not only by the limitation of the

mandate, but also by the Court of Appeals' opinion saying these are done.

THE COURT: And -- and you may be correct whenever they file whatever this is that they're going to file.

MR. MOHRMAN: Right.

THE COURT: All they're saying and now I'm saying is: Lovely conversation for yet another day when we'll meet together, as is very consistent with what happens in the *Ortiz* case. So let's talk about trial.

MR. MOHRMAN: Okay. Could we say that there will not be any discovery, therefore, at this point in time, until such time --

THE COURT: Have they sent discovery?

MR. MOHRMAN: Well, I've heard that they want to start taking discovery again.

MR. RIEBSCHLAGER: Here's -- may I respond, Your Honor?

THE COURT: Yes.

MR. RIEBSCHLAGER: Here's the issue. After trial --

THE COURT: Uh-huh.

MR. RIEBSCHLAGER: -- after the evidence was closed --

*THE COURT:* Uh-huh.

*MR. RIEBSCHLAGER:* -- and -- and even after, I think, judgment, the defendant in this case took it upon themselves to once again go lock Mr. Ortiz out of his house, go stick a "For Sale" sign in front of the house and attempt to sell this poor man's house one more time.

All those facts were not before this Court at the time of trial, weren't before this jury and weren't before the appellate court, and we believe that those facts are sufficient to be pled and placed before the jury in this case, even on remand, because they're new. They -- they were -- didn't even exist at the time that the jury charge was prepared, didn't exist at the time that the evidence came in before this Court.

So that's why we will file -- it's not ripe for you to decide on the pleadings issue because there are new facts that did not even exist at the time this case went to trial, did not exist in the -- in the previous briefs that went to the Court of Appeals. And so we feel that we're going -- that we are entitled by the mandate, by everything -- law of the case does not apply to the factual issues, as this Court well knows. Only applies to the law. And

because the defendant chose to do those --

THE COURT: Stop.

Please don't --

MR. RIEBSCHLAGER: We're going to put those in our pleading.

THE COURT: -- tell me that -- that that happened.

MR. MOHRMAN: Your Honor, it was a completely different servicing company, had nothing to do with us. They sued that servicing company. I even talked to the attorney. There's a separate lawsuit about it.

MR. RIEBSCHLAGER: They're responsible for their own servicing company, Your Honor.

THE COURT: Is it your servicing company?

MR. MOHRMAN: No. It was not.

MR. RIEBSCHLAGER: The servicing company doesn't work for your bank?

MR. MOHRMAN: No. It did not.

MR. RIEBSCHLAGER: Is that true?

MR. DONOVAN: (Moving head side to side.)

MR. RIEBSCHLAGER: Okay. He says it's not true. We're going to plead those facts.

THE COURT: I don't know, but -- y'all figure that out, but -- I -- I mean, honestly -- and we talked about this, I swear, at the time of judgment. Like, "Okay. Everybody sit on their hands because we got to wait for whatever the appellate court's going to do." I swear we had this conversation.

MR. MOHRMAN: Your Honor, absolutely, and it was sent to a new servicing company. That servicing company went in, secured the building, they complained, and they sued that servicing company.

My guess is they either got a judgment or settlement from them.

THE COURT: I'll tell you right now, if this defendant did not order, orchestrate, facilitate, or have anything to do with that other servicing company coming in after judgment, then we're absolutely not going to talk about it. And --

MR. RIEBSCHLAGER: I would agree.

THE COURT: -- to the extent that there is another case on file already dealing with those set of facts that you just told me and you did not already name these people as being part of that other case, that's an issue not for me.

MR. RIEBSCHLAGER: Okay.

THE COURT: So you need to understand that and figure out what's going on with that --

MR. RIEBSCHLAGER: All right.

THE COURT: -- before we start throwing those things out into the universe. Okay?

MR. RIEBSCHLAGER: I get that. I get that, Judge, but I also know that a bank is the one that hired this servicing company, and there will be an agreement between the bank and its servicer for the servicer to be authorized to conduct a foreclosure.

THE COURT: Like I said, check out your facts --

MR. RIEBSCHLAGER: I will.

THE COURT: -- before we throw said stuff into the universe.

MR. RIEBSCHLAGER: Yes, Your Honor.

THE COURT: Until something comes about, then there's really no need to discuss all of this discovery and whatnot. And it sounds like y'all over there, since you're new to the party, need to get your ducks in a row before we start doing all of this stuff. Okay?

MR. RIEBSCHLAGER: Yes, Your Honor.

MR. MEDINA: Judge, they will be in a

perfect row.

THE COURT: Okay. Now, with that said, let's discuss trial date. So --

(Discussion off the record between the Court and trial coordinator.)

THE COURT: My gut is telling me March 2nd. Y'all got any issues with March as you sit here --

MR. MEDINA: No, Judge.

THE COURT: -- right now?

MR. RIEBSCHLAGER: No, Your Honor.

MR. MEDINA: Any date you pick is fine.

THE COURT: Okay. That dead week normally at the beginning of the year is not even until April.

(Discussion off the record.)

THE COURT: Sounds like maybe y'all could actually go in January if you wanted. Think you can get it together that fast?

MR. MOHRMAN: Yes, Your Honor.

THE COURT: Or is January bad?

(Discussion off the record.)

THE COURT: Maybe we'll put y'all in January. Y'all got any issue with January?

MR. MEDINA: No. No, Your Honor.

MR. MOHRMAN: No. That's great, Judge.

THE COURT: All right. We'll push you up to January. What a great way to start the year. Please tell me this is going to be better than last time.

MR. MEDINA: It will be.

THE COURT: All righty. January 26. Y'all good with that?

MR. MEDINA: Yes.

MR. MOHRMAN: Yes, Your Honor.

THE COURT: Okay. So you're January 26th. Work backwards from there. Please don't wait until the 89th hour to do that motion for summary judgment figuring out -- I mean, frankly, I think that needs to come pretty quick down the pipe so y'all aren't doing stuff you don't need to be doing, if you want to know the honest truth, because that's what happened last time. We wasted, like, nine months of people working on stuff that ended up not being part of the trial, and then we had to go back to the Court of -- anyways -- which we're not doing, so don't even ask me to do. But my point is: Let's get -- figure out the -- what's the law of the case now and then work from there. So your trial date is January 26th. Come back and see me and we'll

talk about law of the case.

MR. MEDINA: Thank you, Judge.

THE COURT: Anything else?

MR. MOHRMAN: I think that's it, Judge.

THE COURT: All right. See y'all. You're excused.

*(Court adjourned.)*

THE STATE OF TEXAS )
)
COUNTY OF HARRIS )

I, Donna King, Official Court Reporter in and for the 164th Judicial District Court of Harris County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by _____.

WITNESS MY OFFICIAL HAND this, the 13th day of August, 2014.

*Donna King*

_____
DONNA KING, Texas CSR 6273
Expiration Date: 12/31/14
Official Court Reporter
164th Judicial District Court
Harris County, Texas
201 Caroline, 12th Floor
Houston, Texas 77002
(713) 368-6256

# TAB – O

NO. 2006-61178

| ALBERT ORTIZ | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| FRED LOMBARDO, NATIONAL | § | |
| CITY HOME LOAN SERVICES, INC., | § | |
| D/B/A FIRST FRANKLIN LOAN | § | |
| SERVICES, NATIONAL CITY BANK | § | |
| OF INDIANA, KEYSTONE ASSET | § | |
| MANAGEMENT, INC AND RICHARD | § | |
| HOWELL D/B/A ALEXANDER | § | |
| HUNTER PROPERTIES A/K/A | § | |
| ALEXANDER HUNTER PROPERTIES, INC. | § | 164TH JUDICIAL DISTRICT |

## PLAINTIFF'S MOTION TO SET ASIDE ORDER
### DENYING LEAVE TO SUPPLEMENT PLEADINGS

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff and Counter-Defendant Albert Ortiz ("Ortiz") files this motion requesting the Court to set aside its order denying Ortiz leave to supplement his petition and answer in this cause. In light this case being remanded for a second trial, there is no longer any basis for denying the pleadings. In support of this motion, Ortiz hereby respectfully shows the Court the motion should be granted for reasons as follow:

### PROCEDURAL BACKGROUND

1. On or about May 28, 2010, Ortiz filed a supplemental petition and a supplemental answer along with a motion requesting leave of the Court to supplement his pleadings. A true and correct copy of the pleadings, on file with the Court, are attached hereto as Exhibit 1. The supplemental pleadings were filed a few days before trial. The pleadings were based on new facts and documents revealed by Defendants in discovery just before trial. On

June 3, 2010, the Court denied Ortiz's motion, and the case proceeded to trial. A true and correct copy of this Court's order is attached hereto as Exhibit 2.

## STATEMENT OF FACTS

2. Ortiz prevailed at trial, and Defendants appealed. The court of appeals reversed the trial court's judgment in part, affirmed it in part, and remanded the case for a second trial. The Texas Supreme Court denied Ortiz's petition for review. The case is now back before this Court but has not yet been set for trial. The parties have requested a scheduling conference with the Court to establish a new trial date and other docket control order deadlines.

## ORTIZ REQUESTS COURT SET ASIDE ORDER DENYING LEAVE TO SUPPLEMENT PLEADINGS

3. Ortiz now moves the Court to set aside its order denying Ortiz leave to supplement his pleadings. There is no longer any basis for precluding Ortiz from bringing his claims and defenses set forth in the supplemental pleadings. The pleadings are no longer untimely as a date for the second trial of this cause has not yet even been set. The Court should set aside its order denying Ortiz leave to supplement his pleadings and should deem the pleadings as filed on May 28, 2010, the original date of filing, and consider them timely filed for the second trial.

4. Based on the need for a second trial and the new facts and documents disclosed by Defendants in discovery just before the first trial, Ortiz hereby requests that the Court set aside its order denying him to leave to file his supplemental pleadings. The Court should grant this motion for all of the reasons set forth herein and in the interest of justice and fairness.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, respectfully requests that the Court grant this motion and set aside its order denying him to leave to file his supplemental

pleadings. Plaintiff also respectfully request of the Court any other and further relief to which

he may be entitled.

Respectfully submitted,

/s/ Michael Donovan
Michael Donovan
Texas Bar No. 00796478
6300 Dixie Drive
Houston, TX 77087
(713) 956-4043; (713) 956-4042 fax
mdonovanesq@yahoo.com

ATTORNEY FOR ALBERT ORTIZ


## CERTIFICATE OF CONFERENCE

I, Michael Donovan, hereby certify that I have conferred with opposing counsel, or attempted to do so, and have made a reasonable effort to resolve the matter that is the subject of this motion. Counsel for Defendants is OPPOSED at this time.

/s/ Michael Donovan
Michael Donovan


## CERTIFICATE OF SERVICE

I certify that on July 18, 2014, a true and correct copy of this document was served on all parties pursuant to Rule 21a of the Texas Rules of Civil Procedure.

Attorneys for Defendants:

Joel W. Mohrman / jmohrman@mcglinchey.com
Stephanie Laird Tolson / stolson@mcglinchey.com
McGlinchey Stafford PLLC
1001 McKinney Street, Suite 1500
Houston, TX 77002
Fax: 713-520-1025

/s/ Michael Donovan
Michael Donovan

# EXHIBIT 1

Filed 10 May 28 P7:48
Loren Jackson - District Clerk
Harris County
E6040818506829
By: Charleta Johnson

| | | |
|---|---|---|
| **ALBERT ORTIZ** | § | IN THE DISTRICT |
| | § | |
| **V.** | § | HARRIS COUNTY, TEXAS |
| | § | |
| **FRED LOMBARDO, NATIONAL** | § | |
| **CITY HOME LOAN SERVICES, INC.,** | § | |
| **D/B/A FIRST FRANKLIN LOAN** | § | |
| **SERVICES, NATIONAL CITY BANK** | § | |
| **OF INDIANA, KEYSTONE ASSET** | § | |
| **MANAGEMENT, INC AND RICHARD** | § | |
| **HOWELL D/B/A ALEXANDER** | § | |
| **HUNTER PROPERTIES A/K/A** | § | |
| **ALEXANDER HUNTER PROPERTIES, INC.** | § | 164TH JUDICIAL DISTRICT |

## ALBERT ORTIZ'S FIRST SUPPLEMENTAL PETITION

TO THE HONORABLE COURT:

Albert Ortiz ("Ortiz") hereby files this first supplemental petition in this cause, complaining of National City Home Loan Services, Inc. d/b/a First Franklin Loan Services ("HLS"), National City Bank of Indiana ("BANK"), and Keystone Asset Management, Inc. ("Keystone"), the Defendants. This supplemental petition is filed in response to new discovery obtained at depositions recently ordered by the Court. This petition is a supplement, not an amendment, to Ortiz's Eighth Amended Petition and does not act to supersede or substitute for said Petition. Tex. R. Civ. P. 78. By this supplemental petition, Ortiz alleges new claims, as follows:

### TRESPASS TO TRY TITLE

1. Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. Plaintiff alleges a trespass to try title claim against Defendants BANK and/or HLS. Plaintiff's trespass to try title claim involves the parcel of real property (the "Real Property"), made the basis of this suit. Pursuant to the Rescission

Plaintiff's 1st Supp POP                                                    Page 1 of 10

Instrument, attached hereto as Exhibit "A", incorporated herein by reference, the same as if fully set forth at length. Plaintiff has been, and is, the owner in fee simple of the Real Property, located in Harris County, Texas. At all relevant times, Plaintiff has been, and still is, legally entitled to possession of the Real Property.

Under the guise of "protecting investor collateral", Defendants HLS and the BANK seized Plaintiff's home on November 28, 2005 — and ignoring their own company rules, procedures and guidelines — refused to restore possession of the property to Ortiz.

At the very least, the Rescission Instrument is a stipulation and declaration by Defendants that the Substitute Trustee's Deed is void. Plaintiff is entitled to title and possession on the basis of this judicial admission. Plaintiff is also entitled to title and possession on the basis of Plaintiff's prior un-abandoned possession. Prior possession carries with it a presumption of ownership interest against one, such as Defendant, having no title.

Furthermore, by the filing of the Rescission Instrument with the real property records and with this Court, Defendant BANK has disclaimed that it has any claim or right to title in the Real Property. See Exhibit A. As a matter of law, Plaintiff is entitled, without the need of introduction of evidence to his title, to a judgment against Defendant BANK for the title and possession as to all land put in issue and as to which BANK disclaims title.

In addition to an award of title and possession of the Real Property, Plaintiff also seeks to recover his damages in the form of lost rental and/or loss of use suffered as a result of Defendant's wrongful possession of the Real Property. Plaintiff is entitled to recover rents and profits or damages incurred from loss of use. Tex.R.Civ.P. 783(f).

Plaintiff seeks recovery of all such lost rentals and/or loss of use caused by Defendant's wrongful possession of the Real Property from the date he was locked out to the present date

or, alternatively, from the date of the execution of the Rescission Instrument to the present date. Plaintiff's loss of use damages are no more than $262,220.

## TRESPASS TO REALTY

2. Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of Defendants HLS, BANK, and/or Keystone constitutes a trespass. The Rescission Instrument evidences that title never transferred from Ortiz to Defendant Bank as a result of the foreclosure. . Defendants HLS, BANK, and/or Keystone are liable to Plaintiff for the intentional tort of trespass upon realty by entering the Real Property without Plaintiff's consent, intentionally causing one or more third persons to enter the Real Property, and/or entering or causing others to enter the Real Property in excess of any authority to enter the Real Property. Such entry was physical, intentional, and voluntary. Defendant HLS's and BANK's trespass wholly deprived Plaintiff his use, possession and quiet enjoyment of home.

Plaintiff is also entitled to prevail and recover on his trespass to realty claim on the basis of judicial admission (See, Exhibit "A" wherein Defendants identify 105 Birdsall as Plaintiff's address).

Plaintiff alleges a cause of action for trespass against said Defendant(s), seeking to recover for damage to his realty and/or loss of the use and enjoyment of same for all time subsequent to his being locked out of the Real Property. Alternatively, Plaintiff seeks to recover all such damages from April 17, 2009, to the time of his re-entry to the Real Property. Plaintiff's seeks damages of no more than $262,220 as a result of Defendants' trespass.

## QUIET TITLE CLAIM

3.      Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition.  Plaintiff requests that the Court cancel the Deed of Trust related to the Real Property and remove the cloud on the title to the Real Property created by said Deed of Trust.  Plaintiff further requests that the Court order Defendants HLS and BANK to  remove the cloud on the title to the Real Property created by said Rescission Instrument to the extent it purports to reinstate the Deed and Trust and Note associated with the Real Property as well as the debt previously associated therewith.  Alternatively, Court should modify or reform the Rescission Instrument, through Declaratory Judgment to reflect and comport with Defendant BANK's waiver dated July 6, 2006, which incorporates all of the terms and conditions of the June 27, 2006, waiver and also contains language expressly stating that BANK waives any and all actual and potential demands and claims regarding any obligations or liabilities of Plaintiff in connection with the Real Property, including the note and deed of trust associated with such Real Property.

Alternatively, Plaintiff seeks Declaratory Judgment declaring the Foreclosure of June 6, 2006 wrongful, null and void; granting title to the property to Plaintiff free and clear of all liens and encumbrances, and declaring that Plaintiff is not liable to Defendant BANK for any sums in connection with the Promissory Note (subject of the Deed of Trust); and declaring that Defendant BANK has released and/or waived any rights it might have had under the Deed of Trust.

## FRAUD

4.      Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition.  The conduct of Defendants HLS and/or BANK constitutes fraud.  Defendants committed fraud by omission in that Defendants failed to

disclose the Rescission Instrument. Plaintiff did not learn of the Rescission Instrument until it was produced by Defendants' former attorneys in this cause, over one year after its execution by Defendants. Defendants' omission constitutes fraud in that it was a material representation, the representation was false, Defendants knew it was false at the time it was made or it was made recklessly without knowledge of the truth as a positive assertion, Defendants made it with intent that Plaintiff act on it, Plaintiff did rely on it, and Plaintiff was injured as a proximate result.

Specifically, Defendants discussed or communicated with Plaintiff numerous times regarding the Substitute Trustee's Deed, the Property, and the foreclosure of the Property without ever disclosing that the foreclosure had been rescinded and the Substitute Trustee's Deed had been deemed void and of no effect for all purposes. A party has a legal duty to disclose in the following situations: (1) when one voluntarily discloses information, he has a duty to disclose the whole truth; (2) when one makes a representation, he has a duty to disclose new information when he is aware the new information makes the earlier representation misleading or untrue; and (3) when one makes a partial disclosure and conveys a false impression, he has a duty to speak. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 670-71 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Defendants committed fraud in that they disclosed information to Plaintiff regarding the status of title to the Real Property and the effect of the foreclosure, without ever disclosing the whole truth. Defendants had a duty to disclose that the June 6, 2006, foreclosure sale of the Property and the resulting Substitute Trustee's Deed had been rescinded. Defendants disclosed information about the foreclosure sale and the Substitute Trustee's Deed but failed to disclose the existence and execution of the Rescission Instrument; Defendants represented

that the foreclosure sale had not been set aside and that title to the Property was in Defendants name but failed to disclose the existence and execution of the Rescission Instrument, which Defendants knew made the earlier misrepresentation misleading or untrue. Defendants intended that Plaintiff act on this fraudulent omission, Plaintiff did rely on it, and Plaintiff thereby suffered injury in that he continued to be deprived of the Property and incurred expenses associated with living elsewhere.

Moreover, subsequent to their execution and filing of the Rescission Instrument, Defendants affirmatively represented to Plaintiff that title to the Property was in Defendant BANK, not Ortiz, and continued use this contention as a basis for failing and refusing to allow Plaintiff to regain possession to the Property. Pleading further, Plaintiff alleges a claim against Defendants for fraudulent conduct. The above-described wrongful conduct by said Defendants constitutes fraudulent conduct as it is the successful employment of deception, cunning, or artifice to circumvent, cheat, or defraud Plaintiff to his injury.

## UNLAWFUL DEBT COLLECTION

5.     Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of Defendants HLS and/or BANK constitutes unlawful debt collection. Defendants failed to disclose the Rescission Instrument to Plaintiff subsequent to its execution and filing. Moreover, subsequent to their execution and filing of the Rescission Instrument, Defendants affirmatively represented to Plaintiff that title to the Property was in Defendant BANK, not Ortiz, and continued to use this assertion as a basis for failing and refusing to allow Plaintiff to regain possession to the Property. Defendant(s) also continually refused Plaintiff possession to the Real Property even though they now testify that Plaintiff could have had entry, access, and/or possession to the Real Property at any time if he

had requested same. All such conduct constituted deceptive, fraudulent, and/or misleading practices by said Defendant(s) and employed the use of false representations or deceptive means in attempts to collect a debt.

Said Defendant(s) engaged in such action in collection of an actual or alleged consumer debt of Plaintiff and thus violated Chapter 392 of the Texas Finance Code (the Texas Debt Collection Practices Act or DCPA), including Section 392.304 of the DCPA. Such a violation is also actionable under the Texas Consumer Protection—Deceptive Practices Act (DTPA). Under the DTPA, Plaintiff seeks up to three times his damages for this knowing and/or intentional unlawful conduct by Defendants. Plaintiff alleges a cause of action for violation of the DCPA and/or the DTPA against said Defendant(s), seeking to recover for all damages caused thereby, including his actual damages, statutory damages, or both. Such actions also constitute an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which Plaintiff seeks to recover his damages from said Defendant(s).

## SANCTIONS

6. Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of Defendants HLS and/or BANK constitutes unlawful debt collection. Defendants failed to disclose the Rescission Instrument to Plaintiff during discovery in this cause and filed pleadings and/or motions that represented that title to the Real Property was in Defendant BANK, not Ortiz. Moreover, Defendants' attorneys apparently failed to make reasonable inquiry regarding the existence of the Rescission Instrument and the true status of title to the Real Property prior to filing such pleadings and/or motions. Such pleadings and/or motions lacked legal and/or factual basis and/or were filed for an improper purpose. Such conduct violates the discovery rules, Rule 11 of the Texas Rules of Civil

Procedure and/or Chapter 10 of the Texas Civil Practice and Remedies Code. The Court should impose all appropriate sanctions, including without limitation awarding Plaintiff's attorneys' fees and other reasonable expenses, against all responsible parties and/or their counsel, former and/or present. Plaintiff reserves the right to seek sanctions on these or any other bases by formal motion(s) with the Court.

## PUNITIVE DAMAGES

7.      Plaintiff realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition. Defendants' actions against Plaintiff were done with malice and/or the committing of fraud. Defendants are therefore liable to Plaintiff for punitive damages within the jurisdictional limits of the Court.

## ATTORNEYS' FEES

8.      Plaintiff realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition. Plaintiff is entitled to an award of attorneys' fees for prosecution of this action under the DTPA and/or Chapter 392 of the Texas Finance Code. Plaintiff is entitled to a further award of attorneys' fees should a party appeal and final judgment ultimately be awarded in favor of Plaintiff. Should it be necessary for a party to petition the Texas Supreme Court for review, Plaintiff further requests that, upon final judgment for Plaintiff, the Court award an additional amount as attorneys' fees for representing Plaintiff during such review.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff ORTIZ respectfully requests of the Court the following:

1. Judgment against Defendants for all damages, including mental anguish, actual, economic, statutory, consequential and exemplary damages, in a sum within the jurisdictional limits of the Court and not in excess of $50,000,000.00;

2. Judgment against Defendant BANK setting aside the foreclosure sale of the Real Property and providing for ORTIZ'S recovery of title to the Real Property, free and clear of all liens and encumbrances of Defendant BANK and/or HLS.

3. Judgment against Defendant BANK declaring that ORTIZ owes no further debt whatsoever to Defendant BANK under his note and deed of trust with BANK or otherwise, regardless of whether this Court sets aside the foreclosure sale of the Real Property and provides for ORTIZ'S recovery of title to the Real Property.

4. Judgment against Defendant BANK and/or HLS to modify or reform the Rescission Instrument, through Declaratory Judgment to reflect and comport with Defendant BANK's waiver dated July 6, 2006,

5. Judgment against Defendants for recovery of personal property of ORTIZ that was converted;

6. Prejudgment interest as provided by law;

7. Interest after judgment as allowed by law until paid;

8. All costs of suit and attorneys' fees; and

9. Such other and further relief, in law and in equity, to which Plaintiff ORTIZ may be entitled.

Respectfully Submitted,

THE JUNELL, LAW FIRM, P.C.

_____
Gary Michael Block
SBOT#: 02497200
7660 Woodway Dr., Suite 590
Houston, Texas 77063
Phone: 713-266-6700
Fax:    713-266-8528
ATTORNEY FOR PLAINTIFF

_____
Mark A. Junell
SBOT#: 24032610
3900 Essex, Suite 390
Houston, Texas 77027
Phone: 281-768-3530
Fax:    832-213-1830
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on May 28, 2010 a true and correct copy of this Notice Regarding Property was served on all parties pursuant to Rule 21a of the Texas Rules of Civil Procedure.

Attorney for Defendants Fred Lombardo, National City Home Loan Services, Inc., d/b/a First Franklin Loan Services, National City Bank of Indiana and Keystone Asset Management, Inc.:

Mr. Joel W. Mohrman
Ms. Kari S. Robinson
Mr. John L. Verner
McGlinchey Stafford PLLC
1001 McKinney Street, Suite 1500
Houston, TX 77002
Fax: 713-520-1025

Ms. Kristen Brauchle
Brockman, Brauchle & Evans, PLLC
2020 Southwest Freeway, Suite 323
Houston, Texas 77098
Fax: 713-533-0303

_____
Gary Michael Block

Filed 10 May 28 P7:55
Loren Jackson – District Clerk
Harris County
ED101J015806831
By Deputy Johnson

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| FRED LOMBARDO, NATIONAL | § | |
| CITY HOME LOAN SERVICES, INC., | § | |
| D/B/A FIRST FRANKLIN LOAN | § | |
| SERVICES, NATIONAL CITY BANK | § | |
| OF INDIANA, KEYSTONE ASSET | § | |
| MANAGEMENT, INC AND RICHARD | § | |
| HOWELL D/B/A ALEXANDER | § | |
| HUNTER PROPERTIES A/K/A | § | |
| ALEXANDER HUNTER PROPERTIES, INC. | § | 164TH JUDICIAL DISTRICT |

## ALBERT ORTIZ'S THIRD SUPPLEMENTAL ANSWER

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff and Counter-Defendant Albert Ortiz ("Ortiz") hereby files his Third Supplemental Answer to the claims brought against him by National City Home Loan Services, Inc. d/b/a First Franklin Loan Services ("HLS"), National City Bank of Indiana ("BANK"), and Keystone Asset Management, Inc. ("Keystone"). This supplemental answer adds to but does not amend or supersede any previous original, supplemental, or amended answer filed by Plaintiff. This supplemental answer is filed in response to new discovery obtained at depositions recently ordered by the Court. As grounds and support for this filing, Plaintiff would respectfully show the Court as follows:

### WAIVER

1. For further answer, if any is necessary, as a defense, Ortiz would show the Court that Defendants have waived, by their conduct, any rights and/or claims they may have had regarding recovery on the Note and enforcement or foreclosure of any lien or security interests through the Deed of Trust or otherwise. Defendant HLS executed the Rescission Instrument on

behalf of Defendant National City on April 17, 2009. Defendants contend that they thereby reinstated the Note and Deed of Trust, subject to all amounts allegedly due and unpaid by Plaintiff. However, subsequent to the execution of the Rescission Instrument, Defendants never made any demand or claim upon Ortiz for such amounts (other than amending their pleadings to include a claim on the note and for judicial foreclosure on February 2, 2010, close to one year later), Defendants have never sent any notices of default, of intent to accelerate the Note, of acceleration of the Note, of foreclosure sale, or any other notice authorized or required under the Note or Deed of Trust.

## SPECIAL DENIAL

2. For further answer, if any is necessary, as a special denial, Ortiz specifically denies that all conditions precedent to the claims of Defendants, as pled, have been performed or have occurred. Plaintiff specifically denies that all conditions precedent to the claims of Defendants on the Note and for enforcement or foreclosure of any lien or security interests through the Deed of Trust or otherwise have been performed or have occurred. Plaintiff specifically denies that, subsequent to the execution of the Rescission Instrument, Defendants have made any demand or claim upon him for any amounts he allegedly owes, and specifically denies that Defendants have sent any notices of default, of intent to accelerate the Note, of acceleration of the Note, of foreclosure sale, or any other notice authorized or required under the Note or Deed of Trust.

## FRAUD / MISREPRESENTATION

3. For further answer, if any is necessary, as a defense, Ortiz would show the Court that Defendants' fraud and/or misrepresentations defeat or bar any rights and/or claims they may have had regarding recovery on the Note and enforcement or foreclosure of any lien or security interests through the Deed of Trust or otherwise. Defendants committed fraud and/or

misrepresentation by omission in that Defendants failed to disclose the Rescission Instrument. Plaintiff did not learn of the Rescission Instrument until it was produced by Defendants' former attorneys in this cause, over one year after its execution by Defendants. Defendants' omission constitutes fraud and/or misrepresentation.

## ESTOPPEL / WAIVER / RATIFICATION / JUDICIAL ADMISSION

4. For further answer, if any is necessary, as a defense, Ortiz would show the Court that Defendants cannot defeat or further contest Plaintiff's claim for wrongful foreclosure due to estoppels, waiver, and/or their ratification of the foreclosure. In October of 2008, this Court granted Plaintiff an interlocutory summary judgment as to Plaintiff's wrongful foreclosure claim and thereby set aside the resulting June 6, 2006, substitute trustee's deed and ordered title to the Property be restored to Ortiz. Defendants indicated their agreement that the foreclosure was wrongful when they rescinded it. Defendants accepted and/or complied with the Court's order when they rescinded the foreclosure and substitute trustee's deed. By such conduct, Defendants have waived any right to contest Plaintiff's wrongful foreclosure claim, are estopped from contesting such claim, and/or have ratified the Court's order that the foreclosure was wrongful, that the substitute trustee's deed be set aside, and that title be restored to Ortiz. Furthermore, Defendant BANK, acting through Defendant HLS, executed and filed the aforementioned Rescission Instrument. The Rescission Instrument is a stipulation and declaration by Defendants that the Substitute Trustee's Deed is void. Defendants cannot defeat or further contest Plaintiff's claim for wrongful foreclosure due to this judicial admission.

## FAILURE TO PRESENT CLAIM

5. For further answer, if any is necessary, as a defense, Ortiz would show the Court that Defendants' claim for recovery of attorneys' fees fails and is barred because Defendants have

failed to present their claim(s) to Plaintiff subsequent to Defendants' rescission of the foreclosure and resulting substitute trustee's deed. As a result, Defendants have failed to comply with the statutory requirements and/or requirements of the Note and/or Deed of Trust for recovery of attorneys' fees.

## NO ETHICS VIOLATION

6. For further answer, if any is necessary, as a defense, Ortiz would show the Court that Defendants' claims alleging that the waiver agreements executed by Defendants are void and/or unenforceable due to ethics violation by Plaintiff's attorney fail and/or are barred because there was no ethics violation. Specifically, at the time it executed the letter agreements, Defendant BANK was not represented by counsel regarding the subject matter of the agreements, i.e., the actual and potential claims and demands of National City against Ortiz and the litigation of same. Similarly, at the time it executed the letter agreements, Defendant HLS was not represented by counsel regarding the subject matter of the agreements, i.e., the actual and potential claims and demands of HLS against Ortiz and the litigation of same.

Pleading alternatively, such claims of Defendants fail and/or are barred because, if and only if an ethics violation by Plaintiff's attorney is deemed or found to have occurred, there is no basis for the waiver agreements to be declared void and/or unenforceable because Defendants were not injured or prejudiced by any alleged ethics violation. Regardless of the actions of Plaintiff's attorney, Defendants, upon receipt of the letter agreements, submitted the letter agreement(s) to a licensed attorney for his review prior to executing them. Thus, Defendants were not prejudiced in being deprived of the opportunity to have their attorney's review and advice regarding the waiver agreements. Moreover, in the event, Defendants, at their sole discretion, chose to execute the waiver agreement(s) without waiting for their attorney's review and counsel

regarding same, such conduct would constitute an intervening or superseding cause and/or comparative responsibility on the part of Defendants that would defeat their claims against Plaintiff.

7.  For further answer, if any is necessary, as a defense, Ortiz would show the Court that Defendants' claims alleging that the waiver agreements executed by Defendants are void and/or unenforceable due to ethics violation by Plaintiff's attorney fail and/or are barred because there was no ethics violation. Specifically, there was no ethics violation as to HLS and BANK because Comment 4 of the ethics rule at issue states, "this Rule does not prohibit a lawyer from contacting . . . a person presently employed by such an organization or entity whose conduct is not a matter at issue but who might possess knowledge concerning the matter at issue." Any contacts by Plaintiff's attorney with any person who was an employee of HLS and/or BANK was such a person with whom contact was not prohibited.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Ortiz respectfully requests that the defendants / counter-plaintiffs take nothing by their counter-claims and that this Court provide Ortiz such other and further relief, in law and in equity, to which he may be entitled.

Respectfully Submitted,

THE JUNELL, LAW FIRM, P.C.

Gary Michael Block
SBOT#: 02497200
7660 Woodway Dr., Suite 590
Houston, Texas 77063
Phone: 713-266-6700
Fax:    713-266-8528
ATTORNEY FOR PLAINTIFF

Mark A. Junell
SBOT#: 24032610
3900 Essex, Suite 390
Houston, Texas 77027
Phone: 281-768-3530
Fax:    832-213-1830
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on May 28, 2010 a true and correct copy of this Notice Regarding Property was served on all parties pursuant to Rule 21a of the Texas Rules of Civil Procedure.

Attorney for Defendants Fred Lombardo, National City Home Loan Services, Inc., d/b/a First Franklin Loan Services, National City Bank of Indiana and Keystone Asset Management, Inc.:

Mr. Joel W. Mohrman
Ms. Kari S. Robinson
Mr. John L. Verner
McGlinchey Stafford PLLC
1001 McKinney Street, Suite 1500
Houston, TX 77002
Fax: 713-520-1025

Ms. Kristen Brauchle
Brockman, Brauchle & Evans, PLLC
2020 Southwest Freeway, Suite 323
Houston, Texas 77098
Fax: 713-533-0303

Gary Michael Block

  

**RESCISSION OF SUBSTITUTE TRUSTEE'S SALE,
CANCELLATION OF SUBSTITUTE TRUSTEE'S DEED
AND RECONVEYANCE DEED WITHOUT WARRANTIES**

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

***IMPORTANT NOTICE TO COUNTY CLERK:
INDEX ALBERT ORTIZ AS GRANTEE

STATE OF TEXAS

COUNTY OF HARRIS

WHEREAS, National City Bank of Indiana ("National City") is the owner and holder of a promissory note dated March 15, 2004 in the original principal amount of $142,800.00 from Albert Ortiz to First Franklin Financial Corp. Said Note is secured by that certain Deed of Trust dated March 15, 2004, and recorded in Clerk's File No. X469555 of the Official Real Property Records of Harris County, Texas, with respect to the following described property (the "Property"):

LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 614946 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

WHEREAS, in compliance with the provisions set out in § 51.002 of the Texas Property Code, the above property was posted for foreclosure sale and on June 6, 2006, Thomas Reder, the named Substitute Trustee, conducted a foreclosure sale whereby the Property was sold to National City Bank of Indiana as set out in the Substitute Trustee's Deed dated June 6, 2006 which is recorded in Clerk's File No. Z366542 of the Official Real Property Records of Harris County, Texas.

WHEREAS, National City and Thomas Reder desire to cancel and rescind the foreclosure sale and conveyance of the Property to National City Bank of Indiana, rescind the acceleration of the indebtedness, reinstate the Note and Deed of Trust and return the parties to the status quo existing theretofore.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of same is hereby acknowledged along with the covenants and agreements contained herein, National City, the holder of the above-described Note and Deed of Trust, and Thomas Reder, the Substitute Trustee do hereby stipulate and declare (i) the Substitute Trustee's Deed dated June 6, 2006 is hereby rescinded and deemed void and of no effect for all purposes; and (ii) the Note and Deed of Trust are reinstated in accordance with their original force and effect existing immediately prior to such foreclosure and conveyance subject to the accrual of interest, late fees, advances, and any and all other amounts due under the Note remaining unpaid by Borrower. Nothing contained herein shall in any way constitute a waiver of any default in the Note and Deed of Trust occurring prior to or since the date of the Trustee's Deed.

This document is executed and filed for record to purge such real property records of all evidence of such foreclosure by the Substitute Trustee's sale including, without limitation, such Substitute Trustee's Deed described above as if such Deed had not been filed of record.



BAR 00060

National City its successors and assigns, to the extent necessary to re-vest legal title to the Property to Albert Ortiz, hereby conveys to Albert Ortiz the Property, subject, however, to the indebtedness evidenced by the Note and the liens and security interests securing payment of the Note, and other encumbrances, restrictions and covenants of record, including without limitation the Deed of Trust and all other collateral loan instruments executed to purchase the Property. The Grantee's address is 105 Birdsall Avenue, Houston, Texas 77097.

TO HAVE AND TO HOLD, the Property, subject to the matters hereinabove set forth, together with all and singular the rights and appurtenances thereto in anywise belonging unto Albert Ortiz his/her/their successors and assigns, forever. This conveyance is made without warranty, express or implied. Albert Ortiz hereby assume(s) and agree(s) to pay in full all taxes or other lawful assessments against the Property and all amounts otherwise advanced by National City under the terms of the Note and Deed of Trust.

EXECUTED this 17 day of April, 2009.

National City Bank of Indiana, by and through its duly authorized servicing agent, Home Loan Services, Inc.

By:
Printed Name: BRYAN KUSICH
Title: VICE PRESIDENT

COMMONWEALTH OF PENNSYLVANIA §
§
COUNTY OF ALLEGHENY §

BEFORE ME, the undersigned notary public, on this day personally appeared BRYAN KUSICH, the VICE PRESIDENT of Home Loan Services, Inc., duly authorized servicing agent for National City Bank of Indiana known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 17 day of April, 2009.

Notary Public, Commonwealth of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Tess L. Gorton, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires June 7, 2011
Member, Pennsylvania Association of Notaries



Thomas Reder, Substitute Trustee

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersigned notary public, on this day personally appeared Thomas Reder, Substitute Trustee, known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office the ____ day of _____, 2009.

Notary Public, State of Texas

HOLD FOR: BARRETT DAFFIN

AFTER RECORDING, RETURN TO:
Barrett Daffin Frappier Turner & Engel, L.L.P.
Attn: Arlington Post-Foreclosure
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001



FILED

HOLD FOR: BARRETT DAFFIN

MAY - 7 2009

COUNTY CLERK
HARRIS COUNTY, TEXAS

BAR 00062

# EXHIBIT 2

NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| FRED LOMBARDO, NATIONAL | § | |
| CITY HOME LOAN SERVICES, INC., | § | |
| D/B/A FIRST FRANKLIN LOAN | § | |
| SERVICES, NATIONAL CITY BANK | § | |
| OF INDIANA, KEYSTONE ASSET | § | |
| MANAGEMENT, INC AND RICHARD | § | |
| HOWELL D/B/A ALEXANDER | § | |
| HUNTER PROPERTIES A/K/A | § | |
| ALEXANDER HUNTER PROPERTIES, INC. | § | 164TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2010, the Court

considered Plaintiff's Motion For Leave To Supplement Pleadings. After considering the

motion, any response, and any arguments of counsel, the Court is of the opinion that the relief

DENIED
requested in the motion should be ~~granted~~; it is, accordingly, therefore,

ORDERED that the Plaintiff's Motion For Leave To Supplement Pleadings be and the

DENIED
same is hereby ~~GRANTED and that the pleadings of Plaintiff attached to the motion are deemed~~

~~timely filed with the Court for purposes of trial of the claims and defenses alleged therein.~~

SIGNED this 3rd day of June, 2010.


_____
JUDGE PRESIDING

**FILED**
Loren Jackson
District Clerk

JUN 1 2010

Time: _____
Harris County, Texas
By _____
Deputy

Plaintiff's Motion/Order for Leave to Amend                                    Page 8 of 8

## NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| FRED LOMBARDO, NATIONAL | § | |
| CITY HOME LOAN SERVICES, INC., | § | |
| D/B/A FIRST FRANKLIN LOAN | § | |
| SERVICES, NATIONAL CITY BANK | § | |
| OF INDIANA, KEYSTONE ASSET | § | |
| MANAGEMENT, INC AND RICHARD | § | |
| HOWELL D/B/A ALEXANDER | § | |
| HUNTER PROPERTIES A/K/A | § | |
| ALEXANDER HUNTER PROPERTIES, INC. | § | 164TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2014, the Court considered Plaintiff's Motion To Set Aside Order Denying Leave To Supplement Pleadings. After considering the motion, any response, and any arguments of counsel, the Court is of the opinion that the relief requested in the motion should be granted; it is, accordingly, therefore,

ORDERED that the Plaintiff's Motion To Set Aside Order Denying Leave To Supplement Pleadings be and the same is hereby GRANTED; that the pleadings of Plaintiff which were filed with the Court on May 28, 2010, are deemed filed as of that date and timely for the purposes of a second trial of this cause, and this Court shall consider the claims and defenses alleged therein; and that this Court's Order of June 3, 2010, denying Plaintiff leave to supplement its pleadings, is superseded and vacated.

SIGNED this _____ day of _____, 2014.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM:**


/s/ Michael Donovan
Michael Donovan
Tex. Bar No. 00796478

6300 Dixie Drive
Houston, Texas 77087
Phone (713) 956-4043; Fax (713) 956-4042
mdonovanesq@yahoo.com
ATTORNEY FOR PLAINTIFF

NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| FRED LOMBARDO, NATIONAL | § | |
| CITY HOME LOAN SERVICES, INC., | § | |
| D/B/A FIRST FRANKLIN LOAN | § | |
| SERVICES, NATIONAL CITY BANK | § | |
| OF INDIANA, KEYSTONE ASSET | § | |
| MANAGEMENT, INC AND RICHARD | § | |
| HOWELL D/B/A ALEXANDER | § | |
| HUNTER PROPERTIES A/K/A | § | |
| ALEXANDER HUNTER PROPERTIES, INC. | § | 164TH JUDICIAL DISTRICT |

## NOTICE OF ORAL HEARING

A hearing on Plaintiff's Motion To Set Aside Order Denying Leave To Supplement

Pleadings, being filed contemporaneously herewith, is set for:

**August 1, 2014, at 11:00 o'clock A.M.**

in the courtroom of the 164th District Court of Harris County, Texas.

Respectfully submitted,

/s/ Michael Donovan
Michael Donovan
Texas Bar No. 00796478
6300 Dixie Drive
Houston, TX 77087
(713) 956-4043; (713) 956-4042 fax
mdonovanesq@yahoo.com

ATTORNEY FOR ALBERT ORTIZ

## CERTIFICATE OF SERVICE

I certify that on July 18, 2014, a true and correct copy of this document was served on all parties pursuant to Rule 21a of the Texas Rules of Civil Procedure.

Attorneys for Defendants:

Joel W. Mohrman / jmohrman@mcglinchey.com
Stephanie Laird Tolson / stolson@mcglinchey.com
McGlinchey Stafford PLLC
1001 McKinney Street, Suite 1500
Houston, TX 77002
Fax: 713-520-1025

/s/ Michael Donovan
Michael Donovan

# TAB – P

CAUSE NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT OF |
|     *Plaintiff,* | § | |
| | § | |
| VS. | § | |
| | § | HARRIS COUNTY, TEXAS |
| FRED LOMBARDO, NATIONAL CITY | § | |
| HOME LOAN SERVICES, INC. DBA | § | |
| FIRST FRANKLIN LOAN SERVICES; | § | |
| NATIONAL CITY BANK OF INDIANA; | § | |
| KEYSTONE ASSET MANAGEMENT, | § | |
| INC., and RICHARD HOWELL, DBA | § | |
| ALEXANDER HUNTER PROPERTIES | § | |
| AKA ALEXANDER HUNTER | § | |
| PROPERTIES, INC. | § | |
|     *Defendants.* | § | 164TH JUDICIAL DISTRICT |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO SET ASIDE ORDER DENYING LEAVE TO SUPPLEMENT PLEADINGS

Defendants Home Loan Services Inc. and National City Bank of Indiana ("Defendants") file this Response to Plaintiff's Motion to Set Aside Order Denying Leave to Supplement Pleadings ("Plaintiff's Motion").

I.

### INTRODUCTION

1.     Plaintiff's motion seeks to set aside an order entered by this Court more than four years ago and retry issues already decided by this Court's judgment and the Court of Appeals' opinion. Plaintiff now seeks to add "new" causes of action and to open the case up to additional discovery. This is beyond the scope of the Court of Appeals' limited remand and would violate the "law of the case" doctrine (*See* Court of Appeals Mandate at Exhibit "1"). Accordingly, Plaintiff's Motion must be denied.

484737.1

1

I.

## RELEVANT PROCEDURAL BACKGROUND

2.     Plaintiff seeks to amend his pleadings to add new causes of action for fraud, trespass to try title, trespass, quiet title and for unfair debt collection practices allegedly arising out of a rescission deed (*See* Plaintiff's proposed First Supplemental Petition attached to Plaintiff's Motion).[1]  The Court previously ruled that Plaintiff did not need to amend his pleadings because any claims arising out of the rescission deed were already plead or otherwise covered (*See* Pretrial Transcript at p. 51 lines 4-13 at Exhibit "2").  The Plaintiff was allowed to enter the rescission deed as an exhibit, submitted testimony regarding its existence and Ortiz's counsel argued at length about the effect of the rescission deed during closing arguments (Plaintiff's Trial Exhibit 19 attached as Exhibit "3" and Trial Testimony attached as Exhibit "4").

3.     Each of these "new" claims was either ruled on as a matter of law or was tried to a jury.  The Court granted the Defendants a directed verdict on the fraud and unfair debt collection claims (*See* Final Judgment attached as Exhibit "5" and Court of Appeals' Mandate affirming the directed verdict at Exhibit "1").  The trespass and

---

[1] Plaintiff also seeks to amend his answer to Defendant's counterclaims adding affirmative defenses arising out of the rescission deed.  Defendants concede that the limited remand allows for the Plaintiff to amend his answer to plead additional affirmative defenses.  Although Plaintiff may be allowed to plead these defenses, they have no merit.  The rescission deed was not valid at the time it was executed as the borrower was not a party to the instrument. Further, the substitute trustee had no authority to execute the rescission deed and thus it was void at execution. *Bonilla v. Roberson*, 918 S.W.2d 17 (Tex.App.—Corpus Christi 1996) Once a sale is complete, there is no further express or implied authority to act as the mortgagor's agent in the cancellation or rescission of a sale. A trustee does not have the power to execute a "Cancellation of Deed" purporting to take back title to the property and resurrect the underlying debt. To imply a power in the trustee to nullify a sale after the sale is complete and the trustee's deed has been executed, delivered, and filed, would be to give the trustee powers never specified or contemplated by the deed of trust.

484737.1

2

trespass to try title claims were tried to a jury and Ortiz obtained an award for damages for these claims (*See* Final Judgment at Exhibit "5" and Jury Charge at Exhibit "6"). The quiet title claim became moot when Ortiz obtained possession of the property prior to the trial.

4.     Ortiz did not appeal the directed verdicts on the fraud and unfair debt collection claims. The Defendants did not appeal the award of tort damages to Plaintiff other than the application of the "one satisfaction rule." The main issue on appeal was the Court's interpretation of the letter agreements between the parties. Accordingly, the Court of Appeals issued a very limited remand and specific instructions as to what is to be retired (*See* Court of Appeals' Mandate at Exhibit "1").

5.     This limited mandate does not allow for Plaintiff to amend his pleadings to add these "new" causes of action or to amend his pleadings retry causes of action that have been finally decided. The only amendment contemplated by the Court of Appeals' instructions is to allow the parties to amend their answers to assert affirmative defenses. Accordingly, the Court must deny the Plaintiff's motion.

## III.

## ARGUMENT

6.     The appellate rules permit the courts of appeals and the Supreme Court to reverse and remand as to part of a case if that part is separable without unfairness to the parties.[2] **When the court of appeals limits its remand to particular issues, the trial**

---

[2] Tex. R. App. Proc. 44.1(b). When the remand by the appellate court is unlimited in scope the case is opened in its entirety. *See Simulis, L.L.C. v. General Electric Capital Corporation*, 392 S.W.3d 729, 731-732 (Tex.App.—Houston [14th Dist.] 2011, pet. denied). Following a reversal of a summary judgment on the

court is restricted to such issues on retrial.[3] In interpreting the mandate, the trial courts should look not only to the mandate, but also to the opinion of the court of appeals.[4]

7. The Court of Appeals specified the **only** causes of action to be retried are Plaintiff's claim against National City for breach of contract and National City's claims against Plaintiff for breach of contract and for judicial foreclosure (Court of Appeals' Mandate attached as Exhibit "1"). The Majority Opinion provides additional support that the Court of Appeals intended a limited mandate excluding Plaintiff from pleading additional tort claims. The Majority notes that "it can limit the scope of the remand to the part affected by the error if that part is separable without unfairness to the parties" citing to Tex. R. Civ. P. 44.1(b) (Majority Opinion at p. 28 at Exhibit "7"). The Majority goes on to specifically identify the claims to be retried as the breach of contract claims and the judicial foreclosure claims with **no** mention of any tort claims (*Id.* at p. 28). To allow Plaintiff to amend his pleadings to add additional causes of action would violate the limited mandate of the Court of Appeals.

---

issuance of quantum meruit, the court of appeals issued a remand that stated 'the trial court erred in granting summary judgment as to Simulis' quantum meruit claim, and reverse that portion of the trial court's judgment and remand for further proceedings consistent with this opinion." On second appeal, the court of appeals held that the first court of appeals remand was a general remand with no limiting instructions which allowed the plaintiff to amend its pleadings and to add new claims. *Id.* at 734-735.

[3] *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) ("When this court remands a case and limits a subsequent trial to a particular issues, the trial court is restricted to a determination of that particular issue."). *See University of Texas System v. Harry*, 948 S.W.2d 481, 482-483 (Tex.App.—El Paso 1997) (on appeal following jury trial on a worker's compensation claim, the court of appeals issued limited remand when it stated that retrial was limited to issue of whether plaintiff incurred an injury on a certain date and, if so, whether she received the injury in the scope of her employment. Trial court went beyond remand when it tried other issues).

[4] *Id.*

484737.1

4

8.	Additionally, the "law of the case" holds that questions of law decided on appeal to a court of last resort will govern the case throughout subsequent stages.[5] A determination by an appellate court that the evidence is legally insufficient to support a finding involves a question of law and thus falls within the ambit of "law of the case."[6] The Defendants obtained a directed verdict on Plaintiff's fraud and unfair collection practices claims. Those directed verdicts were specifically affirmed by the Court of Appeals mandate. Accordingly, the finding of no evidence as to those claims has now become law of the case and this portion of the Court's judgment cannot be re-litigated.[7]

9.	The trespass claims the Plaintiff seeks to add have been tried to a jury and the Plaintiff was awarded damages for his loss of use. The award of those damages was not appealed (other than the application of the one satisfaction rule). Plaintiff now seeks the exact same award for his loss of use damages under his "new" claims. The Plaintiff has had his opportunity to present evidence of his damages on trespass and received an award of damages.[8] The Majority Opinion makes clear that the only issue that remains pending on these claims is the application of the one satisfaction rule once the parties' breach of contract claims against each other are retried (Majority Opinion at p. 37 at Exhibit "7"). In neither the body of its Opinion nor its mandate does the Majority provide for the retrial of any claim Ortiz had for loss of use damages.

---

[5] *Id.* ("By narrowing the issues in successive stages of litigation, the law of the case doctrine is intended to achieve uniformity of decision as well a judicial economy and efficiency.").

[6] *Lifshutz v. Lifshutz,* 199 S.W.3d 9, 20 (Tex. App.—San Antonio 2006, pet denied) (by upholding the trial court's directed verdict on certain issues, the court of appeals established "law of the case" on those issues).

[7] *Id.*

[8] The jury awarded Ortiz $100,000 in loss rental income against National City for breach, $77,000 for loss rental income against HLS for trespass.

484737.1

5

10.     Defendants respectfully request that Plaintiff's motion be denied and that the Court retry this case in accordance with the limited instructions of the Court of Appeals as set forth in the Court of Appeals' remand order.

Respectfully submitted,

**McGLINCHEY STAFFORD**

By:___*/s/ Stephanie Laird Tolson*_____
       Joel Mohrman
       State Bar No. 14253500
       Stephanie Laird Tolson
       State Bar No. 11795430
       1001 McKinney, Suite 1500
       Houston, Texas 77002
       Telephone:   (713) 520-1900
       Facsimile:   (713) 520-1025

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent to all counsel of record via facsimile on July 31, 2014:

VIA U.S. Mail and/or Email
Michael C. Donovan
6300 Dixie Drive
Houston, Texas 77087
mdonovanesq@yahoo.com

*/s/ Stephanie Laird Tolson*_____
Stephanie Laird Tolson

484737.1

6



# MANDATE

# The Fourteenth Court of Appeals

## NO. 14-10-01125-CV

National City Bank of Indiana and National City Home Loan Services, Inc., Appellants/Cross-Appellees

v.

Albert Ortiz, Appellee/Cross-Appellant

Appealed from the 164th District Court of Harris County. (Tr. Ct. No. 2006-61178). Opinion delivered by Justice Christopher. Justices Frost and Brown also participating (Frost, J., dissenting).

## TO THE 164TH DISTRICT COURT OF HARRIS COUNTY, GREETINGS:

Before our Court of Appeals on May 16, 2013, the cause upon appeal to revise or reverse your judgment was determined. Our Court of Appeals made its order in these words:

The court today heard appellee Albert Ortiz's amended motion for rehearing. The court has duly considered the motion and found it meritorious in part. We therefore order that the motion be granted in part and this court's former judgment of November 20, 2012, be vacated, set aside, and annulled. We further order this court's opinion of November 20, 2012 withdrawn. We deny appellants' motion for rehearing as moot.

This cause, an appeal from the judgment signed August 18, 2010 in favor of appellee, Albert Ortiz, was heard on the transcript of the record. We have inspected the record and find error in the judgment. We therefore

A.    REVERSE the portions of the judgment



EXHIBIT
1
tables

1. holding National City liable to Ortiz for actual damages, interest, and attorneys' fees;

2. providing that National City takes nothing by its claims;

3. denying National City's request for judicial foreclosure;

4. declaring that the "Note and the Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust";

5. providing that "all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment"; and

6. specifying the amount of the actual damages awarded against HLS;

B. AFFIRM the portions of the judgment that were neither challenged on appeal nor affected by our disposition of the issues as set forth in this court's opinion, that is, Ortiz's claims for fraud, common-law unreasonable debt-collection, statutory debt-collection violations, statutory deceptive trade-practice violations, breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy, and defamation per se; and

C. REMAND the case with instructions to the trial court to

(1) retry Ortiz's claim against National City for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure, and, with the exception of Ortiz's limitations defense discussed in this court's opinion, permitting the parties to assert defenses to these claims;

(2) after applying the one-satisfaction rule and any settlement credits, determine the total amount of HLS's liability to Ortiz for actual damages and the amounts, if any, that are owed by National City to Ortiz or by Ortiz to National City; and

(3) render a final judgment that is consistent with this court's opinion.

We order appellee Albert Ortiz to pay all costs incurred in this appeal.

We further order this decision certified below for observance.

**WHEREFORE, WE COMMAND YOU** to observe the order of our said Court in this behalf and in all things have it duly recognized, obeyed, and executed.

**WITNESS,** the Hon. Adele Hedges, Chief Justice of our Fourteenth Court of Appeals, with the Seal thereof affixed, at the City of Houston, May 2, 2014.

CHRISTOPHER A. PRINE, Clerk

FILED IN
14th COURT OF APPEALS
HOUSTON, TX

CHRISTOPHER A. PRINE,
CLERK

REPORTER'S RECORD
TRIAL COURT CAUSE NUMBER 2006-61178
COURT OF APPEALS CASE NUMBER 14-10-01125-CV
VOLUME 7 OF 18

ALBERT ORTIZ                    :    IN THE DISTRICT COURT

v.                              :    HARRIS COUNTY, TEXAS

FRED LOMBARDO, et al.           :    164th JUDICIAL DISTRICT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

JUNE 3, 2010

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On the 3rd day of June, 2010, the following proceedings came on to be heard in the above-entitled and -numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.

DONNA KING, CSR
164TH OFFICIAL REPORTER
(713) 368-6256



EXHIBIT
2

*A P P E A R A N C E S*

*FOR THE PLAINTIFF:*
Mr. Mark A. Junell, SBN 24032610
THE JUNELL LAW FIRM, P.C.
3900 Essex, Suite 390
Houston, Texas   77027
Telephone: 281-768-3530
Facsimile: 832-213-1830

        - and -

Mr. Gary Michael Block, SBN 02497200
Attorney at Law
7660 Woodway, Suite 590
Houston, Texas   77063
Telephone: 713-443-7722
Facsimile: 713-266-8528

*FOR THE DEFENDANTS:*
Mr. Joel Mohrman, SBN 14253500
Ms. Kari Robinson, SBN 24004891
McGLINCHEY STAFFORD, P.L.L.C.
1001 McKinney, Suite 1500
Houston, Texas   77002
Telephone: 713-520-1900
Facsimile: 713-520-1025

        - and -

Ms. Kristen Brauchle, SBN 24012326
BROCKMAN, BRAUCHLE & EVANS, P.L.L.C.
2020 Southwest Freeway, Suite 323
Houston, Texas   77098
Telephone: 713-224-6100
Facsimile: 713-533-0303

already been deposed --

MR. BLOCK: Yeah.

MS. ROBINSON: -- or it was around the same time.

MR. BLOCK: Around the same time.

MS. ROBINSON: So, you know, they never asked for leave to file a new -- basically, new claims.

MR. JUNELL: The problem is -- is that they -- just a month or two earlier they had added all these new counterclaims that they -- had never been brought up before, and we argued about that. I mean, if I got leave of the Court to --

THE COURT: All right. All right. All right. Stop. I'm going to allow the eighth amended original petition. There. All right.

MR. BLOCK: Your Honor, the last -- the last item would be our motion for leave regarding the supplemental petition and answer.

THE COURT: When was the supplemental petition and answer?

MR. BLOCK: That was filed --

THE COURT: Oh, wait, wait.

MR. BLOCK: -- Friday, I think, Judge, or maybe -- no. Monday.

THE COURT: Monday of what -- of this week?

MR. BLOCK: Yeah. It's based on what we discovered on May 11th.

THE COURT: The deed?

MR. BLOCK: The -- yes, ma'am. Well, not just the deed, but also the information from the depositions, specifically the Barrett Burke deposition. And --

MR. JUNELL: And it's -- and it's an answer to their claims.

MR. BLOCK: It -- it -- well, there -- it's supplemental, Judge. It -- it -- basically what it does, Your Honor, is it does a suit to quiet title because that wasn't pled because we didn't know about the -- the rescission deed to be able to -- to prove up the objection we have to the rescission instrument, which is the deed of trust and the note. It does trespass to try title.

Pretty much that's -- that's it, Judge. I mean, everything else is -- is pretty much the same. And as far as the answer -- it's the same thing. It all goes right to those issues.

THE COURT: Response.

MS. ROBINSON: Yes, Your Honor. The

new evidence that they cite in their motion to file their supplemental pleadings -- this is that rescission instrument. When we went through their expert's file -- their expert had it for a year. How long has he had it in his file? I mean, they say they don't know about it, but they are the ones that produced that file to me. So --

MR. BLOCK: Judge --

MS. ROBINSON: If they don't know the contents of their expert's file -- they knew about it before we did. We got that expert file April the 9th at -- at the deposition, and no one went through each document with the witness. And when we were preparing for trial, we saw this rescission instrument. You know, this was after the production by Barrett Burke, but the fact remains, the Plaintiff had this in --

MR. BLOCK: No.

MS. ROBINSON: -- in their possession, and they could've discovered it before we did.

MR. BLOCK: Your Honor, that is 100 percent untrue, and if I need to actually testify on this, I'll be happy to, and I -- I can have Mr. Sikes come down here in person or be available by telephone right now to -- to go over this. I will

tell you that, first of all --

THE COURT: Stop. Here's what I'm going to do. I'm going to deny the motion for leave to file the first supplemental petition. You don't need it. You have other causes of action that easily the deed would come under. You don't need another trespass to try title. And on top of that, I suspect one of the umpteen thousand causes of action that are here will answer any and all questions with respect to whose house it is at the end of the day.

MR. BLOCK: And the supplemental answer, Your Honor?

THE COURT: It's out too.

So, anything else?

MR. MOHRMAN: Yes, Your Honor, just a couple of housekeeping measures. One, we had subpoenaed for trial three different witnesses. Can we have those subpoenas carried over to the next trial date still effective without having to go out and re-subpoena those folks?

THE COURT: That's fine with me.

MR. MOHRMAN: All right. Then also, of course, the Court, as part of its pre-trial, had asked us to prepare jury charges. Do you want us to hold on to those and give those to you when we come

2005015390032U
Rescission of Sub
Trustee's Sale

3 [handwritten notation]

 200790192654
05/07/2009 RP2 $24.00

## RESCISSION OF SUBSTITUTE TRUSTEE'S SALE,
## CANCELLATION OF SUBSTITUTE TRUSTEE'S DEED
## AND RECONVEYANCE DEED WITHOUT WARRANTIES

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

***IMPORTANT NOTICE TO COUNTY CLERK:
INDEX ALBERT ORTIZ AS GRANTEE

STATE OF TEXAS        §
                      §
COUNTY OF HARRIS      §

WHEREAS, National City Bank of Indiana ("National City") is the owner and holder of a promissory note dated March 15, 2004 in the original principal amount of $4742,000.00 from Albert Ortiz to First Franklin Financial Corp. Said Note is secured by that certain Deed of Trust dated March 15, 2004, and recorded in Clerk's File No. X469555 of the Official Real Property Records of Harris County, Texas, with respect to the following described property (the "Property"):

LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

WHEREAS, in compliance with the provisions set out in § 51.002 of the Texas Property Code, the above property was posted for foreclosure sale and on June 6, 2006, Thomas Reder, the named Substitute Trustee, conducted a foreclosure sale whereby the Property was sold to National City Bank of Indiana as set out in the Substitute Trustee's Deed dated June 6, 2006 which is recorded in Clerk's File No. Z366547 of the Official Real Property Records of Harris County, Texas.

WHEREAS, National City and Thomas Reder desire to cancel and rescind the foreclosure sale and conveyance of the Property to National City Bank of Indiana; rescind the acceleration of the indebtedness, reinstate the Note and Deed of Trust; and return the parties to the status quo existing thereunder.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of same is hereby acknowledged along with the covenants and agreements contained herein, National City, the holder of the above-described Note and Deed of Trust, and Thomas Reder, the Substitute Trustee do hereby stipulate and declare (i) the Substitute Trustee's Deed dated June 6, 2006 is hereby rescinded and deemed void and of no effect for all purposes; and (ii) the Note and Deed of Trust are reinstated in accordance with their original tenor and effect existing immediately prior to such foreclosure and conveyance subject to the accrual of interest, late fees, advances, and any and all other amounts due under the Note remaining unpaid by Borrower. Nothing contained herein shall in any way constitute a waiver of any default in the Note and Deed of Trust occurring prior to or since the date of the Trustee's Deed.

This document is executed and filed for record to purge such real property records of all evidence of such foreclosure by the Substitute Trustee's sale including, without limitation, such Substitute Trustee's Deed described above as if such Deed had not been filed of record.

H:\LAW\RCHELEB\CLIENTS\HOME LOANS SERVICES FKA NATIONAL CITY\Ortiz (20050153900326)\Ortiz 2ptyresc.doc
BDW No 20050153900326


EXHIBIT
3

BAR 00060

National City its successors and assigns, to the extent necessary to re-vest legal title to the Property to Albert Ortiz, hereby conveys to Albert Ortiz the Property; subject, however, to the indebtedness evidenced by the Note and the liens and security interests securing payment of the Note, and other encumbrances, restrictions and covenants of record, including without limitation the Deed of Trust and all other collateral loan instruments executed to purchase the Property. The Grantee's address is 105 Birdsall Avenue, Houston, Texas 77007.

TO HAVE AND TO HOLD, the Property, subject to the matters hereinabove set forth, together with all and singular the rights and appurtenances thereto in anywise belonging unto Albert Ortiz his/her/their successors and assigns, forever. This conveyance is made without warranty, express or implied. Albert Ortiz hereby assume(s) and agree(s) to pay in full all taxes or other lawful assessments against the Property and all amounts otherwise advanced by National City under the terms of the Note and Deed of Trust.

EXECUTED this __17__ day of __April__, 2009.

National City Bank of Indiana, by and through its duly authorized servicing agent, Home Loan Services, Inc.

By: _____
Printed Name: BRYAN KUSICH
Title: VICE PRESIDENT

COMMONWEALTH OF PENNSYLVANIA §
§
COUNTY OF ALLEGHENY §

BEFORE ME, the undersigned notary public, on this day personally appeared BRYAN KUSICH, the VICE PRESIDENT of Home Loan Services, Inc., duly authorized servicing agent for National City Bank of Indiana known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __17__ day of __April__, 2009.

_____
Notary Public, Commonwealth of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Tara L. Gordon, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires June 7, 2011
Member, Pennsylvania Association of Notaries

BAR 00061

By:

Thomas Reder, Substitute Trustee

STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned notary public, on this day personally appeared Thomas Reder, Substitute Trustee, known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ____ day of _____, 2009.



Notary Public, State of Texas

HOLD FOR: BARRETT DAFFIN

AFTER RECORDING, RETURN TO:
Barrett Daffin Frappier Turner & Engel, L.L.P.
Attn: Abigayle Neal-Pulloch.apex
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001

FILED
2009 MAY -7 AM 8:19
COUNTY CLERK
HARRIS COUNTY, TEXAS

MAY -7 2009

COUNTY CLERK
HARRIS COUNTY, TEXAS

C:\Documents and Settings\Shela Althouse\Local Settings\Temporary Internet Files\Content.IE5\OXMJGIRF\Order-2phyreso[1].doc
BDW No. 20050153900336

BAR 00062

FILED IN
14ᵗʰ COURT OF APPEALS
HOUSTON, TX

CHRISTOPHER A. PRINE,
CLERK

REPORTER'S RECORD
TRIAL COURT CAUSE NUMBER 2006-61175
COURT OF APPEALS CASE NUMBER 14-10-01125-CV
VOLUME 6 OF 18

ALBERT ORTIZ, et al.          :     IN THE DISTRICT COURT

v.                            :     HARRIS COUNTY, TEXAS

FRED LOMBARDO, et al.         :     164th JUDICIAL DISTRICT

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

*JUNE 1, 2010*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

On the 1st day of June, 2010, the following proceedings came on to be heard in the above-entitled and -numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.

DONNA KING, CSR
164TH OFFICIAL REPORTER
(713) 368-6256

A P P E A R A N C E S


FOR THE PLAINTIFF:
Mr. Mark A. Junell, SBN 24032610
THE JUNELL LAW FIRM, P.C.
3900 Essex, Suite 390
Houston, Texas   77027
Telephone: 281-768-3530
Facsimile: 832-213-1830

        - and -

Mr. Gary Michael Block, SBN 02497200
Attorney at Law
7660 Woodway, Suite 590
Houston, Texas   77063
Telephone: 713-443-7722
Facsimile: 713-266-8528


FOR THE DEFENDANTS:
Mr. Joel Mohrman, SBN 14253500
Ms. Kari Robinson, SBN 24004891
McGLINCHEY STAFFORD, P.L.L.C.
1001 McKinney, Suite 1500
Houston, Texas   77002
Telephone: 713-520-1900
Facsimile: 713-520-1025

        - and -

Ms. Kristen Brauchle, SBN 24012326
BROCKMAN, BRAUCHLE & EVANS, P.L.L.C.
2020 Southwest Freeway, Suite 323
Houston, Texas   77098
Telephone: 713-224-6100
Facsimile: 713-533-0303

INDEX

|  |  | PAGE | LINE |
|---|---|---|---|
| Proceeding ------------------------------- | | 14 | 1 |
| Court Reporter's Certificate --------- | | 280 | 1 |

PLAINTIFF'S EXHIBITS

| NO. | DESCRIPTION | PRE-ADMITTED |
|---|---|---|
| 1 | Promissory Note | 102, 14 |
| 2 | Deed of Trust | 102, 14 |
| 3 | Ortiz Birdsall Property Lease with Former Owners | 102, 14 |
| 4 | Mailing Address Confirmation | 102, 14 |
| 5 | Insurance Certification | 102, 14 |
| 6 | Lombardo Letter Agreement 1 | 102, 14 |
| 7 | Lombardo Letter Agreement 2 | 102, 14 |
| 8 | HLS 10-Day Abandonment Letter | 102, 14 |
| 9 | Substitute Trustee's Deed | 102, 14 |
| 10 | Waiver Letter with Gary Stockey Cover Letter and 1099-A | 102, 14 |
| 11 | Waiver Letter | 102, 14 |
| 12 | Order Granting Summary Judgment on Wrongful Foreclosure | 102, 14 |
| 13 | Childress Letter Requesting Possession of Birdsall | 102, 14 |
| 14 | Mr. Leyh's Letter - Notice of Default | 102, 14 |

### PLAINTIFF'S EXHIBITS

| NO. | DESCRIPTION | PRE-ADMITTED |
| --- | --- | --- |
| 15 | Mr. Donovan's Response Letter to Mr. Leyh | 102, 14 |
| 16 | Mr. Leyh's Letter - Notice of Substitute Trustee's Sale | 102, 14 |
| 17 | Mr. Donovan's Response Letter to Mr. Leyh | 102, 14 |
| 18 | Order Granting Summary Judgment Take Nothing on Defendants' Counterclaims | XX |
| 19 | Rescission of Substitute Trustee's Deed | 102, 14 |
| 20 | Defendants' Notice Regarding the Property | XX |
| 21 | Plaintiff's Notice Regarding the Property | XX |
| 22 | Affidavit of Byron Blevins | XX |
| 23 | Mark Sikes' Expert Report | XX |
| 24 | IMS Production from May 7, 2010, Deposition | XX |
| 25 | Barrett Burke's Custodian of Records Affidavit | 102, 15 |
| 26 | HLS Referral Letter and Instructions to Barrett Daffin | 102, 15 |
| 27 | Barrett Daffin's Full Production from May 6, 2010, Deposition | 102, 15 |
| 28 | Barrett Daffin's Foreclosure Comments | 102, 15 |
| 29 | Barrett Daffin's Litigation Comments | 102, 15 |
| 30 | HLS's Net Worth Statement | 102, 16 |

| NO. | DESCRIPTION | PRE-ADMITTED |
|---|---|---|
| | *PLAINTIFF'S EXHIBITS* | |
| 31 | National City's Net Worth Statement | 102, 16 |
| 32 | Letter to Kari Robinson from Mark Junell 1/20/10 | 102, 17 |
| 33 | Ortiz Video of Property Inspection | 102, 17 |
| 34 | HLS Service Notes | 102, 17 |
| 35 | HLS Service Notes and Letter Logs | 102, 17 |
| 36 | Keystone Call Notes | 102, 17 |
| 37 | Keystone Contract with HLS | 102, 17 |
| 38 | Keystone Contract with Richard Howell | 102, 17 |
| 39 | Richard Howell MLS Listing | XX |
| 40 | Affidavit of Gary Stockey | XX |
| 41 | HLS Property Preservation and Collection Procedures | 102, 18 |
| 42 | Plaintiff's Attorney Fee Statements and Agreements | 102, 18 |
| 43 | Ortiz Canceled Checks | 102, 18 |
| 44 | Ortiz Payment History | 102, 18 |
| 45 | Defendants' Answers to Request for Admissions and Interrogatories | 102, 18 |
| 46 | Defendants' Responses to Request for Disclosure | 102, 18 |

*DEFENDANTS' EXHIBITS*

| NO. | DESCRIPTION | PRE-ADMITTED |
|---|---|---|
| 1 | Deed of Trust | 113, 11 |
| 2 | Note | 113, 11 |
| 3 | Servicing Notes | 113, 11 |
| 4 | Payment History '05-'07 | 113, 11 |
| 5 | Corporate Assignment of Deed of Trust | 113, 11 |
| 6 | Purchase Contract Between Ortiz and the Winstons | 113, 11 |
| 7 | Loan Application | 113, 11 |
| 8 | Credit Report | 113, 17 |
| 9 | Occupancy Declaration | 113, 17 |
| 10 | Warranty and Compliance Agreement | 113, 17 |
| 11 | HUD Settlement Statement | 113, 17 |
| 12 | Loan Application Signed at Closing | 113, 17 |
| 13 | Hazard Insurance Requirements | 113, 17 |
| 14 | Borrower's Certification and Authorization | 113, 17 |
| 15 | Notice of Policy | 113, 17 |
| 16 | Confirmation of Cancellation of Hazard Insurance | 113, 18 |
| 17 | Letter Agreement Regarding Credit Reporting | 113, 18 |
| 18 | Letter to Mr. Ortiz | 113, 18 |
| 19 | Hazard Insurance Requirement Notice | 113, 18 |

DEFENDANTS' EXHIBITS

| NO. | DESCRIPTION | PRE-ADMITTED |
|---|---|---|
| 20 | Letter to Mr. Ortiz | 113, 18 |
| 21 | Fax from Mr. Lombardo to Mr. Donovan Enclosing Letter Regarding Correction to Credit Bureau | 113, 18 |
| 22 | Letter Agreement Regarding Credit Reporting | 113, 18 |
| 23 | Correspondence from Fred Lombardo Regarding Credit Reporting | 113, 18 |
| 24 | Notice of Lapse of Coverage | 113, 18 |
| 25 | Policy Placing Coverage Effective 4/20/05 | 113, 18 |
| 26 | Breach Letter - Notice of Intent to Accelerate | 113, 18 |
| 27 | 11/8/05 Letter to Mr. Ortiz Regarding Vacancy | 113, 18 |
| 28 | Confirmation of Cancellation of Hazard Insurance | 113, 18 |
| 29 | Letter from Mr. Donovan | 113, 18 |
| 30 | Donovan Representation Letter | 113, 19 |
| 31 | Letter from Barrett Burke to Mr. Donovan Enclosing Notice of Sale, Default Letter, and Payoff Quote | 113, 19 |
| 32 | Letter from Barrett Burke to Mr. Donovan Enclosing Reinstatement | 113, 19 |
| 33 | Letter from Mr. Donovan to Karen Kwolek to Discuss Ortiz Account with Glenn Patterson | 113, 19 |

*DEFENDANTS' EXHIBITS*

| NO. | DESCRIPTION | PRE-ADMITTED |
|-----|-------------|--------------|
| 34 | Notice of Trustee Sale | 113, 19 |
| 35 | Fax from Mr. Donovan with Petition | 113, 19 |
| 36 | Letter from Mr. Donovan to Mr. Fedoronko to Complete the Short Sale | 113, 19 |
| 37 | Letter from Gary Stockey to Mr. Donovan with First Letter Agreement and 1099 | 113, 20 |
| 38 | Second Letter Agreement | 113, 20 |
| 39 | Substitute Trustee's Deed | 113, 20 |
| 40 | Keystone REO Notes | 113, 20 |
| 41 | Keystone Pictures | 113, 20 |
| 42 | Plaintiff's Settlement with Richard Howell | 113, 20 |
| 43 | Keystone Directions to Richard Howell | 113, 22 |
| 44 | Right to Sell Agreement Richard Howell and Keystone | 113, 22 |
| 45 | Appraisal | 113, 22 |
| 46 | Patterson Records Regarding G.H. Reid | 113, 22 |
| 47 | Patterson Records Regarding G.H. Reid | 113, 22 |
| 48 | Letter to Mr. Donovan from Ms. Baldassano | 113, 22 |
| 49 | Letter to Mr. Donovan from Ms. Baldassano | 113, 23 |

| NO. | DESCRIPTION | PRE-ADMITTED |
|---|---|---|
| | *DEFENDANTS' EXHIBITS* | |
| 50 | Application for Registration of a Foreign Limited Liability Company | 113, 23 |
| 51 | Pictures of the Property | 113, 23 |
| 52 | Hazard Process Notes | 113, 23 |
| 53 | Tax Process Notes | 113, 23 |
| 54 | Escrow Analysis | 113, 24 |
| 55 | Procedure - Fundamentals of a Collection Call | 113, 24 |
| 56 | IMS Business Records | 113, 24 |
| 57 | Deposition of Noel West, Peggy West Records | 113, 24 |
| 58 | Saucier Records | 113, 24 |
| 59 | McGlinchey Stafford Invoices | 113, 24 |
| 60 | Mr. Ortiz's Fee Agreement with Mr. Donovan | 113, 24 |
| 61 | H-97-2197 - First Amended Original Complaint | XX |
| 62 | 1999-03217 - Original Petition | XX |
| 63 | 1999-03218 - Petition to Vacate or Modify Arbitration Award | XX |
| 64 | 1999-28590 - Original Petition | XX |
| 65 | 1998-44063 - Second Amended Original Petition | XX |
| 66 | 2000-02147 - Petition Requesting Deposition | XX |
| 67 | 2000-28304 - First Amended Original Petition | XX |

| *DEFENDANTS' EXHIBITS* | | |
|---|---|---|
| *NO.* | *DESCRIPTION* | *PRE-ADMITTED* |
| 68 | 2001-01898 - Original Petition for Injunction and Damages | XX |
| 69 | 2000-01263 - Fifth Amended Original Petition | XX |
| 70 | 2001-04570 - Second Amended Original Petition for Injunction and Damages | XX |
| 71 | 2001-54861 - Petition to Vacate or Modify Arbitration Award | XX |
| 72 | 2001-56742 - Petition Requesting Oral Depositions | XX |
| 73 | 2002-29333 - Original Petition | XX |
| 74 | 2004-00972 - Original Petition | XX |
| 75 | 2004-03346 - First Supplemental Petition | XX |
| 76 | 2004-52032 - Application for Order Compelling Appearance at Deposition | XX |
| 77 | 2003-47081 - Fourth Amended Original Petition | XX |
| 78 | 2005-19480 - Original Petition | XX |
| 79 | 2005-16065 - Amended Original Petition | XX |
| 80 | 2005-25982 - First Amended Original Petition | XX |
| 81 | 2006-35252 - First Amended Original Petition | XX |
| 82 | 2005-59966 - Second Amended Original Petition | XX |

*DEFENDANTS' EXHIBITS*

| NO. | DESCRIPTION | PRE-ADMITTED |
|---|---|---|
| 83 | 2005-60488 - Third Amended Original Petition | XX |
| 84 | 2007-20857 - Second Amended Original Petition | XX |
| 85 | 2008-57161 - First Amended Original Petition | XX |
| 86 | 2009-18253 - First Amended Original Petition | XX |
| 87 | 2009-42174 - Original Petition | XX |
| 88 | 748,057 - Original Petition | XX |
| 89 | 2006-61178 - Eighth Amended Original Petition | XX |
| 90 | 748,057 - Original Petition | XX |
| 91 | 752,821 - Petition Requesting Depositions | XX |
| 92 | 809,265 - Original Petition with Application for TRO | XX |
| 93 | 809,513 - Original Petition | XX |
| 94 | 813,000 - Petition Requesting Deposition | XX |
| 95 | 822,517 - Fourth Amended Original Petition | XX |
| 96 | 834,219 - Original Petition | XX |
| 97 | 838,610 - Original Petition | XX |
| 98 | 845,055 - Original Petition with Application for TRO | XX |
| 99 | 867,786 - Original Petition | XX |

*DEFENDANTS' EXHIBITS*

| NO. | DESCRIPTION | PRE-ADMITTED |
|---|---|---|
| 100 | 867,785 - Original Petition | XX |
| 101 | 868,048 - Original Petition | XX |
| 102 | 905,054 - Petition for Writ of Mandamus | XX |
| 103 | 826,343 - Second Amended Original Petition | XX |
| 104 | 01-08-05401-CV - Third Amended Original Petition | XX |
| 105 | Mark Sikes' Retention Agreement with Ortiz | 114, 8 |
| 106 | Appraisal of Thomas Smithee for G.H. Reid | XX |
| 107 | Rescission Deed | 114, 9 |
| 108 | Birdsall ATO | 114, 9 |
| 109 | Photo of 105 Birdsall | 114, 9 |
| 110 | Photo of Back Yard | 114, 9 |
| 111 | Photo of Bath 1 | 114, 9 |
| 112 | Photo of Birdsall Garage Damage | 114, 9 |
| 113 | Photo of Birdsall Garage Damage 4 | 114, 9 |
| 114 | Photo of Bedroom 2 | 114, 9 |
| 115 | Photo of Damaged Ceiling | 114, 10 |
| 116 | Photo of Kitchen Sink Missing | 114, 10 |
| 117 | Photo of Damaged Railing | 114, 10 |
| 118 | Photo of Rotten French Door | 114, 10 |

| *DEFENDANTS' EXHIBITS* | | |
|---|---|---|
| *NO.* | *DESCRIPTION* | *PRE-ADMITTED* |
| 119 | Photo of Dining Room 1 | 114, 10 |
| 120 | Photo of Dining Room Birdsall ATO | 114, 10 |
| 121 | Photo of Bath 1 | 114, 10 |
| 122 | Photo of Bath 2 | 114, 10 |
| 123 | Photo of Bath 3 | 114, 10 |
| 124 | Photo of Garage | 114, 10 |
| 125 | Photo of Master Bath 1 | 114, 10 |
| 126 | Photo of Master Bath 2 | 114, 10 |
| 127 | Photo of Patio | 114, 10 |
| 128 | Photo of Stairway | 114, 10 |
| 129 | E-mail dated April 6, 2009 | 114, 10 |
| 130 | E-mail dated April 16, 2009 | 114, 10 |
| 131 | E-mail dated April 20, 2009 | 114, 10 |
| 132 | E-mail dated May 5, 2009 | 114, 11 |
| 133 | E-mail dated May 20, 2009 | 114, 11 |
| 134 | Hazard Insurance Requirement Notice | 114, 11 |
| 135 | Notice of Lapse of Coverage | 114, 11 |
| 136 | Leyh Letter - Notice of Default | 114, 11 |
| 137 | Leyh Letter - c/o Michael Donovan | 114, 11 |

THE COURT: Well -- so I'm not pre-admitting it unless you need it for --

MR. BLOCK: Very good.

THE COURT: -- whatchacallit, impeachment. All right. Next.

MR. MOHRMAN: Those conclude my objections to opposing --

THE COURT: All right. So then you're fine with pre-admitting all the rest of them? Is that correct, Mr. Mohrman?

MR. MOHRMAN: Correct. Correct, Your Honor.

THE COURT: All right. So Plaintiff's 1 through 17 are admitted. Plaintiff's 19 are admitted. Plaintiff's -- what does that say? -- 25 through 29 are admitted. Plaintiff's 30 and 31 are admitted. Plaintiff's 32 through 38 are admitted. Plaintiff's 41 through 46 are admitted.

All right. End of Plaintiff's.

Defendants'.

MR. JUNELL: Give -- give me one second.

MR. MOHRMAN: Judge, if I could, I think I may be able to peruse these and save us a little bit of time real quickly.

FILED IN
14th COURT OF APPEALS
HOUSTON, TX

CHRISTOPHER A. PRINE,
CLERK

REPORTER'S RECORD
TRIAL COURT CAUSE NUMBER 2006-6
COURT OF APPEALS CASE NUMBER 14-10-01125-CV
VOLUME 9 OF 18

ALBERT ORTIZ                    :    IN THE DISTRICT COURT

v.                              :    HARRIS COUNTY, TEXAS

FRED LOMBARDO, et al.           :    164th JUDICIAL DISTRICT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*JUNE 16, 2010*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On the 16th day of June, 2010, the following proceeding came on to be heard in the above-entitled and -numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

Proceeding reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.



EXHIBIT
4

APPEARANCES

*FOR THE PLAINTIFF:*
Mr. Mark A. Junell, SBN 24032610
THE JUNELL LAW FIRM, P.C.
3900 Essex, Suite 390
Houston, Texas  77027
Telephone: 281-768-3530
Facsimile: 832-213-1830

        - and -

Mr. Gary Michael Block, SBN 02497200
Attorney at Law
7660 Woodway, Suite 590
Houston, Texas  77063
Telephone: 713-443-7722
Facsimile: 713-266-8528

*FOR THE DEFENDANTS:*
Mr. Joel Mohrman, SBN 14253500
Ms. Kari Robinson, SBN 24004891
McGLINCHEY STAFFORD, P.L.L.C.
1001 McKinney, Suite 1500
Houston, Texas  77002
Telephone: 713-520-1900
Facsimile: 713-520-1025

        - and -

Ms. Kristen Brauchle, SBN 24012326
BROCKMAN, BRAUCHLE & EVANS, P.L.L.C.
2020 Southwest Freeway, Suite 323
Houston, Texas  77098
Telephone: 713-224-6100
Facsimile: 713-533-0303

*I N D E X*

|                          | PAGE | LINE |
|--------------------------|------|------|
| Proceeding ------------------------------ | 4 | 1 |

| *PLAINTIFF'S WITNESSES* | *DIRECT* | *CROSS* |
|-------------------------|----------|---------|
| Albert Ortiz | 7, 1 | 195, 24 |

|                          | PAGE | LINE |
|--------------------------|------|------|
| Court Reporter's Certificate ------- | 246 | 1 |

*PLAINTIFF'S EXHIBITS*

| *NO.* | *DESCRIPTION* | *OFFER* | *ADMIT* |
|-------|---------------|---------|---------|
| 23 | Photos | 59, 4 | 59, 14 |
| 47 | Photos made from video of 105 Birdsall | 110, 21 | 111, 9 |

Q     May 7th.  Is that '09?

A     Yes.

Q     Okay.  And do -- have you ever seen this document before?

A     Yes, recently.

Q     Okay.  When was the first time that -- that you saw this rescission and reconveyance deed?

A     It was the end of May.

Q     Of what year?

A     I'm sorry.  End of May of 2010, about -- less than a week before I took possession of the home -- my home.

Q     I mean, a week af -- a week before?

A     Week before May 23.  Somewhere in there.

Q     Okay.  And -- and -- and if you would, please -- the substitute trustee's deed -- see, I'm trying to use my pen here.  See if I can -- there we go.  The notice of -- deed of trust -- see -- see that?

A     "Reinstate" -- yes, sir.

Q     Right.  Okay.  And above that, ". . . the Substitute Trustee's Deed" --

A     Right.  Reference --

Q     -- "dated June 6" --

A     2006.  Yes, sir.

Q    -- "is hereby rescinded" --

A    Right.

Q    -- "and deemed void . . . of no effect for all purposes."  Did I read that right?

A    Yes, sir.

Q    Go to the second page, zoom out.  It's dated April 17th.  Do you see who it's signed by?

A    Bryan Kusich.

Q    Have you ever heard of Bryan Kusich before?

A    Not before seeing this document.

Q    Okay.  It's also signed by Thomas Reder March 10th of '09.  Have you ever heard of Thomas Reder before?

A    I believe he's the original substitute trustee.

Q    And then -- remember?  The -- the trustee's deed had that little address to return things to.

A    Yes, sir.

Q    Is that the same law firm?  Little different name, but --

A    Yes.  My understanding is the same firm.

Q    Did anybody from either Barrett Daffin -- Mr. Leyh's office ever provide to you or your lawyers a copy of this?

A    The attorneys didn't.  Neither did

Defendants. No, sir.

Q   Not until --

A   Not until --

Q   -- May 11th or 12th?

A   Somewhere in there. Right.

Q   I'm going to show you -- I'm going to go back to Page Number 2 of this, blow this up, if I can work the machine.

A   May of 2010.

Q   That was when you -- when --

A   Right. You said May, but just --

Q   Oh, okay.

A   -- 2010.

Q   Look at the -- at the very bottom of that top paragraph.

A   Okay.

Q   The grantee's address is 105 Birdsall, Houston, 77007.

A   Oh, okay. Right. Right. I see it.

Q   Okay. Now, the grantee is you?

A   Yes.

Q   Is that your address?

A   No.

Q   You wish? Or wished?

A   I mean, it is now, I mean, but --

Q    Right.

A    Right.

Q    Okay.  Before May 11th or 12th of 2010, did you have any inkling at all that the property was put back in your name?

A    No idea whatsoever.

Q    Okay.  Again, file -- this happened to be May of '09 -- May 7th of '09, right?

A    That's when it was filed.  Right.

Q    Okay.

A    Yes, sir.

Q    Now, in July of 2009, you were able to go back onto the property; is that right?

A    Yes, to take -- make a video of the place.  Yes.

Q    Okay.  At the time that you went back there, in July of '09, did you have any idea the property was put back in your name?

A    No, because they wouldn't let us in without an escort or --

Q    Okay.

A    -- chaperone, whatever.

Q    I'm going to play for you right now, if I can figure out how to work my computer contraption -- this is the video that you took.  It's been admitted

FILED IN
14ᵗʰ COURT OF APPEALS
HOUSTON, TX

CHRISTOPHER A. PRINE,
CLERK

ALBERT ORTIZ               :    IN THE DISTRICT COURT

v.                             :    HARRIS COUNTY, TEXAS

FRED LOMBARDO, et al.     :    164th JUDICIAL DISTRICT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*JUNE 17, 2010*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On the 17th day of June, 2010, the following proceeding came on to be heard in the above-entitled and -numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

Proceeding reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.

*A P P E A R A N C E S*

*FOR THE PLAINTIFF:*
Mr. Mark A. Junell, SBN 24032610
THE JUNELL LAW FIRM, P.C.
3900 Essex, Suite 390
Houston, Texas   77027
Telephone: 281-768-3530
Facsimile: 832-213-1830

        - and -

Mr. Gary Michael Block, SBN 02497200
Attorney at Law
7660 Woodway, Suite 590
Houston, Texas   77063
Telephone: 713-443-7722
Facsimile: 713-266-8528


*FOR THE DEFENDANTS:*
Mr. Joel Mohrman, SBN 14253500
Ms. Kari Robinson, SBN 24004891
McGLINCHEY STAFFORD, P.L.L.C.
1001 McKinney, Suite 1500
Houston, Texas   77002
Telephone: 713-520-1900
Facsimile: 713-520-1025

        - and -

Ms. Kristen Brauchle, SBN 24012326
BROCKMAN, BRAUCHLE & EVANS, P.L.L.C.
2020 Southwest Freeway, Suite 323
Houston, Texas   77098
Telephone: 713-224-6100
Facsimile: 713-533-0303

*I N D E X*

|  | PAGE | LINE |
|---|---|---|
| Proceeding ------------------------------- | 4 | 1 |

| PLAINTIFF'S WITNESSES | DIRECT | CROSS | VOIR DIRE |
|---|---|---|---|
| Albert Ortiz | 263, 23 | 171, 3 / 282, 23 | |

| DEFENDANTS' WITNESSES | DIRECT | CROSS | VOIR DIRE |
|---|---|---|---|
| Gary Fedoronko | 20, 17 / 34, 18 / 149, 7 | 65, 10 / 162, 15 | 33, 13 |

|  | PAGE | LINE |
|---|---|---|
| Court Reporter's Certificate -------- | 297 | 1 |

*PLAINTIFF'S EXHIBITS*

| NO. | DESCRIPTION | OFFER | ADMIT |
|---|---|---|---|
| 32A | February 2, 2010, letter from Kari Robinson to Mark Junell | 272, 18 | 273, 1 |

trespassing. I wouldn't be risking criminal prosecution. I wouldn't be risking, you know, defying the law or anything by -- by going in there because at that -- this point, a couple of weeks ago, I was -- I was aware that the property was under my name. It was no longer under, you know, National City's name.

Q So you are saying that up until the time -- we've seen this rescission deed or instrument that was filed about a --

A Uh-huh.

Q -- year or so ago -- year ago. Are you saying up until that time, you believed you didn't have the legal right to be in the property?

A I believed that a wrongful foreclosure -- I -- I believe that a foreclosure was wrongful, but until that foreclosure was deemed wrongful or until we undid the foreclosure, I wasn't going to break in. As upset as I was, as much as I felt the foreclosure should never have happened, until it was reversed or rescinded, I wasn't going to break in.

Q What changed your mind that gave you, all of a sudden, the green light to go ahead and change the locks?

MR. BLOCK: Objection, Your Honor. Can

we approach the bench, please?

THE COURT: Sure. Come on up.

(At the bench, with bench noise on.)

MR. BLOCK: The -- the true answer is based on attorney advice, so it's delving into some attorney/client privileged matters. In other words, since I've been on the case --

THE COURT: Uh-huh.

MR. BLOCK: -- I have -- I have specifically advised him against doing any such thing. Of course, that wasn't --

THE COURT: Yeah. But I think he's just asking what, in his own mind, made him think, "Okay. I'm cool now to go ahead" --

I presume --

MR. MOHRMAN: If --

THE COURT: I mean, you're not actually asking him for attorney/client privileged information --

MR. MOHRMAN: Of course not.

THE COURT: -- are you?

MR. MOHRMAN: I mean, if he said "my attorney advised me," I'm not going to ask --

MR. BLOCK: But -- but I --

MR. MOHRMAN: -- him what he said.

MR. BLOCK: Yeah. So, I mean, I didn't know if that's -- I -- I don't know how Mr. Ortiz was going to answer, but I know the conversations I've had with my client.

THE COURT: Well, that's fine. But to the extent he's not about to just divulge a bunch of stuff that you all talked about, that's fine.

And to the extent that you were attempting to ask such a thing -- which, I don't think you were, but if you were --

MR. MOHRMAN: I'm not --

THE COURT: Please don't ask for any attorney/client privileged information.

MR. BLOCK: I don't think he was trying to -- attorney/client privilege.

THE COURT: Okay. Good.

MR. BLOCK: But --

THE COURT: Okay. We're all on the same page then.

(Open court.)

THE COURT: All right. You may proceed, Mr. Mohrman.

MR. MOHRMAN: Thank you, Judge.

Q    (BY MR. MOHRMAN): Mr. Ortiz, I think what I was asking you is what happened to cause you to

believe you had the green leg -- green light to go in and change the locks?

A    Well, I knew that the rescission deed had been filed, I think a year and three months ago or whatever it was, and that the -- that was a game-changer, the -- the property was under my name.

Q    Okay.  So prior to the filing of the rescission deed, instrument, whatever you want to call it a year -- three months ago -- you did not believe that you had the right to go in at that point in time; is that correct?

MR. BLOCK:  If the question is not calling for a legal conclusion --

MR. MOHRMAN:  I'm asking what he believes, Your Honor.

MR. BLOCK:  Just making sure.

THE COURT:  That's fine.  Overruled.

Answer the question.

A    Okay.  I'm sorry.  Could you --

Q    (BY MR. MOHRMAN):  Sure.  I'll --

A    You said prior to the rescission deed?  Is that what you said?

Q    Right.  Let me -- let me just say it again so we're all --

A    Okay.

Q    -- on the same page.

A    Okay.

Q    Prior to the rescission deed or instrument, you believe that you did not have the present right to go in and change the locks on the property; is that correct?

A    I was aware of the foreclosure.  As much -- as emphatically as I believed it was wrongful, it did happen, it was recorded, and I was going to respect it until we could overturn it or somehow work it out.

Q    Okay.  And so you believe that you didn't have the right to go in there at that point in time, until you found out about the rescission deed or instrument, correct?

A    Yes.  I believed it was your property -- in -- in the county records, your property, so I wasn't going to trespass --

Q    All right.

A    -- your property until I could handle the foreclosure.

Q    All right.  Thank you.

A    No problem.

Q    Now, in this lawsuit -- you know a gentleman by the name of Mr. Lombardo, who worked at HLS, correct?

FILED IN
14ᵗʰ COURT OF APPEALS
HOUSTON, TX

CHRISTOPHER A. PRINE,
CLERK

REPORTER'S RECORD
TRIAL COURT CAUSE NUMBER 2006-611
COURT OF APPEALS CASE NUMBER 14-10-01125-CV
VOLUME 16 OF 18

ALBERT ORTIZ                    :    IN THE DISTRICT COURT

v.                              :    HARRIS COUNTY, TEXAS

FRED LOMBARDO, et al.           :    164th JUDICIAL DISTRICT

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

*JUNE 29, 2010*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

     On the 29th day of June, 2010, the following proceeding came on to be heard in the above-entitled and -numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

     Proceeding reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.

DONNA KING, CSR
164TH OFFICIAL REPORTER
(713) 368-6256

APPEARANCES


FOR THE PLAINTIFF:
    Mr. Mark A. Junell, SBN 24032610
    THE JUNELL LAW FIRM, P.C.
    3900 Essex, Suite 390
    Houston, Texas   77027
    Telephone: 281-768-3530
    Facsimile: 832-213-1830

          - and -

    Mr. Gary Michael Block, SBN 02497200
    Attorney at Law
    7660 Woodway, Suite 590
    Houston, Texas   77063
    Telephone: 713-443-7722
    Facsimile: 713-266-8528


FOR THE DEFENDANTS:
    Mr. Joel Mohrman, SBN 14253500
    Ms. Kari Robinson, SBN 24004891
    McGLINCHEY STAFFORD, P.L.L.C.
    1001 McKinney, Suite 1500
    Houston, Texas   77002
    Telephone: 713-520-1900
    Facsimile: 713-520-1025

          - and -

    Ms. Kristen Brauchle, SBN 24012326
    BROCKMAN, BRAUCHLE & EVANS, P.L.L.C.
    2020 Southwest Freeway, Suite 323
    Houston, Texas   77098
    Telephone: 713-224-6100
    Facsimile: 713-533-0303

### I N D E X

|  | PAGE | LINE |
|---|---|---|
| Jury Charge Conference --------------- | 4 | 1 |
| Charge of the Court ------------------ | 41 | 5 |
| Plaintiff's Closing Argument -------- | 60 | 20 |
| Defendant's Closing Argument -------- | 88 | 17 |
| Plaintiff's Closing Argument -------- | 128 | 15 |
| Jury Verdict ------------------------- | 142 | 10 |
| Plaintiff's Opening and Closing Argument ----------------------------- | 160 | 19 |
| Defendants' Opening and Closing Argument ----------------------------- | 163 | 9 |
| Jury Verdict ------------------------- | 166 | 17 |
| Court Reporter's Certificate ------- | 169 | 1 |

### PLAINTIFF'S EXHIBITS

| NO. | DESCRIPTION | ADMITTED |
|---|---|---|
| 30 | Net Worth Statement | 158, 12 |

instructions of the Court and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return to the court with your verdict.

And that is the charge of the Court, and now I'll take a little respite from all that talking.

MR. JUNELL: The Kinkaid debate program would be proud.

THE COURT: I'm telling you; I've still got the debater in me.

All righty. And with that, I invite the plaintiffs to begin their closing argument.

Mr. Junell.

MR. JUNELL: Thanks. Can you lower the screen, Judge?

THE COURT: Yes.

PLAINTIFF'S CLOSING ARGUMENT

MR. JUNELL: The bank wants to do what's all too common nowadays, and that's to have someone else clean up its mess.

Good morning, ladies and gentlemen. As you already know, my name is Mark Junell, and I'm

here today with Gary Block on behalf of Albert Ortiz. And it's been a long two-and-a-half weeks, and let me first thank you for your time in being here. I know that everybody has more important things to do and responsibilities, and we really do appreciate it. I know everybody does today. And I, you know, apologize that the case ran longer than it should have, and sometimes these -- litigation just does that, and -- and I want to thank you for your patience and for being here. It really is appreciated from us.

I also wanted to say that -- although we spent the majority of the time in the case, as you probably know, during our case-in-chief, I -- I just want to make sure that you all understand that it was really a split between the defendants and the plaintiffs so that you don't think that we took all the time during the last two weeks, because, if you recall, we called a couple of their witnesses out of order because of scheduling problems, their expert, Mr. Little, and -- and -- as well as Mr. Fedoronko, who had to fly in. And then every time we watched a video deposition or we read a deposition into the record, which was a lot, those involved both side's cuts. So we combined them up together and read them

at the same time, so -- and -- and we did our best to get out of here as quick as we can, and I'm going to do my best this morning to do the same thing.

This case is -- is complicated, and it's not the most exciting of subjects. And you're probably all kicking yourselves for not getting that juicy Tiger Woods case the judge talked about at the beginning, and I -- and I wish it were a little bit less dry, but -- but it's serious, nonetheless, and it's serious for Mr. Ortiz because it involves his home. We've been fighting this battle for, as you've heard a lot of times, four years.

The defendant, the bank, has hired some very good attorneys on their side, some of the best that money can buy, and they've done a very effective job in this case of trying to distract you from the mistakes that the bank made.

They have thrown -- and if you remember Mr. Block talking about in opening statements that he thought that the -- the bank was going to come at Albert Ortiz with both guns, they were going to throw everything at him they could in terms of making you take your eye off the prize and look at all the issues that doesn't matter -- they talk about Albert Ortiz making payments late, talk about the

fact that Albert Ortiz properly had the property insured for a little while and then missed an insurance on the second part.

They talk about other issues that are completely irrelevant to this case, G.H. Reid, the company that Mr. Ortiz is associated with, the short sale, the short sale that never went through. These are all issues that were designed to try and make Albert look bad. But we're not here to talk about Albert looking bad. We're here to talk about what the bank did wrong.

And a lot of y'all may or may not remember -- it's been a long time since we had the voir dire, which was a little over two weeks ago, and I was standing right up here, and I was talking to y'all about the bank's mistakes and how long this thing had been going on. And -- and I don't remember who it was. A couple of y'all -- at least it was said in voir dire that you -- the comment was made that if it's -- if it's been going on for four years, you would've thought the bank would've fixed the mistake, and that was the argument that -- that a couple of people out in the panel agreed with.

Well, if -- if it's been -- taken four years -- if somebody made a mistake, you would've

thought they'd fix that mistake. But they never did. They refused to admit they made a mistake, and they have fought as hard as anybody can fight in litigation to try and refuse to honor the agreements that they made with Mr. Ortiz.

And so when we come in here to trial, instead of talking about the mistake, instead of talking about the notice address, instead of talking about the wrong lockout, the fact they declared the property abandoned, instead of talking about the trespass that occurred on his property and the fact that he's been stripped of his home for four years, they want to talk about G.H. Reid, the short sale, his attorney, Mike Donovan. They want to talk about all the issues they can to try and distract you from what -- what occurred in this case.

There's a question in the jury charge, and I think it's Question Number 5 -- and I want to put this up on the ELMO real quick.

The question is -- seems pretty simple. -- who breached first. Was it Albert Ortiz, or was it the bank, National City, on behalf of Home Loan Services, its agent? And remember, Home Loan Services is the mortgage servicer.

And let me also speak, before we talk

about this, to the fact that National City, the bank -- they don't care about this case. When we got up -- one of the very last depositions that we read -- and I was up here on the stand. You remember the guy, Mr. Portz, who kept saying, "I have no loan-level knowledge. I have no knowledge. I have no knowledge." That was the person that National City designated as the person at the bank that has the most knowledge with regard to Mr. Ortiz's loan, and he couldn't answer a question. "I have no idea what's going on with Mr. Ortiz's loan."

And you know why you know the bank doesn't care about this case? Because they didn't even send a representative down here to this trial. We've been down here for two-and-a-half weeks. Mr. Stockey has been down here on behalf of Home Loan Services, but National City hasn't even sent a person down to monitor what's going on with this trial. That should speak something to you to tell you how the bank considers Mr. Ortiz. Do they consider him a person, or is he just a number to them?

That question right there, "Did -- who breached the -- first, who failed to comply with the deed of trust first?" -- and the answer is either Albert Ortiz or National City.

It's an easy question, and it's an easy answer. The very first breach occurred when they got on their computer system and they entered in the wrong address. That is an important -- it sounds like it's not a very important item, and in daily life, it's not that big a deal. But in -- context of mortgages and deed of trusts, it is huge.

The deed of trust says that you -- if they don't mail it to the right address, then you are not deemed to have received it.

That question says Mr. Ortiz designates, in -- March 15th of 2004, which is when the loan closed, that his mailing address was 6300 Dixie Drive. Mr. Stockey testified on the stand that HLS and the bank never mailed a single notice to 6300 Dixie Drive. All the bills that were mailed, all the notices, the lockout, the ten-day, the vacancy, the abandonment -- everything that they mailed went to the property address, where nobody was living and nobody was getting the mail.

Well -- Mr. Mohrman says, "Well, there's a black hole. You should've gotten some of that mail." That doesn't matter. What matters is what's on that piece of paper.

See, banks want to hold -- person to

the documents they sign. When you go in and you sign a mortgage and you sign a promissory note and a deed of trust with the bank, I can promise you that they're going to hold you to every single word that's on that document. Right?

But they don't want to be held to it. They don't want to be held to have to send stuff to the right address, and they don't want to have to be held to what we're going to see in a minute, which is the agreements that they signed with regard to those letter agreements. So instead, they'll do whatever they can to try and avoid that situation.

Now, we're here mainly because Mr. Ortiz was locked out of the house, and that's really kind of the linchpin of this case and where we are. The timing is important for you all to -- to understand, and -- and I think that it was -- it came out in a question and answer, but Mr. Ortiz was locked out of his house seven months before they foreclosed on him. Seven months before foreclosure, he was locked out. That's against the law. Banks can't come in and just decide, well, somebody's late on their payment. He -- he didn't have the property insured. He missed -- he was 29 days' late on a payment. "Let's lock him out of his house."

No. You can't do that. You can't do that under the law, and you can't do that under the property -- I mean, under the deed of trust, and you can't do it under the promissory note. There's a thing in the -- in the United States that's been around for a long time. It's called due process. And when you have a document -- a deed of trust and a mortgage, the bank has to foreclose on you. If you don't make your payments, they have to come in and properly foreclose on you. They can't go in and just change the locks because they don't like you and kick you out of the house.

So that's exactly what they did in this case. The bank, which is up in Pittsburgh -- they're not even down here, so they can't even come around and take a look at the property. They send their little local company called IMS. And you heard -- you heard -- saw some of those documents from IMS with their inspection reports. Remember? They had a couple pictures attached.

The very first document from IMS said that the property is occupied. They knew that property was occupied. They have it all through those call logs that we looked at. "Property's occupied. Being renovated." And yet they decided,

because they didn't like Albert, because he had made some payments late, and because they didn't like the fact that he wasn't -- that he was holding their feet to the fire with regard to the forced-placed insurance and the credit reporting and all the other mistakes they kept making -- and he couldn't get them on the phone. -- they said, "Well, you know what? Let's just go over there and change the locks on him." So on Thanksgiving Day 2005, they went over and changed the locks without even telling him. Didn't mail a notice to him to the right address. Didn't give him a phone call to let him know they were going to lock him out. Instead, they just changed the locks on him.

So Mr. Ortiz called them up, tried to figure out what was going on and explain to them that the property's being renovated. And I think that everybody understands -- and -- and it may not even be disputed that the property was being renovated. I'm not even sure they can deny that.

Now, the question is -- is what happens when property's renovated. Do they have a right to come in and change the locks because someone's fixing up their house? Of course not.

In fact, we looked at those Home Loan

Services procedures with Mr. Stockey, if you remember, and there was a little -- little deal that says "Enter SER2 Setup," and it had some computer codes on there. But in bold on that sheet, it says, "If it's determined that the property is not vacant or it's being rehabbed or refurbished, then stop the securitization. Call IMS. Tell them to call off the dogs, and don't change the locks."

That's what should've happened, but they didn't do that in this case. They locked him out of the property, and they did not even institute the foreclosure proceedings until June 6 of 2006, seven months later. That's when the trespass occurred. So the initial breach -- the first breach was when they got -- started sending stuff to the wrong address and when they entered it wrong on the computer, but the trespass occurred as soon as they locked him out of the property.

Now, this -- we've seen a lot of these things, and I know everybody's sick of them. I am. I can barely read them.

Zoom it out a little bit so you can see the date.

MR. BLOCK: That good?

MR. JUNELL: Okay. So 12/8/05 -- I

underlined the part to look at. "Refurbish. Under construction." That's -- this is their own internal notes. 12/8/05, it was being worked on. Okay? This is right after the lockout. This is a week later.

Did they bother to give Mr. Ortiz the keys back? "Oops. Sorry. We made a mistake. We didn't realize you were refurb -- refurbishing your -- your house. Let's let you back in"? No. Instead, they continue to lock out. They wait five or six more months, and then they start the foreclosure proceeding.

Now, you heard Mr. Lombardo, Fred Lombardo. He was the video deposition that we played, and -- and during his testimony you heard him say that in his experience working at that bank, he's never heard of a lockout before a foreclosure. Their own per -- their own employee says that he's never even heard of that situation, where you go and lock someone out before you foreclose against them.

Gail Walters, who's another employee, said that Mr. Ortiz could've gotten back in. "All he had to do was ask for the keys. We would've let him back in." Well, the evidence has shown -- and I'll show you in just a second. -- that we did ask for the keys over a period of years, and they never, ever

gave us the keys back.

The foreclosure that they entered into on June 6th of 2006 was wrongful. That has already been determined by this Court. That's an order October 28, 2008 -- right? -- almost two years ago that says that Ortiz is granted summary judgment as to his claim against Defendant, National City Bank of Indiana, for wrongful foreclosure.

They made a mistake. They didn't send the foreclosure papers to the right address, and I believe that Mr. Mohrman admitted that in his opening statement, that that foreclosure was -- was a mistake and it had been found to be wrongful.

It also goes on to say that -- that the substitute trustee's deed conveying the real property at 105 Birdsall is set aside, and title to the real property is restored to Ortiz. Okay?

That should've been the end of it, right? October 28, 2008, Mr. Ortiz should've gotten back in his house, should've got the keys back. In fact, the very next day, on October 29, 2008 --

Zoom out so you can see the date. Zoom out a little bit.

Beck, Redden & Secrest, which was Mr. Ortiz's attorneys at the time, sent a letter on

October 28 -- 29th, the day after that order came out and said, "Please promptly deliver to our office the keys to the property located at 105 Birdsall, Houston, Texas 77007." Did they do that? Of course not. They said, "That document's not final. That order's not final. We're still litigating this matter." So they never gave him the keys back with -- with regard to October 29th, 2008.

So here we are in 2010, in May, about a month or so ago, and Mr. Ortiz is still locked out of the house, which is now four years, and the foreclosure was wrongful. He still doesn't have possession of his house, still doesn't have the keys, and he starts taking depositions in this case to determine, you know, what's going on. "Let's talk about -- talk to some of these employees, figure out what happened with regard to this property."

During one of the depositions a month ago, in May, we found a very important document. This is a document that y'all have seen a couple times. This is the rescission deed. The date of this document is May of 2007. And you -- you don't need to read the whole thing because --

MR. BLOCK: 2009.

MR. JUNELL: I'm sorry. May of 2009.

74

May -- May 7th, 2009.

Zoom out to the bottom part.

You don't need to -- to read the whole thing, but what this document is -- it's something that they filed -- the bank filed last May -- not this May, last May, of '09, that says, "We're undoing the foreclosure, the one in 2006. Let's just put everybody back in their place. Let's restore the parties back to the status quo," it says up there, and it says, "The substitute trustee's deed dated June 6, 2006, is hereby rescinded and deemed void and of no effect for all purposes."

So the bank is admitting here that they made a mistake on the foreclosure. "Let's just undo it. Let's undo it three years later and put everybody back in the status quo." All right?

That should've been the end of it; shouldn't it have? Mr. Ortiz should've gotten the keys back at that point.

Zoom out.

I mailed a letter to Kari Robinson over here. She's an attorney for the bank, and I mailed this letter to her on January 20th, 2010, seven -- eight months after that rescission deed was filed, eight months later, and I said, "Now my client is

again requesting that the keys to the property be delivered to him." They said, "No, thanks. We're not giving you the keys back."

For years, Mr. Ortiz -- been asking for the keys back to his house, and in January of 2010, they have no right to refuse to give us the keys. In fact, they had already undone their own foreclosure. They had filed that rescission deed that undid everything, but still they said, "No. We're not going to give him the keys back."

The reason why, I think, Ms. Robinson said that in -- in response to my letter is because she didn't even know that the bank had filed that rescission deed in May. In fact, we discovered it during one of those 14 depositions that they said that we took unnecessarily.

We took that deposition, and we found out for the very first time in years of litigation that the bank, a year ago, had already undid its own foreclosure. The attorneys didn't even know about it. They didn't know about it. We didn't know about it. And so it begs the question: Why would the bank hide that information? Why would the bank not tell its own attorneys that they undid the own -- their own foreclosure and that title to the property had

been restored in Mr. Ortiz's name? I don't know why. That's why you guys are here today -- is to help us make that determination.

As jurors in this case, you know, you -- you can check your coat and your hat at the door, but you don't have to check your common sense. You don't have to check your experiences. And when a person takes the stand, you determine whether or not that person's telling the truth. You determine whether or not that reason is credible.

And so you look at Mr. Stockey's questions and answers that I talked to him about. And he had, kind of, an excuse for everything. And you determine whether or not that's credible and believable and whether or not it's reasonable, that they acted reasonably in that regard, and with regard to not returning his keys -- if that's something that's proper. And I'll tell you that it's not.

And there's a reason why this case has gotten so expensive and it's lasted so long and it's taken four years, and that's because, despite order from the Court, their own bank undoing the foreclosure deed, they still refuse to acknowledge that the house should've gone back to Albert Ortiz, and they refuse to give it to him, and that's why

we're standing here today. This case shouldn't have been tried. It shouldn't have gotten this far. The bank should've, like we said in voir dire, fixed its mistake when they discovered it years ago.

But in October of 2008, when the Court gave them an order to restore the property to Mr. Ortiz, they didn't do it. So instead, what the bank does is they scream to Albert Ortiz that he owes them more money, and they put on a witness, Mr. Stockey, to testify to what the bank's damages are in this case. And if you think about the damage time line -- they went through all the payments that were due from 2005 to the present, 2010, and they went through the taxes, and they went through the interest. But almost the entire time of all those numbers, the bank was in possession of the house and they had title to the house.

So they're asking this jury, you guys, to come in and make an award against Mr. Ortiz that says, "Oh, I know you didn't have the house for four years. You didn't have possession of the house. You didn't have title to the house. You were locked out of the house, but you still owe the bank interest, penalties, late charges, taxes, all those things on the house." It's ridiculous that the bank can take

everything away from him and say that he still owes them money for that. And it wasn't until May, when we discovered that rescission deed, that Albert finally went back and took possession of the house back, and since that time, no one's -- on the bank has ever complained that that happened, and that's the way things stand here today.

So since 2005, there have been no bills sent to Mr. Ortiz about taxes owed, about interest, payments, or anything like that that are owed. Since he was -- since he was foreclosed on in two thou -- or locked out in 2005 and foreclosed on in 2006, the bank has never once sent him a letter. You've never seen any letter that says, "Hey, you owe us, you know, taxes for this year," and -- and yet today they're here in court asking for those damages that I don't think they're entitled to because, A, Albert didn't have the house, and, B, because they had signed away their rights based on those letter agreements that we're going to talk about right now.

*THE COURT:* You have 13 minutes left.

*MR. JUNELL:* How much?

*THE COURT:* Thirteen.

*MR. JUNELL:* Okay.

A couple quick points on the letter

agreements. There's basically four letter agreements on here in this case. The first two, they don't complain about. Everything's cool with those letter agreements. May 31st, 2005, Fred Lombardo signed this that says Albert Ortiz pays -- I can't read it up there. -- 5,700, 6,700. As long as the bank's getting money, they have no problem. Mr. Lombardo had authority to execute that agreement, no problem.

So at that point, this letter agreement is fine. The bank has no complaint about it, and Mr. Lombardo -- I'm sorry. -- Mr. Fedoronko and Mr. Stockey testified that everything was fully complied with with this letter agreement.

Next letter agreement is also to Mr. Lombardo, and that's a little bit later, February 15th, 2005, and that was to fix another bank mistake, and they have no problem with this letter agreement too. Everybody had authority to sign it. The bank had authority to bind itself to this agreement, and yet the bank received $9,600. Good for them. They got their money. Nobody has a complaint about that letter agreement. Okay?

But they're kicking and screaming about the last two. These are very, very important in this case, and the first one is dated --

Well, let me put this one up first. I gave you the wrong -- here. This is June 23rd.

The first one is June 23, 2006. And if you look at that letter agreement -- the bank signs this document that says, "Mr. Ortiz, we will not ever sue you. We will not ever ask that you owe us any money." It could not be more clear, what this agreement says. And what they say is, "Well -- oh, I didn't know what I signed." Mr. Stockey said on the stand, "I didn't know if my job description gave me authority to sign it, but I didn't know if it didn't give me authority. So -- sure, the first two are okay. We -- we could sign and be bound by those two, but this one? No. Maybe not so much. I signed away the bank's rights" -- Mr. Stockey signed away the bank's rights with that letter agreement, and now he doesn't want to live by it.

We're here today because the bank has absolutely refused to acknowledge that this document is valid. It says that it won't pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise. That's exactly the opposite of what they're doing here today, asking for money against Mr. Ortiz.

It says that it fully releases

Mr. Ortiz from any and all obligations and liabilities that he may have had to Lender and he waives any and all demands and claims regarding any such obligations or liability. That's exactly the opposite of what they're doing here today. And the very last question, in my mind, couldn't even be any more clear. "It is agreed that no further sums will be made or owed by Borrower, and no further sums will be demanded or litigated by Lender."

If the bank wants to hold people to signed documents, then why can't we hold the bank to their signed documents? If the bank signs an agreement that says "We're not going to ask for any more sums to be owed by Mr. Ortiz," then why is it fair for Mr. Ortiz to have to spend hundreds of thousands of dollars and -- and fight this case for four years just to make this agreement stand up?

Mr. Stockey didn't even sign this -- this -- this agreement once. He signed it twice. Okay? He signed it again in July, about -- a couple weeks later, and it says the same thing, that that agreement -- the first agreement applies, and it applies not just to HLS, but also National City Bank of Indiana. And again, it says, "National City Bank of Indiana also releases -- waives any and all actual

and potential demands and claims regarding any obligations or liabilities of the borrower."

So what does Mr. Stockey do? He says, "Well, I must've made a mistake. I didn't -- I didn't know what I was doing." This -- this call log is key here because it says June 26, 2006 -- that's the date of that first letter agreement. It says, "Gave to BAB for response." Who's "BAB"? That's Byron Blevins. Remember? We saw his video.

He's their attorney. They gave it to their own attorney to review before they signed it.

They can't come up here and say we tricked them into anything -- Mr. Donovan tricked him in because he's smarter than Mr. Stockey. They gave it to their own attorney to sign off on before he signed that document. And then he signed another document a week and a half later. But Mr. Stockey says, "Oh, he's -- he's not -- attorney. He's a letter writer, and -- and -- he had a law degree. He worked at the company. He was an in-house counsel, at least at some point, but -- but during June 26, in that two-week time period, maybe longer, he was a letter writer, not attorney."

Ladies and gentlemen, that doesn't make any sense at all. Why would he give that document to

a letter writer to review before he signed it?

So what we know in this case, essentially, is that they had the wrong address from the very beginning. They breached the contract first. Every single piece of paper that they sent was mailed to the wrong address. They foreclosed wrongfully. The Court has already made that determination, and I think the evidence has also shown that since they took over the property, they haven't really done anything to maintain it. Their own expert talked about how the yard was in terrible condition, $9,000 to re -- re -- relandscape the yard. And -- and so a lot of the property has probably deteriorated over the last five years because nobody's been living in it.

So the last couple minutes that I have, I want to talk to you just briefly about our damages in the case and what we're asking for.

Our damages in this case are real simple: loss of use of the home. You know, what -- what is it worth for you to be stripped of your home and be unable to use it for the period of time that Albert was stripped of his home wrongfully?

Mark Sikes was an expert appraiser who came up and testified, and you remember his

testimony. He says loss of use is based on the market rent that was in place at that time and -- and the damages are $258,000. That's what we're asking for in damages for the fact that they have stripped Mr. Ortiz of his home and breached their contract under the deed of trust.

Now, they -- they hired another expert. Their -- their paid gun got up, took the stand and said, "Wait a minute. No. It's not 258. It's zero. You -- you should -- you won't get any damages for losing your home for five years." It's ridiculous.

He used a renovation cost of $91,000 that was based on 2010 building costs even though he acknowledged that the renovation needed to occur back in 2005. So the building costs are off.

He used comparables and comps in his -- in his valuation that were wrong, that were outdated and -- and -- and that were significantly -- the property was worth significantly less than Mr. Ortiz's property.

And he used a lost-profit analysis -- that you have to take into account the net gains and the lost profits of that, and it's not that. It's simple. It's what does the property rent for during that time period? And that's what the damages are.

So you, as the jury, can make a determination of whether or not Mark Sikes' number is correct, whether or not zero is correct or if there's some number in between. Based on the evidence that you've heard, you can make that determination.

The last item for damages is our attorneys' fees in the case, and I testified to it yesterday, and you remember. It's 473,317.

*THE COURT:* You have five minutes left.

*MR. JUNELL:* Okay. Thank you, Judge.

This case has been fought as hard as a case can be fought by the bank. Mr. Mohrman took the stand yesterday and said, "Well, we're only asking for 296,000 in attorneys' fees." Basically, round it up to $300,000. "That's all we're asking for," and they're just asking for their fees, not the fees for all the other attorneys that worked on the case before they got involved last November.

Mr. Mohrman's bill, which is an exhibit in here, for April -- his law firm billed the bank $67,000. In March, they billed the bank $71,000. They are only asking this Court to award six months of their time. Six months, this firm has billed $300,000 to the bank.

Well, this case has been going on for

four years, not six months. So for Mr. Mohrman to take the stand and say that Mr. Ortiz's attorneys' fees of 473 are unreasonable -- that doesn't make any sense when his own firm billed 300 grand in six months. You see, before Mr. Mohrman and his law firm got involved, there was another team of lawyers that were on the case. Mr. Ortiz has had to fight this case four years and fight attorneys from the very beginning or else at any point in time this would be over and he'd be out of his house and out of luck.

And at the end of the day, this could've happened to a single mom, could've happened to a newlywed couple with a few kids, and it could've happened to an elderly person, someone that did not have the financial resources to be able to stand up to the bank and say, "We're not going to take this."

You know, how many times -- other times has this happened where people just bow down and do what the bank wants? Because if Mr. Ortiz wants to stand up to the bank and say, "You know what? What you did was wrong. Taking my house was wrong" and fight them -- look what it's gotten him. It's gotten him four years in court, 18 depositions, 4 mediations, tons and tons of hearings and hundreds of thousands of dollars in legal bills.

That's what fighting the bank gets you, and that's where Mr. Ortiz is here today. So I would submit to you that the fees in this case -- our fees of four hundred thou -- $473,000 -- which are not even twice as much as Mr. Mohrman's firm has billed in one fourth of the amount of time that they -- that this case has been pending.

We have the burden of proof in this case. We're the plaintiff. Judge talked about that, and we talked about that a little bit at the beginning. We have to prove the case beyond a preponderance of a doubt. It's not beyond a reasonable doubt, like it is in criminal court.

Ms. Norris, you probably know this from law school.

It's -- all you have to prove is 51 percent, slightly better than halfway. If you're on a football field and you get over the 50-yard line, then we've proven our case. That's preponderance of the evidence.

The evidence in this case has shown that they wrongfully foreclosed. There's been three different summary-judgment orders entered by this Court. The first one found that the foreclosure was wrongful. The second one found that they -- all

their counterclaims were dismissed, and the third one found that they have no -- that they cannot claim any liability under the note because they waived it in that letter agreement dated June 23rd, that they cannot say that Albert owes any more money under the note. Those are all orders from this Court.

So here we are, four years later. You would've thought the bank would've fixed the mistake if they knew about it, but they haven't fixed the mistake, and we're still here, and, unfortunately, the bank is doing what's all too common nowadays, which is asking someone else to clean up its mess.

Thank you.

*THE COURT:* Mr. Mohrman.

*MR. MOHRMAN:* Thank you, Judge. May it please the Court.

*DEFENDANTS' CLOSING ARGUMENT*

*MR. MOHRMAN:* Ladies and gentlemen of the jury, my dad died in December of 1983. He had had a number of heart attacks, and after the last one he was in really bad shape. He was in intensive care up at Methodist, and I guess I sort of realized how serious the problem was for him when he was just brushing his teeth there in his bed -- and you know how they have you all hooked up to things, and

NO. 2006-61178

CONFIRMED FILE DATE: 8/13/2010

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 164TH JUDICIAL DISTRICT |
| | § | |
| FRED LOMBARDO, NATIONAL | § | |
| CITY HOME LOAN SERVICES, INC., | § | |
| D/B/A FIRST FRANKLIN LOAN | § | F I L E D |
| SERVICES, NATIONAL CITY BANK | § | |
| OF INDIANA, KEYSTONE ASSET | § | AUG 1 3 2010 |
| MANAGEMENT, INC AND RICHARD | § | Time: |
| HOWELL D/B/A ALEXANDER | § | Harris County, Texas |
| HUNTER PROPERTIES A/K/A | § | By |
| | | Deputy |
| ALEXANDER HUNTER PROPERTIES, INC. | § | OF HARRIS COUNTY, TEXAS |

## FINAL JUDGMENT

On June 15, 2010, the Court called this case for trial. Plaintiff, Albert Ortiz ("Ortiz"), appeared in person and through his attorneys and announced ready for trial. Defendants National City Home Loan Services, Inc. ("HLS"), and National City Bank of Indiana ("National City") appeared through their attorneys and announced ready for trial. The Court determined that it had jurisdiction over the subject matter and the parties. A jury having been previously demanded, the Court then impaneled and swore the jury consisting of twelve qualified jurors. The case proceed to trial, and the Jury heard the evidence and arguments of counsel.

Following the presentation of Plaintiff Ortiz's case and after Plaintiff had rested, the Defendants HLS and National City moved for a directed verdict. The court, having considered the motion, rendered judgment as a matter of law in favor of the Defendants with respect to Plaintiff Ortiz's claims for fraud, common-law unreasonable debt collection, statutory debt collection violations, statutory deceptive trade practice violations, breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy, and defamation per se.

At the conclusion of the evidence, the Court submitted questions, definitions, and

EXHIBIT

6

instructions to the Jury. In response, the Jury made findings that the Court received, filed, and entered of record. ~~[redacted]~~

~~[redacted]~~

After the Jury returned its verdict, Plaintiff and Defendants each moved for judgment on the verdict. ~~[redacted]~~

~~[redacted]~~

~~[redacted]~~

~~[redacted]~~

IT IS THEREFORE ORDERED by the Court that the motion of Plaintiff for judgment on the verdict is GRANTED *in part* and that the motion of Defendants for judgment on the verdict is DENIED. *in part*

Therefore, the Court renders judgment for Plaintiff and against the Defendants, and renders judgment as follows:

IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz recover from Defendant National City the sum of ~~$100,000.00~~ *$87,500.00 (~~[redacted]~~ after settlement credit of 12,500.00 paid by Defenda Keysta* plus pre-judgment interest ~~[redacted]~~ which is interest on that sum at the annual rate of five percent (5%) per annum, from September 28, 2006, until the day before the date of final judgment;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz recover from Defendant HLS the sum of ~~$90,000.00~~ *10,000.00* plus pre-judgment interest ~~[redacted]~~, which is interest on that sum at the annual rate of five percent (5%) per annum, from September 28, 2006, until the day before the date of final judgment;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz also recover from Defendant HLS the separate sum of $100.00, as exemplary damages;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz, having

requested and proved reasonable and necessary attorneys' fees, also recover from Defendant National City attorneys' fees in the sum of $400,000.00, for services rendered through the trial of this case.

~~Additionally, if Defendant National City files an appeal (or cross-appeal) that is ultimately unsuccessful, Plaintiff Ortiz shall recover from Defendant National City the additional sum of $100,000.00 as a reasonable attorney fee.~~

~~Additionally, if Defendant National City files a petition for review (or cross-petition) in the Supreme Court of Texas that is unsuccessful or relief is not ultimately granted to Defendant National City, Plaintiff Ortiz shall recover from Defendant National City the additional sum of $50,000.00 as a reasonable attorney fee.~~

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants National City and HLS take nothing in this case;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz recover against Defendants National City and HLS post-judgment interest on all amounts awarded herein at the rate of five percent (5%) per annum from the date of judgment until paid;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all costs of court incurred herein are taxed against Defendants National City and HLS for recovery by Plaintiff Ortiz;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz is ~~granted~~ DENIED judgment on his affirmative defense of statute of limitations, with respect to the counter-claim of Defendant National City for judicial foreclosure, and that National City take nothing on such claim;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Deed of Trust dated March 15, 2004, recorded in Clerk's File No. X469555 of the Official Real Property Records of Harris County, Texas, and securing the Note dated March 15, 2004 ████████████████████

Unofficial Copy Office of Loren Jackson District Clerk

to the real property (the "Property") with a common address of

105 Birdsall, Houston, Harris County, Texas 77007, and legally described as follows:

LOT SIX (6), IN BLOCK ONE (I) OF VILLAS OF BAYOU BEND. A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING D TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS;

and that said Note and Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that that the Substitute Trustee's Deed of June 6, 2006, recorded in the Real Property Records of Harris County, Texas; Clerk's File Number Z366547, and resulting from Defendants' wrongful foreclosure of the Property, is set aside, rescinded, deemed null and void and of no effect;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment.

All writs and processes for the enforcement and collection of this judgment and for the costs of court may issue as necessary.

All relief requested in this case and not granted herein is denied. This judgment finally disposes of all parties and all claims and is appealable.

SIGNED this 18th day of August, 2010.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM AND SUBSTANCE:**

ATTORNEYS FOR PLAINTIFF

Mark A. Junell
THE JUNELL, LAW FIRM, P.C.
SBOT#: 24032610
3900 Essex, Suite 390
Houston, Texas 77027
Phone: 281-768-3530
Fax:    832-213-1830


Gary Michael Block
SBOT#: 02497200
7660 Woodway Dr., Suite 590
Houston, Texas 77063
Phone: 713-266-6700
Fax:  713-266-8528

Unofficial Copy Office of Loren Jackson District Clerk

CAUSE NO: 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ,<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | |
| | § | HARRIS COUNTY, TEXAS |
| FRED LOMBARDO;<br>NATIONAL CITY HOME LOAN<br>SERVICES, INC, DBA FIRST<br>FRANKLIN LOAN SERVICES;<br>NATIONAL CITY BANK OF INDIANA;<br>KEYSTONE ASSET MANAGEMENT,<br>INC.; and RICHARD HOWELL DBA<br>ALEXANDER HUNTER PROPERTIES<br>AKA ALEXANDER HUNTER<br>PROPERTIES, INC.,<br>Defendants, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **FILED**<br>Loren Jackson<br>District Clerk<br><br>JUN 2 9 2010<br><br>Time: _____ .00 PM<br><br>By _____ Thompson<br>164TH JUDICIAL DISTRICT |

## THE CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

**Exhibit I**

EXHIBIT

6

5. You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6. You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence unless otherwise instructed. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No". The term "preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted to this case. Whenever a question requires other than a "Yes" or "No" answer, your answer must be based on a preponderance of the evidence unless otherwise instructed.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

## Definitions and Stipulated Facts

"Albert Ortiz" shall refer to the Plaintiff in this lawsuit.

"HLS" shall refer to Defendant, National City Home Loan Services, Inc., d/b/a First Franklin Loan Services.

"National City" shall refer to Defendant, National City Bank of Indiana.

"Keystone" shall refer to Keystone Asset Management, Inc.

"The Birdsall Property" shall refer the residence at 105 Birdsall, Houston, Texas, made the subject of this lawsuit.

"The Note" shall refer to the promissory note whereby Albert Ortiz borrowed money from National City to purchase the Birdsall Property.

"The Deed of Trust" shall refer to the instrument signed by Albert Ortiz in connection with his signing of the Note.

"The Letter Agreements" shall refer to the June 23 and July 5, 2006 letters.

"Howell" shall mean Richard Howell, d/b/a Alexander Hunter Properties, a/k/a/ Alexander Hunter Properties, Inc.

"Lombardo" shall mean Fred Lombardo.

3

## QUESTION NO. 1

Did National City fail to comply with the Deed of Trust in any one or more of the following aspects?

Consider the following instructions, in responding to the question, and none other.

- By declaring that Albert Ortiz had abandoned the Birdsall Property. "Abandonment" means the relinquishment of the possession of property by the owner with the intention of terminating his ownership, but without vesting it in anyone else."

- By taking action that was not reasonable or appropriate, specifically by securing and/or possessing the Birdsall Property without providing Albert Ortiz proper advance notice of its intent to do so or after request for return from Ortiz.

- By failing to send to notices to Albert Ortiz to the correct address.

Answer "Yes" or "No".

ANSWER: ___Yes___

Unofficial Copy Office of Loren Jackson District Clerk

4

If you have answered "Yes" to Question No. 1, then answer the following question. Otherwise, do not answer this question.

## QUESTION NO. 2

Do you find that failure to comply with the Deed of Trust by National City was a material breach of the Deed of Trust?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

(a) The extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) The likelihood that the party failing to perform of to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

(e) The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer "Yes" or "No".

Answer: __Yes__

5

## QUESTION NO. 3

Do you find that Albert Ortiz failed to comply with the terms of the Deed of Trust in any of the following particulars?

Consider the following instructions, in responding to the question, and none other:

- By failing to occupy the Birdsall Property as his principal residence and/or secure the property pursuant to the terms of the Deed of Trust.

- By failing to make payments as required under the Deed of Trust.

- By failing to keep the Birdsall Property insured.

Answer "Yes" or "No".

Answer: _Yes_

6

If you have answered "Yes" to Question No. 3, then answer the following question. Otherwise, do not answer this question.

## QUESTION NO. 4

Do you find that the failure to comply with the Dead of Trust by Albert Ortiz was a material breach of the Deed of Trust?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

(a)     The extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b)     The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c)     The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d)     The likelihood that the party failing to perform of to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

(e)     The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer "Yes" or "No".

Answer: _____Yes_____

7

If you have answered "Yes" to Questions No. 2 and No.4, then answer the following question. Otherwise, do not answer this question.

QUESTION NO. 5

Who failed to comply with the Deed of Trust first?

Answer "Albert Ortiz" or "National City."

Answer: _National City_

Unofficial Copy Office of Loren Jackson District Clerk

8

## QUESTION NO. 6

With respect to the Letter Agreements, did HLS or National City validly agree that Albert Ortiz would receive ownership and possession of the Birdsall Property without obligation for further payments on the Note, and that HLS and National City would not pursue any claims, lawsuits and/or obligations that they could have asserted against Albert Ortiz?

Answer "Yes" or "No."

Answer: _No_

9

Unofficial Copy Office of Loren Jackson District Clerk

If you have answered "Yes" to Question No. 6 then answer the following question. Otherwise, do not answer Question No. 7.

## QUESTION NO. 7

Do you find that the Letter Agreements were unconscionable as applied to HLS and National City?

You are instructed that an agreement is unconscionable if it:

A. Takes advantage of the lack of knowledge, ability, or capacity of a person to a grossly unfair degree; or

B. Results in a gross disparity between the value received and the consideration paid in a transaction involving the transfer of consideration.

An agreement can be unconscionable if entered into in contravention of an attorney's professional obligations under the applicable rules of conduct.

Answer "Yes" or "No."

Answer: _____

10

## QUESTION NO. 8

Do you find that the negligence, if any, of those named below proximately caused a loss of or damage to the personal property of Albert Ortiz?

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No" for each of the following.

a.  HLS                 _Yes_

b.  National City        _No_

c.  Keystone             _No_

d.  Richard Howell       _No_

e.  Albert Ortiz         _No_

Unofficial Copy Office of Loren Jackson District Clerk

11

If you answered "Yes" to Question No. 8, then answer the following question. Otherwise, do not answer.

## QUESTION NO. 9

Assign percentages of responsibility only to those you found caused or contributed to cause the damages. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found.

For each person you found caused or contributed to cause the damages to Albert Ortiz find the percentage of responsibility attributable to each:

a   HLS                    _100_%

b.  National City          _0_ %

c.  Keystone               _0_ %

d.  Richard Howell         _0_ %

e.  Albert Ortiz

12

## QUESTION NO. 10

Do you find that HLS or National City trespassed upon the Birdsall Property?

A trespass occurs if a person has ownership or right to possession of real property, and another person physically, intentionally and voluntarily enters upon the property, causing damages.

You are instructed that a trespass did not occur if HLS or National City acted as a "mortgagee in possession." A mortgagee in possession is a party who takes possession of mortgaged property by virtue of a contract between it and the mortgagor (borrower), or where a party takes possession of property under the mistaken belief that a valid foreclosure had taken place.

You are instructed that a person who enters on real property lawfully pursuant to a conditional or restricted consent and remains after his or her right to possession terminates and demand is made for his or her removal becomes a trespasser from the beginning, and the law will operate retrospectively to defeat all acts done by him under color of lawful authority.

Answer "Yes" or "No" for each of the following.

a. HLS:  _Yes_

b. National City:  _No_

13

# QUESTION NO. 11

Do you find that HLS or National City, or both, converted personal property belonging to Albert Ortiz?

Conversion occurs when each of the following elements are present.

1. Plaintiff owned, possessed, or had the right to immediate possession of property.

2. The property was personal property.

3. Defendant wrongfully exercised dominion or control over the property.

4. Plaintiff suffered injury.

Answer "Yes" or "No" for each of the following.

a. HLS:  _____Yes_____

b. National City:  _____No_____

Unofficial Copy Office of Loren Jackson District Clerk

14

## QUESTION NO. 12

Do you find that HLS or National City, or both, committed trespass with regard to personal property belonging to Albert Ortiz?

A trespass against personal property occurs when a party, with or without the use of force, unlawfully injures or interferes with another's personal property.

Answer "Yes" or "No" for each of the following .

a. HLS:           _Yes_

b. National City:     _No_

Unofficial Copy Office of Loren Jackson District Clerk

15

If you have answered "Yes" to Question No. 1 and 2 and "National City" to Question No. 5, then answer the following question.

## QUESTION NO. 13

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Albert Ortiz for his damages, if any, that resulted from such failure to comply with the Deed of Trust?

Consider the following elements of damages, if any, and none other:

Loss of use – may be measured as lost rental value. Rental value is the amount of rent a property would earn on the open market, taking into consideration comparable properties, condition of the property at the time of the loss, and other operating costs and expenses.

Do not include in your answer any amount that you find Albert Ortiz could have avoided by the exercise of reasonable care.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Answer separately in dollars and cents for damages, if any.

Loss of use sustained in the past

Answer: $ 100,000

16

If you have answered "Yes" to Question No. 3 and 4 and "Ortiz" to Question No.5, and you have answered "Yes" to Question No. 7, then answer the following question.

QUESTION NO. 14

What amount of money, if any, remains unpaid by Albert Ortiz to National City under the Deed of Trust?

Answer in dollars and cents, if any.

Answer:_____

17

Unofficial Copy Office of Loren Jackson District Clerk

Answer Question 15, if you answered "Yes" for Defendants to Question 8 and answered:

1. "No" for Albert Ortiz to Question 8, or

2. *50 percent or less* for *Albert Ortiz* to Question 9.

Otherwise, do not answer Question 15.

## QUESTION NO. 15

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate ALBERT ORTIZ for his damages, if any, that resulted from such negligence?

Consider the following elements of damages and none other:

Fair market value. The fair market value of the personal property of Albert Ortiz that was lost or damaged, as of the date of the negligence.

Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies to law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer in dollars and cents for damages, if any.

Answer: $ 10,000

18

If you have answered "Yes" to Question No. 10, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 16

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Albert Ortiz for his damages, if any, that resulted from any trespass?

Consider the following elements of damages, if any, and none others.

Loss of use - may be measured as lost rental value. Rental value is the amount of rent a property would earn on the open market, taking into consideration comparable properties, condition of the property at the time of the loss, and other operating costs and expenses.

Do not include in your answer any amount that you find Albert Ortiz could have avoided by the exercise of reasonable care.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Answer separately in dollars and cents for damages, if any.

a.    Loss of use sustained in the past

Answer: $ 22,000

19

If your answer to Question Number 11 is "Yes", then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 17

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate ALBERT ORTIZ for his damages, if any, that resulted from such conversion?

Consider the following elements of damages and none other:

Fair market value. The fair market value of the personal property of Albert Ortiz that was converted, as of the date of the conversion.

Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies to law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer in dollars and cents for damages, if any.

Answer: $ 1,500

Unofficial Copy Office of Loren Jackson District Clerk

20

If your answer to Question Number 12 is "Yes", then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 18

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate ALBERT ORTIZ for his damages, if any, that resulted from such trespass to personalty?

Consider the following elements of damages and none other:

　　　a.　　Fair market value. The fair market value of the personal property of Albert Ortiz that was trespassed upon, as of the date of the trespass.

Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies to law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer in dollars and cents for damages, if any.

Answer: $ _1,500_

Unofficial Copy Office of Loren Jackson District Clerk

21

If you have answered "Yes" to Question No. 1 and 2 and "National City" to Question No.5, then answer the following question.

Otherwise, do not answer the following question.

## QUESTION NO. 19

What is a reasonable fee for the necessary services of Albert Ortiz's attorneys in this case, stated in dollars and cents?

Answer with an amount for each of the following:

    a.    For preparation and trial.

Answer: $400,000

    b.    For an appeal to the Court of Appeals.

Answer:_____

    c.    For making or responding to an application for writ of error to the Supreme Court of Texas.

Answer:_____

    d.    If application for writ of error is granted by the Supreme Court of Texas.

Answer:_____

22

Unofficial Copy Office of Lorena of Jackson District Clerk

If you have answered "Yes" to Question No. 3 and 4 and "Ortiz" to Question No.5, then answer the following question.

Otherwise, do not answer the following question.

## QUESTION NO. 20

What is a reasonable fee for the necessary services of National City attorneys in this case, stated in dollars and cents?

Answer with an amount for each of the following:

    a.    For preparation and trial.

Answer:_____

    b.    For an appeal to the Court of appeals.

Answer:_____

    c.    For making or responding to an application for writ of error to the Supreme Court of Texas.

Answer:_____

    d.    If application for writ of error is granted by the Supreme Court of Texas.

Answer:_____

Unofficial Copy Office of Loren Jackson District Clerk

Answer the following question regarding Defendants only if you unanimously answered "Yes" to Question 8 regarding Defendants. Otherwise, do not answer the following question regarding Defendants.

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

## QUESTION 21

Do you find by clear and convincing evidence that the harm to Albert Ortiz resulted from gross negligence?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" means an act or omission by Defendants,

(a) which when viewed objectively from the standpoint of Defendants at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(b) of which Defendants has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No."

Answer: __Yes__

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror—

1. to preside during your deliberations,

2. to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3. to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4. to vote on the questions,

5. to write your answers to the questions in the spaces provided, and

6. to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the court of this fact.

When you have answered all the questions you are required to answer under the instructions of the court and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____
JUDGE PRESIDING

24

Unofficial Copy from Jackson District Clerk

## Certificate

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if the jury is unanimous.)

_____
PRESIDING JUROR

_____
Printed Name of Presiding Juror

(To be signed by those rendering the verdict if the jury is not unanimous.)

| Jurors' Signatures | Jurors' Printed Names |
|---|---|
| _signature_ | Robson Vela |
| _signature_ | Christen Brenner |
| _signature_ | Mary Burgert |
| _signature_ | CHERI GAY |
| _signature_ | NANCY A. STONE |
| _signature_ | Caroline Petcin |
| _signature_ | JEREMY L. Rice |
| _signature_ | Pam Aycock |
| _signature_ | GERALD H. VAN DE BRUEN KARST |
| _signature_ | Jackie Norris |
| _signature_ | John Keys |

25

CAUSE NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ, Plaintiff, | § § § | IN THE DISTRICT COURT OF |
| v. | § § | |
| FRED LOMBARDO; NATIONAL CITY HOME LOAN SERVICES, INC. DBA FIRST FRANKLIN LOAN SERVICES; NATIONAL CITY BANK OF INDIANA; KEYSTONE ASSET MANAGEMENT, INC.; and RICHARD HOWELL DBA ALEXANDER HUNTER PROPERTIES AKA ALEXANDER HUNTER PROPERTIES, INC., Defendants. | § § § § § § § § § § § | HARRIS COUNTY, TEXAS **FILED** Loren Jackson District Clerk JUN 29 2010 6:00 pm 151st JUDICIAL DISTRICT |

## THE CHARGE OF THE COURT

**LADIES AND GENTLEMEN OF THE JURY:**

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

# Exhibit 2

5. You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6. You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence unless otherwise instructed. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No". The term "preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted to this case. Whenever a question requires other than a "Yes" or "No" answer, your answer must be based on a preponderance of the evidence unless otherwise instructed.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

## Definitions and Stipulated Facts

"Albert Ortiz" shall refer to the Plaintiff in this lawsuit.

"HLS" shall refer to Defendant, National City Home Loan Services, Inc., d/b/a First Franklin Loan Services.

"National City" shall refer to Defendant, National City Bank of Indiana.

"Keystone" shall refer to Keystone Asset Management, Inc.

"The Birdsall Property" shall refer the residence at 105 Birdsall, Houston, Texas, made the subject of this lawsuit.

"The Note" shall refer to the promissory note whereby Albert Ortiz borrowed money from National City to purchase the Birdsall Property.

"The Deed of Trust" shall refer to the instrument signed by Albert Ortiz in connection with his signing of the Note.

"The Letter Agreements" shall refer to the June 23 and July 5, 2006 letters.

"Howell" shall mean Richard Howell, d/b/a Alexander Hunter Properties, a/k/a/ Alexander Hunter Properties, Inc.

"Lombardo" shall mean Fred Lombardo.

Unofficial Copy Office of Loren Jackson District Clerk

3

QUESTION 1

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, should be assessed against HLS and awarded to Albert Ortiz as exemplary damages for the conduct found in response to Question 21?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are—

a.    The nature of the wrong.

b.    The character of the conduct involved.

c.    The degree of culpability of the wrongdoer.

d.    The situation and sensibilities of the parties concerned.

e.    The extent to which such conduct offends a public sense of justice and propriety.

f.    The net worth of HLS.

Answer in dollars and cents, if any.

HLS                              Answer: $/00

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror—

1. to preside during your deliberations,

2. to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3. to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4. to vote on the questions,

5. to write your answers to the questions in the spaces provided, and

6. to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the court of this fact.

When you have answered all the questions you are required to answer under the instructions of the court and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

JUDGE PRESIDING

24

## Certificate

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if the jury is unanimous.)

_____
PRESIDING JUROR

_____
Printed Name of Presiding Juror

(To be signed by those rendering the verdict if the jury is not unanimous.)

Jurors' Signatures                          Jurors' Printed Names

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

25

Opinion and Dissenting Opinion of November 20, 2012 Withdrawn and Judgment Vacated; Appellee's Amended Motion for Rehearing Granted in Part and Denied in Part; Appellant's Motion for Rehearing Denied as Moot; Petition Denied; Affirmed in Part; Reversed in Part; Remanded; and Opinion and Dissenting Opinion on Rehearing filed May 16, 2013.



In The

# Fourteenth Court of Appeals

---

## NO. 14-10-01125-CV

---

## NATIONAL CITY BANK OF INDIANA AND NATIONAL CITY HOME LOAN SERVICES, INC., Appellants/Cross-Appellees

### V.

## ALBERT ORTIZ, Appellee/Cross-Appellant

---

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2006-61178

---

## NO. 14-10-01262-CV

---

## IN RE ALBERT ORTIZ, Relator



EXHIBIT

7

## OPINION ON REHEARING

We withdraw our opinion and vacate our judgment of November 20, 2012; grant appellee's amended motion for rehearing in part and deny it in part; deny appellants' motion for rehearing as moot; and on rehearing, issue this opinion and its accompanying judgment.

In this opinion on rehearing, we address cross-appeals and a mandamus petition arising out of the foreclosure of a residential property. The borrower, Albert Ortiz, sued the bank and its mortgage servicer for a variety of claims including wrongful foreclosure, breach of contract, negligence, trespass to real property, trespass to personalty, and conversion. The bank counterclaimed to recover on the note and to judicially foreclosure the deed-of-trust lien, and the borrower responded that the bank's representative had signed letter agreements waiving and releasing the bank's claims. The trial court granted summary judgment in favor of the borrower on his wrongful-foreclosure claim, set aside the foreclosure sale, and restored title in the property to the borrower. The trial court also granted partial summary judgments allowing the bank to pursue claims under the deed of trust, but not to pursue claims arising from the promissory note. After a jury trial, the trial court rendered judgment in the borrower's favor on his claims for breach of contract, trespass to personalty, and gross negligence, and ruled against the bank and mortgage servicer on all of their claims, instead declaring that the borrower had no further obligations under the note and deed of trust.

The effect of the trial court's judgment was to award the home to the borrower free and clear of all debt on this loan (on which he had repaid none of the $472,000 principal) and to additionally award him damages and attorney's fees in

the amount of $497,600.

We conclude that the trial court erred in (a) granting summary judgment in Ortiz's favor on his argument that the bank waived or released its claims, and in incorporating the erroneous interlocutory rulings into the final judgment; (b) denying the bank's claim for judicial foreclosure; and (c) declaring that the note and deed of trust are "fully, completely and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing." The trial court did not err, however, in (d) applying the one-satisfaction rule to limit the damages awarded to Ortiz, (e) failing to render judgment that the bank's judicial-foreclosure claim was time-barred, or (f) denying Ortiz's motion to expunge the notice of lis pendens. In light of our disposition of these issues, we deny Ortiz's petition for a writ of mandamus, affirm the judgment in part, reverse it in part, and remand the case for retrial of the bank's claim for judicial foreclosure, which we conclude is not time-barred, and the breach-of-contract claims between the bank and Ortiz.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2004, Albert Ortiz, the plaintiff below, purchased a house ("the Birdsall Property" or "the Property"), and financed it by executing a promissory note ("the Note") secured by a deed of trust ("the Deed of Trust"). At all material times, defendant National City Bank of Indiana ("National City") was the owner and holder of the Note and the beneficiary of the Deed of Trust, and defendant National City Home Loan Services, Inc. ("HLS") was the mortgage servicer.[1]

Under the terms of the Deed of the Trust, Ortiz was required to maintain

---

[1] In their notices of appeal and documents filed in this court, the parties identify "HLS" as "Home Loan Services, Inc.," but no such corporation is identified in the parties' pleadings in the trial court or in the trial court's judgment. In Ortiz's pleadings "HLS" is identified as "National City Home Loan Services, Inc. d/b/a First Franklin Loan Services." In the trial court's judgment, "HLS" also is identified as "National City Home Loan Services, Inc."

3

insurance on the home. If he failed to do so, then National City was permitted to insure the Property and treat the amounts expended for insurance as additional secured debt. Although Ortiz's privately purchased insurance was still in effect at this time, HLS sent a notice to Ortiz on September 1, 2004 that it had insured the Property and charged his escrow account for the annual premium shown on the policy it enclosed with the notice; however, HLS sent the letter to the wrong address. The premium on the policy enclosed with the letter was $10,903.00; with taxes and surcharges, the total amount charged was $11,442.70. As Ortiz later testified, HLS (a) applied Ortiz's mortgage payments to this insurance purchase, and in a telephone conversation with Ortiz, demanded that he make additional payments to cover the resulting deficiencies; (b) made a negative report to a credit bureau based on the erroneous conclusion that Ortiz had not paid all that was due; and (c) learned of its mistake and agreed to correct the negative report to the credit bureau, but failed to do so.

Ortiz consistently paid late or missed payments. On November 1, 2005, HLS mailed Ortiz a notice of its intent to accelerate the loan, and on December 21, 2005, HLS notified Ortiz by mail that it had accelerated the loan, but these letters also were misaddressed. During this same time period, HLS caused the locks at the home on the Property to be changed, and although Ortiz did not reside there, he kept personal property there that was never returned to him.

At the request of Ortiz's attorney, HLS faxed the misaddressed documents concerning acceleration of the loan to Ortiz's attorney on January 13, 2006. By that time, a foreclosure sale had been scheduled for February 7, 2006. Although that sale did not take place, Ortiz continued to miss payments, and the Property was posted for a foreclosure sale to occur on June 6, 2006. That morning, Ortiz filed a lawsuit against National City and HLS (collectively, the "Bank Parties") to enjoin the sale. The trial court denied Ortiz's request for a temporary restraining

4

order, and National City purchased the Property.

Less than three weeks later, Ortiz's attorney Michael Donovan bypassed HLS's counsel and contacted an HLS employee directly, asking the employee to execute a proposed letter agreement that Donovan had drafted. The employee was not an attorney, and he forwarded the letter to another non-attorney employee who signed the letter agreement as an "Authorized Representative" of HLS and of National City's predecessor. Two weeks later, Donovan again bypassed HLS's attorney and sent a proposed amendment to the letter agreement to the employee who had signed the first letter. The employee signed and returned the amendment as the authorized representative of National City. In these two letters ("the Letter Agreements"), National City stated that it "releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of [Ortiz], in connection with the [Property], including the note and deed of trust associated with such property."

Two months later, Ortiz filed another suit against the Bank Parties. Over the course of the litigation, he amended his petition eight times to add more parties and causes of action. As relevant to the issues presented here, he ultimately asserted that National City was liable to him for wrongful foreclosure and breach of the Deed of Trust, and that both of the Bank Parties were liable for negligence, conversion, trespass to realty, and trespass to personalty. Ortiz also requested a declaratory judgment that (a) he owes no further debt whatsoever to National City under the Note, the Deed of Trust, or otherwise, even if the trial court were to set aside the foreclosure sale; (b) through the Letter Agreements, National City waived or released its claims against Ortiz concerning his indebtedness under the Note and the Deed of Trust; and (c) the Letter Agreements do not fail for lack of consideration. In response to Ortiz's allegations regarding the Letter Agreements, National City raised the affirmative defense that the purported agreements were

5

unsupported by consideration. National City also asserted counterclaims for breach of the Note and for judicial foreclosure of its lien on the Birdsall Property. In addition, National City asked for declaratory judgment that (a) the Letter Agreements are void because Ortiz's counsel obtained them by directly contacting a party that he knew was represented by counsel, thereby violating Texas Disciplinary Rule of Professional Conduct 4.02; and (b) if the foreclosure sale is void, then National City's deed-of-trust lien is valid, the debt is revived, and National City may proceed with a new foreclosure.

The trial court granted a partial summary judgment in Ortiz's favor as to his wrongful-foreclosure claim. In an order signed October 28, 2008, the trial court set aside the trustee's deed conveying title in the Property to National City and ordered title in the Property restored to Ortiz. That ruling is not challenged in these proceedings.

In a number of different explicit and implicit rulings, the trial court addressed the parties' arguments about the validity and effect of the Letter Agreements. In April 2009, the trial court granted Ortiz's motion for partial summary judgment on "Defendants' counterclaims" concerning the Letter Agreements. In June 2010, the trial court ruled again on the same summary-judgment motion and on an additional summary-judgment motion concerning Ortiz's claims and affirmative defenses on the same subject. In the June 2010 ruling, the trial court stated "findings" that the Letter Agreements (a) "lack consideration, and accordingly are not valid contracts to be enforced for all purposes; and (b) contain a "valid agreement to release/waive [Ortiz's] obligation on the Note." The trial court concluded that the Bank Parties were "to take nothing for any claim arising from the Note" but were "entitled to pursue claims as to the Deed of Trust."

Despite these rulings construing the effect of the Letter Agreements as a

6

matter of law, the trial court submitted a question to the jury for a finding of fact concerning the meaning of the Letter Agreements. The jury found in pertinent part as follows:

- In the Letter Agreements, neither National City nor HLS "validly agree[d] that [Ortiz] would receive ownership and possession of the [Property] without obligation for further payments on the Note and that [HLS] and [National City] would not pursue any claims, lawsuits and/or obligations that they could have asserted against [Ortiz]."

- Ortiz and National City each materially breached the Deed of Trust.

- National City breached the Deed of Trust first.

- National City's breach caused Ortiz damages of $100,000 in loss of rental income for his loss of use of the Property.

- HLS trespassed upon the Property, causing Ortiz damages of $77,000 in loss of rental income for his loss of use of the Property.

- HLS's negligence proximately caused Ortiz the loss of personal property having a fair market value of $10,000.

- HLS converted Ortiz's personal property having a fair market value of $1,500.

- HLS committed trespass upon personalty, causing Ortiz's loss of personal property having a fair market value of $1,500.

- HLS was grossly negligent and should be assessed exemplary damages of $100.

- $400,000 is a reasonable fee for the necessary services of Ortiz's attorneys for preparation and trial of the case. The jury failed to assess any appellate attorneys' fees.

Both Ortiz and the Bank Parties filed motions in which they asked the trial court to disregard certain jury findings and to grant judgment on the verdict in other respects. Although the jury rejected Ortiz's contention that National City agreed not to pursue any claims concerning his indebtedness, the trial court granted

7

Ortiz's motion to disregard the finding and explicitly incorporated the interlocutory summary judgments into the final judgment. The trial court impliedly granted the portion of the Bank Parties' motion in which they argued that, under the one-satisfaction rule, Ortiz was not entitled to recover multiple damage awards for each injury. The trial court also impliedly granted the portion of the Bank Parties' motion in which they argued that they were entitled to a settlement credit of $12,500, representing the amount paid by their alleged agent, Keystone Asset Management, Inc., to settle Ortiz's claims against it.

After applying the settlement credit, the trial court rendered judgment that Ortiz recover actual damages $87,500 from National City and $10,000 from HLS; exemplary damages of $100 from HLS; attorneys' fees of $400,000 from National City; pre- and post-judgment interest; and costs. In addition to the monetary awards, the trial court declared that the "Note and Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust," and that the Substitute Trustee's Deed of June 6, 2006 "resulting from Defendants' wrongful foreclosure of the Property[] is set aside, rescinded, deemed null and void and of no effect."

Both Ortiz and the Bank Parties have appealed.

On the same day that it rendered final judgment, the trial court signed an order denying Ortiz's motion under Texas Property Code section 12.0071 to expunge a notice of lis pendens filed by the Bank Parties. Ortiz filed an original proceeding in this court seeking mandamus relief regarding this order. We consolidated the mandamus proceeding with the appeal.

## II. ISSUES PRESENTED

In their first issue, the Bank Parties contend that the trial court erred in granting judgment that Ortiz had no obligation on the Note and Deed of Trust,

8

because the Letter Agreements are not enforceable. They argue in their second issue that Ortiz's prior breach of the Deed of Trust bars him from recovery for any alleged breach by National City; thus, the trial court erred in rendering judgment for Ortiz for breach-of-contract damages and attorney's fees.[2]

In his cross-appeal, Ortiz asserts that the trial court reversibly erred by (a) failing to award Ortiz appellate attorney's fees against National City; (b) failing to award Ortiz the cumulative amount of damages that the jury assessed against HLS under different theories of liability for the same injuries; (c) applying a $12,500 settlement credit to the amount of Ortiz's damages against National City; and (d) failing to grant Ortiz judgment on his statute-of-limitations defense to National City's judicial-foreclosure claim.

In his original proceeding, Ortiz additionally contends that the trial court clearly abused its discretion in denying his motion to expunge the Bank Parties' notice of lis pendens.

### III. CLAIMS AGAINST NATIONAL CITY

**A. Did the Bank Parties Unambiguously Renounce Any Rights to Further Payment or Foreclosure If the June 2006 Foreclosure Were Reversed?**

In their first issue, the Bank Parties contend that the trial court erred in rendering judgment that Ortiz has no obligation on the Note and the Deed of Trust. In making this argument, they effectively challenge the legal sufficiency of the evidence on which the following rulings were based: (1) the interlocutory partial summary judgment of April 9, 2009; (2) the trial court's interlocutory order of June 14, 2010 granting in part and denying in part the parties' cross-motions for partial summary judgment; (3) the trial court's ruling, incorporated in the final judgment, granting in part and denying in part the parties' cross-motions for entry

---

[2] HLS appealed the trial court's judgment, but it has not assigned any error or presented any argument challenging the trial court's money judgment against it.

9

of judgment and to disregard certain jury findings; (4) the denial of the Bank Parties' motion to modify the judgment; (5) the denial of their motion for judgment notwithstanding the verdict; and (6) the denial of their motion for new trial.

When reviewing the legal sufficiency of the evidence, we apply the same standard of review regardless of the procedural vehicle used to raise the issue. *See City of Keller*, 168 S.W.3d at 823. That is, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that supports it. *Id.* at 822. We credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827.

1. **The trial court erred in granting Ortiz partial summary judgment as to "any claim arising from the Note mentioned in the Letter Agreements."**

A party who has raised an affirmative defense and moves for summary judgment on that basis bears the burden of proving each essential element of the defense. *See Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012). Here, the Bank Parties asserted claims for amounts due under the Note and the Deed of Trust, to which Ortiz raised the affirmative defenses of waiver and release. *See* TEX. R. CIV. P. 94 (listing "waiver" and "release" as separate affirmative defenses). The Bank Parties then asserted an additional counterclaim in which they asked the trial court to "declar[e] the legal significance of the Letter Agreements." They asserted that the Letter Agreements were "null and void *ab initio* for failure of consideration and/or due to the fraud committed by Donovan, Ortiz's attorney, in obtaining the Letter Agreement[s]." They additionally argued that by retaining the benefits of the Letter Agreements, Ortiz ratified the foreclosure.

In the first summary-judgment motion at issue in this appeal, Ortiz sought

10

judgment on the following grounds:

(a) In the Letter Agreements, the Bank Parties expressly waived all claims against Ortiz;

(b) The Bank Parties' claims for declaratory judgment were impermissible attempts to recast affirmative defenses as counterclaims;

(c) No evidence supported the assertion that Ortiz ratified the foreclosure;

(d) Failure of consideration did not render the waivers void because waivers require no consideration;

(e) With respect to the Bank Parties' assertion that Donovan's alleged fraud in obtaining the Letter Agreements rendered those contracts void, Ortiz argued that

(i) a violation of the Texas Disciplinary Rules of Professional Conduct does not give rise to a private cause of action, and

(ii) the Bank Parties could not establish that they relied on Donovan's failure to inform them of the lawsuit, because their attorney's actual knowledge of the lawsuit was imputed to them, and because the lawsuit was filed as a matter of public record.

(f) In a supplement to the summary-judgment motion, Ortiz asserted that the evidence conclusively showed that National City breached the Deed of Trust, and thus, National City was liable for breach-of-contract damages and attorney's fees in an unspecified amount.

The Bank Parties responded that "[t]he Letter Agreements represent a release of liability which requires consideration," and that "[t]he only consideration possible for the Letter Agreements would be [Ortiz's] ratification of the

11

foreclosure." They argued that because Ortiz moved to set aside the foreclosure,[3] there was no consideration. The Bank Parties had stated in their pleadings that the Letter Agreements were ambiguous, and although they denied in their summary-judgment response that the Letter Agreements were ambiguous, they nevertheless argued that if the agreements were ambiguous, then the ambiguity should be construed against Ortiz because his attorney drafted the letters. In addition, they argued that because Ortiz circumvented the Bank Parties' counsel in violation of the Texas Disciplinary Rules of Professional Conduct in order to obtain the Letter Agreements, there was at least a question of fact as to the parties' intentions. As for Ortiz's breach-of-contract claim, the Bank Parties asserted that as a result of Ortiz's repudiation and material breach of contract by failing to make payments when due, they were discharged from performing under the contract. They further asserted that Ortiz failed to plead or prove damages from the alleged breach.

In April 2009, the trial court granted Ortiz's partial summary-judgment motion without stating the grounds for the ruling; however, the trial court allowed the Bank Parties to amend their pleadings to assert claims for all amounts due "under the Deed of Trust." Ortiz then moved for summary judgment again, arguing that the Letter Agreements were express waivers of all claims against him, and that at the time the Bank Parties executed the agreements, they were aware of Ortiz's lawsuit challenging the foreclosure. The Bank Parties again asserted that the Letter Agreements were releases that were unenforceable due to the absence of consideration, or alternatively, that the consideration for the releases was Ortiz's ratification of the foreclosure.

On June 14, 2010, the day before the start of the jury trial in this case, the trial court issued an order providing in pertinent part as follows:

---

[3] Two years after the Letter Agreements were signed, the trial court set aside the sale because the required foreclosure notices were sent to the wrong address.

12

The Court has reviewed the following pleadings: Defendants' Motion for Partial Summary Judgment on their Declaratory Judgment Claim and Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims and as to Plaintiff's Declaratory Judgment Claim. After review of the foregoing pleadings, all responses, and arguments made during the Thursday June 3, 2010 pre-trial conference[, t]he Court enters the following findings and Orders:

Both Motions are Granted in Part and Denied in Part.

The Court finds,

1. That the Letter Agreements making basis [sic] of the motions lack consideration, and accordingly are not valid contracts to be enforced for all purposes.

2. That the portion of the afore-mentioned Letter Agreements concerning the Note on the subject property is a valid agreement to release/waive Plaintiff's obligation on the Note, under the tenants [sic] of Texas Business and Commerce Code § 3.604 and as of the date of the Letter Agreements.

It is ORDERED, that [the Bank Parties] are entitled to take nothing for any claim arising from the Note mentioned in the Letter Agreements.

It is ORDERED, that [the Bank Parties] are entitled to pursue claims as to the Deed of Trust on the subject property.

The basis for the trial court's ruling is stated in its "findings." As we previously have explained, "If summary judgment is proper, there are no facts to find and the legal conclusions have already been stated in the motion and the response." *Golden v. McNeal*, 78 S.W.3d 488, 495 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997)). Thus, "[t]he trial court should not make, and the appellate court cannot consider, such findings and conclusions in connection with a summary judgment." *Id.* Here, however, the trial court stated in its final judgment "that all partial and/or interlocutory judgments heretofore granted in this case are

13

hereby made final and incorporated into this Final Judgment." In light of the pleadings requesting a declaratory judgment on the legal effect of the Letter Agreements, we construe the trial court's "findings" incorporated into the final judgment as the requested declaration.

Summary judgments may only be granted upon grounds expressly asserted in the summary-judgment motion. TEX. R. CIV. P. 166a(c); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). Here, however, the trial court ruled based on grounds that were not properly before it. Thus, we conclude that the trial court erred in granting Ortiz's motions for summary judgment concerning the Bank Parties' claims under the Note because the rulings were not supported by grounds raised in the motions.

a. **The trial court erred in granting partial summary judgment on a statutory ground that was not encompassed in Ortiz's summary-judgment motions.**

At a pretrial conference on June 3, 2010, less than two weeks before trial, Ortiz argued for the first time that the Letter Agreements were governed by a provision in this state's codification of the Uniform Commercial Code. During the hearing, Ortiz argued that the Letter Agreements were enforceable even in the absence of consideration because Texas Business and Commerce Code section 3.604 provides that "[a] person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument . . . by agreeing not to sue or otherwise renouncing rights against the party by a signed record." TEX. BUS. & COM. CODE ANN. § 3.604(a)(2) (West Supp. 2012). No such statutory grounds for summary judgment were presented in his written summary-judgment motions. Although Ortiz argues on appeal that this basis for judgment was properly before the trial court based on the waiver arguments presented in his summary-judgment motions, those arguments were based solely on the common

14

law, as can be seen by the authorities he cited.

Ortiz argued in his summary-judgment motions that the Letter Agreements were express waivers for which no consideration was required. In support of this position, he cited cases showing that, under the common law, waiver can be express or can be established through a parties' actions. *See, e.g., Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999) (per curiam) ("Although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law."); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643–44 (Tex. 1996) (explaining that although "[w]aiver ordinarily is a question of fact," it becomes a question of law when "the facts and circumstances are admitted or clearly established," and holding that testimonial admissions proved waiver as a matter of law); *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) (explaining that "the waiver of a condition precedent may be inferred from a party's conduct").

Although Ortiz characterized the Letter Agreements as express waivers for which no consideration was required, the parties were already in litigation with one another; thus, Ortiz was asking the trial court, in effect, to treat the Letter Agreements as releases. A release is a writing providing that a duty or obligation owed to one party to the release is discharged immediately. *See Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Fire Ins. Co.*, 20 S.W.3d 692 (Tex. 2000); RESTATEMENT (SECOND) OF CONTRACTS § 284 (1981). A release of a claim or cause of action extinguishes the claim or cause of action. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). None of the grounds expressly presented in Ortiz's summary-judgment motions or replies addressed the Bank Parties' summary-judgment responses that

15

the Letter Agreements are releases for which consideration is required. *See U.S. Fire Ins. Co. v Republic Nat'l Life Ins. Co.*, 602 S.W.2d 527, 529–30 (Tex. 1980) (release requires consideration); *Torchia v. Aetna Cas. & Sur. Co.*, 804 S.W.2d 219, 223 (Tex. App.—El Paso 1991, writ denied) (same); *Leonard v Texaco, Inc.*, 422 S.W 2d 160, 165 (Tex. 1967) (settlement agreement requires consideration). *See also McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Generally, a contract must be supported by consideration to be enforceable."). *Cf. Pate v. Eversole*, No. 14-03-00250-CV, 2004 WL 582319, at *1 n.1 (Tex. App.—Houston [14th Dist.] Mar. 25, 2004, pet. denied) (mem. op.) (settlement agreement concerning amount due under promissory note was supported by consideration in the form of a promise to postpone the foreclosure sale). In particular, Ortiz did not contend that there is a statutory exception to the common-law rule that a release requires consideration.

The common-law arguments in Ortiz's motion cannot support summary-judgment based on the Uniform Commercial Code because the U.C.C. "preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.'" *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 207 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (quoting TEX. BUS. & COM. CODE ANN. § 1.103 cmt. 2). If, as Ortiz belatedly argued, section 3.604 rendered the Letter Agreements enforceable in the absence of consideration, then that provision conflicts with the common law that a release requires consideration. We then could not read Ortiz's motion for summary judgment based on the common law to encompass an argument that he is entitled to judgment based on a statute that preempts the common law. On the other hand, if section 3.604 does not apply to releases when, as here, claims between the parties are being actively litigated, then the statute and the common law do not conflict because the statute does not apply at all. Ortiz then would be not entitled to summary judgment based

16

on the common law because there was no consideration for the release.[4]

###### b. The grounds expressly presented in the motions also do not support summary judgment.

Because the Letter Agreements are ambiguous, we also cannot affirm the summary-judgment rulings based on the grounds expressly raised in the summary-judgment motions. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (explaining that even when the trial court identifies the basis for its summary-judgment ruling, the appellate court may consider other summary-judgment grounds that have been preserved for review).[5] When we interpret a written contract, "our primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract." *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding) (per curiam). To understand the parties' intent as expressed in the agreement, it is essential that courts examine the contract as a whole in light of the circumstances present when the contract was entered. *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 450,

---

[4] In his responsive appellate brief, Ortiz contends there is a legal presumption that a written agreement was supported by consideration, and thus, the Bank Parties bore the burden to respond to the summary-judgment motion with evidence rebutting the presumption. This is incorrect. As the summary-judgment movant, Ortiz bore the burden in the trial court to establish his right to summary judgment as a matter of law. Because the Bank Parties pleaded the lack of consideration, Ortiz could not prove his right to judgment as a matter of law unless he conclusively established that the Letter Agreements were supported by consideration or that no consideration was required. *See Brocail v. Detroit Tigers, Inc.*, 268 S.W.3d 90, 109 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (movant for traditional summary-judgment is required to disprove allegations pleaded by non-movant that would defeat summary judgment). On appeal, the summary-judgment movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

[5] The Bank Parties raised the issue of ambiguity in response to the first summary-judgment motion, but not the second motion; however, the trial court stated in its order that it considered both summary-judgment motions and "all responses." The trial judge also submitted a jury question on intent. In addition, the parties before us have presented arguments about whether the Letter Agreements unambiguously expressed an intent to waive or release all of the Bank's claims, or conversely, whether there was a question of fact about the Bank's intent.

451 (Tex. 2011); *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008) (per curiam); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)). No single provision is given controlling effect; instead, we consider all the provisions in all parts of the contract. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We also bear in mind the particular business activity to be served, and when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank v. L & F. Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *U.S. Denro Steels, Inc. v. Lieck*, 342 S.W.3d 677, 682 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). If the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, then the contract is ambiguous. *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). A contract is not ambiguous if it can be given a certain or definite meaning as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). The determination that a contract is or is not ambiguous is decided by the court as a matter of law. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

After reviewing the express language of the Letter Agreements in light of the circumstances present when they were signed and the business activity they were intended to serve, we conclude that there is more than one reasonable interpretation of the scope and conditions of the release. Although parts of the Letter Agreements use broad and sweeping language, other parts of the agreement identify the release as the result of the Bank Parties' foreclosure of the Birdsall Property in 2006. Thus, there is a question of fact as to whether the Letter Agreements express an intent to release Ortiz from all claims related to the Property and to his indebtedness, or only an intent to release him from the

18

indebtedness remaining after the sale of the Property.

In his letter of June 23, 2006, Ortiz's attorney Michael Donovan wrote as follows:

> This Agreement shall confirm that Lender has completed and will file an Internal Revenue Service Form 1099-A *in connection with its foreclosure* on the above-referenced property. *As a result,* it does not intend to and shall not file or pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise. Lender agrees to and does fully release Borrower from any and all obligations and liability that Borrower may have or may have had to Lender, and Lender waives any and all demands and claims regarding any such obligation or liability. It is agreed that no *further* sums will be made or owed by Borrower, and no *further* sums will be demanded or litigated by Lender.

(emphasis added). The letter was signed and returned by an employee of HLS, together with the requested information regarding Ortiz's Form 1099-A.

We find it significant that the Form 1099-A is a part of the Letter Agreements. Under federal income-tax laws, one who, in connection with his trade or business, lends money secured by property must provide a borrower with a Form 1099-A if the lender "in full or partial satisfaction of any indebtedness, acquires an interest in any property which is security for such indebtedness . . . ." 26 U.S.C. § 6050J(a)(1).[6] As a result of the initial foreclosure, National City acquired an interest in the Property on June 6, 2006 by purchasing it for $351,356.77; thus, it was required to provide Ortiz with a Form 1099-A. At that time, the amount of Ortiz's indebtedness exceeded both the purchase price and the home's value; thus, there was an unanswered question as to whether National City

---

[6] *See also* INTERNAL REVENUE SERV., DEP'T OF THE TREASURY, 2006 INSTRUCTIONS FOR FORMS 1099-A AND 1099-C, Cat. No. 27991U, *available at* http://www.irs.gov/pub/irs-prior/i1099ac--2006.pdf ("File Form 1099-A, Acquisition or Abandonment of Secured Property . . . for each borrower if you lend money in connection with your trade or business and, *in full or partial satisfaction of the debt, you acquire an interest in property* that is security for the debt, or you have reason to know that the property has been abandoned.") (emphasis added).

19

would treat the foreclosure as full satisfaction of Ortiz's indebtedness, or only as partial satisfaction of the debt. In other words, there was an open question of whether National City would pursue a judgment against Ortiz for the deficiency, i.e., the difference between the amount of indebtedness and the value of the property. *See Kolbo v. Blair*, 379 S.W.2d 125, 130 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.) ("Deficiency is that part of the secured obligation which remains after crediting it with the net proceeds accruing from a valid sale of the security by the creditor."). In response to the letter, HLS provided Ortiz with the information about the foreclosure to be included on the Form 1099-A, and in this material, HLS identified the "debt outstanding" as $537,207.83. In the Letter Agreement, HLS agreed that "as a result" of the foreclosure, it would not pursue "further" sums from Ortiz. Thus, drawing all inferences in favor of the summary-judgment respondents, and considering the circumstances present at the time the Letter Agreement was executed, the document reasonably can be read as expressing HLS's intent to release only the deficiency by accepting the property as full satisfaction of the debt. On the other hand, HLS stated that it would not pursue any legal proceeding "for any deficiency *or otherwise.*" This language reasonably could be read as an expression of the intent to release every claim related to the Property. Thus, the agreement is ambiguous.

This ambiguity was not resolved by the second Letter Agreement, which provided as follows:

> Thank you for providing a copy of the 1099-A and executing the letter agreement I sent regarding the above-referenced matter. It has come to my attention that National City Bank of Indiana was the current mortgagee and that First Franklin Financial Corporation was the original mortgagee. The letter agreement did not specifically

20

reference National City Bank of Indiana.[7]

Out of an abundance of caution, I am requesting that you please confirm, by signing where indicated below, that all of the terms and conditions of the June 23, 2006 letter agreement also apply to National City Bank of Indiana, as the Lender, and that National City Bank of Indiana also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of the Borrower, Albert Ortiz, in connection with the above-referenced property, including the note and deed of trust associated with such property.

This letter incorporates "all of the terms and conditions" of the earlier letter—including those that made the first letter ambiguous. Moreover, the proposed amendment is ambiguous because it reasonably can be read as an agreement merely to add another party to the original agreement, or as an agreement expanding the scope of the claims released.

A narrow interpretation is suggested by the use of the phrase, "out of an abundance of caution." When a person states that he is taking some action "out of an abundance of caution," he saying, in effect, that the action likely is unnecessary, but is employed to remove any uncertainty. He is saying, in effect, "I think that I already have taken sufficient steps to achieve the same result, but I am taking this additional step to remove any doubt." *See e.g., Fort Stewart Sch. v. Fed. Labor Relations Auth.*, 495 U.S. 641, 646, 110 S. Ct. 2043, 2047, 109 L. Ed. 2d 659 (1990) (explaining that "technically unnecessary" provisions sometimes are "inserted out of an abundance of caution—a drafting imprecision venerable enough to have left its mark on legal Latin (*ex abundanti cautela*)."); *In re City of Georgetown*, 53 S.W.3d 328, 335–36 (Tex. 2001) (orig. proceeding) (explaining that although statutory redundancies were unnecessary, the legislature "repeated

---

[7] In the first letter, Donovan incorrectly identified the "Lender" as "First Franklin Financial Corporation / National City Home Loan Services, Inc."

21

itself out of an abundance of caution, for emphasis, or both"); *Wright v. Macdonell*, 88 Tex. 140, 146, 30 S.W. 907, 909 (1895) ("[I]t is not unusual for the parties to a contract, out of abundance of caution, to express that which the law would have implied . . . .").

A narrow interpretation also is implied by the use of the word, "confirm." "[T]o confirm is to establish as true that which was doubtful or uncertain." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 292 (3d ed. 1996). The use of this word suggests that the intent was to *verify* that the same terms present in the first Letter Agreement apply to National City, not to enlarge the scope of the release.

On the other hand, one reasonably could read the second paragraph of the Letter Agreement as expressing an intent to agree to two things: first, to confirm that the terms of the first letter agreement apply to National City, and second, to expand the scope of the release. This interpretation is based on the statement that National City "*also* releases and waives any and all actual and potential demands and claims" against Ortiz. Because both of these interpretations are reasonable, the second Letter Agreement is ambiguous. The ambiguity of the Letter Agreements precluded summary judgment.

The trial court took one step to partially correct this error. Despite its interlocutory rulings on the partial motions for summary judgment, the trial court recognized that the Letter Agreements were ambiguous before the case was submitted to the jury, and included in the charge a question about the meaning of the Letter Agreements. *See Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008) ("[B]y sending the interpretation of the [agreements] to the jury, the trial court implicitly held that the [agreements] were ambiguous."). The question was presented as follows: "With respect to the Letter Agreements, did HLS or National City validly agree that Albert Ortiz would receive ownership and possession of the Birdsall Property without obligation for further payments on the

22

Note, and that HLS and National City would not pursue any claims, lawsuits and/or obligations that they could have asserted against Albert Ortiz?" The jury answered, "No."[8] In effect, the jury found that in executing the Letter Agreements, the Bank Parties did not agree to release Ortiz from any further obligation to make payments on the Note if he received ownership and possession of the Birdsall Property. This finding was supported by the evidence in the case. At trial, HLS's representative testified that the intent of the agreements was to release the deficiency. Ortiz's lawyer testified that he wanted to ensure that Ortiz did not owe any more money to the bank. After receiving the verdict, however, the trial court reversed its implicit holding that the Letter Agreements were ambiguous, and instead reinstated its earlier erroneous rulings on the summary-judgment motions and incorporated them into the final judgment. In a ruling that appears to have been based in part on the interlocutory summary judgments, the trial court further declared in the final judgment that Ortiz had no past, present, or future obligations under the Note and the Deed of Trust, a declaration that is contrary to the jury's finding, which the trial court apparently disregarded.[9]

---

[8] This question presents a mixed question of law and fact (i.e., the legal determination of whether the contract was valid and the factual determination of the Bank's intent). Mixed questions of law and fact are appropriate for the factfinder to decide. *See, e.g., Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006); *Valence Operating Co. v. Anadarko Petroleum Corp.*, 303 S.W.3d 435, 441 (Tex. App.—Texarkana 2010, no pet.). If the trial court asks the jury to make a factual finding on a matter essential to a claim or defense, the jury's answer is not rendered immaterial merely because the question may have been defective. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). In such a situation, the trial court may grant a motion for a new trial, but it may not disregard the jury's finding. *Id.*

[9] The trial court did not expressly state that it disregarded any findings, but this is apparent from other language in judgment and from the result. In the final judgment, the trial court stated that "the motion of [Ortiz] for judgment on the verdict is GRANTED in part and that the motion of Defendants for judgment on the verdict is DENIED in part." Ortiz's motion actually was titled, "Plaintiff's Motion for Judgment on the Verdict *with Motion to Disregard Immaterial Jury Finding*," and the Bank Parties' motion was called "Defendants' Motion for Entry of Judgment *and to Disregard Certain Jury Findings*." (emphasis added). Although the trial court refers to both motions only as motions for judgment, the substance of the ruling

23

We therefore conclude that the trial court erred in granting summary judgment and in incorporating those rulings in the final judgment.

### c. The trial court's erroneous summary-judgment rulings were neither waived nor harmless.

On appeal, Ortiz asserts that the Bank Parties waived any error by the trial court in considering summary-judgment grounds that were not presented in the motion but were raised orally at the summary-judgment hearing. He points out that the Bank Parties failed to object that the issue was untimely; however, no such objection was necessary. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) ("Even if the non-movant fails to except or respond, if the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient as a matter of law."). *See also Clement v. City of Plano*, 26 S.W.3d 544, 549 (Tex. App.—Dallas, no pet.) (explaining that although parties can agree to expand the issues beyond the specific grounds expressly presented in the written motion, answer, or response, the change must comply with Rule 11 of the Texas Rules of Civil Procedure), *disapproved on other grounds, Telthorster v. Tennell*, 92 S.W.3d 457, 464 (Tex. 2002). Ortiz also argues that because the trial court permitted the parties to address these grounds, we should presume that the trial court gave him leave to amend his summary-judgment motion; however, he has not identified an amended summary-judgment motion in the record.

Ortiz further contends that even if the trial court erred in granting the summary judgments based on section 3.604, the error was harmless because the

demonstrates that the trial court granted the portion of Ortiz's motion in which he asked the trial court to disregard the jury finding interpreting the Letter Agreements, and denied the portion of the Bank Parties' motion in which they stated, "In accordance with the jury's answer to Question 6 in the negative, the court should enter a judgment allowing National City to foreclose under the Deed of Trust."

Bank Parties had an opportunity to brief the issue and the trial court fully considered the brief. But, summary-judgment grounds must be "expressly set out in the [summary-judgment] motion or in an answer or any other response." TEX. R. CIV. P. 166a(c). The Bank Parties' brief was not a "motion," and it was not an "answer or response" to a summary-judgment motion. Instead, it was a response to an oral argument, and summary judgment on a ground that is not expressly presented in the written motion, answer, or response is not properly before the trial court simply because it is addressed in a brief. *McConnell*, 858 S.W.2d at 341.

We also disagree with Ortiz's contention that the rulings, even if erroneous, were harmless. He reasons that the same result reached by the trial court was reached by the jury, because the jury found that National City breached the Deed of Trust before Ortiz did, and thus, failed to assess any monetary damages for Ortiz's breach. But the trial court not only failed to award monetary damages; it also denied the claim for judicial foreclosure, a result that is not supported by the jury's verdict. We further note that Ortiz's statutory argument was raised after the time for amending pleadings had passed, but the trial court denied the Bank Parties leave to amend their answers to plead mistake—even though this is a defense to renunciation of a debt under the statute. *See Gibraltar Sav. Ass'n v. Watson*, 624 S.W.2d 650, 653 (Tex. App.—Houston [14th Dist.] 1981, no writ). Finally, because the Letter Agreements are ambiguous, summary judgment based on section 3.604 was not just procedurally incorrect; it was substantively incorrect. *See Burton v. Nat'l Bank of Commerce of Dall.*, 679 S.W.2d 115, 118 (Tex. App.—Dallas 1984, no writ). In *Burton*, a bank sued a borrower for the deficiency remaining on a promissory note after the bank sold the collateral securing the loan. *Id.* at 116. Relying on the predecessor to the statute at issue here, the borrower argued that the bank waived the right to a deficiency judgment, and the bank

25

argued that this was not its intent. *Id.* at 118.[10]   The court concluded that determining the bank's intent was a question of fact to be resolved by the jury. We reach the same result here.

As the foregoing shows, the erroneous summary-judgment rulings were one of several ways in which the trial court addressed the interpretation of the Letter Agreements. We turn now to the trial court's ruling disregarding the jury's finding on that issue.

### 2.   The trial court erred in disregarding the jury's finding interpreting the Letter Agreements.

A trial court may disregard a jury finding only if it is unsupported by evidence or if the issue is immaterial. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *Lee v. Hasson*, 286 S.W.3d 1, 17 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings. *Spencer*, 876 S.W.2d at 157. A jury question also can be considered immaterial when its answer cannot alter the effect of the verdict. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995); *Hernandez v. Atieh*, No. 14-06-00582-CV, 2008 WL 2133193, at *3 (Tex. App.—Houston [14th Dist.] May 20, 2008, no pet.) (mem. op.).

Here, Ortiz asserted that the trial court should disregard the jury's finding interpreting the Letter Agreements for several reasons. We conclude, however, that none of these arguments have merit.

First, Ortiz asserted that the finding would not change the effect of the

---

[10] The substantive text of Texas Business and Commerce Code section 3.604 formerly appeared at section 3.605. *See* Act of May 19, 1965, 60th Leg., R.S., ch. 785, § 1, Sec. 3-605, 1965 Tex. Gen. Laws 1, 80; Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, Sec. 3.605, 1967 Tex. Gen. Laws 2343, 2438; Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, Sec. 3.604, 1995 Tex. Gen. Laws 4582, 4606.

26

verdict and that it does not concern a controlling issue. But, Ortiz's argument that the Bank Parties had released all claims for amounts due under the Note and the Deed of Trust was an affirmative defense to their claim for judicial foreclosure. In rejecting Ortiz's interpretation of the agreements, the jury rejected his affirmative defense. This finding on a controlling issue therefore made a difference in the effect of the verdict.

Ortiz also argued that the finding that the Bank Parties did not agree to forego all claims under the Deed and the Note was rendered immaterial by the jury's finding that Ortiz owes nothing under the Deed of Trust. This argument is factually incorrect; the jury did not answer the question regarding the amount due under the Deed of Trust, because the jury concluded that National City breached the Deed of Trust first and National City's damage issue was predicated on an answer that Ortiz breached first.[11] The absence of a finding is not a finding.

Finally, Ortiz asserted that "the jury took into consideration and accounted for any amounts it may have found were owed by [Ortiz] in its award of damages to [him]." We presume, however, that the jury followed the instructions in the charge. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009). Here, each of the questions regarding Ortiz's actual damages was accompanied by the instruction, "Do not increase or reduce the amount in one answer because of your answer to any other question about damages." The single question concerning exemplary damages to be assessed against HLS was accompanied by a list of the factors to be considered, and this list did not include consideration of the amount Ortiz owed to National City under the Deed of Trust.

---

[11] The parties submitted the breach question in accordance with *Mustang Pipeline Co. v Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004) and Texas Pattern Jury Charge 101.2, and then further conditioned damages so that jury would make a damage finding only for the party who did not breach first. Practitioners should be careful not to over-predicate, especially if one party asserts a prior material breach as a matter of law.

Because the jury's finding interpreting the agreement was material and no valid basis was asserted for disregarding it, we conclude that the trial court reversibly erred in partially granting Ortiz's post-verdict motions and denying the Bank Parties' post-verdict and post-judgment motions concerning this question. Although Ortiz used a variety of motions in asserting that the Letter Agreements prevented the Bank Parties from pursuing any claims against him, we have examined each of the challenged rulings and concluded that none are supported by the record. We therefore sustain the Bank Parties' first issue.

3. **The Note and the Deed of Trust constitute a single contract, and the claims of National City and Ortiz against one another based on this contract are not separable without unfairness to the parties.**

The Bank Parties argued that if we sustained this issue, then we should render judgment in favor of National City in the amount of $1,012,982.90, which they state is the amount of the indebtedness established by the uncontroverted evidence. Because we do not consider the record to be so clear that the amount of Ortiz's indebtedness is conclusively established, we conclude that remand is necessary to correct the error and establish the amount owed, if any.

If an error affects only part of the matter in controversy, we can limit the scope of remand to the part affected by the error if that part is separable without unfairness to the parties. TEX. R. APP. P. 44.1(b). Here, however, National City's claims against Ortiz under the Note and the Deed of Trust for breach of contract and judicial foreclosure are not separable without unfairness from Ortiz's cross-claims against National City for breach of the same contract. The trial court's rulings created an artificial distinction between the Note and the Deed of Trust; the disjunction between the two was so pronounced that there were different jury questions proposed for each, and the trial court submitted one question (predicated on a finding that a particular party breached first) and refused one of the questions

28

(without such a predication). But, "in order to ascertain the entire agreement between contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together." *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984) (citing *Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981)); *Nevels v. Harris*, 129 Tex. 190, 195, 102 S.W.2d 1046, 1048 (1937) (deed of trust and notes for principal and interest must be treated as one contract because the borrowers executed them at the same time and for the same purpose of obtaining a loan secured by real property). National City's claims for breach of contract and judicial foreclosure cannot be parsed fairly into claims under the Note and claims under the Deed of Trust. Because the two documents form a single contract, both the Note and the Deed of Trust must be considered on remand in relitigating these claims. On the other hand, Ortiz's claims for breach of the same contract were tried to the jury based on only half of the contract—the Deed of Trust. We therefore conclude that it would be unfair to the parties to remand one party's claims for a new trial based on the entire contract without also remanding the opposing party's claims that were tried based on only half of the contract. Moreover, with the exception of Ortiz's limitations defense discussed below, the parties must be allowed to assert defenses to one another's claims; thus, for example, if Ortiz asserts that by executing the Letter Agreements, National City released of all of its claims without regard to whether the foreclosure was set aside, then the jury must be allowed to determine, as a question of fact, whether this was National City's intent. And, just as Ortiz may assert affirmative defenses to National City's claims, National City may assert any counter-affirmative defenses, such as mistake.

Our disposition of this issue renders moot (a) the first issue in Ortiz's cross-appeal, in which he challenges the trial court's failure to award him appellate attorney's fees; and (b) the third issue in Ortiz's cross-appeal, in which he contends

29

that the trial court erred in applying a settlement credit to reduce National City's liability for actual damages.

## B. Is Judicial Foreclosure Time-Barred?

In response to the Bank Parties' counterclaim to judicially foreclose on the Birdsall Property, Ortiz raised the affirmative defense that the claim was time-barred. He moved unsuccessfully for a directed verdict on this basis, and his motion to modify the judgment on the same ground was overruled by operation of law. On appeal, he contends that this defense has been conclusively established, and thus, the trial court erred in failing to grant either motion. We address this issue because it is based on the premise that a cause of action for wrongful foreclosure accrues when a misaddressed notice of intent to accelerate the debt is mailed or belatedly received. If Ortiz is correct, it could be possible to exclude National City's judicial-foreclosure claim from the scope of remand; if he is incorrect, then this defense can be excluded

In appealing the denial of a motion for directed verdict, Ortiz in effect challenges the legal sufficiency of the evidence. *See Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 265 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The test for legal sufficiency is the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review. *City of Keller*, 168 S.W.3d at 823. Where, as here, a party moves for a directed verdict on an issue on which he bore the burden of proof, he must demonstrate that he conclusively proved all facts necessary to establish his right to the requested verdict. *See Montgomery v. Byrd*, No. 14-07-01015-CV, 2009 WL 2589431, at *3 (Tex. App.—Houston [14th Dist.] Aug. 25, 2009, no pet.) (mem. op.).

Ortiz points out that on December 21, 2005, the Bank Parties sent Ortiz a notice that the debt had been accelerated, but the letter was mailed to the wrong

30

address. The Bank Parties faxed the same letter to Ortiz's attorney on January 13, 2006. Ortiz contends that the cause of action for judicial foreclosure accrued on one of these dates. Because National City did not file its judicial-foreclosure claim until February 3, 2010, which is more than four years after each of these dates, Ortiz contends that the claim is time-barred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a) (West 2002) ("A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.").

Where, as here, a deed of trust contains an optional debt-acceleration clause, a cause of action for judicial foreclosure accrues when the note holder actually exercises its option to accelerate. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *CA Partners v. Spears*, 274 S.W.3d 51, 65 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." *Holy Cross*, 44 S.W.3d at 566. "Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure." *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982). A notice that the debt actually has been accelerated is ineffective if it was not preceded by proper notice of intent to accelerate the debt. *Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674 (Tex. 1987). In addition, both the Note and the Deed of Trust in this case provided that a notice of acceleration "shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 [of the Deed of Trust] within which Borrower must pay all sums secured by [the Deed of Trust]." Under the terms of Section 15 of the Deed of Trust, all notices were to be mailed or otherwise delivered to "Borrower's notice address," which was defined to be "the Property Address unless Borrower has designated a substitute notice address by notice to Lender."

31

Ortiz has not conclusively established that before accelerating the debt the Bank Parties provided proper notice to him of their intent to accelerate. According to the undisputed testimony presented at trial, Ortiz properly notified the Bank Parties that all required notices to him were to be sent to his business address. The Bank Parties failed to send the required notice of intent to accelerate and notice of acceleration to the specified address, and instead mailed the notices to the address of the Birdsall Property. On January 13, 2006, the attorney for the Bank Parties faxed to Ortiz's attorney copies of the following documents: (1) a default letter dated November 1, 2005 stating that the debt would be accelerated if it was not brought current by December 1, 2005; (2) a notice of acceleration, dated December 21, 2005; (3) a file-stamped notice of the foreclosure sale scheduled to take place on February 7, 2006, i.e., twenty-five days from the date of the fax; and (4) a "payoff quote good through February 6, 2006," in which the total amount due from Ortiz was said to be $490,882.19. All of this material was sent to Ortiz's attorney at the same time, after the debt had been accelerated and less than 30 days before a scheduled foreclosure sale. Thus, Ortiz failed to conclusively establish that the cause of action for judicial foreclosure accrued on December 21, 2005 or on January 13, 2006 as he contends, because he did not prove that there was an *effective* notice of acceleration at either of these times.[12]

Because Ortiz failed to establish conclusively that the judicial-foreclosure cause of action accrued more than four years before the claim was filed, the trial court did not err in denying Ortiz's motion for directed verdict. For the same reason, the trial court did not abuse its discretion in failing to modify the judgment

---

[12] Indeed, in a motion for summary judgment, Ortiz stated,

Ortiz never received . . . a notice of intent to accelerate the Note before learning that the Note had been actually accelerated and was being posted for sale. Thus, Ortiz never received the opportunity to avoid acceleration, as required by law and . . . the Deed of Trust.

32

to specify that the judicial-foreclosure claim is time-barred. We accordingly overrule Ortiz's fourth issue. In light of our disposition of this issue and of National City's first issue, we conclude that National City is not barred from retrying its claim for judicial foreclosure on remand. Because Ortiz's limitations defense was based on a mistaken legal premise—i.e., that a cause of action for wrongful foreclosure accrues when a notice of intent to accelerate the debt is mailed to the wrong address or belatedly received—this defense is excluded from the scope of remand.

## C.     Did the Trial Court Abuse its Discretion by Failing to Expunge a Post-Trial Notice of Lis Pendens?

In Ortiz's petition for a writ of mandamus, he argued that the trial court clearly abused its discretion by denying his motion to expunge the post-trial notice of lis pendens. By statute, "[a] party to an action in connection with which a notice of lis pendens has been filed may . . . apply to the court to expunge the notice . . . ." TEX. PROP. CODE ANN. § 12.0071(a)(1) (West Supp. 2012). "The court shall rule on the motion for expunction based on the affidavits and counteraffidavits on file and on any other proof the court allows." *Id.* § 12.0071(e). "The court shall order the notice of lis pendens expunged if the court determines that . . . the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim . . . ." *Id.* § 12.0071(c)(2).

In light of our determination of the issues presented in the Bank Parties' appeal and "the probable validity of the real property claim," we cannot conclude that the trial court abused its discretion in denying Ortiz's motion to expunge the notice of lis pendens. We accordingly deny Ortiz's petition for writ of mandamus. *See* TEX. R. APP. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an

33

improper judgment . . . .").

## IV. CLAIMS AGAINST HLS

In the remaining issue asserted in Ortiz's cross-appeal, he points out that he presented three different theories of liability entitling him to damages from HLS for the loss of his personal property, and the jury answered a damage question associated with each theory. He argues that the trial court erred in awarding him the largest amount of damages assessed by the jury for this injury, rather than awarding him the sum of all three damage calculations for this loss.[13] Ortiz similarly asserts that he is entitled to recover damages from HLS for the loss of use of the real property, even though the trial court granted judgment against National City for that injury.

Absent an election, the trial court is required to render judgment "so framed as to give the party all the relief to which he may be entitled either in law or in equity." TEX. R. CIV. P. 301. But, under the one-satisfaction rule, a claimant is entitled to only one recovery for any damages suffered. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991)). The rule applies when different parties commit the same act or when different acts cause the same injury. *Id.* When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the prevailing party has a right to a judgment on the theory that affords him the greatest or most favorable relief. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).

Ortiz contends that he is entitled to recover the sum of all of the damages

---

[13] HLS has not appealed the portion of the judgment in which the trial court held it to be liable to Ortiz for $100 in exemplary damages and $10,000 in actual damages, which represents the maximum amount found by the jury to be the fair market value of his personal property.

34

found by the jury for each injury under the various theories of liability submitted because the Bank Parties (1) did not plead the one-satisfaction rule as an affirmative defense, (2) did not object to the submission of more than one acceptable measure of his damages, and (3) did not request a limiting instruction to prevent the possibility of a double recovery. No such actions were required. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) ("'There can be but one recovery for one injury, and the fact that . . . there may be more than one theory of liability[] does not modify this rule.'" (alterations in original) (quoting *Stewart Title Guar. Co.*, 822 S.W.2d at 8)).

Here, the jury found that Ortiz suffered two injuries: the loss of personal property, measured by the property's fair market value, and the loss of the use of the real property, measured as lost rental value. As a result of our disposition of National City's first issue, the one-satisfaction rule currently does not apply to one of these injuries. We therefore discuss them separately.

## A. Damages for Lost Personal Property

Ortiz asserted three different theories of liability for this injury, and the jury made favorable findings for each of them. Under a negligence theory of liability, the jury found that the fair market value of Ortiz's lost personal property was $10,000. Under theories of conversion and trespass to personalty, the jury found that the fair market value of the lost personal property was $1,500. The trial court rendered judgment against HLS for $10,000 in actual damages, which is the largest amount of damages assessed by the jury for this injury. Because an additional award for the same injury would be an impermissible double recovery, we overrule Ortiz's second cross-issue as it pertains to his damages for lost personal property.

35

## B. Loss of the Use of Real Property

In the trial court, Ortiz alleged that National City's breach of contract and HLS's trespass to real property caused him to lose the use of the Birdsall Property. The jury agreed, and for each of these claims, the jury was asked to measure the damage by the Property's lost rental value. Under the breach-of-contract theory, the jury found that the Property's lost rental value was $100,000; under the trespass theory, the jury found that the lost rental value was $77,000. Because the jury assessed the larger amount of damages for this injury against National City, the trial court included those damages in the judgment rendered against that defendant. After applying a $12,500 settlement credit from a defendant who settled before trial, the trial court rendered judgment against National City for $87,500.[14] The trial court did not render judgment against HLS for the damages for the same injury because this would have constituted a double recovery.

On appeal, Ortiz argues that he is entitled to recover the damages assessed by the jury against HLS for loss of the use of real property because the one-satisfaction rule does not apply. The Bank Parties respond that Ortiz is not entitled to recover from HLS for this damage because damages for the same injury were awarded against National City, and thus, an additional award against HLS for loss of use of the real property would constitute a double recovery. Because we have reversed the judgment as it pertains to Ortiz's breach-of-contract claim against

---

[14] On appeal, Ortiz argued that the settlement credit should not have been applied as an offset to any recovery for his breach-of-contract claim against National City. In response, the Bank Parties correctly pointed out that Ortiz sued National City, HLS and Keystone, the settling party, for trespass to real property. Moreover, Ortiz alleged that the Bank Parties were liable with Keystone because its acts or omissions were committed as the Bank Parties' agent, and because the Bank Parties ratified, adopted, and accepted the benefits of Keystone's actions. Ortiz does not contend that the settlement credit does not apply to the real-property damages assessed against HLS for its trespass, and he points out that a non-settling defendant can claim a settlement credit for damages for which all joint tortfeasors are jointly liable.

National City and National City's claims against Ortiz for breach of contract and judicial foreclosure, it currently is not possible to determine whether, on retrial of these issues, the one-satisfaction rule will continue to apply to reduce HLS's liability for actual damages.

To the extent that Ortiz complains that the trial court erred in awarding him the greatest fair market value found by the jury for his lost personal property rather than awarding him an amount equal to the sum of the jury's three personal-property fair market-value findings, we overrule this issue. Because the total amount of HLS's liability to Ortiz for actual damages cannot be determined until the breach-of-contract claims of Ortiz and National City against one another are retried, we reverse the portion of the judgment specifying this amount.

In effect, our resolution of this case results in a bifurcated trial. HLS will continue to be liable to Ortiz for at least $10,000 in actual damages, which is the maximum amount that he is entitled to recover for his loss of personal property, together with $100 in exemplary damages; however, the total amount of HLS's liability for actual damages will have to be determined after the claims to be retried are resolved. Until then, it cannot be determined if the one-satisfaction rule will continue to bar Ortiz's recovery of damages from HLS for loss of the use of real property.

## V. CONCLUSION

We conclude that the Letter Agreements signed by National City's representative are ambiguous; thus, Ortiz did not establish as a matter of law that National City is barred from recovering amounts owed under the Note and the Deed of Trust or from judicially foreclosing on the Property. Instead, there is a question of fact regarding the parties' intentions. Ortiz also did not establish that National City's claims for judicial foreclosure are time-barred. Although the trial

37

court's rulings erroneously divided the parties' breach-of-contract claims into claims under the Note and claims under the Deed of Trust, the two documents must be construed as a single contract. Because these parties' various breach-of-contract claims against one another are not separable without unfairness to the parties, both of their contract claims must be retried on remand, together with National City's claim for judicial foreclosure. In light of the need to retry the judicial foreclosure claim and the probable validity of that claim, we deny Ortiz's petition for a writ of mandamus.

As for Ortiz's claims against HLS, we hold that the trial court did not err in limiting Ortiz to one recovery for the loss of his personal property. Because the breach-of-contract claims of National City and Ortiz against one another must be retried, it cannot yet be determined whether National City will be found to be liable to Ortiz for loss of the use of real property, or if so, whether the damages found for that injury will be greater or lesser than the amount assessed against HLS for the same injury. As a result, the total amount of HLS's liability to Ortiz for actual damages will have to be determined after those breach-of-contract claims are retried.

For these reasons, we deny Ortiz's petition for a writ of mandamus, and we

A.    reverse the portions of the judgment

1.    holding National City liable to Ortiz for actual damages, interest, and attorneys' fees;

2.    providing that National City takes nothing by its claims;

3.    denying National City's request for judicial foreclosure;

4.    declaring that the "Note and the Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust";

38

5. providing that "all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment"; and

6. specifying the amount of the actual damages awarded against HLS;

B. affirm the portions of the judgment that were neither challenged on appeal nor affected by our disposition of the issues as set forth in this opinion, that is, Ortiz's claims for fraud, common-law unreasonable debt-collection, statutory debt-collection violations, statutory deceptive trade-practice violations, breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy, and defamation per se; and

C. remand the case with instructions to the trial court to

(1) retry Ortiz's claim against National City for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure, and, with the exception of Ortiz's limitations defense discussed herein, permitting the parties to assert defenses to these claims;

(2) after applying the one-satisfaction rule and any settlement credits, determine the total amount of HLS's liability to Ortiz for actual damages and the amounts, if any, that are owed by National City to Ortiz or by Ortiz to National City; and

(3) render a final judgment that is consistent with this opinion.

/s/ Tracy Christopher
Justice

Panel consists of Justices Frost, Brown, and Christopher (Frost, J., dissenting).

39

# TAB – Q

CAUSE NO. _____

**2014-63579 / Court: 133**

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| VS. | § | |
| | § | |
| | § | |
| BANK OF AMERICA, NATIONAL | § | OF HARRIS COUNTY, TEXAS |
| ASSOCIATION; and | § | |
| PNC BANK, NATIONAL ASSOCIATION; | § | |
| Defendants | § | _____ JUDICIAL DISTRICT |

## ALBERT ORTIZ'S ORIGINAL PETITION

TO THE HONORABLE COURT:

Albert Ortiz ("ORTIZ"), Plaintiff in this cause, hereby files this Original Petition complaining of Bank of America, National Association ("BOA"); and PNC Bank, National Association ("PNC"), the Defendants. ORTIZ respectfully shows the Court the following:

### DISCOVERY

1.     Discovery in this case is intended to be conducted under a Level 2 Discovery Control Plan pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

### JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

2.     This Court has jurisdiction over the claims stated herein in that this Court has general jurisdiction and specific jurisdiction over the Defendants. Jurisdiction of this case is proper exclusively in the Harris County District Courts based on the prior exclusive jurisdiction doctrine, which holds that "when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same *res." Marshall v. Marshall,* 547 U.S. 293, 311 (2006); *Kline v. Burke Constr. Co.,* 260 U.S. 226, 229 (1922). Plaintiff Ortiz is seeking damages within the jurisdictional limits of the Court and monetary relief over $1,000,000. Venue is proper in Harris County, pursuant to Section 15.002 and/or Section 15.011 of the Texas Civil Practice and Remedies Code. Plaintiff generally avers that all conditions precedent to filing

the claims herein have been performed or have occurred or the conditions have been excused because of the conduct of the Defendants.

## PARTIES

3. Plaintiff Albert Ortiz is an individual who resides in Harris County.

4. Defendant Bank of America, National Association, 100 North Tryon Street, Charlotte, North Carolina 28202, is a national bank and non-resident engaged in business in Texas that can be served by serving its registered agent, CT Corporation Systems, at1999 Bryan Street, Dallas, Texas 75201.

5. Defendant PNC Bank, National Association, is a national bank and non-resident engaged in business in Texas and does not maintain a regular place of business or have a designated agent for service in Texas, and may be served with a citation directed to said Defendant at the home office or principal office address of Defendant, by serving any officer of the bank, at: 222 Delaware Avenue, Wilmington, Delaware 19899. Service of said Defendant as described above can be effected by personal delivery or by service via the Texas Secretary of State.

## SUCCESSORS

6. With respect to some or all of the claims set forth herein, Defendant BOA is made a party to this litigation as a successor by merger to National City Home Loan Services, Inc. d/b/a First Franklin Loan Services ("HLS") and accordingly is responsible for, and is liable to ORTIZ, based on the acts and/or omissions of HLS.

7. With respect to some or all of the claims set forth herein, Defendant PNC is made a party to this litigation as a successor by merger to National City Bank of Indiana ("BANK") and accordingly is responsible for, and is liable to ORTIZ, based on the acts and/or omissions of BANK.

8. Upon information and belief, HLS merged into BAC Home Loan Services, Inc., in October, 2010, which subsequently merged into Defendant BOA in July, 2011. Upon information and belief, Defendant BANK merged into National City Bank in July, 2006, which subsequently merged into Defendant PNC in November, 2009.

## NATURE OF ACTION

9. On or about March 15, 2004, Plaintiff ORTIZ purchased a home in Harris County, Texas. The home in question is located at 105 Birdsall, Houston, Harris County, Texas 77007 (the "Real Property") and is legally described as follows:

> LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND. A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

10. ORTIZ borrowed funds from lender First Franklin Financial Corp., a subsidiary of BANK. The promissory note ("Promissory Note" or "Note") evidencing the loan was subsequently assigned to BANK. The loan was collateralized by a deed of trust. Both the Note and deed of trust related thereto ("Deed of Trust") were signed on or about March 15, 2004.

11. The actions of HLS giving rise to this lawsuit were undertaken while HLS served as "Loan Servicer" or "Mortgage Servicer" for and on behalf of BANK. HLS specifically serviced the ORTIZ loan, more fully described above, for and on behalf of BANK. HLS was – at all times complained of herein – acting within the course and scope of its duties as agent, servant or employee for and on behalf of BANK. All actions complained of herein were undertaken at the direction, instruction, approval, ratification, and/or knowledge of BANK.

12. On or about the 6th day of June, 2006, HLS and BANK foreclosed on ORTIZ'S home. BANK purchased ORTIZ'S home at a non-judicial foreclosure proceeding (Substitute Trustee's Sale).

13.     Prior to and in connection with the foreclosure, HLS and/or BANK failed to provide proper notice to ORTIZ as required, including failing to provide proper notices of default, intent to accelerate the note, acceleration of the note, and notice of the foreclosure sale. All notices were sent to the wrong address as they were not sent to the address designated by ORTIZ as the proper address for receipt of notices from HLS and/or BANK.

14.     Following the foreclosure, Defendants (at the time acting in the capacity of HLS and/or BANK) twice agreed to make a full waiver, release, renunciation and/or discharge with respect to ORTIZ and any and all obligations ORTIZ may have had to Defendants, agreed to *waive any and all claims and demands of liability or obligation* on the part of ORTIZ and agreed that *no further sums would be demanded or litigated* (emphases added) by Defendants. The first such agreement was executed on June 27, 2006, and a second was executed on July 6, 2006. True and correct copies of these agreements ("Letter Agreements") are attached hereto as Exhibits "1" and "2", respectively, and are incorporated herein by reference, the same as if fully set forth at length.

15.     On October 28, 2008, a Texas court of law signed an order granting ORTIZ an interlocutory summary judgment ruling that BANK'S foreclosure of the Real Property was wrongful and that title to the Real Property should be restored to ORTIZ.

16.     Rather than comply with the court's order restoring the Real Property in question to ORTIZ, HLS and/or BANK continued to hold possession of same, refused to allow ORTIZ entry to his home, failed for some time to restore title to the Real Property into ORTIZ'S name (until later doing so without informing ORTIZ), and – in complete disregard of the court's order and in violation of the Letter Agreements -- chose to again attempt to not only collect on a debt that no longer is due and owing, but sought to "re-foreclose" on ORTIZ'S home, although title was no longer in ORTIZ'S name at the time.

17. The Real Property was posted for foreclosure sale despite BANK still holding title to the Real Property and despite the court's order providing that title to the Real Property should be restored to ORTIZ. Despite ORTIZ'S multiple requests and his expression of his grave concerns that the Real Property would again wrongfully being transferred, BANK refused ORTIZ'S requests for a copy of a substitute trustee's deed and any other information that would have evidenced the foreclosure sale, or lack thereof.

18. In 2009, a Rescission Instrument was executed by BANK, acting through HLS, and filed of public record. The document rescinded and "deemed void and of no effect for all purposes", the June 6, 2006, Substitute Trustee's Deed and the foreclosure of ORTIZ'S home, the Real Property. In the Rescission Instrument, HLS and BANK "stipulate and declare" that the Substitute Trustee's Deed is void. This instrument was never disclosed or produced to ORTIZ until May 11, 2010. A true and correct copy of this Rescission Instrument is attached as Exhibit "3", incorporated herein by reference, the same as if fully set forth at length.

## TRESPASS TO TRY TITLE

19. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. To the extent, if any, that ORTIZ lacks full possessory and title rights to the Real Property and the same are at issue, ORTIZ alleges a trespass to try title claim against Defendants PNC and/or BOA. ORTIZ'S trespass to try title claim involves the parcel of real property made the basis of this suit (the "Real Property"). Pursuant to the Rescission Instrument, ORTIZ has been, and is, the owner in fee simple of the Real Property, located in Harris County, Texas. At all relevant times, ORTIZ has been, and still is, legally entitled to possession of the Real Property.

Under the guise of "protecting investor collateral", Defendants (at the time acting in the capacity of HLS and/or BANK) seized ORTIZ'S home on or about November 28, 2005 – and

ignoring their own company rules, procedures and guidelines – refused to restore possession of the property to ORTIZ.

At the very least, the Rescission Instrument is a stipulation and declaration by Defendants that the Substitute Trustee's Deed is void. ORTIZ is entitled to title and possession on the basis of this judicial admission. ORTIZ is also entitled to title and possession on the basis of ORTIZ'S prior un-abandoned possession. Prior possession carries with it a presumption of ownership interest against one, such as Defendants, having no title.

Furthermore, by the filing of the Rescission Instrument with the real property records, Defendants have disclaimed any claim or right to title in the Real Property. As a matter of law, ORTIZ is entitled, without the need of introduction of evidence to his title, to a judgment against Defendants for the title and possession as to all land put in issue and as to which Defendants disclaim title.

In addition to an award of title and possession of the Real Property, ORTIZ also seeks to recover his damages in the form of lost rental and/or loss of use suffered as a result of the wrongful possession of the Real Property by PNC and/or BOA. ORTIZ is entitled to recover rents and profits or damages incurred from loss of use. Tex. R. Civ. P. 783(f).

ORTIZ seeks recovery of all such lost rentals and/or loss of use caused by such wrongful possession of the Real Property from the date he was locked out to the present date or, alternatively, from the date of the execution of the Rescission Instrument to the present date.

## TRESPASS TO REALTY

20. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of Defendants (at the time acting in the capacity of HLS and/or BANK) constitutes a trespass. The Rescission Instrument evidences that title never transferred from ORTIZ to PNC as a result of the foreclosure or, alternatively, that,

after the foreclosure, title transferred back to ORTIZ in 2009 when the Rescission Instrument was filed in the property records. Defendants are liable to ORTIZ for the intentional tort of trespass upon realty by entering the Real Property without ORTIZ'S consent, intentionally causing one or more third persons to enter the Real Property, entering or causing others to enter the Real Property in excess of any authority to enter the Real Property and/or remaining upon the Real Property after it no longer had authority to do so. Such entry was physical, intentional, and voluntary. Defendants' trespass wholly deprived ORTIZ of his use, possession and quiet enjoyment of the Real Property.

ORTIZ alleges a cause of action for trespass against said Defendants, seeking to recover for damage to the Real Property and/or loss of the use and enjoyment of same for all time subsequent to his being locked out of the Real Property. Alternatively, ORTIZ seeks to recover all such damages from April 17, 2009, to the time of his re-entry to the Real Property.

### QUIET TITLE CLAIM

21. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ requests that the Court cancel the Deed of Trust related to the Real Property and remove the cloud on the title to the Real Property created by said Deed of Trust. Ortiz further requests that the Court order Defendants BOA and PNC to remove the cloud on the title to the Real Property created by said Rescission Instrument to the extent it purports to reinstate the Deed and Trust and Note associated with the Real Property as well as the debt previously associated therewith. Alternatively, the Court should modify or reform the Rescission Instrument, through Declaratory Judgment, to reflect and comport with Defendants' renunciations, waivers, and/or releases dated July 6, 2006, and June 27, 2006, which contain language expressly stating that PNC (at the time acting in the capacity of BANK) waives, releases, renounces and/or discharges any and all actual and potential demands and claims regarding any

obligations or liabilities of ORTIZ in connection with the Real Property, including the Note and Deed of Trust associated with such Real Property.

Alternatively, ORTIZ seeks a Declaratory Judgment declaring the foreclosure of June 6, 2006, wrongful, null and void; granting title to the property to ORTIZ free and clear of all liens and encumbrances, and declaring that ORTIZ is not liable to Defendants for any sums in connection with the Promissory Note (subject of the Deed of Trust); and declaring that Defendants have released, renounced, discharged and/or waived any rights they might have had under the Note and/or Deed of Trust.

## FRAUD

22. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of Defendants BOA and/or PNC constitutes fraud. Defendants committed fraud by omission in that Defendants failed to disclose the Rescission Instrument. ORTIZ did not learn of the Rescission Instrument until it was produced by Defendants' former attorneys in this cause, over one year after its execution by Defendants. Defendants' omission constitutes fraud in that it was a material representation, the representation was false, Defendants knew it was false at the time it was made or it was made recklessly without knowledge of the truth as a positive assertion, Defendants made it with intent that ORTIZ act on it, ORTIZ did rely on it, and ORTIZ was injured as a proximate result.

Specifically, Defendants discussed or communicated with ORTIZ, by and through his attorneys, numerous times regarding the Substitute Trustee's Deed, the Real Property, and the foreclosure of the Real Property without ever disclosing that the foreclosure had been rescinded, the Substitute Trustee's Deed had been deemed void and of no effect for all purposes and/or title to the Real Property had been transferred back to ORTIZ. A party has a legal duty to disclose in the following situations: (1) when one voluntarily discloses information, he has a duty to

disclose the whole truth; (2) when one makes a representation, he has a duty to disclose new information when he is aware the new information makes the earlier representation misleading or untrue; and (3) when one makes a partial disclosure and conveys a false impression, he has a duty to speak. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.,* 217 S.W.3d 653, 670-71 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Defendants violated this duty.

Defendants committed fraud in that they disclosed information to ORTIZ regarding the status of title to the Real Property and the effect of the foreclosure, without ever disclosing the whole truth. Defendants had a duty to disclose that the June 6, 2006, foreclosure sale of the Real Property, the resulting Substitute Trustee's Deed had been rescinded and/or title to the Real Property had been transferred back to ORTIZ. Defendants disclosed information about the foreclosure sale and the Substitute Trustee's Deed but failed to disclose the existence and execution of the Rescission Instrument; Defendants represented that the foreclosure sale had not been set aside and that title to the Real Property was in Defendants name but failed to disclose the existence and execution of the Rescission Instrument, which Defendants knew made the earlier misrepresentation misleading or untrue. Defendants intended that ORTIZ act on this fraudulent omission(s), ORTIZ did rely on it, and ORTIZ thereby suffered injury in that he continued to be deprived of the Real Property and incurred expenses associated with living elsewhere.

Moreover, subsequent to their execution and filing of the Rescission Instrument, Defendants affirmatively made fraudulent representations to Plaintiff that BANK, not ORTIZ, had title to the Real Property, and continued to use this contention as a basis for failing and refusing to allow ORTIZ to regain possession to the Property. Specifically, Defendants', acting through their attorneys or agents, sent a letter, in response to a letter from ORTIZ'S attorney, in which they falsely represented that BANK was the owner of the Real Property, denied ORTIZ

the keys to the Real Property, and refused to transfer the Real Property to ORTIZ, when they knew (or should have known but for their recklessness) that the Real Property had already been transferred to ORTIZ. A true and correct copy of the letter is attached hereto as Exhibit "4" and incorporated herein. Pleading further, ORTIZ alleges a claim against Defendants for fraudulent conduct. The above-described wrongful conduct by Defendants constitutes fraudulent conduct as it is the successful employment of deception, cunning, or artifice to circumvent, cheat, or defraud ORTIZ to his injury.

Defendants' fraudulent omissions, representations, and/or conduct alleged herein regarding the Rescission Instrument was carried out and accomplished by Defendants' attorneys or agents at the time, including the law firm of McGlinchey Stafford, PLLC, Kari Robinson, Joel Mohrman, the law firm of Barrett Daffin Frappier Turner & Engel, LLP, and/or the law firm of Leyh & Payne, LLP.

## UNLAWFUL DEBT COLLECTION

23. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of BOA and/or PNC constitutes unlawful debt collection. Defendants failed to disclose the Rescission Instrument to ORTIZ subsequent to its execution and filing. Moreover, subsequent to their execution and filing of the Rescission Instrument, Defendants affirmatively represented to ORTIZ that title to the Property was in BANK, not ORTIZ, and continued to use this assertion as a basis for failing and refusing to allow ORTIZ to regain possession to the Property. Defendants also continually refused ORTIZ possession to the Real Property even though they have since testified that ORTIZ could have had entry, access, and/or possession to the Real Property at any time if he had requested same. All such conduct constituted deceptive, fraudulent, and/or misleading practices by said Defendants and employed the use of false representations or deceptive means in attempts to collect a debt.

Defendants engaged in such action in collection of an actual or alleged consumer debt of ORTIZ and thus violated Chapter 392 of the Texas Finance Code (the Texas Debt Collection Practices Act or DCPA), including Section 392.304 of the DCPA. ORTIZ alleges a cause of action for violation of the DCPA against Defendants, seeking to recover for all damages caused thereby, including his actual damages, statutory damages, and/or injunctive relief available under the DCPA. Such actions also constitute an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which ORTIZ seeks to recover his damages from Defendants.

## BREACH OF LETTER AGREEMENTS

24.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ entered into contracts with Defendants BOA and PNC (at the time acting in the capacity of HLS and/or BANK) when they executed the Letter Agreements, attached hereto. Such agreements are valid, binding, and fully enforceable against Defendants as they constitute valid covenants not to sue, waivers, renunciations, and/or releases, whether or not they are supported by consideration. "A release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration." *McMillen v. Klingensmith,* 467 S.W.2d 193, 195 (Tex.1971); *Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 810 (Tex. 1980) (Denton, J., concurring); *Adams v. Petrade Intern., Inc.,* 754 S.W.2d 696, 723 (Tex. App.—Houston [1 Dist.] 1988, writ denied). Furthermore, Section 1.306 of the Texas Business and Commerce Code provides that a claim or right arising out of an alleged breach may be discharged in whole or in part without consideration by agreement of the aggrieved party in an authenticated record. Accordingly, by executing the Letter Agreements, Defendants discharged any of their claims or rights against ORTIZ related to any alleged breach by ORTIZ, regardless of whether the Letter Agreements are supported by consideration.

By the Letter Agreements, PNC agreed that it would not file or pursue any lawsuit or other legal proceeding ORTIZ and otherwise renounced its rights against ORTIZ. Such agreements thereby discharged any obligation of ORTIZ to pay the Note, whether or not they were supported by consideration. Tex. Bus. & Com. Code § 3.604. Nevertheless, PNC has continued to pursue legal proceedings against ORTIZ in attempts to collect on the Note and foreclose on the Real Property.

ORTIZ performed, tendered performance of, or was excused from performing his obligations under such contracts. By such contracts, Defendants agreed to release, renounce, discharge, and/or waive all claims and/or rights against ORTIZ concerning the Real Property and ORTIZ'S Note and/or Deed of Trust executed in connection with the loan for the purchase of the Real Property. Defendants further agreed that they would not demand or litigate any further sums from ORTIZ. Defendants failed to comply with the Letter Agreements, and the releases and/or covenants not to sue contained therein, by pursuing an appeal of a Texas court of law's judgment, in favor of ORTIZ, dated August 18, 2010, and further failed to comply, subsequent to the appellate court's remand, by continuing to pursue claims against ORTIZ related to the Note and Deed of Trust. The conduct of Defendants constitutes a breach of the Letter Agreements by Defendants under Texas law and caused damages to ORTIZ. ORTIZ seeks to recover all such damages from Defendants and/or requests from the Court specific performance and/or injunction relief as remedy for enforcement of the Letter Agreements.

## REQUEST FOR DECLARATORY RELIEF

25.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ requests that the Court declare that the Letter Agreements constitute Defendants' waiver, release, discharge, and/or renouncing of any rights to pursue any further legal proceedings against ORTIZ related to the Note and Deed of Trust, including any appeal and/or mandamus in connection with any ruling or

judgment of this Court. A conflict exists regarding this issue as the parties' have conflicting interpretations regarding the scope and meaning of the Letter Agreements. ORTIZ requests a declaratory judgment to resolve this controversy and remove the resulting uncertainty. See Tex. Civ. Prac. & Rem. Code Ann. §§37.003, 37.004.

## EQUITABLE SUBROGATION CLAIM

26. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ hereby makes a contingent or conditional claim alleging that, if PNC obtains a judgment in its favor determining that it was the owner of the Real Property for any period of time that ORTIZ has paid property taxes as the presumed owner, then ORTIZ is entitled to recoup and obtain reimbursement from PNC of all sums ORTIZ paid as property taxes for that time period. ORTIZ alleges a claim against PNC for equitable subrogation with respect to all such tax payments made in connection with the Real Property. If and only if PNC is determined to have been the owner of the Real Property at the time of any such payments, such payments were made on behalf of and for the benefit of PNC. To such extent, all such payments were made involuntarily in that ORTIZ was protecting his own interest since, at the time, he would have been considered responsible for the taxes as the purported owner of the Real Property. ORTIZ would be entitled under the law to recover all such payments from PNC. ORTIZ hereby asserts an equitable subrogation claim against PNC to recover all such payments. Pleading in addition and/or in the alternative thereto, ORTIZ alleges against PNC an action on an assumpsit, or implied right of, or contract for, reimbursement, in that ORTIZ has paid the debt or obligation of PNC, which has thereby unjustly enriched PNC. Ortiz seeks to recover from PNC based on the obligation implied by law in his favor for such reimbursement. ORTIZ's payments were made to protect his interests with regard to the Real Property. ORTIZ'sright to recovery of such payments is based on PNC's unjust retention of a

benefit to the loss of ORTIZ, against the fundamental principles of justice and equity. ORTIZ may and intends to assert all those rights held by the taxing authorities against PNC in connection with the taxes on the Real Property. Accordingly, to the extent ORTIZ is deemed to not own the Real Property, ORTIZ seeks to have the Court order a tax sale of the Real Property to recover the sums to which he is entitled.

## PUNITIVE DAMAGES

27.    Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition. Defendants' actions against ORTIZ were done with gross negligence, malice, and/or the committing of fraud. Defendants are therefore liable to ORTIZ for punitive damages within the jurisdictional limits of the Court.

Proof in support of recovery of such damages includes, without limitation, Defendants' actions committed just weeks after a Texas court of law's judgment (subsequently appealed) awarding ORTIZ the Real Property free of any lien under the Deed of Trust or any further obligations on the Note. Despite such judgment, Defendants soon proceeded with actions including again changing ORTIZ'S locks at the Real Property, excluding ORTIZ from the Real Property, and attempting to sell the Real Property, all of which were committed without any notice to or consent from ORTIZ.

## ATTORNEYS' FEES

28.    Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition. As a result of PNC's failure to comply with the Letter Agreements, ORTIZ retained an attorney to prosecute his claims related thereto. ORTIZ is entitled to an award of attorneys' fees for prosecution of this action under the DCPA, Chapter 392 of the Texas Finance Code, and/or Chapter 38 of the Texas Civil Practice and Remedies Code. ORTIZ is also entitled to an award of attorneys' fees under Chapter 37 of the Texas Civil Practice

and Remedies Code for his claims for declaratory judgment brought thereunder. ORTIZ is entitled to a further award of attorneys' fees should a party appeal and final judgment ultimately be awarded in favor of ORTIZ. Should it be necessary for a party to petition the Texas Supreme Court for review, ORTIZ further requests that, upon final judgment for ORTIZ, the Court award an additional amount as attorneys' fees for representing ORTIZ during such review.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff ORTIZ respectfully requests of the Court the following:

1.     Judgment against Defendants for all damages, including mental anguish, actual, economic, statutory, consequential and exemplary damages, within the Court's jurisdictional limits;

2.     Judgment against Defendant PNC that provides for ORTIZ'S recovery of title to the Real Property.

3.     Judgment against Defendants for all other declaratory relief requested herein;

4.     Prejudgment interest as provided by law;

5.     Interest after judgment as allowed by law until paid;

6.     All costs of suit and attorneys' fees; and

7.     Such other and further relief, in law and in equity, including specific performance and injunctive relief, to which Plaintiff ORTIZ may be entitled.

Respectfully submitted,

/s/ Michael Donovan
Michael Donovan
Texas Bar No. 00796478
6300 Dixie Drive
Houston, TX 77087
(713) 956-4043; (713) 956-4042 fax
mdonovanesq@yahoo.com

ATTORNEY FOR ALBERT ORTIZ

# EXHIBIT 1

**National City.**

National City Home Loan Services, Inc.
P.O. Box 1830
Pittsburgh, PA 15230-1830

June 27, 2006

Mr. Michael Donovan, Esq.                                         SENT VIA FAX TO:
6300 Dixie Drive                                                  281-561-8493
Houston, TX 77087

RE: Albert Ortiz, loan #

Dear Mr. Donovan,

I am transmitting a copy of the executed Letter Agreement, along with our 1099-A which will be furnished to the Internal Revenue Service. Should you have any additional questions on this matter, please contact me at 412-442-3640.

Best regards,

Gary J. Stockey
Customer Relations Manager
National City Home Loan Services

---

National City Home Loan Services, Inc. is a subsidiary of National City Bank of Indiana. First Franklin and NationPoint are divisions of National City Bank of Indiana, which is a wholly-owned subsidiary of National City Corporation. National City Home Loan Services, Inc. services loans for the following affiliated entities as First Franklin Loan Services, National City Loan Services and NationPoint:

National City Bank                      National City Bank of Indiana              National City Bank of Kentucky
National City Bank of the Midwest       National City Bank of Pennsylvania         NationPoint
First Franklin Financial Corporation



# MICHAEL DONOVAN
## ATTORNEY AT LAW

6300 Dixie Drive, Houston, Texas  77087         (281) 879-6746        Fax (281) 561-3493

## LETTER AGREEMENT

June 23, 2006

Gary Federonko
First Franklin Financial Corporation / National City Home Loan Services, Inc.

  Re: *Albert Ortiz; Loan* ▮▮▮▮▮▮▮ *Property Address:* *105 Birdsall, Houston, Texas  77007*

Dear Mr. Federonko;

  As you know, I represent Albert Ortiz.  This letter is pursuant to our conversation this date and is intended to serve as a binding agreement between my client, Albert Ortiz ("Borrower"), and First Franklin Financial Corporation / National City Home Loan Services, Inc. ("Lender") regarding the above-referenced matter.

  This Agreement shall confirm that Lender has completed and will file an Internal Revenue Service Form 1099-A in connection with its foreclosure on the above-referenced property.  As a result, it does not intend to and shall not file or pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise.  Lender agrees to and does fully release Borrower from any and all obligations and liability that Borrower may have or may have had to Lender, and Lender waives any and all demands and claims regarding any such obligation or liability.  It is agreed that no further sums will be made or owed by Borrower, and no further sums will be demanded or litigated by Lender.

  Please present this Agreement to any necessary Lender representative to have it executed by an authorized Lender representative and returned to me via facsimile (281-879-6746).  Thank you for your continued attention to this matter.

        Sincerely,

        Michael Donovan

## ACCEPTED AND AGREED:

By _GARY J. STOCKEY_   _6-27-06_
  Authorized Representative for Lender  Date

Signature

KEY INFORMATION: TAX YEAR: 06   (*TIN/COMPANY NAME FROM YE HEADER*)
  PAYER'S TIN: 59-2645397   NAME: NATIONAL CITY HOME LOAN SERVICES INC
  LOAN NO: 1044241031   REC NO: 001
--------------------------------------------------------------
   BORROWER'S INFORMATION          (NAME2,3,4 NOT REPORTED TO IRS)
   TIN: ████████
  NAME: ALBERT ORTIZ
  NAME 2:
  NAME 3:
  NAME 4:                     BORROWER RESP FOR DEBT: Y (Y/N)
   ADDR: 105 BIRDSALL AVE          FNMA (F) OR FHLMC (M) RPTG: _
   CITY: HOUSTON         STATE: TX   INVESTOR LOAN NO: 0033595141
ZIP CODE: 77007 ____   FOREIGN ADDR: N     SERVICER CODE: _____

   DEBT OUTSTANDING:       537,207.83
   FAIR MARKET VALUE:      525,000.00
  ACQUISITION DATE 06/06/06   PROP DESC: 105 BIRDSALL AVE   HOUSTON
TX 77007

# EXHIBIT 2

# MICHAEL DONOVAN
## ATTORNEY AT LAW

6300 Dixie Drive, Houston, Texas 77087     (281) 879-6746     Fax (281) 541-8493

## LETTER AGREEMENT AMENDMENT

July 5, 2006

Gary Stockey
National City Home Loan Services, Inc.
P.O. Box 1838
Pittsburgh, PA. 15230-1838

    Re:    *Albert Ortiz; Loan #1044241031; Property Address: 105 Birdsall, Houston, Texas 77007*

Dear Mr. Stockey:

    Thank you for providing a copy of the 1099-A and executing the letter agreement I sent regarding the above-referenced matter. It has come to my attention that National City Bank of Indiana was the current mortgagee and that First Franklin Financial Corporation was the original mortgagee. The letter agreement did not specifically reference National City Bank of Indiana.

    Out of an abundance of caution, I am requesting that you please confirm, by signing where indicated below, that all of the terms and conditions of the June 23, 2006, letter agreement also apply to National City Bank of Indiana, as the Lender, and that National City Bank of Indiana also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of the Borrower, Albert Ortiz, in connection with the above-referenced property, including the note and deed of trust associated with such property.

    Please execute this amendment to our agreement as an authorized Lender representative and return it to me via facsimile (281-879-6746). Thank you for your prompt attention to this matter.

                      Sincerely,

                      Michael Donovan

## ACCEPTED AND AGREED:

By: GARY J. STOCKEY         7-6-06
Authorized Representative for Lender        Date

Signature

# EXHIBIT 3

20090192654
05/07/2009 RP2 $24.00



## RESCISSION OF SUBSTITUTE TRUSTEE'S SALE, CANCELLATION OF SUBSTITUTE TRUSTEE'S DEED AND RECONVEYANCE DEED WITHOUT WARRANTIES

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**\*\*\*IMPORTANT NOTICE TO COUNTY CLERK:**
**INDEX ALBERT ORTIZ AS GRANTEE**

STATE OF TEXAS §
§
COUNTY OF HARRIS §

WHEREAS, National City Bank of Indiana ("National City") is the owner and holder of a promissory note dated March 15, 2004 in the original principal amount of $4742,000.00 from Albert Ortiz to First Franklin Financial Corp. Said Note is secured by that certain Deed of Trust dated March 15, 2004, and recorded in Clerk's File No. X469555 of the Official Real Property Records of Harris County, Texas, with respect to the following described property (the "Property"):

> LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A
> SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR
> PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP
> RECORDS OF HARRIS COUNTY, TEXAS.

WHEREAS, in compliance with the provisions set out in § 51.002 of the Texas Property Code, the above property was posted for foreclosure sale and on June 6, 2006, Thomas Reder, the named Substitute Trustee, conducted a foreclosure sale whereby the Property was sold to National City Bank of Indiana as set out in the Substitute Trustee's Deed dated June 6, 2006 which is recorded in Clerk's File No. Z366547 of the Official Real Property Records of Harris County, Texas.

WHEREAS, National City and Thomas Reder desire to cancel and rescind the foreclosure sale and conveyance of the Property to National City Bank of Indiana; rescind the acceleration of the indebtedness, reinstate the Note and Deed of Trust; and return the parties to the status quo existing thereunder.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of same is hereby acknowledged along with the covenants and agreements contained herein, National City, the holder of the above-described Note and Deed of Trust, and Thomas Reder, the Substitute Trustee do hereby stipulate and declare (i) the Substitute Trustee's Deed dated June 6, 2006 is hereby rescinded and deemed void and of no effect for all purposes; and (ii) the Note and Deed of Trust are reinstated in accordance with their original tenor and effect existing immediately prior to such foreclosure and conveyance subject to the accrual of interest, late fees, advances, and any and all other amounts due under the Note remaining unpaid by Borrower. Nothing contained herein shall in any way constitute a waiver of any default in the Note and Deed of Trust occurring prior to or since the date of the Trustee's Deed.

This document is executed and filed for record to purge such real property records of all evidence of such foreclosure by the Substitute Trustee's sale including, without limitation, such Substitute Trustee's Deed described above as if such Deed had not been filed of record.

H:\LI\MICHELEB\CLIENTS\HOME LOANS SERVICES FKA NATIONAL CITY\Ortiz (20050153900326)\Ortiz-
2ptyresc.doc
BBW No. 20050153900326

National City its successors and assigns, to the extent necessary to re-vest legal title to the Property to Albert Ortiz, hereby conveys to Albert Ortiz the Property; subject, however, to the indebtedness evidenced by the Note and the liens and security interests securing payment of the Note, and other encumbrances, restrictions and covenants of record, including without limitation the Deed of Trust and all other collateral loan instruments executed to purchase the Property. The Grantee's address is 105 Birdsall Avenue, Houston, Texas 77007.

TO HAVE AND TO HOLD, the Property, subject to the matters hereinabove set forth, together with all and singular the rights and appurtenances thereto in anywise belonging unto Albert Ortiz his/her/their successors and assigns, forever. This conveyance is made without warranty, express or implied. Albert Ortiz hereby assume(s) and agree(s) to pay in full all taxes or other lawful assessments against the Property and all amounts otherwise advanced by National City under the terms of the Note and Deed of Trust.

EXECUTED this ___17___ day of ___April___, 2009.

National City Bank of Indiana, by and through its duly authorized servicing agent, Home Loan Services, Inc.

By:
Printed Name: BRYAN KUSICH
Title: VICE PRESIDENT

COMMONWEALTH OF PENNSYLVANIA §
§
COUNTY OF ALLEGHENY §

BEFORE ME, the undersigned notary public, on this day personally appeared BRYAN KUSICH, the VICE PRESIDENT of Home Loan Services, Inc., duly authorized servicing agent for National City Bank of Indiana known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___17___ day of ___April___, 2009.

Notary Public, Commonwealth of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Tara L. Gordon, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires June 7, 2011
Member, Pennsylvania Association of Notaries

By: _____ /ss/
Thomas Reder, Substitute Trustee

STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned notary public, on this day personally appeared Thomas Reder, Substitute Trustee, known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 16th day of March, 2009.

_____
Notary Public, State of Texas

SHEILA M. ALTHOUSE
MY COMMISSION EXPIRES
November 18, 2011

**HOLD FOR: BARRETT DAFFIN**

AFTER RECORDING, RETURN TO:
Barrett Daffin Frappier Turner & Engel, L.L.P.
Attn: Angelyn Neal-Falkenhagen
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001

2009 MAY -7 AM 8: 19
COUNTY CLERK
HARRIS COUNTY, TEXAS
FILED



MAY - 7 2009

COUNTY CLERK
HARRIS COUNTY, TEXAS

C:\Documents and Settings\Sheila Althouse\Local Settings\Temporary Internet Files\Content.IE5\DXMJGHJF\Ortiz-2ptyrsc[1].doc
BBW No. 20030153900326

# EXHIBIT 3

## RESCISSION OF SUBSTITUTE TRUSTEE'S SALE, CANCELLATION OF SUBSTITUTE TRUSTEE'S DEED AND RECONVEYANCE DEED WITHOUT WARRANTIES

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

***IMPORTANT NOTICE TO COUNTY CLERK:
    INDEX ALBERT ORTIZ AS GRANTEE

STATE OF TEXAS          §
                       §
COUNTY OF HARRIS     §

WHEREAS, National City Bank of Indiana ("National City") is the owner and holder of a promissory note dated March 15, 2004 in the original principal amount of $4742,000.00 from Albert Ortiz to First Franklin Financial Corp. Said Note is secured by that certain Deed of Trust dated March 15, 2004, and recorded in Clerk's File No. X469555 of the Official Real Property Records of Harris County, Texas, with respect to the following described property (the "Property"):

    LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

WHEREAS, in compliance with the provisions set out in § 51.002 of the Texas Property Code, the above property was posted for foreclosure sale and on June 6, 2006, Thomas Reder, the named Substitute Trustee, conducted a foreclosure sale whereby the Property was sold to National City Bank of Indiana as set out in the Substitute Trustee's Deed dated June 6, 2006 which is recorded in Clerk's File No. Z366547 of the Official Real Property Records of Harris County, Texas.

WHEREAS, National City and Thomas Reder desire to cancel and rescind the foreclosure sale and conveyance of the Property to National City Bank of Indiana; rescind the acceleration of the indebtedness, reinstate the Note and Deed of Trust; and return the parties to the status quo existing thereunder.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of same is hereby acknowledged along with the covenants and agreements contained herein, National City, the holder of the above-described Note and Deed of Trust, and Thomas Reder, the Substitute Trustee do hereby stipulate and declare (i) the Substitute Trustee's Deed dated June 6, 2006 is hereby rescinded and deemed void and of no effect for all purposes; and (ii) the Note and Deed of Trust are reinstated in accordance with their original tenor and effect existing immediately prior to such foreclosure and conveyance subject to the accrual of interest, late fees, advances, and any and all other amounts due under the Note remaining unpaid by Borrower. Nothing contained herein shall in any way constitute a waiver of any default in the Note and Deed of Trust occurring prior to or since the date of the Trustee's Deed.

This document is executed and filed for record to purge such real property records of all evidence of such foreclosure by the Substitute Trustee's sale including, without limitation, such Substitute Trustee's Deed described above as if such Deed had not been filed of record.

HALIA\MICHELEB\CLIENTS\HOME LOANS SERVICES FKA NATIONAL CITY\Ortiz (20050153900326)\Ortiz-2plyresc.doc
BBW No. 20050153900326

National City its successors and assigns, to the extent necessary to re-vest legal title to the Property to Albert Ortiz, hereby conveys to Albert Ortiz the Property; subject, however, to the indebtedness evidenced by the Note and the liens and security interests securing payment of the Note, and other encumbrances, restrictions and covenants of record, including without limitation the Deed of Trust and all other collateral loan instruments executed to purchase the Property. The Grantee's address is 105 Birdsall Avenue, Houston, Texas 77007.

TO HAVE AND TO HOLD, the Property, subject to the matters hereinabove set forth, together with all and singular the rights and appurtenances thereto in anywise belonging unto Albert Ortiz his/her/their successors and assigns, forever. This conveyance is made without warranty, express or implied. Albert Ortiz hereby assume(s) and agree(s) to pay in full all taxes or other lawful assessments against the Property and all amounts otherwise advanced by National City under the terms of the Note and Deed of Trust.

EXECUTED this 17 day of April, 2009.

National City Bank of Indiana, by and through its duly authorized servicing agent, Home Loan Services, Inc.

By:
Printed Name: BRYAN KUSICH
Title: VICE PRESIDENT

COMMONWEALTH OF PENNSYLVANIA §
                              §
COUNTY OF ALLEGHENY           §

BEFORE ME, the undersigned notary public, on this day personally appeared BRYAN KUSICH, the VICE PRESIDENT of Home Loan Services, Inc., duly authorized servicing agent for National City Bank of Indiana known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 17 day of April, 2009.

Notary Public, Commonwealth of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Tara L. Gordon, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires June 7, 2011
Member, Pennsylvania Association of Notaries

By: _____
Thomas Reder, Substitute Trustee

STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned notary public, on this day personally appeared Thomas Reder, Substitute Trustee, known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 16th day of March, 2009.

_____
Notary Public, State of Texas



SHEILA M. ALTHOUSE
MY COMMISSION EXPIRES
November 18, 2011

**HOLD FOR: BARRETT DAFFIN**

AFTER RECORDING, RETURN TO:
Barrett Daffin Frappier Turner & Engel, L.L.P.
Attn: Angelyn Neal-Falkenstein
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001

FILED
2009 MAY -7 AM 8: 19
COUNTY CLERK
HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in file number sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County Texas on

MAY. - 7 2009

_____
COUNTY CLERK
HARRIS COUNTY, TEXAS

C:\Documents and Settings\Sheila Althouse\Local Settings\Temporary Internet Files\Content.IE5\OXM1GHJF\Ortiz-2plyrese[1].doc
BDW No. 20050153900326

# EXHIBIT 4

**M°GLINCHEY STAFFORD PLLC** ─────────────────

ATTORNEYS AT LAW

LOUISIANA   MISSISSIPPI   NEW YORK   OHIO   TEXAS

KARI ROBINSON
(713) 520-1900
(713) 520-1025 Facsimile
krobinson@mcglinchey.com

February 2, 2010

**VIA FACSIMILE**

Mark A. Junell
The Junell Law Firm, PC
3900 Essex, Suite 390
Houston, Texas 77027

RE: Cause No. 2006-61178; *Albert Ortiz vs. Fred Lombardo, National City Home Loan Services, Inc. d/b/a First Franklin Loan Services, National City Bank of Indiana and Keystone Asset Management, Inc., et al*; In the 164th Judicial District Court of Harris County, Texas

Dear Mark:

I am responding to your letter dated January 20, 2010. Because legal, record title is still vested in National City Bank by virtue of the substitute trustee's deed, National City is not going to relinquish the keys. There is no court order requiring National City to do so, and the summary judgment orders are not final. You should receive our supplemental response to the plaintiff's motion to clarify which lays out the legal issues in greater detail.

Sincerely,

McGlinchey Stafford, PLLC

By: _Kari Robinson_
     Kari Robinson

KR/ab
304483.1  102869.0019

cc:   Gary Michael Block
      7660 Woodway Drive, Suite 590
      Houston, Texas  77063

# TAB – R

CAUSE NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | |
| | § | HARRIS COUNTY, TEXAS |
| FRED LOMBARDO, NATIONAL CITY | § | |
| HOME LOAN SERVICES, INC. DBA | § | |
| FIRST FRANKLIN LOAN SERVICES; | § | |
| NATIONAL CITY BANK OF INDIANA; | § | |
| KEYSTONE ASSET MANAGEMENT, | § | |
| INC., and RICHARD HOWELL, DBA | § | |
| ALEXANDER HUNTER PROPERTIES | § | |
| AKA ALEXANDER HUNTER` | § | |
| PROPERTIES, INC. | § | |
| | § | |
| *Defendants.* | § | 164th JUDICIAL DISTRICT |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS PORTIONS OF PLAINTIFF'S 10TH AMENDED PETITION

COMES NOW Defendants National City Home Loan Services, Inc. d/b/a First Franklin Loan Services and National City Bank of Indiana and any successor (collectively referred to as "Defendants") who file this Reply to Plaintiff, Albert Ortiz's ("Ortiz") Response to Defendants' Motion for Partial Summary Judgment to dismiss certain causes of action included in Plaintiff's 10th Amended Petition and in support provide the following:

### I.

### OVERVIEW

1.     The Court of Appeals limited its remand to the trial of contract and judicial foreclosure issues in this case as well as a determination of the amount of damages under the one satisfaction rule. There are no tort causes of action left to be tried in this case. Despite this,

488285.1                                           1

Ortiz has continued to file amended pleadings alleging new claims including a multitude of torts. These tort claims have already been decided and are outside the scope of the remand.

2. In an attempt to avoid Defendants' summary judgment on these improper tort causes of action plaintiff claims to have non-suited these tort claims. However, all of these tort claims were long gone before Ortiz plaintiff filed the non-suit. Plaintiff cannot non-suit claims that have already been decided by this Court and affirmed by the Court of Appeals or were not appealed in the first instance. Post appeal amended pleadings do not revive these claims. The motion for summary judgment of Defendants simply asks this Court to acknowledge that these tort claims are gone because they were previously decided. This motion for summary judgment is necessary because Plaintiff continues to plead extinguished tort claims and proclaims his intent to have these claims retried.

3. Ortiz filed a new lawsuit incorporating all of these tort claims with the idea that he would later consolidate it with this case. This filing merely compounds Ortiz's error referenced above and is sanctionable. Merely non-suiting claims and re-filing them in another court does not change the fact that these claims have been fully and finally decided by this Court and by the Court of Appeals.

4. The issue raised by Defendants' motion for summary judgment is simply: what is left for trial? The appeal narrowed what should be tried in this case and, pursuant to the Court's instructions, defendants simply seek to understand what remaining claims will be tried. Appeals narrow issues and remand does not restart the pre-trial process so that a plaintiff can plead and try an entirely new case.

5. Ortiz cited a number of cases in an attempt to justify a trial beyond what was considered in the first trial and on appeal. Ortiz willfully misreads the case law. All of the cases

cited by Ortiz involve motions for summary judgment where all claims may not have been considered by the trial court at the summary judgment stage. In a motion for summary judgment situation, a plaintiff may indeed, on remand, be able to amend his pleadings, add new claims, and try a case that differs from the issues that were considered at summary judgment. Here, however, the trial has occurred and Ortiz was obligated to bring any claim that he had in that trial. Now that the trial has been concluded, judgment rendered, and an appeal taken, Ortiz is not allowed to plead and try a new case.

## II.

## PROCEDURAL BACKGROUND

6.     When the parties appeared before the Court on August 1, 2014, they discussed the scope of the remand order and the Court indicated it expected the parties to present motions regarding the law of the case and the scope of the remand order as soon as possible.   Both Ortiz and Defendants amended their pleadings.   Ortiz filed an amended pleading that seeks to retry causes of action for which he either already obtained a final judgment or which the trial court dismissed and that dismissal was affirmed by the Court of Appeals. Defendants now file a motion for summary judgment to limit the scope of the second trial based on the limited remand issued by the Court of Appeals and to strike those causes of action not in accordance with that remand order ("Defendants' Motion for Summary Judgment").

7.     In his Response, Ortiz claims this Court cannot rule on the basis of law of the case and/or the Court of Appeals' limited remand order because either: 1) his claims were already disposed of and thus they cannot be dismissed again; 2) he is non-suiting most of his "new claims", filing a new lawsuit which he will consolidate with this lawsuit and thus the Court cannot dismiss claims which have been non-suited; or 3) the Court of Appeals mandate was not a limited mandate and thus Ortiz is free to amend his petition at will (*See* Ortiz's Response to

Defendants' Motion for Summary Judgment). All of the arguments are meritless and, in at least one case, potentially sanctionable.

8.      Ortiz filed a new lawsuit on October 28, 2014 in the 133rd District Court against Bank of America, N.A. and PNC, N.A. arising out of the SAME FACTS as the present lawsuit and pleading the causes of action Ortiz tried to nonsuit this week to avoid summary judgment (A copy of Ortiz's new lawsuit is attached hereto as Exhibit "A"). These are the same causes of action the Ortiz previously tried to raise in his Motion to Set Aside Order Denying Leave to Supplement Pleadings which he abruptly withdrew in the middle of the hearing of that motion (*See* Ortiz's Motion and Defendants' Response on file with the Court and incorporated herein by reference).

9.      Nothing has changed. The claims plead by Ortiz in his "new" law suit are still barred by the law of the case, the limited remand and now that he has filed a new lawsuit, without a doubt res judicata and collateral estoppel. The fact that he is trying to assert these claims against successor entities makes no difference.[1] At the time Ortiz filed this lawsuit, he knew the claims were either barred or that he was awarded all of his recoverable damages. This new lawsuit was brought in bad faith and is the very definition of frivolous. It is sanctionable under Tex. R. Civ. P. 91a and Tex. Civ. Prac. & Rem. Code. § 9.012, 10.004. Defendants seek to dismiss these claims and obtain sanctions against both the Ortiz and his counsel.

---

[1] Previously, Ortiz filed a separate lawsuit against PNC, N.A. which was ultimately settled. Attached as Exhibits "B" and "C" are the pleading and the non-suit with prejudice of all claims of that lawsuit.

# III.

# ARGUMENT

## A. Summary Judgment Appropriate

10. A motion for summary judgment is the proper vehicle to address claims barred by a remand order and/or law of the case.[2] What Defendants seek is an order outlining the scope of the second trial based on the remand order of the Court of Appeals.

## B. Attempted Non-Suit of No Effect

11. Ortiz claims that the Defendants seek to obtain dismissal of causes of action that have already been dismissed by the Court (Plaintiff's Response at p. 3). This begs the question, why did Ortiz replead them? Defendants simply seek this Court's ruling on what issues will be retried.

12. In his Response, Ortiz claims he is non-suiting all of the "new" claims included in his amended pleading including causes of action for fraud, trespass to try title, trespass, quiet title and for unfair debt collection practices allegedly arising out of a rescission deed (*See* Plaintiff's Tenth Amended Petition attached as Exhibit "F" to Defendant's Motion for Summary Judgment and Plaintiff's New Lawsuit attached hereto as Exhibit "A".) Each of these "new" claims was either ruled on as a matter of law or was tried to a jury in the first trial. The Court granted the Defendants a directed verdict on the fraud and unfair debt collection claims (*See* Final Judgment attached as Exhibit "B" and Court of Appeals' Mandate affirming the directed verdict at Exhibit "E" to Defendants' Motion for Summary Judgment). The trespass and trespass to try title claims were tried to a jury and Ortiz obtained an award for damages for these claims (*See* Final

---

[2] *See Simulis, L.L.C. v. General Electric Capital Corp.*, 392 S.W. 3d 729, 735 n. 7 (Tex.App.—Houston [14th Dist.] 2011, pet. denied) in which the court discusses that a summary judgment motion, rather than special exceptions, is the proper vehicle for a court to address the dismissal of a party's claims.

5

Judgment at Exhibit "B" and Jury Charge at Exhibit "A" to Defendants' Motion for Summary Judgment). The quiet title claim became moot when Ortiz obtained possession of the property prior to the trial.

## C. Law of the Case

13. The law of the case doctrine limits the issues a trial court may address in a second trial and provides that a question of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages.[3] A determination by an appellate court that the evidence is legally insufficient to support a finding involves a question of law and falls within the ambit of the law of the case doctrine.[4] Once a case has been appealed to the Supreme Court and the Supreme Court declined to accept the petition for review, the law of the case applies.[5]

14. Defendants seek an order from the Court applying the law of the case to bar Ortiz from retrying the causes of action for which the trial court granted the Defendants' directed verdict including "**fraud,** common-law **unreasonable debt-collection, statutory debt-collection violations**, statutory deceptive trade-practice violations, breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy and defamation per se." [emphasis added].

---

[3] *Briscoe v. Goodmark Corp.*, 102 S.W. 3d 714, 716 (Tex. 2003); *Leake v. Half Price Books*, 918 S.W.2d 559, 562-63 (Tex.App.—Dallas 1996, no writ) (point established on remand of earlier summary judgment was properly made the basis of second summary judgment, and appellate court would not revisit the issue on appeal of second summary judgment).

[4] *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 20 (Tex. App.—San Antonio 2006, pet. denied).

[5] *See Baptist Memorial Hosp. System v. Smith*, 822 S.W.2d 67, 73 (Tex. App. –San Antonio 1991, writ denied); *Allied Finance Co. v. Shaw*, 373 S.W.2d 100, 106 (Tex.Civ.App.—Ft. Worth 1963, writ ref'd n.r.e.); *Hurd Enterprises, Ltd. v. Bruni*, 828 S.W. 2d 101, 106 (Tex. App.- San Antonio 1992, writ denied); *But see, In re Henry,* 388 S.W. 3d 719, 727 (Tex. App.—Houston [1st Dist.] 2012) ("Because neither party filed a motion for rehearing or a petition for review with the Texas Supreme Court challenging these holdings, our ruling became the law of the case and controlling on remand."); *See also, Barrows v. Ezer,* 624 S.W.2d 613, 616-617 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) (where law of the case was applied when decision of court of appeals in original appeal was not challenged by petition for writ to the Supreme Court).

15. Ortiz tries to avoid the law of the case doctrine by claiming the "law of the case does not bar Ortiz's claims because Ortiz's new claims are based on facts that were not part of the first trial and legal issues that were not decided in the first trial." (*See* Defendants' Response at ¶ 7).

16. But, these are not "new claims." In particular, two of the claims that were subject to directed verdict (*See* discussion above) which Ortiz now seeks to non-suit as "new claims" are the fraud and unlawful debt collection claims (*See* Plaintiff's Non-suit attached to his Response to Defendants' Motion for Summary Judgment). This Court allowed the Ortiz to introduce evidence and argue to the jury regarding the rescission deed (*See* Defendants' Response to Plaintiff's Motion to Set Aside Order Denying Leave to Supplement Pleadings incorporated herein by reference). Defendants obtained directed verdict which was affirmed by the Court of Appeals. These claims fall directly within the definition of the "law of the case" and Ortiz is not allowed to retry those claims.

**D. Limited Remand Limits Trial on Remand**

17. Remarkably, Ortiz reads the Court of Appeals' two and half page mandate as a general mandate as opposed to a limited remand. The Supreme Court stated in *Hudson v. Wakefield* that when a court of appeals issues a limited remand, the trial court is restricted to the

specific remanded issues on retrial.[6] In interpreting the mandate, trial courts should look not only to the mandate itself, but also to the opinion of the court.[7]

18. The Court of Appeals tells this Court exactly what claims to retry: Ortiz's claim against National City for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure. The Court of Appeals goes on to state "and, with the exception of Ortiz's limitations defense discussed in this Court's opinion, permitting the parties to assert defenses to **these** claims." (*See* Exhibit "E" to Defendants' Motion). If the Court of Appeals, in such a specific and limited mandate, intended for the parties to be allowed to freely amend their pleadings, it would have said so (especially given that it specifically stated that the parties could amend their affirmative defenses).

19. All of the case law relied on by Ortiz in support of the proposition that the remand order does not limit Ortiz's ability to bring new claims involves a remand after an appeal of a summary judgment (*See* Defendants' Response at p. 7). This is a significant distinction as stated by the Supreme Court in *Hudson v. Wakefield* in which the Court noted that on a review of summary judgments, the appellate courts are limited in their consideration of issues and facts.[8] One case cited by Ortiz further highlights the difference noting that in non-summary judgment cases, like the case at hand, "the parties had had the opportunity to fully litigate all issues to a

[6] *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986) ("When this court remands a case and limits a subsequent trial to a particular issues, the trial court is restricted to a determination of that particular issue."). *See University of Texas System v. Harry,* 948 S.W.2d 481, 482-483 (Tex.App.—El Paso 1997) (on appeal following jury trial on a workers compensation claim, the court of appeals issued limited remand when it stated that retrial was limited to issue of whether plaintiff incurred an injury on a certain date and, if so, whether she received the injury in the scope of her employment. Trial court went beyond remand when it tried other issues).

7 *Id.* at p. 630. The Supreme Court does recognize that the cases are rare where issues of fact should be limited in a case reversing and remanding a case to a jury and to authorize such an interpretation, **"it must clearly appear from the decision that it was so intended."** Id., [emphasis added] *citing, Cole v. Estell,* 6 S.W. 175, 177 (Tex. 1887). This is such a case.

[8] *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1996).

resolution."[9] Accordingly, it was appropriate for the Court of Appeals to issue a limited remand after a full trial on the merits because the Court of Appeals had the benefit of the full record when it issued its remand order. In this case, the Court of Appeals reviewed this case after a full trial on the merits. The cases cited by Ortiz are inopposite. A plaintiff must bring all claims it seeks judgment upon at trial. An appeal is not a license for a plaintiff to confect a new lawsuit.

20. Ortiz takes issue with the Court of Appeals language in its mandate in which it states "we . . . reverse the portions of the judgment. . . providing that 'all partial and/or interlocutory judgments heretofore granted in this care are hereby made final and incorporated into this Final Judgment." (Plaintiff's Response at ¶ 13). Ortiz claims this merely makes these summary judgments interlocutory again rather than reversing those judgments.

21. As directed by the Court in *Hudson v. Wakefield,* the mandate must be read in conjunction with the Court's opinion.[10] In its Opinion, the Court of Appeals makes it clear it is reversing the summary judgments. Among the statements included in the opinion that make it clear that the Court of Appeals is reversing the summary judgments are the following:

- "The common-law-arguments in Ortiz's motion cannot support summary-judgment based on the Uniform Commercial Code because the U.C.C. 'preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies." (p. 877).

- Ortiz then would be not entitled to summary judgment based on common law because there was no consideration for the release. (p. 878)

- Because the Letter Agreements are ambiguous, we also cannot affirm the summary-judgment rulings based on the grounds expressly raised in the summary-judgment motions.

- The ambiguity of the Letter Agreements precluded summary judgment. (p. 881)

[9] *Reynolds,* 266 S.W.3d at 147.

[10] *Hudson,* 711 S.W.2d at 630.

- We therefore conclude that the trial court erred in granting summary judgment and in incorporating those rulings in the final judgment.

22. The Trial Court incorporated all of the summary judgments into its final judgment and the Court of Appeals reversed all of those summary judgments.[11]

23. Ortiz also argues that Defendants' are somehow barred, waived, estopped and/or ratified Ortiz's efforts to retry claims barred by the Courts of Appeals remand order because Defendants allegedly plead new claims in its amended pleading. Defendants did not plead new claims. Defendants have plead a declaratory judgment since its Original Counterclaim filed in 2010 (A copy is on file with this Court). Defendants' recently amended their counterclaim adding factual detail to their previously plead declaratory judgment. Defendants' declaratory judgment has always been defensive in nature.

## IV.

## SUMMARY AND PRAYER

24. The Court of Appeals issued a limited remand and Ortiz is barred from reopening his case by that limited remand. By attempting to manipulate the system and avoid the order of the Court of Appeals, Ortiz entered the realm of sanctionable activity. The Defendants pray that this Court enter an order limiting the re-trial in this case in accordance with the limited remand of the Court of Appeals.

---

[11] Defendants do not intend to contest the issue of whether the June 2006 non-judicial foreclosure sale was valid. Defendants intend to pursue their judicial foreclosure cause of action.

Respectfully submitted,

**McGLINCHEY STAFFORD**

By: _/s/ Stephanie Laird Tolson_

Joel Mohrman
State Bar No. 14253500
Stephanie Laird Tolson
State Bar No. 11795430
1001 McKinney, Suite 1500
Houston, Texas 77002
Telephone: (713) 520-1900
Facsimile: (713) 520-1025

_Attorneys for Defendants National City Home
Loan Services, Inc. d/b/a First Franklin Loan
Services and National City Bank of Indiana_

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent to all counsel of record via Email, U.S. certified mail and/or facsimile on October 30, 2014:

_**Email, U.S. Certified Mail and/or Facsimile**_
Michael C. Donovan
6300 Dixie Drive
Houston, Texas 77087
mdonovanesq@yahoo.com

_/s/ Stephanie Laird Tolson_
Stephanie Laird Tolson

# Exhibit List

A.    Albert Ortiz's Original Petition

B.    Plaintiff's First Amended Original Petition with Application for Injunctive Relief

C.    Order of Nonsuit dated November 23, 2011

488285.1

10/28/2014 4:28:27 PM
Chris Daniel - District Clerk Harris County
Envelope No: 2986045
By: Melissa Cox
Filed: 10/28/2014 4:28:27 PM

ALBERT ORTIZ §                     IN THE DISTRICT COURT
   Plaintiff §
VS. §
  §
  §
BANK OF AMERICA, NATIONAL §          OF HARRIS COUNTY, TEXAS
ASSOCIATION; and §
PNC BANK, NATIONAL ASSOCIATION; §
   Defendants §                  _____ JUDICIAL DISTRICT

## ALBERT ORTIZ'S ORIGINAL PETITION

TO THE HONORABLE COURT:

Albert Ortiz ("ORTIZ"), Plaintiff in this cause, hereby files this Original Petition complaining of Bank of America, National Association ("BOA"); and PNC Bank, National Association ("PNC"), the Defendants. ORTIZ respectfully shows the Court the following:

### DISCOVERY

1. Discovery in this case is intended to be conducted under a Level 2 Discovery Control Plan pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

### JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

2. This Court has jurisdiction over the claims stated herein in that this Court has general jurisdiction and specific jurisdiction over the Defendants. Jurisdiction of this case is proper exclusively in the Harris County District Courts based on the prior exclusive jurisdiction doctrine, which holds that "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall v. Marshall*, 547 U.S. 293, 311 (2006); *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922). Plaintiff Ortiz is seeking damages within the jurisdictional limits of the Court and monetary relief over $1,000,000. Venue is proper in Harris County, pursuant to Section 15.002 and/or Section 15.011 of the Texas Civil Practice and Remedies Code. Plaintiff generally avers that all conditions precedent to filing



EXHIBIT
A

the claims herein have been performed or have occurred or the conditions have been excused because of the conduct of the Defendants.

## PARTIES

3. Plaintiff Albert Ortiz is an individual who resides in Harris County.

4. Defendant Bank of America, National Association, 100 North Tryon Street, Charlotte, North Carolina 28202, is a national bank and non-resident engaged in business in Texas that can be served by serving its registered agent, CT Corporation Systems, at 1999 Bryan Street, Dallas, Texas 75201.

5. Defendant PNC Bank, National Association, is a national bank and non-resident engaged in business in Texas and does not maintain a regular place of business or have a designated agent for service in Texas, and may be served with a citation directed to said Defendant at the home office or principal office address of Defendant, by serving any officer of the bank, at: 222 Delaware Avenue, Wilmington, Delaware 19899. Service of said Defendant as described above can be effected by personal delivery or by service via the Texas Secretary of State.

## SUCCESSORS

6. With respect to some or all of the claims set forth herein, Defendant BOA is made a party to this litigation as a successor by merger to National City Home Loan Services, Inc. d/b/a First Franklin Loan Services ("HLS") and accordingly is responsible for, and is liable to ORTIZ, based on the acts and/or omissions of HLS.

7. With respect to some or all of the claims set forth herein, Defendant PNC is made a party to this litigation as a successor by merger to National City Bank of Indiana ("BANK") and accordingly is responsible for, and is liable to ORTIZ, based on the acts and/or omissions of BANK.

8. Upon information and belief, HLS merged into BAC Home Loan Services, Inc., in October, 2010, which subsequently merged into Defendant BOA in July, 2011. Upon information and belief, Defendant BANK merged into National City Bank in July, 2006, which subsequently merged into Defendant PNC in November, 2009.

## NATURE OF ACTION

9. On or about March 15, 2004, Plaintiff ORTIZ purchased a home in Harris County, Texas. The home in question is located at 105 Birdsall, Houston, Harris County, Texas 77007 (the "Real Property") and is legally described as follows:

LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

10. ORTIZ borrowed funds from lender First Franklin Financial Corp., a subsidiary of BANK. The promissory note ("Promissory Note" or "Note") evidencing the loan was subsequently assigned to BANK. The loan was collateralized by a deed of trust. Both the Note and deed of trust related thereto ("Deed of Trust") were signed on or about March 15, 2004.

11. The actions of HLS giving rise to this lawsuit were undertaken while HLS served as "Loan Servicer" or "Mortgage Servicer" for and on behalf of BANK. HLS specifically serviced the ORTIZ loan, more fully described above, for and on behalf of BANK. HLS was – at all times complained of herein – acting within the course and scope of its duties as agent, servant or employee for and on behalf of BANK. All actions complained of herein were undertaken at the direction, instruction, approval, ratification, and/or knowledge of BANK.

12. On or about the 6th day of June, 2006, HLS and BANK foreclosed on ORTIZ'S home. BANK purchased ORTIZ'S home at a non-judicial foreclosure proceeding (Substitute Trustee's Sale).

13. Prior to and in connection with the foreclosure, HLS and/or BANK failed to provide proper notice to ORTIZ as required, including failing to provide proper notices of default, intent to accelerate the note, acceleration of the note, and notice of the foreclosure sale. All notices were sent to the wrong address as they were not sent to the address designated by ORTIZ as the proper address for receipt of notices from HLS and/or BANK.

14. Following the foreclosure, Defendants (at the time acting in the capacity of HLS and/or BANK) twice agreed to make a full waiver, release, renunciation and/or discharge with respect to ORTIZ and any and all obligations ORTIZ may have had to Defendants, agreed to *waive any and all claims and demands of liability or obligation* on the part of ORTIZ and agreed that *no further sums would be demanded or litigated* (emphases added) by Defendants. The first such agreement was executed on June 27, 2006, and a second was executed on July 6, 2006. True and correct copies of these agreements ("Letter Agreements") are attached hereto as Exhibits "1" and "2", respectively, and are incorporated herein by reference, the same as if fully set forth at length.

15. On October 28, 2008, a Texas court of law signed an order granting ORTIZ an interlocutory summary judgment ruling that BANK'S foreclosure of the Real Property was wrongful and that title to the Real Property should be restored to ORTIZ.

16. Rather than comply with the court's order restoring the Real Property in question to ORTIZ, HLS and/or BANK continued to hold possession of same, refused to allow ORTIZ entry to his home, failed for some time to restore title to the Real Property into ORTIZ'S name (until later doing so without informing ORTIZ), and -- in complete disregard of the court's order and in violation of the Letter Agreements -- chose to again attempt to not only collect on a debt that no longer is due and owing, but sought to "re-foreclose" on ORTIZ'S home, although title was no longer in ORTIZ'S name at the time.

17. The Real Property was posted for foreclosure sale despite BANK still holding title to the Real Property and despite the court's order providing that title to the Real Property should be restored to ORTIZ. Despite ORTIZ'S multiple requests and his expression of his grave concerns that the Real Property would again wrongfully being transferred, BANK refused ORTIZ'S requests for a copy of a substitute trustee's deed and any other information that would have evidenced the foreclosure sale, or lack thereof.

18. In 2009, a Rescission Instrument was executed by BANK, acting through HLS, and filed of public record. The document rescinded and "deemed void and of no effect for all purposes", the June 6, 2006, Substitute Trustee's Deed and the foreclosure of ORTIZ'S home, the Real Property. In the Rescission Instrument, HLS and BANK "stipulate and declare" that the Substitute Trustee's Deed is void. This instrument was never disclosed or produced to ORTIZ until May 11, 2010. A true and correct copy of this Rescission Instrument is attached as Exhibit "3", incorporated herein by reference, the same as if fully set forth at length.

## TRESPASS TO TRY TITLE

19. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. To the extent, if any, that ORTIZ lacks full possessory and title rights to the Real Property and the same are at issue, ORTIZ alleges a trespass to try title claim against Defendants PNC and/or BOA. ORTIZ'S trespass to try title claim involves the parcel of real property made the basis of this suit (the "Real Property"). Pursuant to the Rescission Instrument, ORTIZ has been, and is, the owner in fee simple of the Real Property, located in Harris County, Texas. At all relevant times, ORTIZ has been, and still is, legally entitled to possession of the Real Property.

Under the guise of "protecting investor collateral", Defendants (at the time acting in the capacity of HLS and/or BANK) seized ORTIZ'S home on or about November 28, 2005 – and

ignoring their own company rules, procedures and guidelines — refused to restore possession of the property to ORTIZ.

At the very least, the Rescission Instrument is a stipulation and declaration by Defendants that the Substitute Trustee's Deed is void. ORTIZ is entitled to title and possession on the basis of this judicial admission. ORTIZ is also entitled to title and possession on the basis of ORTIZ'S prior un-abandoned possession. Prior possession carries with it a presumption of ownership interest against one, such as Defendants, having no title.

Furthermore, by the filing of the Rescission Instrument with the real property records, Defendants have disclaimed any claim or right to title in the Real Property. As a matter of law, ORTIZ is entitled, without the need of introduction of evidence to his title, to a judgment against Defendants for the title and possession as to all land put in issue and as to which Defendants disclaim title.

In addition to an award of title and possession of the Real Property, ORTIZ also seeks to recover his damages in the form of lost rental and/or loss of use suffered as a result of the wrongful possession of the Real Property by PNC and/or BOA. ORTIZ is entitled to recover rents and profits or damages incurred from loss of use. Tex. R. Civ. P. 783(f).

ORTIZ seeks recovery of all such lost rentals and/or loss of use caused by such wrongful possession of the Real Property from the date he was locked out to the present date or, alternatively, from the date of the execution of the Rescission Instrument to the present date.

## TRESPASS TO REALTY

20. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of Defendants (at the time acting in the capacity of HLS and/or BANK) constitutes a trespass. The Rescission Instrument evidences that title never transferred from ORTIZ to PNC as a result of the foreclosure or, alternatively, that

after the foreclosure, title transferred back to ORTIZ in 2009 when the Rescission Instrument was filed in the property records. Defendants are liable to ORTIZ for the intentional tort of trespass upon realty by entering the Real Property without ORTIZ'S consent, intentionally causing one or more third persons to enter the Real Property, entering or causing others to enter the Real Property in excess of any authority to enter the Real Property and/or remaining upon the Real Property after it no longer had authority to do so. Such entry was physical, intentional, and voluntary. Defendants' trespass wholly deprived ORTIZ of his use, possession and quiet enjoyment of the Real Property.

ORTIZ alleges a cause of action for trespass against said Defendants, seeking to recover for damage to the Real Property and/or loss of the use and enjoyment of same for all time subsequent to his being locked out of the Real Property. Alternatively, ORTIZ seeks to recover all such damages from April 17, 2009, to the time of his re-entry to the Real Property.

## QUIET TITLE CLAIM

21. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ requests that the Court cancel the Deed of Trust related to the Real Property and remove the cloud on the title to the Real Property created by said Deed of Trust. Ortiz further requests that the Court order Defendants BOA and PNC to remove the cloud on the title to the Real Property created by said Rescission Instrument to the extent it purports to reinstate the Deed and Trust and Note associated with the Real Property as well as the debt previously associated therewith. Alternatively, the Court should modify or reform the Rescission Instrument, through Declaratory Judgment, to reflect and comport with Defendants' renunciations, waivers, and/or releases dated July 6, 2006, and June 27, 2006, which contain language expressly stating that PNC (at the time acting in the capacity of BANK) waives, releases, renounces and/or discharges any and all actual and potential demands and claims regarding any

obligations or liabilities of ORTIZ in connection with the Real Property, including the Note and Deed of Trust associated with such Real Property.

Alternatively, ORTIZ seeks a Declaratory Judgment declaring the foreclosure of June 6, 2006, wrongful, null and void; granting title to the property to ORTIZ free and clear of all liens and encumbrances, and declaring that ORTIZ is not liable to Defendants for any sums in connection with the Promissory Note (subject of the Deed of Trust); and declaring that Defendants have released, renounced, discharged and/or waived any rights they might have had under the Note and/or Deed of Trust.

## FRAUD

22. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of Defendants BOA and/or PNC constitutes fraud. Defendants committed fraud by omission in that Defendants failed to disclose the Rescission Instrument. ORTIZ did not learn of the Rescission Instrument until it was produced by Defendants' former attorneys in this cause, over one year after its execution by Defendants. Defendants' omission constitutes fraud in that it was a material representation, the representation was false, Defendants knew it was false at the time it was made or it was made recklessly without knowledge of the truth as a positive assertion. Defendants made it with intent that ORTIZ act on it, ORTIZ did rely on it, and ORTIZ was injured as a proximate result.

Specifically, Defendants discussed or communicated with ORTIZ, by and through his attorneys, numerous times regarding the Substitute Trustee's Deed, the Real Property, and the foreclosure of the Real Property without ever disclosing that the foreclosure had been rescinded, the Substitute Trustee's Deed had been deemed void and of no effect for all purposes and/or title to the Real Property had been transferred back to ORTIZ. A party has a legal duty to disclose in the following situations: (1) when one voluntarily discloses information, he has a duty to

disclose the whole truth; (2) when one makes a representation, he has a duty to disclose new information when he is aware the new information makes the earlier representation misleading or untrue; and (3) when one makes a partial disclosure and conveys a false impression, he has a duty to speak. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 670-71 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Defendants violated this duty.

Defendants committed fraud in that they disclosed information to ORTIZ regarding the status of title to the Real Property and the effect of the foreclosure, without ever disclosing the whole truth. Defendants had a duty to disclose that the June 6, 2006, foreclosure sale of the Real Property, the resulting Substitute Trustee's Deed had been rescinded and/or title to the Real Property had been transferred back to ORTIZ. Defendants disclosed information about the foreclosure sale and the Substitute Trustee's Deed but failed to disclose the existence and execution of the Rescission Instrument. Defendants represented that the foreclosure sale had not been set aside and that title to the Real Property was in Defendants name but failed to disclose the existence and execution of the Rescission Instrument, which Defendants knew made the earlier misrepresentation misleading or untrue. Defendants intended that ORTIZ act on this fraudulent omission(s). ORTIZ did rely on it, and ORTIZ thereby suffered injury in that he continued to be deprived of the Real Property and incurred expenses associated with living elsewhere.

Moreover, subsequent to their execution and filing of the Rescission Instrument, Defendants affirmatively made fraudulent representations to Plaintiff that BANK, not ORTIZ, had title to the Real Property, and continued to use this contention as a basis for failing and refusing to allow ORTIZ to regain possession to the Property. Specifically, Defendants', acting through their attorneys or agents, sent a letter, in response to a letter from ORTIZ'S attorney, in which they falsely represented that BANK was the owner of the Real Property, denied ORTIZ

the keys to the Real Property, and refused to transfer the Real Property to ORTIZ, when they knew (or should have known but for their recklessness) that the Real Property had already been transferred to ORTIZ. A true and correct copy of the letter is attached hereto as Exhibit "4" and incorporated herein. Pleading further, ORTIZ alleges a claim against Defendants for fraudulent conduct. The above-described wrongful conduct by Defendants constitutes fraudulent conduct as it is the successful employment of deception, cunning, or artifice to circumvent, cheat, or defraud ORTIZ to his injury.

Defendants' fraudulent omissions, representations, and/or conduct alleged herein regarding the Rescission Instrument was carried out and accomplished by Defendants' attorneys or agents at the time, including the law firm of McGlinchey Stafford, PLLC, Kari Robinson, Joel Mohrman, the law firm of Barrett Daffin Frappier Turner & Engel, LLP, and/or the law firm of Leyh & Payne, LLP.

## UNLAWFUL DEBT COLLECTION

23. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of BOA and/or PNC constitutes unlawful debt collection. Defendants failed to disclose the Rescission Instrument to ORTIZ subsequent to its execution and filing. Moreover, subsequent to their execution and filing of the Rescission Instrument, Defendants affirmatively represented to ORTIZ that title to the Property was in BANK, not ORTIZ, and continued to use this assertion as a basis for failing and refusing to allow ORTIZ to regain possession to the Property. Defendants also continually refused ORTIZ possession to the Real Property even though they have since testified that ORTIZ could have had entry, access, and/or possession to the Real Property at any time if he had requested same. All such conduct constituted deceptive, fraudulent, and/or misleading practices by said Defendants and employed the use of false representations or deceptive means in attempts to collect a debt.

Defendants engaged in such action in collection of an actual or alleged consumer debt of ORTIZ and thus violated Chapter 392 of the Texas Finance Code (the Texas Debt Collection Practices Act or DCPA), including Section 392.304 of the DCPA. ORTIZ alleges a cause of action for violation of the DCPA against Defendants, seeking to recover for all damages caused thereby, including his actual damages, statutory damages, and/or injunctive relief available under the DCPA. Such actions also constitute an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which ORTIZ seeks to recover his damages from Defendants.

## BREACH OF LETTER AGREEMENTS

24. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ entered into contracts with Defendants BOA and PNC (at the time acting in the capacity of HLS and/or BANK) when they executed the Letter Agreements, attached hereto. Such agreements are valid, binding, and fully enforceable against Defendants as they constitute valid covenants not to sue, waivers, renunciations, and/or releases, whether or not they are supported by consideration. "A release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration." *McMillen v. Klingensmith*, 467 S.W.2d 193, 195 (Tex.1971); *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 810 (Tex. 1980) (Denton, J., concurring); *Adams v. Petrade Intern., Inc.*, 754 S.W.2d 696, 723 (Tex. App.—Houston [1 Dist.] 1988, writ denied). Furthermore, Section 1.306 of the Texas Business and Commerce Code provides that a claim or right arising out of an alleged breach may be discharged in whole or in part without consideration by agreement of the aggrieved party in an authenticated record. Accordingly, by executing the Letter Agreements, Defendants discharged any of their claims or rights against ORTIZ related to any alleged breach by ORTIZ, regardless of whether the Letter Agreements are supported by consideration.

By the Letter Agreements, PNC agreed that it would not file or pursue any lawsuit or other legal proceeding ORTIZ and otherwise renounced its rights against ORTIZ. Such agreements thereby discharged any obligation of ORTIZ to pay the Note, whether or not they were supported by consideration. Tex. Bus. & Com. Code § 3.604. Nevertheless, PNC has continued to pursue legal proceedings against ORTIZ in attempts to collect on the Note and foreclose on the Real Property.

ORTIZ performed, tendered performance of, or was excused from performing his obligations under such contracts. By such contracts, Defendants agreed to release, renounce, discharge, and/or waive all claims and/or rights against ORTIZ concerning the Real Property and ORTIZ'S Note and/or Deed of Trust executed in connection with the loan for the purchase of the Real Property. Defendants further agreed that they would not demand or litigate any further sums from ORTIZ. Defendants failed to comply with the Letter Agreements, and the releases and/or covenants not to sue contained therein, by pursuing an appeal of a Texas court of law's judgment, in favor of ORTIZ, dated August 18, 2010, and further failed to comply, subsequent to the appellate court's remand, by continuing to pursue claims against ORTIZ related to the Note and Deed of Trust. The conduct of Defendants constitutes a breach of the Letter Agreements by Defendants under Texas law and caused damages to ORTIZ. ORTIZ seeks to recover all such damages from Defendants and/or requests from the Court specific performance and/or injunction relief as remedy for enforcement of the Letter Agreements.

## REQUEST FOR DECLARATORY RELIEF

25. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ requests that the Court declare that the Letter Agreements constitute Defendants' waiver, release, discharge, and/or renouncing of any rights to pursue any further legal proceedings against ORTIZ related to the Note and Deed of Trust, including any appeal and/or mandamus in connection with any ruling or

judgment of this Court. A conflict exists regarding this issue as the parties' have conflicting interpretations regarding the scope and meaning of the Letter Agreements. ORTIZ requests a declaratory judgment to resolve this controversy and remove the resulting uncertainty. See Tex. Civ. Prac. & Rem. Code Ann. §§37.003, 37.004.

## EQUITABLE SUBROGATION CLAIM

26. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ hereby makes a contingent or conditional claim alleging that, if PNC obtains a judgment in its favor determining that it was the owner of the Real Property for any period of time that ORTIZ has paid property taxes as the presumed owner, then ORTIZ is entitled to recoup and obtain reimbursement from PNC of all sums ORTIZ paid as property taxes for that time period. ORTIZ alleges a claim against PNC for equitable subrogation with respect to all such tax payments made in connection with the Real Property. If and only if PNC is determined to have been the owner of the Real Property at the time of any such payments, such payments were made on behalf of and for the benefit of PNC. To such extent, all such payments were made involuntarily in that ORTIZ was protecting his own interest since, at the time, he would have been considered responsible for the taxes as the purported owner of the Real Property. ORTIZ would be entitled under the law to recover all such payments from PNC. ORTIZ hereby asserts an equitable subrogation claim against PNC to recover all such payments. Pleading in addition and/or in the alternative thereto, ORTIZ alleges against PNC an action on an assumpsit, or implied right of, or contract for, reimbursement, in that ORTIZ has paid the debt or obligation of PNC, which has thereby unjustly enriched PNC. Ortiz seeks to recover from PNC based on the obligation implied by law in his favor for such reimbursement. ORTIZ's payments were made to protect his interests with regard to the Real Property. ORTIZ's right to recovery of such payments is based on PNC's unjust retention of a

benefit to the loss of ORTIZ, against the fundamental principles of justice and equity. ORTIZ may and intends to assert all those rights held by the taxing authorities against PNC in connection with the taxes on the Real Property. Accordingly, to the extent ORTIZ is deemed to not own the Real Property, ORTIZ seeks to have the Court order a tax sale of the Real Property to recover the sums to which he is entitled.

## PUNITIVE DAMAGES

27. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition. Defendants' actions against ORTIZ were done with gross negligence, malice, and/or the committing of fraud. Defendants are therefore liable to ORTIZ for punitive damages within the jurisdictional limits of the Court.

Proof in support of recovery of such damages includes, without limitation, Defendants' actions committed just weeks after a Texas court of law's judgment (subsequently appealed) awarding ORTIZ the Real Property free of any lien under the Deed of Trust or any further obligations on the Note. Despite such judgment, Defendants soon proceeded with actions including again changing ORTIZ'S locks at the Real Property, excluding ORTIZ from the Real Property, and attempting to sell the Real Property, all of which were committed without any notice to or consent from ORTIZ.

## ATTORNEYS' FEES

28. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition. As a result of PNC's failure to comply with the Letter Agreements, ORTIZ retained an attorney to prosecute his claims related thereto. ORTIZ is entitled to an award of attorneys' fees for prosecution of this action under the DCPA, Chapter 392 of the Texas Finance Code, and/or Chapter 38 of the Texas Civil Practice and Remedies Code. ORTIZ is also entitled to an award of attorneys' fees under Chapter 37 of the Texas Civil Practice

and Remedies Code for his claims for declaratory judgment brought thereunder. ORTIZ is entitled to a further award of attorneys' fees should a party appeal and final judgment ultimately be awarded in favor of ORTIZ. Should it be necessary for a party to petition the Texas Supreme Court for review, ORTIZ further requests that, upon final judgment for ORTIZ, the Court award an additional amount as attorneys' fees for representing ORTIZ during such review.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff ORTIZ respectfully requests of the Court the following:

1. Judgment against Defendants for all damages, including mental anguish, actual, economic, statutory, consequential and exemplary damages, within the Court's jurisdictional limits;

2. Judgment against Defendant PNC that provides for ORTIZ'S recovery of title to the Real Property;

3. Judgment against Defendants for all other declaratory relief requested herein;

4. Prejudgment interest as provided by law;

5. Interest after judgment as allowed by law until paid;

6. All costs of suit and attorneys' fees; and

7. Such other and further relief, in law and in equity, including specific performance and injunctive relief, to which Plaintiff ORTIZ may be entitled.

Respectfully submitted,

/s/ Michael Donovan
Michael Donovan
Texas Bar No. 00796478
6300 Dixie Drive
Houston, TX 77087
(713) 956-4043; (713) 956-4042 fax
mdonovanesq@yahoo.com

ATTORNEY FOR ALBERT ORTIZ

# EXHIBIT 1

**National City**

National City Home Loan Services, Inc.
P.O. Box 1030
Pittsburgh, PA 15230-1030

June 27, 2006

Mr. Michael Donovan, Esq.
6300 Dixie Drive
Houston, TX 77087

SENT VIA FAX TO:
281-561-8493

RE: Albert Ortiz, loan # ~~█████~~

Dear Mr. Donovan,

I am transmitting a copy of the executed Letter Agreement, along with our 1099-A which will be furnished to the Internal Revenue Service. Should you have any additional questions on this matter, please contact me at 412-442-3640.

Best regards,

Gary L. Stockey
Customer Relations Manager
National City Home Loan Services

National City Home Loan Services, Inc. is a subsidiary of National City Bank of Indiana. First Franklin and NationPoint are divisions of National City Bank of Indiana, which is a wholly-owned subsidiary of National City Corporation. National City Home Loan Services, Inc. services loans for the following affiliated entities as First Franklin Loan Services, National City Loan Services and NationPoint:

| National City Bank | National City Bank of Indiana | National City Bank of Kentucky |
| National City Bank of the Midwest | National City Bank of Pennsylvania | NationPoint |
| First Franklin Financial Corporation | | |



# MICHAEL DONOVAN
## ATTORNEY AT LAW
6300 Dixie Drive, Houston, Texas 77007          (281) 879-6746          Fax (281) 561-0493

<u>LETTER AGREEMENT</u>

June 23, 2006

Gary Federonko
First Franklin Financial Corporation / National City Home Loan Services, Inc.

     Re:     *Albert Ortiz Loan ▓▓▓▓▓▓▓ Property Address:   105 Birdsall, Houston, Texas 77007*

Dear Mr. Federonko:

     As you know, I represent Albert Ortiz. This letter is pursuant to our conversation this date and is intended to serve as a binding agreement between my client, Albert Ortiz ("Borrower"), and First Franklin Financial Corporation / National City Home Loan Services, Inc. ("Lender") regarding the above-referenced matter.

     This Agreement shall confirm that Lender has completed and will file an Internal Revenue Service Form 1099-A in connection with its foreclosure on the above-referenced property. As a result, it does not intend to and shall not file or pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise. Lender agrees to and does fully release Borrower from any and all obligations and liability that Borrower may have or may have had to Lender, and Lender waives any and all demands and claims regarding any such obligation or liability. It is agreed that no further sums will be made or owed by Borrower, and no further sums will be demanded or litigated by Lender.

     Please present this Agreement to any necessary Lender representative to have it executed by an authorized Lender representative and returned to me via facsimile (281-879-6746). Thank you for your continued attention to this matter.

                  Sincerely,

                  Michael Donovan

<u>ACCEPTED AND AGREED:</u>

By:   GARY J. STOCKEY           6-27-06
    Authorized Representative for Lender        Date

    Signature

------------------- 1099-A FORECLOSURES ---------------------
KEY INFORMATION: TAX YEAR: 06  (*TIN/COMPANY NAME FROM YE HEADER*)
  PAYER'S TIN: 59-2645397   NAME: NATIONAL CITY HOME LOAN SERVICES INC
  LOAN NO: 1044241031   REC NO: 001

---

   BORROWER'S INFORMATION      (NAME2,3,4 NOT REPORTED TO IRS)
   TIN: ▓▓▓▓▓▓▓
  NAME: ALBERT ORTIZ
NAME 2:
NAME 3:
NAME 4:         BORROWER RESP FOR DEBT: Y (Y/N)
  ADDR: 105 BIRDSALL AVE     FNMA (F) OR FHLMC (M) RPTO: _
  CITY: HOUSTON     STATE: TX  INVESTOR LOAN NO: 0033505141
ZIP CODE: 77007 _____  FOREIGN ADDR: N  SERVICER CODE: _____

  DEBT OUTSTANDING:    $37,207.83
  FAIR MARKET VALUE:    $25,000.00
ACQUISITION DATE 06/06/06  PROP DESC: 105 BIRDSALL AVE  HOUSTON TX 77007

# EXHIBIT 2

MICHAEL DONOVAN
ATTORNEY AT LAW
1900 Olive Drive, Houston, Texas 77027          (281) 879-6746          Fax (281) 561-8496

## LETTER AGREEMENT AMENDMENT

July 6, 2006

Gary Bradley
National City Home Loan Services, Inc.
P.O. Box 1838
Pittsburgh, PA 15230-1838

Re:     Albert Ortiz Loan #104254037; Property Address: 165 Birdtail, Houston, Texas 77087

Dear Mr. Bradley:

Thank you for providing a copy of the 1099-A and executing the letter agreement I sent regarding the above-referenced matter. It has come to my attention that National City Bank of Indiana was the current mortgagee and that First Franklin Financial Corporation was the original mortgagee. The letter agreement did not specifically reference National City Bank of Indiana.

Out of an abundance of caution, I am requesting that you please confirm, by signing where indicated below, that all of the terms and conditions of the June 23, 2006, letter agreement also apply to National City Bank of Indiana, as the Lender, and that National City Bank of Indiana also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of the Borrower, Albert Ortiz, in connection with the above-referenced property, including the note and deed of trust associated with such property.

Please execute this amendment to our agreement as an authorized Lender representative and return it to me via facsimile (281-879-6746). Thank you for your prompt attention to this matter.

Sincerely,

Michael Donovan

ACCEPTED AND AGREED:

By: _____          _7-6-06_____
     Authorized Representative for Lender          Date

# EXHIBIT 3



20090192654
05/07/2009 RF2 $31.00

## RESCISSION OF SUBSTITUTE TRUSTEE'S SALE, CANCELLATION OF SUBSTITUTE TRUSTEE'S DEED AND RECONVEYANCE DEED WITHOUT WARRANTIES

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

\*\*\*IMPORTANT NOTICE TO COUNTY CLERK:
    INDEX ALBERT ORTIZ AS GRANTEE

STATE OF TEXAS

COUNTY OF HARRIS

WHEREAS, National City Bank of Indiana ("National City") is the owner and holder of a promissory note dated March 15, 2004 in the original principal amount of $4,742,000.00 from Albert Ortiz to First Franklin Financial Corp. Said Note is secured by that certain Deed of Trust dated March 15, 2004, and recorded in Clerk's File No. X409555 of the Official Real Property Records of Harris County, Texas, with respect to the following described property (the "Property"):

LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417059 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

WHEREAS, in compliance with the provisions set out in § 51.002 of the Texas Property Code, the above property was posted for foreclosure sale and on June 6, 2006, Thomas Reder, the named Substitute Trustee, conducted a foreclosure sale whereby the Property was sold to National City Bank of Indiana as set out in the Substitute Trustee's Deed dated June 6, 2006 which is recorded in Clerk's File No. Z360542 of the Official Real Property Records of Harris County, Texas.

WHEREAS, National City and Thomas Reder desire to cancel and rescind the foreclosure sale and conveyance of the Property to National City Bank of Indiana; rescind the acceleration of the indebtedness; reinstate the Note and Deed of Trust; and return the parties to the status quo existing thereunder.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of same is hereby acknowledged along with the covenants and agreements contained herein, National City, the holder of the above-described Note and Deed of Trust, and Thomas Reder, the Substitute Trustee do hereby stipulate and declare (i) the Substitute Trustee's Deed dated June 6, 2006 is hereby rescinded and deemed void and of no effect for all purposes; and (ii) the Note and Deed of Trust are reinstated in accordance with their original terms and effect existing immediately prior to such foreclosure and conveyance subject to the accrual of interest, late fees, advances, and any and all other amounts due under the Note remaining unpaid by Borrower. Nothing contained herein shall in any way constitute a waiver of any default in the Note and Deed of Trust occurring prior to or since the date of the Trustee's Deed.

This document is executed and filed for record to purge such real property records of all evidence of such foreclosure by the Substitute Trustee's sale including, without limitation, such Substitute Trustee's Deed described above as if such Deed had not been filed of record.

HAL/MICHELLE/CLIENTS/HOME LOANS SERVICES FKA NATIONAL CITY/Ortiz [33050]/53065326/Ortiz-2p/grac.doc
BFW No. 33050/53065326

National City its successors and assigns, to the extent necessary to re-vest legal title to the Property to Albert Ortiz, hereby conveys to Albert Ortiz the Property; subject, however, to the indebtedness evidenced by the Note and the liens and security interests securing payment of the Note, and other encumbrances, restrictions and covenants of record, including without limitation the Deed of Trust and all other collateral loan instruments executed to purchase the Property. The Grantee's address is 105 Birdsall Avenue, Houston, Texas 77007.

TO HAVE AND TO HOLD, the Property, subject to the matters hereinabove set forth, together with all and singular the rights and appurtenances thereto in anywise belonging unto Albert Ortiz his/her/their successors and assigns, forever. This conveyance is made without warranty, express or implied. Albert Ortiz hereby assume(s) and agree(s) to pay in full all taxes or other lawful assessments against the Property and all amounts otherwise advanced by National City under the terms of the Note and Deed of Trust.

EXECUTED this 17 day of April, 2009.

National City Bank of Indiana, by and through its duly authorized servicing agent, Home Loan Services, Inc.

By:
Printed Name: BRYAN KUSICH
Title: VICE PRESIDENT

COMMONWEALTH OF PENNSYLVANIA §
                              §
COUNTY OF ALLEGHENY           §

BEFORE ME, the undersigned notary public, on this day personally appeared BRYAN KUSICH, the VICE PRESIDENT of Home Loan Services, Inc., duly authorized servicing agent for National City Bank of Indiana known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 17 day of April, 2009.

Notary Public, Commonwealth of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Tara L. Gordon, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires June 7, 2011
Member, Pennsylvania Association of Notaries

By: _____
Thomas Rader, Substitute Trustee

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersigned notary public, on this day personally appeared Thomas Rader, Substitute Trustee, known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ____ day of _March_, 2009.

_____
Notary Public, State of Texas



THERESA M. ALTHOUSE
MY COMMISSION EXPIRES
December 12, 2011

**HOLD FOR: BARRETT DAFFIN**

AFTER RECORDING, RETURN TO:
Barrett Daffin Frappier Turner & Engel, L.L.P.
Attn: Arshelyn Neal/Corrigan
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001

FILED



MAY - 7 2009

_____
COUNTY CLERK
HARRIS COUNTY, TEXAS

C:\Documents and Settings\Shelia Althouse\Local Settings\Temporary Internet Files\Content.IE5\NXM8CTHJ\Untitled[printed][1].doc
BDFW No. 20090165390025

# EXHIBIT 3

## RESCISSION OF SUBSTITUTE TRUSTEE'S SALE, CANCELLATION OF SUBSTITUTE TRUSTEE'S DEED AND RECONVEYANCE DEED WITHOUT WARRANTIES

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

***IMPORTANT NOTICE TO COUNTY CLERK:
INDEX ALBERT ORTIZ AS GRANTEE

STATE OF TEXAS

COUNTY OF HARRIS

WHEREAS, National City Bank of Indiana ("National City") is the owner and holder of a promissory note dated March 15, 2004 in the original principal amount of $4742,090.00 from Albert Ortiz to First Franklin Financial Corp. Said Note is secured by that certain Deed of Trust dated March 15, 2004, and recorded in Clerk's File No. X869576 of the Official Real Property Records of Harris County, Texas, with respect to the following described property (the "Property"):

LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417889 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

WHEREAS, in compliance with the provisions set out in § 51.002 of the Texas Property Code, the above property was posted for foreclosure sale and on June 6, 2006, Thomas Reder, the named Substitute Trustee, conducted a foreclosure sale whereby the Property was sold to National City Bank of Indiana as set out in the Substitute Trustee's Deed dated June 6, 2006 which is recorded in Clerk's File No. Z366547 of the Official Real Property Records of Harris County, Texas.

WHEREAS, National City and Thomas Reder desire to cancel and rescind the foreclosure sale and conveyance of the Property to National City Bank of Indiana; rescind the acceleration of the indebtedness; reinstate the Note and Deed of Trust and return the parties to the status quo existing thereunder.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of same is hereby acknowledged along with the covenants and agreements contained herein, National City, the holder of the above-described Note and Deed of Trust, and Thomas Reder, the Substitute Trustee do hereby stipulate and declare (i) the Substitute Trustee's Deed dated June 6, 2006 is hereby rescinded and deemed void and of no effect for all purposes; and (ii) the Note and Deed of Trust are reinstated in accordance with their original tenor and effect existing immediately prior to such foreclosure and conveyance subject to the accrual of interest, late fees, advances, and any and all other amounts due under the Note remaining unpaid by Borrower. Nothing contained herein shall in any way constitute a waiver of any default in the Note and Deed of Trust occurring prior to or since the date of the Trustee's Deed.

This document is executed and filed for record to purge such real property records of all evidence of such foreclosure by the Substitute Trustee's sale including, without limitation, such Substitute Trustee's Deed described above as if such Deed had not been filed of record.

U:\LY\MICHELE\CLIENTS\HOME LOANS SERVICES FKA NATIONAL CITY\Ortiz (20226)\539407200\Ortiz Splyanc.doc
BRW No. 2202076\880326

National City its successors and assigns, to the extent necessary to re-vest legal title to the Property to Albert Ortiz, hereby conveys to Albert Ortiz the Property; subject, however, to the indebtedness evidenced by the Note and the liens and security interests securing payment of the Note, and other encumbrances, restrictions and covenants of record, including without limitation the Deed of Trust and all other collateral loan instruments executed to purchase the Property. The Grantee's address is 105 Birdsall Avenue, Houston, Texas 77007.

TO HAVE AND TO HOLD, the Property, subject to the matters hereinabove set forth, together with all and singular the rights and appurtenances thereto in anywise belonging unto Albert Ortiz his/her/their successors and assigns, forever. This conveyance is made without warranty, express or implied. Albert Ortiz hereby assume(s) and agree(s) to pay in full all taxes or other lawful assessments against the Property and all amounts otherwise advanced by National City under the terms of the Note and Deed of Trust.

EXECUTED this 17 day of April, 2009.

National City Bank of Indiana, by and through its duly authorized servicing agent, Home Loan Services, Inc.

By:  
Printed Name: BRYAN KUSICH  
Title: VICE PRESIDENT

COMMONWEALTH OF PENNSYLVANIA §  
§  
COUNTY OF ALLEGHENY §

BEFORE ME, the undersigned notary public, on this day personally appeared BRYAN KUSICH, the VICE PRESIDENT of Home Loan Services, Inc., duly authorized servicing agent for National City Bank of Indiana known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 17 day of April, 2009.

Notary Public, Commonwealth of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA  
Notarial Seal  
Tara L. Gordon, Notary Public  
City of Pittsburgh, Allegheny County  
My Commission Expires June 7, 2011  
Member, Pennsylvania Association of Notaries

By: _____
　　Thomas Reder, Substitute Trustee

STATE OF TEXAS

COUNTY OF HARRIS

　　　BEFORE ME, the undersigned notary public, on this day personally appeared Thomas Reder, Substitute Trustee, known to me personally to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

　　　Given under my hand and seal of office this _____ day of _March_ , 2009.

　　　　　　　　　　　_____
　　　　　　　　　　　Notary Public, State of Texas

SHEILA M. ALTHOUSE
MY COMMISSION EXPIRES
November 18, 2011

**HOLD FOR: BARRETT DAFFIN**

AFTER RECORDING, RETURN TO:
Barrett Daffin Frappier Turner & Engel, L.L.P.
Attn: Angelyn Neal-Falkenhagen
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001

FILED
2009 MAY -7 AM 9:19

MAY - 7 2009

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT 4



**McGLINCHEY STAFFORD PLLC**

ATTORNEYS AT LAW

LOUISIANA    MISSISSIPPI    NEW YORK    OHIO    TEXAS

KARI ROBINSON
(713) 520-1900
(713) 520-1025 Facsimile
krobinson@mcglinchey.com

February 2, 2010

**VIA FACSIMILE**

Mark A. Junell
The Junell Law Firm, PC
3900 Essex, Suite 390
Houston, Texas 77027

> RE:    Cause No. 2006-61178; *Albert Ortis vs. Fred Lombardo, National City Home Loan Services, Inc. d/b/a First Franklin Loan Services, National City Bank of Indiana and Keystone Asset Management, Inc., et al*; In the 164th Judicial District Court of Harris County, Texas

Dear Mark:

I am responding to your letter dated January 20, 2010. Because legal, record title is still vested in National City Bank by virtue of the substitute trustee's deed, National City is not going to relinquish the keys. There is no court order requiring National City to do so, and the summary judgment orders are not final. You should receive our supplemental response to the plaintiff's motion to clarify which lays out the legal issues in greater detail.

Sincerely,

McGlinchey Stafford, PLLC

By: _Kari Robinson_
     Kari Robinson

KR/ab
304433.1  102869.0019

cc:    Gary Michael Block
        7660 Woodway Drive, Suite 590
        Houston, Texas 77063

ALBERT ORTIZ
Plaintiff

**FILED**
Chris Daniel
District Clerk
MAY - 9 2011

VS.

PNC BANK, N.A.;
SELECT PORTFOLIO SERVICING, INC.;
SAFEGUARD PROPERTIES, INC.,
TRACY A. NICOLA, L.P. D/B/A
NICOLA REAL ESTATE and
LPS FIELD SERVICES, INC.
Defendants

§
§
§
§
§
§
§
§
§
§
§
§

IN THE DISTRICT COURT

OF HARRIS COUNTY, TEXAS

**FILED**
Chris Daniel
District Clerk
MAY 9 2011

190TH JUDICIAL DISTRICT

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION WITH APPLICATION FOR INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF THIS COURT:

Albert Ortiz ("Ortiz"), Plaintiff in the above numbered and styled cause, complains of PNC Bank, N.A. ("PNC"), Select Portfolio Servicing, Inc. ("SPS"), Safeguard Properties, Inc. ("Safeguard"), Tracy A. Nicola, L.P. d/b/a Nicola Real Estate ("Nicola"), and LPS Field Services, Inc. ("LPS"), the Defendants, and for causes of action respectfully shows the Court as follows:

### DISCOVERY

1. Discovery in this case is intended to be conducted under a Level 2 Discovery Control Plan pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

### JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

2. This Court has jurisdiction over the claims stated herein in that this Court has general jurisdiction and specific jurisdiction over the Defendants. The amount claimed by Plaintiff is within the jurisdictional limits of this Court. Venue is proper in Harris County, pursuant to Chapter 15 of the Texas Civil Practice and Remedies Code. Plaintiff generally avers that all conditions precedent to filing the claims herein have been performed or have occurred or the conditions have been excused because of the conduct of the Defendants.

### PARTIES

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging



EXHIBIT

B

3. Plaintiff Albert Ortiz is an individual who resides in Harris County.

4. Defendants PNC Bank, N.A., Select Portfolio Servicing, Inc., Safeguard Properties, Inc., and Tracy A. Nicola, L.P., have already appeared and entered for all purposes in this litigation.

5. Defendant LPS Field Services, Inc., is an entity that can be served by serving its registered agent, C T Corporation System, at 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

## SUMMARY OF ACTION

6. On or about March 15, 2004, Plaintiff purchased certain real property containing a townhome in Harris County, Texas (referred to herein as the "Real Property" or "Plaintiff's house"). The Real Property is legally described as follows:

LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING D TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

The Real Property address is 105 Birdsall, Houston, Harris County, Texas 77007.

7. On or about October 4, 2010, while the Real Property was under extensive renovations, Defendant(s) broke into Plaintiff's house, ousted Plaintiff from the house by changing the locks, kept exclusive possession of the house for approximately six weeks, caused damage to the house, removed all of Plaintiff's possessions from the house, failed and refused to return the possessions taken from the house, and tried to sell the house, all without Plaintiff's consent or knowledge.

8. Subsequently, while this litigation was pending, SPS hired LPS to perform certain services in connection with Plaintiff's house. On at least two occasions, LPS has entered on to Plaintiff's land, performed inspections of the house, and, within a few days before the date of this

petition, posted a note on the front door of Plaintiff's house alleging there was a mortgage lien on the property and threatening to enter the property and take certain unauthorized actions therein.

9. Moreover, such acts of Defendant(s) were committed as part of their efforts to collect on a loan, specifically the note and deed of trust associated with the house, after a court of law had declared that the note and deed of trust were "fully, completely, and finally satisfied."

10. Plaintiff brings this suit to recover his damages caused by Defendant(s)' acts and for injunctive relief to prevent and restrain a repeat of such acts or the committing of similar acts by Defendant(s). Plaintiff seeks recovery of all damages caused by Defendant(s), including his actual damages, nominal damages, punitive damages, and/or recovery of his attorneys' fees. Injunctive relief is necessary to prevent and/or restrain Defendant(s) from committing the same or similar acts as described herein, including further entries into Plaintiff's house, changing the locks at the house, removing or taking any possessions in the house, attempting to sell or dispose of the possessions taken from the house, attempting to sell the house, and/or threatening to commit any such acts.

## BACKGROUND AND STATEMENT OF FACTS

11. In November, 2005, Plaintiff's lender, which has since merged into Defendant PNC, and its mortgage servicer permanently ousted Plaintiff from his house, removed his possessions, and then months later wrongfully foreclosed on his house. Plaintiff took them to court and won, after fighting them in court for almost five years.

12. About three years into the lawsuit, Plaintiff's lender rescinded the wrongful foreclosure and gave title to the house back to Plaintiff but failed to inform Plaintiff of this fact, failed to restore possession of the house to Plaintiff, and continued to oppose Plaintiff in court.

13. Plaintiff eventually obtained a final judgment that overturned the wrongful foreclosure, restored title to the house in Plaintiff's name, compensated him for loss of use of his house and the taking of his belongings, and declared that he owed nothing on his note and deed of trust associated with the house. The court's final judgment decided and confirmed that the

foreclosure of the Real Property is set aside, that title to the Real Property is restored to Plaintiff, and that Plaintiff's Note and Deed of Trust in connection with the Real Property are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under the Note and Deed of Trust. A true and correct copy of the final judgment is attached hereto as Exhibit 1.

14. After the jury returned its verdict and despite taking nothing on all claims, including its judicial foreclosure claim, Plaintiff's lender, now Defendant PNC, filed a notice of lis pendens, asserting that it still had a lien on Plaintiff's house, which it seeks to enforce.

15. After the judgment, Plaintiff's lender, now Defendant PNC, apparently switched mortgage servicers, transferring servicing of the loan to Defendant SPS. SPS hired Defendant Safeguard to forcefully enter Plaintiff's house, lock out Plaintiff, and remove all of his belongings from the house. See Exhibit 2, attached hereto. Defendant Nicola was hired to attempt to sell the house and was also involved in entering the house and/or removing items therefrom.

16. Just six weeks after the final judgment awarding Plaintiff damages for trespass to his house and removal of his personal property, Defendant(s), without Plaintiff's knowledge or consent, committed or caused to be committed the following acts with respect to Plaintiff's house, which Plaintiff was still trying to renovate. Defendant(s): unlawfully entered into the house; changed the locks at the house so as to deprive Plaintiff of entry and possession; unlawfully and permanently removed and/or disposed of all of Plaintiff's personal belongings and building materials in the house; damaged the house; and listed the house for sale. Defendant(s) committed such acts while attempting to collect on the Note, a debt that they allege is still due. These debt collection acts were unlawful, fraudulent, deceptive, and/or misleading, and caused harm to Plaintiff and/or his property.

17. Upon learning that Defendant(s) had committed these acts Plaintiff filed this suit and promptly sought a temporary injunction order, preventing or restraining these or similar acts by Defendants in the future. The order was agreed to by the original Defendants and was filed with the

Court, however as of this date it is yet to be signed by the Court. A true and correct copy of the unsigned order for a temporary injunction, agreed to by the original Defendants, is attached hereto as [Exhibit "2"] and incorporated herein for all purposes

18. Subsequently, Defendant LPS was hired by SPS to perform certain services in connection with Plaintiff's house. To date, Plaintiff has discovered that LPS has entered onto his property and has conducted multiple inspections of his house and property. Just a few days before the filing of this petition, LPS posted a notice on the front door of Plaintiff's house. A true and correct copy of the notice is attached hereto as [Exhibit "2"] and incorporated herein for all purposes. The notice stated as follows:

LPS Field Services, Inc. has inspected this property and found it to be vacant or abandoned. The mortgage holder has the right and duty to protect this property. Accordingly, it is likely that the mortgage holder will have the property secured and/or winterized within the next few days.

19. The posting of this notice constituted an entry upon the Real Property in direct violation of the order agreed to by Defendants and a threat to take actions prohibited by the agreement and the law. Furthermore, this notice is the only communication or attempted communication that LPS or any other Defendant has had with Plaintiff concerning these threatened actions.

19. Defendant(s)' actions are attempts to collect on a loan that Plaintiff no longer owes by taking possession of his house and attempting to sell it and by stealing all of his personal belongings in the house and/or subsequently threatening to take the same or similar actions while this litigation is pending and despite being enjoined by this Court from taking such actions. Plaintiff asserts causes of action against Defendant(s) for committing such acts, including, without limitation, claims for trespass to realty, theft, conversion, trespass to personalty, unlawful debt collection in violation of Texas statutes, unreasonable debt collection in violation of Texas common law, negligence, invasion of privacy, exemplary damages, and recovery of attorneys' fees.

20. Plaintiff gives notice that in this lawsuit, Plaintiff expressly elects to NOT allege violation of, or seek relief under, the United States Constitution, any statute or regulation of the United States, or any other federal law.

## TRESPASS TO REALTY

21. Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The above-described conduct of Defendants constitutes a trespass of Plaintiff's real property located at 105 Birdsall, Houston, Harris County, Texas 77007 (the "Real Property"). Plaintiff owned and had a lawful right to possess the Real Property. Defendants are liable to Plaintiff for the intentional tort of trespass upon realty by entering the Real Property without Plaintiff's consent, intentionally causing one or more third persons to enter the Real Property, and/or entering or causing others to enter the Real Property in excess of any authority to enter the Real Property. Such entry was physical, intentional, and voluntary. Plaintiff was wholly deprived of any possession of the Real Property and was locked out for several weeks while he owned the Real Property. Such action exceeded the authority, if any, conferred on Defendants to enter the Property. Such action of Defendants interfered with and/or caused injury to Plaintiff's right of possession of the Real Property and thus constitutes a trespass. Plaintiff alleges a cause of action for trespass against Defendants, seeking to recover for damage to his realty and/or loss of the use and enjoyment of same.

## CONVERSION AND TRESPASS TO PERSONALTY

22. Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. All acts described herein were committed by one or more of Defendants, acting individually and/or as agent for or on behalf of one or more of the other Defendants. The above-described conduct constitutes conversion of Plaintiff's personal property and/or trespass to personalty by Defendant(s). Plaintiff owned, possessed, or had the right to immediate possession of the items and belongings located at the Real Property. Such property was

personal property. All items located at the Real Property were converted by and/or the subject of the trespass to personalty committed by Defendant(s). Defendant(s) have engaged in an unauthorized and wrongful assumption and exercise of control and dominion over the personal property of Plaintiff, to the exclusion of or inconsistent with his rights in the property as its true owner. Defendant(s) have injured Plaintiff's personalty or interfered with his possession of same, unlawfully. As a direct and proximate result of such wrongful conduct, Plaintiff has been damaged to the effect that he no longer has the personal property at issue and has lost the benefit of its use. Defendant(s) should be held liable for such conversion, and the Court should order that Defendant(s) return the personal property converted or pay Plaintiff damages such that he will be compensated for loss of such personal property. Plaintiff therefore asserts an action to recover the personal property, and alternatively for damages suffered as a result of the conversion and/or trespass to personalty.

## THEFT

23. Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. All acts described herein were committed by one or more of Defendants, acting individually and/or as agent for or on behalf of one or more of the other Defendants. Upon further investigation and discovery, the evidence will show that the above-described conduct constitutes theft of Plaintiff's personal property by Defendant(s) for which they are liable to Plaintiff pursuant to Chapter 134 of the Texas Civil Practice and Remedies Code, the Texas Theft Liability Act. Defendant(s) have engaged in theft by unlawfully appropriating the personal property of Plaintiff by taking it without Ortiz's effective consent, as described by the Penal Code. Plaintiff had a possessory right to the property that was the subject of such theft. Defendant(s) appropriated the property with the intent to deprive Plaintiff of the property. Defendant(s) violated Section 31.03 of the Texas Penal Code. As a direct and proximate result of such wrongful conduct, Plaintiff has been damaged and seeks to recover from Defendant(s) the

amount of his actual damages and, in addition thereto, damages not to exceed $1,000.00 for each such theft, in accord with the Texas Theft Liability Act. Defendant(s) should be held liable for such theft and all such damages; Plaintiff therefore asserts an action for same.

## UNLAWFUL DEBT COLLECTION

24. Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. All acts described herein were committed by one or more of Defendants, acting individually and/or as agent for or on behalf of one or more of the other Defendants. The above-described conduct of Defendant(s) constitutes a violation of the Texas debt collection statutes as well as unreasonable and unfair debt collection in violation of the common law of the state of Texas. Defendants have attempted to collect on a loan that Plaintiff no longer owes by taking possession of his house and attempting to sell it and by stealing all of his personal belongings in the house.

25. The wrongful changing of locks at and/or entry to the Real Property, the ouster, exclusion, and dispossession of Plaintiff from the Real Property, and/or wrongful removal and and/or retaining of Plaintiff's personal property by one or more of Defendants involved fraudulent or misleading representations, deceptive means, threats, coercion and/or attempted coercion by violence and/or criminal action, including criminal trespass, criminal mischief and/or theft. Defendant(s) engaged in such action in attempting to collect a debt or alleged debt of Plaintiff and thus violated Chapter 392 of the Texas Finance Code (the Texas Debt Collection Practices Act or DCPA), including Section 392.301 of the DCPA. Plaintiff seeks injunctive relief and his damages under the DCPA as a result of such actions by Defendant(s). Such actions also constitute an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which Plaintiff seeks to recover his damages from Defendant(s).

26. Furthermore, Defendant(s) entered into the Real Property without notice to Plaintiff and without consent of Plaintiff, changed the locks to the Real Property, and/or ousted, excluded and dispossessed Plaintiff of the Real Property. These acts were deceptive, fraudulent, and/or misleading practices by Defendant(s) and employed the use of false representations or deceptive means. Defendant (s) engaged in such action in collection of an actual or alleged consumer debt of Plaintiff and thus violated Chapter 392 of the Texas Debt Collection Practices Act, including Section 392.304 of the DCPA. Such actions also constitute an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which Plaintiff seeks to recover his damages from Defendant(s).

27. Defendant(s) engaged in such actions and thus violated Chapter 392 of the DCPA, including Sections 392.301 and 392.304 of the DCPA. Plaintiff alleges a cause of action for violation of the DCPA against Defendant(s), seeking to recover for all damages caused thereby, including his actual damages, statutory damages, or both. Such action also constitutes an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which Plaintiff seeks to recover his damages from Defendant(s).

28. Defendant LPS, acting individually and/or as agent for or on behalf of Defendants PNC and/or SPS, entered upon the Real Property without notice to Plaintiff and without consent of Plaintiff, threatened to enter Plaintiff's house, threatened to change the locks to Plaintiff's house and take other unauthorized actions upon the Real Property and/or inside Plaintiff's house, misrepresented to Plaintiff that an enforceable mortgage or lien existed on the Real Property, and misrepresented to Plaintiff that the holder of the alleged mortgage had certain rights and duties with respect to the Real Property that it intended to exercise within the next few days. These acts involved fraudulent or misleading representations, deceptive means, threats, coercion and/or attempted coercion by violence and/or criminal action, including criminal trespass, criminal mischief and/or theft. Defendant(s) engaged in such action in attempting to collect a debt or alleged

Unofficial Copy Office of Johnson County District Clerk

debt of Plaintiff and thus violated Chapter 392 of the Texas Finance Code (the Texas Debt Collection Practices Act or DCPA), including Section 392.301 and/or Section 392.304 of the DCPA. Plaintiff seeks injunctive relief and his damages under the DCPA as a result of such actions by Defendant(s). Such actions also constitute an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which Plaintiff seeks to recover his damages from Defendant(s).

## NEGLIGENCE

29. Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. One or more of Defendants, acting individually and/or as agent for or on behalf of one or more of the other Defendants, knowingly took possession, custody, and/or control of Plaintiff's personalty. In so doing Defendant(s) had a duty to use reasonable care in handling, protecting and/or preserving the personalty and/or maintaining custody, control, and/or possession of the personalty. Defendant(s) breached that duty and proximately caused damages to Plaintiff when they allowed Plaintiff's personalty to become lost or damaged. Plaintiff pleads a claim for negligence against Defendant(s) and seeks recovery of his damages resulting therefrom.

## INVASION OF PRIVACY

30. Plaintiff realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The above-complained of acts of Defendant(s), acting individually and/or as agent or on behalf of one or more of the other Defendants, involving Plaintiff's personalty and/or realty constituted an invasion of privacy against Plaintiff as they were an intentional intrusion, physically or otherwise, upon Plaintiff's solitude, seclusion, or private affairs or concerns, which would be highly offensive to a reasonable person. Plaintiff's invasion of privacy claim thus includes an intrusion on seclusion by Defendant(s). Defendant(s) committed an

invasion of privacy and Plaintiff is entitled to recover and makes a claim for his damages, including mental anguish or suffering, incurred as a result.

## PUNITIVE DAMAGES

31. Plaintiff realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition. Defendant(s)' actions against Plaintiff were done with malice, gross negligence and/or the committing of fraud. Defendant(s) are therefore liable to Plaintiff for punitive damages within the jurisdictional limits of the Court.

## REQUEST AND NEED FOR INJUNCTIVE RELIEF

32. Defendants' acts constitute a violation of Chapter 392 of the Texas Finance Code (the Texas Debt Collection Practices Act or DCPA), including Sections 392.301 and 392.304 of the DCPA. Pursuant to Section 392.403 of the DCPA, Ortiz sues for injunctive relief to prevent and/or restrain any further violation of the DCPA. Where a statute provides for a right to an injunction for a violation, a party does not have to establish the general equitable principles for a temporary injunction. *Marauder Corp. v. Beall*, 301 S.W.3d 817, 820 (Tex. App.—Dallas 2009, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex.2002). When an applicant relies upon a statutory source for injunctive relief the statute's express language supersedes the common law injunctive relief elements such as imminent harm or irreparable injury and lack of an adequate remedy at law. *Id.* (citing *Rey v. State*, 212 S.W.3d 513, 519 (Tex. App.—Austin 2006, no pet.)).

33. A temporary restraining order, temporary injunction and permanent injunction are necessary to prevent and/or restrain Defendants from further violations of the DCPA, including the following actions:

(i) making or threatening further entries upon Plaintiff's Real Property or into Plaintiff's house thereon;

(ii) changing or threatening to change the locks at Plaintiff's Real Property or Plaintiff's house;

(iii)    removing or taking or threatening to remove or take any possessions from Plaintiff's Real Property or Plaintiff's house thereon;

(iv)    attempting or threatening to sell or dispose of any possessions taken from Plaintiff's Real Property or Plaintiff's house thereon;

(v)    attempting or threatening to sell Plaintiff's Real Property or Plaintiff's house thereon;

(vii)    taking or attempting or threatening to take any actions to commit violence on Plaintiff's Real Property or Plaintiff's house thereon;

(vii)    communicating or attempting to communicate with Plaintiff regarding an alleged mortgage or deed of trust lien on Plaintiff's Real Property or Plaintiff's house thereon;

(viii)    representing to any person or publicly posting or giving notice, other than for purposes of this litigation, that Plaintiff's Real Property or Plaintiff's house thereon is vacant or abandoned;

(ix)    representing to any person or publicly posting or giving notice, other than for purposes of this litigation, that there is a mortgage or deed of trust lien on Plaintiff's Real Property or Plaintiff's house thereon.

## PROBABLE INJURY / IMMINENT HARM

34.    Plaintiff also seeks such injunctive relief on grounds set forth in Section 65.011 of the Texas Civil Practice and Remedies Code and/or equitable grounds. Plaintiff is in imminent harm as a result of Defendants' actions attempting and/or threatening to enter the Real Property and take unauthorized actions therein or thereupon, including changing the locks. Absent injunctive relief as requested herein, Plaintiffs will lose possession to his home despite and may suffer damage thereto as a result of the unlawful actions of Defendants.

Unofficial Copy Office of Chris Daniel District Clerk

## PROBABLE RIGHT TO RELIEF

35. Plaintiff was wrongfully and unlawfully locked out of his house by Defendants for approximately six weeks based on a debt that he no longer owes and a lien that is no longer enforceable. Plaintiff re-gained possession, Defendants agreed to not commit such acts again, and now Defendants are threatening further entries into his home, further changing of his locks and taking over possession of his home, and further unauthorized actions in his home.

## PROBABLE IRREPARABLE HARM

36. Plaintiff will suffer irreparable harm if Defendants are not restrained and enjoined from Defendants' re-taking possession of his home and possibly removing further items from his Real Property or house.

## INADEQUATE REMEDY AT LAW

37. Injunctive relief is authorized when irreparable injury to real or personal property is threatened, irrespective of any remedy at law. Tex. Civ. Prac. & Rem. Code Ann. § 65.011(5). Regardless, Plaintiff will show that there is no remedy at law that is clear and adequate to protect Plaintiff's property interest against this wrongful attempt to enter the Real Property and change the locks to his house.

38. Plaintiff requests a temporary restraining order, temporary injunction and permanent injunction so that justice may be done, not merely for delay, to preserve the status quo of the subject matter of the litigation, and /or make the Court's judgment effective. Plaintiff is ready, willing, and able to perform any equitable acts as the Court deems necessary.

## ATTORNEYS' FEES

39. Plaintiff realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition. As a result of Defendants' actions, Plaintiff retained an attorney to prosecute his claims. Plaintiff is entitled to an award of attorneys' fees for prosecution of this action under, Chapter 392 of the Texas Finance Code and/or Chapter 134 of the Texas Civil

Practice and Remedies Code. Plaintiff is entitled to a further award of attorneys' fees should a party appeal and final judgment ultimately be awarded in favor of Plaintiff. Should it be necessary for a party to petition the Texas Supreme Court for review, Plaintiff further requests that, upon final judgment for Plaintiff, the Court award an additional amount as attorneys' fees for representing Plaintiff during such review.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Ortiz respectfully requests of the Court the following:

1. Judgment against Defendants for all damages, including mental anguish, actual, economic, statutory, consequential, nominal and/or exemplary damages, in a sum within the jurisdictional limits of the Court;

2. A temporary restraining order be issued with or without notice to Defendant(s), and upon hearing before the Court, a temporary injunction be issued, and upon final trial of this cause, a permanent injunction be issued, each for the purpose of enjoining, preventing and/or restraining Defendant(s), their attorneys, agents, servants, and employees, from directly or indirectly committing the following:

(i) making or threatening further entries upon Plaintiff's Real Property or into Plaintiff's house thereon;

(ii) changing or threatening to change the locks at Plaintiff's Real Property or Plaintiff's house;

(iii) removing or taking or threatening to remove or take any possessions from Plaintiff's Real Property or Plaintiff's house thereon;

(iv) attempting or threatening to sell or dispose of any possessions taken from Plaintiff's Real Property or Plaintiff's house thereon;

(v)     attempting or threatening to sell Plaintiff's Real Property or Plaintiff's house thereon;

(vii)   taking or attempting or threatening to take any actions to commit violence on Plaintiff's Real Property or Plaintiff's house thereon;

(vii)   communicating or attempting to communicate with Plaintiff regarding an alleged mortgage or deed of trust lien on Plaintiff's Real Property or Plaintiff's house thereon;

(viii)  representing to any person or publicly posting or giving notice, other than for purposes of this litigation, that Plaintiff's Real Property or Plaintiff's house thereon is vacant or abandoned;

(ix)    representing to any person or publicly posting or giving notice, other than for purposes of this litigation, that there is a mortgage or deed of trust lien on Plaintiff's Real Property or Plaintiff's house thereon.

4.      Judgment against Defendants for recovery of personal property of Ortiz that was converted;

5.      Prejudgment interest as provided by law;

6.      Interest after judgment as allowed by law until paid;

7.      All costs of suit and attorneys' fees; and

8.      Such other and further relief, in law and in equity, to which the Plaintiff Ortiz may be entitled.

Respectfully submitted,

_____
Michael Donovan
Tex. Bar No. 00796478
6300 Dixie Drive
Houston, Texas 77087
Phone (713) 956-4043
Fax (713) 956-4042
ATTORNEY FOR PLAINTIFF

Unofficial Copy Office of Chris Daniel District Clerk

## CERTIFICATION

I, Michael Donovan, hereby certify that on this  7  day of  May  , 2011, a true and correct copy of the above and foregoing document has been served in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure.

Michael Donovan

Unofficial Copy Office of Chris Daniel District Clerk

CONFIRMED FILE DATE: 8/13/2010

NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 154TH JUDICIAL DISTRICT |
| | § | |
| FRED LOMBARDO, NATIONAL | § | |
| CITY HOME LOAN SERVICES, INC., | § | FILED |
| D/B/A FIRST FRANKLIN LOAN | § | |
| SERVICES, NATIONAL CITY BANK | § | AUG 13 2010 |
| OF INDIANA, KEYSTONE ASSET | § | |
| MANAGEMENT, INC AND RICHARD | § | |
| HOWELL D/B/A ALEXANDER | § | |
| HUNTER PROPERTIES A/K/A | § | |
| ALEXANDER HUNTER PROPERTIES, INC. | § | OF HARRIS COUNTY, TEXAS |

## FINAL JUDGMENT

On June 15, 2010, the Court called this case for trial. Plaintiff, Albert Ortiz ("Ortiz"), appeared in person and through his attorneys and announced ready for trial. Defendants National City Home Loan Services, Inc. ("HLS"), and National City Bank of Indiana ("National City") appeared through their attorneys and announced ready for trial. The Court determined that it had jurisdiction over the subject matter and the parties. A jury having been previously demanded, the Court then impaneled and swore the jury consisting of twelve qualified jurors. The case proceed to trial, and the Jury heard the evidence and arguments of counsel.

Following the presentation of Plaintiff Ortiz's case and after Plaintiff had rested, the Defendants HLS and National City moved for a directed verdict. The court, having considered the motion, rendered judgment as a matter of law in favor of the Defendants with respect to Plaintiff Ortiz's claims for fraud, common-law unreasonable debt collection, statutory debt collection violations, statutory deceptive trade practice violations, breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy, and defamation per se.

At the conclusion of the evidence, the Court submitted questions, definitions, and

## Exhibit 1

instructions to the jury. In response, the jury made findings that the Court received, filed, and entered of record. ~~[struck through]~~

After the jury returned its verdict, Plaintiff and Defendants each moved for judgment on the verdict. ~~[struck through]~~

IT IS THEREFORE ORDERED by the Court that the motion of Plaintiff for judgment on the verdict is GRANTED *in part* and that the motion of Defendants for judgment on the verdict is DENIED, *in part*

Therefore, the Court renders judgment for Plaintiff and against the Defendants, and renders judgment as follows:

IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz recover from Defendant National City the sum of ~~$100,000.00~~ *$87,500.00 ( ~~[struck]~~ after settlement credit of $12,500.00 paid by Defendant Keys)* plus pre-judgment interest ~~[struck]~~ which is interest on that sum at the annual rate of five percent (5%) per annum, from September 28, 2006, until the day before the date of final judgment;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz recover from Defendant HLS the sum of ~~$90,000.00~~ *10,000.00* plus pre-judgment interest ~~[struck]~~, which is interest on that sum at the annual rate of five percent (5%) per annum, from September 28, 2006, until the day before the date of final judgment;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz also recover from Defendant HLS the separate sum of $100.00, as exemplary damages;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz, having

[diagonal watermark across page]

requested and proved reasonable and necessary attorneys' fees, also recover from Defendant National City attorneys' fees in the sum of $400,000.00, for services rendered through the trial of this case;

~~Additionally, if Defendant National City files an appeal (or cross-appeal) that is ultimately unsuccessful, Plaintiff Ortiz shall recover from Defendant National City the additional sum of $100,000.00 as a reasonable attorney fee.~~

~~Additionally, if Defendant National City files a petition for review (or cross-petition) in the Supreme Court of Texas that is unsuccessful or relief is not ultimately granted to Defendant National City, Plaintiff Ortiz shall recover from Defendant National City the additional sum of $50,000.00 as a reasonable attorney fee.~~

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants National City and HLS take nothing in this case;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz recover against Defendants National City and HLS post-judgment interest on all amounts awarded herein at the rate of five percent (5%) per annum from the date of judgment until paid;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all costs of court incurred herein are taxed against Defendants National City and HLS for recovery by Plaintiff Ortiz;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz is ~~granted~~ DENIED judgment on his affirmative defense of statute of limitations, with respect to the counter-claim of Defendant National City for judicial foreclosure, and that National City take nothing on such claim;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Deed of Trust dated March 15, 2004, recorded in Clerk's File No. X469555 of the Official Real Property Records of Harris County, Texas, and securing the Note dated March 15, 2004 ▬▬▬▬▬▬▬▬▬

to the real property (the "Property") with a common address of

105 Birdsall, Houston, Harris County, Texas 77007, and legally described as follows:

LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING O TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS;

and that said Note and Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that that the Substitute Trustee's Deed of June 5, 2006, recorded in the Real Property Records of Harris County, Texas; Clerk's File Number Z356547, and resulting from Defendants' wrongful foreclosure of the Property, is set aside, rescinded, deemed null and void and of no effect;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment.

All writs and processes for the enforcement and collection of this judgment and for the costs of court may issue as necessary.

All relief requested in this case and not granted herein is denied. This judgment finally disposes of all parties and all claims and is appealable.

SIGNED this 18th day of August, 2010.

JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

ATTORNEYS FOR PLAINTIFF

Mark A. Junell
THE JUNELL, LAW FIRM, P.C.
SBOT#: 24032610
3900 Essex, Suite 390
Houston, Texas 77027
Phone: 281-768-3530
Fax:   832-213-1830


Gary Michael Block
SBOT#: 02497200
7660 Woodway Dr., Suite 590
Houston, Texas 77063
Phone: 713-266-6700
Fax: 713-266-8528

Unofficial Copy: Office of Chris Daniel District Clerk

CERTIFIED FILE DATE: 8/13/2010

NO. 2006-51178

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 164TH JUDICIAL DISTRICT |
| | § | |
| FRED LOMBARDO, NATIONAL | § | |
| CITY HOME LOAN SERVICES, INC., | § | **F I L E D** |
| D/B/A FIRST FRANKLIN LOAN | § | |
| SERVICES, NATIONAL CITY BANK | § | |
| OF INDIANA, KEYSTONE ASSET | § | AUG 13 2010 |
| MANAGEMENT, INC AND RICHARD | § | |
| HOWELL D/B/A ALEXANDER | § | Time |
| HUNTER PROPERTIES A/K/A | § | By |
| ALEXANDER HUNTER PROPERTIES, INC. | § | OF HARRIS COUNTY, TEXAS |

## FINAL JUDGMENT

On June 15, 2010, the Court called this case for trial. Plaintiff, Albert Ortiz ("Ortiz"), appeared in person and through his attorneys and announced ready for trial. Defendants National City Home Loan Services, Inc. ("HLS"), and National City Bank of Indiana ("National City") appeared through their attorneys and announced ready for trial. The Court determined that it had jurisdiction over the subject matter and the parties. A jury having been previously demanded, the Court then impaneled and swore the jury consisting of twelve qualified jurors. The case proceed to trial, and the jury heard the evidence and arguments of counsel.

Following the presentation of Plaintiff Ortiz's case and after Plaintiff had rested, the Defendants HLS and National City moved for a directed verdict. The court, having considered the motion, rendered judgment as a matter of law in favor of the Defendants with respect to Plaintiff Ortiz's claims for fraud, common-law unreasonable debt collection, statutory debt collection violations, statutory deceptive trade practice violations, breach of oral contract, promissory estoppel, theft, breach of bailment, invasion of privacy, and defamation per se.

At the conclusion of the evidence, the Court submitted questions, definitions, and

# Exhibit I

Instructions to the Jury. In response, the Jury made findings that the Court received, filed, and entered of record. ~~[redacted]~~

After the Jury returned its verdict, Plaintiff and Defendants each moved for judgment on the verdict. ~~[redacted]~~

IT IS THEREFORE ORDERED by the Court that the motion of Plaintiff for judgment on the verdict is GRANTED *in part* and that the motion of Defendants for judgment on the verdict is DENIED. *in part*

Therefore, the Court renders judgment for Plaintiff and against the Defendants, and renders judgment as follows:

IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz recover from Defendant National City the sum of ~~$100,000.00~~ *$87,500.00 (~~[redacted]~~ after settlement credit of $12,500.00 paid by Defendant Keysh)* plus pre-judgment interest ~~[redacted]~~ which is interest on that sum at the annual rate of five percent (5%) per annum, from September 28, 2006, until the day before the date of final judgment;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz recover from Defendant HLS the sum of ~~$90,000.00~~ *$10,000.00* plus pre-judgment interest ~~[redacted]~~, which is interest on that sum at the annual rate of five percent (5%) per annum, from September 28, 2006, until the day before the date of final judgment;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz also recover from Defendant HLS the separate sum of $100.00, as exemplary damages;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz, having

requested and proved reasonable and necessary attorneys' fees, also recover from Defendant National City attorneys' fees in the sum of $400,000.00, for services rendered through the trial of this case.

~~Additionally, if Defendant National City files an appeal (or cross-appeal) that is ultimately unsuccessful, Plaintiff Ortiz shall recover from Defendant National City the additional sum of $100,000.00 as a reasonable attorney fee.~~

~~Additionally, if Defendant National City files a petition for review (or cross-petition) in the Supreme Court of Texas that is unsuccessful or relief is not ultimately granted to Defendant National City, Plaintiff Ortiz shall recover from Defendant National City the additional sum of $50,000.00 as a reasonable attorney fee.~~

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants National City and HLS take nothing in this case;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz recover against Defendants National City and HLS post-judgment interest on all amounts awarded herein at the rate of five percent (5%) per annum from the date of judgment until paid;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all costs of court incurred herein are taxed against Defendants National City and HLS for recovery by Plaintiff Ortiz;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff Ortiz is ~~granted~~ **DENIED** judgment on his affirmative defense of statute of limitations, with respect to the counter-claim of Defendant National City for judicial foreclosure, and that National City take nothing on such claim;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Deed of Trust dated March 15, 2004, recorded in Clerk's File No. X469555 of the Official Real Property Records of Harris County, Texas, and securing the Note dated March 15, 2004 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[████████████] to the real property (the "Property") with a common address of

105 Birdsall, Houston, Harris County, Texas 77007, and legally described as follows:

> LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING D TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS;

and that said Note and Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that that the Substitute Trustee's Deed of June 6, 2006, recorded in the Real Property Records of Harris County, Texas; Clerk's File Number Z366547, and resulting from Defendants' wrongful foreclosure of the Property, is set aside, rescinded, deemed null and void and of no effect;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment.

All writs and processes for the enforcement and collection of this Judgment and for the costs of court may issue as necessary.

All relief requested in this case and not granted herein is denied. This judgment finally disposes of all parties and all claims and is appealable.

SIGNED this 18th day of August, 2010.

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

ATTORNEYS FOR PLAINTIFF

Mark A. Junell
THE JUNELL, LAW FIRM, P.C.
SBOT#: 24032610
3900 Essex, Suite 390
Houston, Texas 77027
Phone: 281-768-3530
Fax: 832-213-1830

Gary Michael Block
SBOT#: 02497200
7660 Woodway Dr., Suite 590
Houston, Texas 77063
Phone: 713-266-6700
Fax: 713-266-8528

Unofficial Copy Office of Chris Daniel District Clerk



CAUSE NO. 2010-79363

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT |
|     Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| PNC BANK, N.A.; | § | OF HARRIS COUNTY, TEXAS |
| SELECT PORTFOLIO SERVICING, INC.; | § | |
| SAFEGUARD PROPERTIES, INC., and | § | |
| TRACY A. NICOLA, L.P. D/B/A | § | |
| NICOLA REAL ESTATE | § | |
|     Defendants | § | 190TH JUDICIAL DISTRICT |

## AGREED ORDER GRANTING AGREED TEMPORARY INJUNCTION

CAME ON before the Court the above-entitled and numbered cause proceeding in which ALBERT ORTIZ is the Plaintiff and Select Portfolio Servicing, Inc. ("SPS"), PNC Bank, N.A. ("PNC"), Safeguard Properties, Inc. ("Safeguard"), and Tracy A. Nicola d/b/a Nicola Real Estate (collectively, "Defendants") are the defendants, who have heretofore received notice of the original petition and application for injunctive relief filed in this cause by the Plaintiff. Plaintiff ALBERT ORTIZ, along with Defendants, have all agreed to the entry of a Temporary Injunction.

THE COURT FINDS, having reviewed the pleadings and the affidavits and/or verifications contained with the pleadings, and noting that this Order is agreed, that this Order should be entered by the Court.

THE COURT FINDS that, to preserve the status quo of the subject matter of this litigation pending a trial on the merits or other disposition of this matter, Defendants agree forthwith to desist and refrain from certain actions, as set forth hereinbelow, with respect to Plaintiff ALBERT ORTIZ and certain of his real property and personal property. This temporary injunction is being ordered and agreed to in order to prevent Plaintiff from suffering any alleged injury or harm arising from being deprived of the use and enjoyment of certain of his real property and personal property. Defendants specifically deny and do not concede that Plaintiff has or will suffer any injury or harm,

# Exhibit 2

but have agreed to enter into this temporary injunction as a means by which to preserve the court's and the parties' time, resources, and expense while the parties discuss potential settlement options.

THE COURT FINDS that there is no harm to Defendants by the issuance of this temporary injunction.

THE COURT FINDS that, by agreeing to the terms and issuance of this temporary injunction, Defendants are not admitting or conceding to any liability and this temporary injunction is entered without admitting to any violations of law or wrongdoing of any kind.

IT IS ORDERED that Defendants, their attorneys, trustee, substitute trustees, officers, agents, servants, representatives, and employees are hereby enjoined, pending final disposition of this case, from directly or indirectly engaging in the following with respect to the real property located at 105 Birdsall, Houston, Harris County, Texas 77007 (the "Real Property"):

(i) further entries into the Real Property;

(ii) changing the locks at the Real Property;

(iii) removing or taking any personal property or tangible things from the Real Property;

(iv) selling or disposing, or attempting or causing to sell or dispose, of any personal property or tangible things already removed or taken from the Real Property; and

(v) selling or disposing, or attempting or causing to sell or dispose, of the Real Property.

IT IS ORDERED that this Temporary Injunction shall be effective and binding upon the signing of this Order, without need for issuance or service of a writ of injunction.

IT IS ORDERED and agreed that Plaintiff shall execute and file with the clerk a bond, in conformity with the law, or cash in lieu of bond, in the amount of Ten Dollars ($10.00).

IT IS ORDERED that this Temporary Injunction shall remain in effect pending trial of this cause on the merits, or the dismissal of this lawsuit as a result of settlement or release. The trial is set for the following date or time period:

_____

IT IS FURTHER ORDERED that if Defendants intend to engage in any of the activities set forth above or otherwise intend to seek relief from the terms of this Agreed Temporary Injunction prior to the conclusion of this matter by way of trial or other disposition, they must provide Plaintiff's counsel with no less than 30 days written notice.

SIGNED this _____ day of _____, 2010.


_____
JUDGE PRESIDING


AGREED AS TO FORM AND SUBSTANCE:

Locke Lord Bissell & Liddell LLP

_____
Michael Donovan
Tex. Bar No. 00796478
6300 Dixie Drive
Houston, Texas 77087
Phone (713) 956-4043
Fax (713) 956-4042
ATTORNEY FOR PLAINTIFF

_____
Kelly Orlando
Tex. Bar No. 24046560
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
214-740-8746 Phone
214-756-8746 Fax
ATTORNEYS FOR DEFENDANTS

Unofficial Copy Office Of Chris Daniel District Clerk



**Safeguard PROPERTIES**

7807 Safeguard Circle
Valley View, OH 44125

Toll Free 800.852.8306
Fax 216.739.2780

www.safeguardproperties.com

Tax ID: 26-1503841

**INVOICE** | 15106581

*Unofficial Copy Office of Chris Daniel District Clerk*



| Invoice Date | | NONE GIVEN |
|---|---|---|
| 10/12/2010 | | 105 BIRDSALL AVE |
| | | HOUSTON, TX 77007 |

**To**

SELECT PORTFOLIO SERVICING
REO DEPARTMENT
3815 SW TEMPLE
SALT LAKE CITY, UT 84115

| Loan Type | REO |
|---|---|
| Loan Number | 12333044 |

Remit To:
P.O. Box 714441
Columbus, OH 43271-4441

Work Order #    72625115

Work Ordered    REO ALA CARTE INIT SRVCS

| Description | Units | Total Price |
|---|---|---|
| Lockbox Installed | 1 @ $35.00 | $35.00 |
| Padlock | 0 @ $40.00 | $40.00 |
| Additional Locks | 2 @ $40.00 | $80.00 |
| Initial Grass Cut Lot 50 x 50 | 1 @ $100.00 | $100.00 |
| Trim Shrubs Initial | 1 @ $60.00 | $60.00 |
| Trashout Completed | 1 @ $510.00 | $510.00 |
| REO Broker Communication | 1 @ $0.00 | $0.00 |
| Winterized - Dry System | 1 @ $75.00 | $75.00 |
| Lock Changed | 1 @ $60.00 | $120.00 |

| Terms: Net 10 Days | Date Completed | 10/4/2010 | Please Pay This Amount | $940.00 |
|---|---|---|---|---|
| | Credits: | $940.00 | Net Due: | $0.00 |

# Exhibit 2



Albert Ortiz

# Exhibit 3

**PhoneNotes**    4406334201    Search    Report    Mobile

US   440   4406334201

Area Codes of US
Area Codes of UK
Area Code Map

Ads by Google

Free Reverse Cell
Lookup
1) Lookup Any Cell
Phone # Free! 2) Get Full
Owner Details Instantly

Cell Phone Lookup —
Free
1) Lookup By Name Or
Cell Number. 2) Get
Name, Address, & Pics
Fast!

Reverse Phone - Look
Free
Accurate, Fast & Easy -
Get Current Registered
Info On Any Phone
Number

Free Reverse Cell
Search
Instantly Get Name,
Address & More Find The
Info You Need!

Who Owns This
Number?
Type In Any Phone
Number and Find out
Who Owns It

## 440-633-4201

City/State    Cleveland, OH
Country    United States
Type/Zip    Landline, 44125
County/TimeZone    Cuyahoga, Eastern

Flexible Cell Phone Plan
Some nationwide coverage low rates. Plans start at $10/mo. Enroll Now!
Ads by Google

Thank
you.
They left a message on my door. They entered my unlocked house without
my permission and said that it was either abandoned or vacant. I want to
know who these people are
sharing
your
info
with
other
people.

Your Name    Your Comment

Your Feeling

Caller Name

Caller Type

Post Note

Search times
Comment count
Creation date   Apr 5, 2011

**Exhibit 4**

## All Results Around Chagrin Falls, OH
### Location Information
Chagrin Falls, OH is a village of 4,024 people living in 2,041 housing units. The city is around 2,071 square miles.

### Enter a Number Below for Detailed Information:

### (440)633-



### Complaints

Homeowner reported Lender Processing Services from 440-633-4201 as a Collection Agency                          Apr 21st 2013 2:38:57am EDT

This # is from Lender Processing Services. They are a lockout company that comes in and locks homeowners out of property in the state of foreclosure. No Court Order and/or no previous notification was provided. Property has not been legally foreclosed. Still in the process. Also they change the locks and destroy property as well as possibly steal items inside. I came home to find that they had tampered with my gate.

### Suspicious Numbers starting with 440-633
4406334201 / 440-633-4201 4406334100 / 440-633-4100 4406334000 / 440-633-4000 4406334479 / 440-633-4479 4406336531 / 440-633-6531

### Neighboring Cities
Chagrin Falls is surrounded by Jefferson , Burton, Kirtland, Mesopotamia, Chagrin Falls, Middlefield, Bedford, Cleveland, Strongsville, Willoughby, Painesville, Ashtabula, Berea, East Claridon, Holland, Wellington, Avon, Chesterland, Avon Lake, Andover, Brecksville, Huntsburg, Elyria, North Bloomfield, Victory, Lorain, North Royalton, Tracy and Corey .

### About our Results
Our coverage includes the 440-633 prefix managed by Ameritech Ohio (OCN ID 9321) in Leroy , Ohio, and most of the United States and Canada. We are therefore able to provide the current name and address registered to any phone number starting in 440-633 in the Chagrin Falls area.

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| PNC BANK, N.A.; | § | OF HARRIS COUNTY, TEXAS |
| SELECT PORTFOLIO SERVICING, INC.; | § | |
| SAFEGUARD PROPERTIES, INC., | § | |
| TRACY A. NICOLA, L.P. D/B/A | § | |
| NICOLA REAL ESTATE and | § | |
| LPS FIELD SERVICES, INC. | § | |
| Defendants | § | 190TH JUDICIAL DISTRICT |

## ORDER

TO: **PNC BANK, N.A., SELECT PORTFOLIO SERVICING, INC.,** and **LPS FIELD SERVICES, INC.**

ALBERT ORTIZ, Plaintiff in this cause, has filed a verified petition for a temporary injunction and, in connection therewith, has presented a request for a temporary restraining order, as set forth in his Original Petition. It clearly appears from the facts set forth in the verified original petition that unless **PNC BANK, N.A., SELECT PORTFOLIO SERVICING, INC.,** and **LPS FIELD SERVICES, INC.,** defendants in this cause, are immediately prevented and restrained from directly or indirectly committing the following with respect to the real property located at 105 Birdsall, Houston, Harris County, Texas 77007 and legally described as follows:

LOT SIX (6), IN BLOCK ONE (1) OF VILLAS OF BAYOU BEND. A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING D TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 417080 OF THE MAP RECORDS OF HARRIS COUNTY. TEXAS.

(the "Real Property"):

(i)     making or threatening further entries upon Plaintiff's Real Property or into Plaintiff's house thereon;

**FILED**
Chris Daniel
District Clerk

MAY - 9 2011

(ii)     changing or threatening to change the locks at Plaintiff's Real Property or Plaintiff's house thereon;

(iii)    removing or taking or threatening to remove or take any possessions from Plaintiff's Real Property or Plaintiff's house thereon;

(iv)    attempting or threatening to sell or dispose of any possessions taken from Plaintiff's Real Property or Plaintiff's house thereon;

(v)     attempting or threatening to sell Plaintiff's Real Property or Plaintiff's house thereon;

(vii)   taking or attempting or threatening to take any actions to commit violence on Plaintiff's Real Property or Plaintiff's house thereon;

(vii)   communicating or attempting to communicate with Plaintiff regarding an alleged mortgage or deed of trust lien on Plaintiff's Real Property or Plaintiff's house thereon;

(viii)  representing to any person or publicly posting or giving notice, other than for purposes of this litigation, that Plaintiff's Real Property or Plaintiff's house thereon is vacant or abandoned;

(ix)    representing to any person or publicly posting or giving notice, other than for purposes of this litigation, that there is a mortgage or deed of trust lien on Plaintiff's Real Property or Plaintiff's house thereon;

then said defendants will commit the foregoing acts before notice can be given and a hearing is had on Plaintiffs' motion for a temporary injunction; and that if the commission of these acts is not prevented or restrained immediately, Plaintiff will suffer irreparable injury because Plaintiff will deprived of the possession, use and enjoyment of said real property and personal property.

IT IS, THEREFORE, ORDERED that **PNC BANK, N.A., SELECT PORTFOLIO SERVICING, INC.,** and **LPS FIELD SERVICES, INC.,** defendants in this cause, their attorneys, trustee, substitute trustees, agents, servants, and employees, be, and hereby are,

Unofficial Copy Office of Bridgett Whitmire Lanier District Clerk

commanded forthwith to desist and refrain from directly or indirectly committing the following with respect to the real property located at the Real Property:

(i)     making or threatening further entries upon Plaintiff's Real Property or into Plaintiff's house thereon;

(ii)    changing or threatening to change the locks at Plaintiff's Real Property or Plaintiff's house thereon;

(iii)   removing or taking or threatening to remove or take any possessions from Plaintiff's Real Property or Plaintiff's house thereon;

(iv)    attempting or threatening to sell or dispose of any possessions taken from Plaintiff's Real Property or Plaintiff's house thereon;

(v)     attempting or threatening to sell Plaintiff's Real Property or Plaintiff's house thereon;

(vii)   taking or attempting or threatening to take any actions to commit violence on Plaintiff's Real Property or Plaintiff's house thereon;

(vii)   communicating or attempting to communicate with Plaintiff regarding an alleged mortgage or deed of trust lien on Plaintiff's Real Property or Plaintiff's house thereon;

(viii)  representing to any person or publicly posting or giving notice, other than for purposes of this litigation, that Plaintiff's Real Property or Plaintiff's house thereon is vacant or abandoned;

(ix)    representing to any person or publicly posting or giving notice, other than for purposes of this litigation, that there is a mortgage or deed of trust lien on Plaintiff's Real Property or Plaintiff's house thereon;

from the date of entry of this order until and to the fourteenth day after entry or until further order of the Court.

IT IS FURTHER ORDERED that **PNC BANK, N.A., SELECT PORTFOLIO**

SERVICING, INC., and LPS FIELD SERVICES, INC., defendants in this cause, appear before the Honorable _____, Judge of the above-named Court, on the _____ day of _____, 2010, at _____ o'clock, _____.M., in the courtroom of the County Civil Court At Law Number _____ of Harris County at the Civil Courts Building, 201 Caroline, Houston, Harris County, Texas, then and there to show cause, if any there be, why a temporary injunction should not be issued as requested by Plaintiffs. The clerk of the Court is hereby directed to issue a show cause notice to PNC BANK, N.A., **SELECT PORTFOLIO SERVICING, INC.**, and **LPS FIELD SERVICES, INC.**, defendants in this cause, to appear at the temporary injunction hearing.

The clerk of the above-entitled Court shall forthwith, on the filing by Plaintiff of the bond hereinafter required, and on approving the same according to the law, issue a temporary restraining order in conformity with the law and the terms of this order.

This order shall not be effective unless and until Plaintiff cause to be executed and filed with the clerk a bond, in conformity with the law, in the amount of _____ Dollars ($_____.00).

SIGNED this _____ day of _____, 2011, at _____ o'clock, _____.M.

_____
JUDGE PRESIDING

Unofficial Copy Office of the Harris District Clerk

CAUSE NO. 2010-79363

| | | |
|---|---|---|
| ALBERT ORTIZ<br>    Plaintiff | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | |
| | § | |
| PNC BANK, N.A.; | § | OF HARRIS COUNTY, TEXAS |
| SELECT PORTFOLIO SERVICING, INC.; | § | |
| SAFEGUARD PROPERTIES, INC., | § | |
| TRACY A. NICOLA, L.P. D/B/A | § | |
| NICOLA REAL ESTATE and | § | |
| LPS FIELD SERVICES, INC. | § | 190TH JUDICIAL DISTRICT |
|     Defendants | § | |

## VERIFICATION

STATE OF TEXAS §

COUNTY OF HARRIS §

Before me, the undersigned notary public, on this day personally appeared Albert Ortiz who, after being duly sworn, stated under oath that that he has read the application for temporary restraining order and temporary injunction, attached hereto, that he is authorized to sign this verification as the plaintiff in this action, and that every statement contained therein is within his personal knowledge and is true and correct.

FILED<br>Chris Daniel<br>District Clerk<br>MAY - 9 2011

Albert Ortiz

Subscribed and sworn to me on this the ___ day of _____, 2011.

Notary Public in and for
the State of Texas

AYESHA RENEE DOLFORD<br>NOTARY PUBLIC, STATE OF TEXAS<br>MY COMMISSION EXPIRES<br>SEPT. 20, 2011

9

CAUSE NO. 2010-79363

| | | |
|---|---|---|
| ALBERT ORTIZ<br>Plaintiff | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | |
| | § | |
| PNC BANK, N.A.; | § | OF HARRIS COUNTY, TEXAS |
| SELECT PORTFOLIO SERVICING, INC.; | § | |
| SAFEGUARD PROPERTIES, INC.; | § | |
| TRACY A. NICOLA, L.P. D/B/A | § | |
| NICOLA REAL ESTATE and | § | |
| LPS FIELD SERVICES, INC. | § | |
| Defendants | § | 190TH JUDICIAL DISTRICT |

FILED
Chris Daniel
District Clerk
MAY 9 2011

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

Before me, the undersigned notary public, on this day personally appeared Albert Ortiz who, after being duly sworn, stated under oath that that he has read the first amended original petition, with application for injunctive relief, attached hereto, that he is authorized to sign this verification as the plaintiff in this action, and that every statement contained therein is within his personal knowledge and is true and correct.

_____
Albert Ortiz

Subscribed and sworn to me on this the 9th day of May, 2011.

_____
Notary Public in and for
the State of Texas

AYESHA RENEE DOLFORD
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
SEPT. 20, 2011

FILED
Chris Daniel
District Clerk
MAY - 9 2011

CAUSE NO. 2010-79363

| | | |
|---|---|---|
| ALBERT ORTIZ<br>Plaintiff | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | |
| | § | |
| PNC BANK, N.A.; | § | OF HARRIS COUNTY, TEXAS |
| SELECT PORTFOLIO SERVICING, INC.; | § | |
| SAFEGUARD PROPERTIES, INC., | § | |
| TRACY A. NICOLA, L.P. D/B/A | § | |
| NICOLA REAL ESTATE and | § | |
| LPS FIELD SERVICES, INC. | § | |
| Defendants | § | 190TH JUDICIAL DISTRICT |

## ORDER ON NON-SUIT

Came on to be considered this **23** day of **Nov**, 2011, the Notice of Non-suit With Prejudice filed by Plaintiff Albert Ortiz. Plaintiff Albert Ortiz having thereby given notice to this Court and to all parties to this suit that he is taking a non-suit, WITH PREJUDICE, of all of his claims against all Defendants in this cause.

IT IS THEREFORE ORDERED that such non-suit by Plaintiff Albert Ortiz is granted and that all of his claims against all Defendants that have or could have been brought in this lawsuit are hereby dismissed WITH PREJUDICE.

THIS ORDER disposes of all claims of all parties and is a final and appealable order.

Signed on this **23** day of **Nov**, 2011.

NOV 2 3 2011

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

Michael Donovan
Texas Bar No. 00796478
6300 Dixie Drive
Houston, Texas 77087
713-956-4043; (FAX) 713-956-4042
ATTORNEY FOR PLAINTIFF

**FILED**
Chris Daniel
District Clerk

NOV 1 2011

Time: _____
Harris County, Texas
By _____
Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging



EXHIBIT
C

# TAB – S

## CAUSE NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| VS. | § | |
| | § | |
| | § | |
| NATIONAL CITY HOME LOAN SERVICES, | § | OF HARRIS COUNTY, TEXAS |
| INC. DBA FIRST FRANKLIN LOAN SERVICES; | § | |
| And NATIONAL CITY BANK OF INDIANA; | § | |
| Defendants | § | 164TH JUDICIAL DISTRICT |

### ALBERT ORTIZ'S SUPPLEMENTAL DISCLOSURES
### SUBSEQUENT TO APPELLATE COURT'S REMAND OF THE CASE

**TO:** **DEFENDANTS (and any successors) (collectively referred to as "Defendants")**, by and through Defendants' attorneys of record, Joel Mohrman and Stephanie Laird Tolson, McGlinchey Stafford, PLLC, 1001 McKinney, Suite 1500, Houston, Texas 77002.

Albert Ortiz, the plaintiff in this cause, hereby supplements his response, in the attached documents, to Defendants' requests for disclosures.

Respectfully submitted,

/s/ Michael Donovan
Michael Donovan
Texas Bar No. 00796478
6300 Dixie Drive
Houston, TX 77087
(713) 956-4043; (713) 956-4042 fax

ATTORNEY FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I certify that on December 26, 2014, a true and correct copy of this document was served on all parties pursuant to Rule 21a of the Texas Rules of Civil Procedure.

Attorneys for Defendants:

Joel W. Mohrman /
Stephanie Laird Tolson /
McGlinchey Stafford PLLC
1001 McKinney Street, Suite 1500
Houston, TX 77002
Fax: 713-520-1025

/s/ Michael Donovan
Michael Donovan

## RESPONSES TO REQUESTS FOR DISCLOSURE

**194.2(c)**

The legal theories and general factual bases of Plaintiff's claims and/or defenses include the following:[1]

The claims and defenses of Plaintiff Ortiz have heretofore been set forth with supporting facts in his live pleadings, which are incorporated herein for all purposes. Such pleadings include the following claims set forth in Plaintiff's Tenth Amended Original Petition:

1. Negligent performance of contract (at Paragraph 58)
2. Negligent performance of contract (at Paragraph 59)
3. Breach of contract (at Paragraph 61)
4. Breach of contract (at Paragraph 62)
5. Request for declaratory relief (at Paragraph 63)
6. Punitive damages (at Paragraph 66)

Mr. Ortiz's claims concern the contract between him and Defendant National City Bank Of Indiana (and any successor) ("Bank"), which consisted of a Note and Deed of Trust related to the property at 105 Birdsall, Houston, Texas 77007 (the "Real Property"). The claims are based on the Bank's breach of and failure to comply with that written contract. Such breach consists of actions and/or omissions which were committed by the Bank and/or parties for which the Bank is responsible, including its mortgage servicer and agent – National City Home Loan Services, Inc., and any successor ("HLS").

The Bank breached and/or negligently performed the parties' contract as follows: 1) it failed to comply with the notice provisions requiring notices to be sent to Mr. Ortiz at 6300 Dixie Drive, Houston, Texas 77087; 2) it failed to accept Mr. Ortiz's monthly mortgage payments as full payment of the amount then due; 3) it wrongfully demanded of, collected from, and/or assessed on Mr. Ortiz various fees and charges, including late charges, attorney fees, and related fees when Mr. Ortiz's payments of interest were wrongfully alleged to be overdue; 4) it wrongfully reported Mr. Ortiz to the credit bureaus by alleging he was delinquent or in default with regard to his interest payments when those payments were not overdue; and 5) it otherwise violated its obligation, under Chapter 1 of the Texas Business and Commerce Code, to act in good faith in the performance and enforcement of the parties' contract.

Defendant Bank failed to comply with the requirements of both Texas law and its contract with Plaintiff when it failed to provide Plaintiff with notice regarding its purchase of collateral protection insurance and its resulting increase to Plaintiff's mortgage payment. By such conduct, Defendant Bank violated or breached its duty to perform its contract with Plaintiff with care and skill and negligently performed under the contract; such conduct also constitutes negligence per se in that the Bank violated Texas statutes requiring such notice to be provided to Plaintiff. Such conduct was a proximate cause of damages to Plaintiff. Defendant Bank committed such actions at least twice, once when Plaintiff actually already had purchased

---

[1] These disclosures include Ortiz's claims that have not been non-suited or disposed of by the Court and that are not listed in the Court's order of November 12, 2014. Ortiz is presently seeking to have this order vacated or set aside by the court of appeals and makes these disclosures conditional upon prevailing in that proceeding; if successful in establishing that the appellate court's mandate is not limited, Ortiz intends to take such claims to trial and to re-plead and try many or all of the non-suited claims. He will then further supplement his discovery as necessary.

collateral protection insurance. As a result, the Bank wrongfully increased Plaintiff's mortgage payment and charged him amounts to which it was not entitled, all without notice to Plaintiff. When Plaintiff failed to pay the increased amount of which he was not aware, the Bank unjustly charged him late fees and wrongfully and negatively affected his credit reports.

Defendant Bank failed to comply with the requirements of both Texas law and its contract with Plaintiff when it entered the Real Property without Ortiz's consent, changed his locks at the Real Property, and permanently excluded him from the Real Property. By such conduct, Defendant Bank violated or breached its duty to perform its contract with Ortiz with care and skill and negligently performed under the contract; such conduct also constitutes negligence per se in that such conduct constitutes criminal violations of Texas statutes. Such conduct was a proximate cause of damages to Plaintiff. Plaintiff suffered damages in the form of loss of use of the Real Property. Such conduct also constitutes gross negligence for which Defendant Bank is liable to Plaintiff for exemplary or punitive damages.

Plaintiff's pleadings further disclose that Ortiz is also entitled to recover his punitive damages due to the gross negligence and/or malice of one or more of Defendants in connection with the wrongful and/or unlawful acts that are the subject of this suit. Such pleadings further disclose that Ortiz is also entitled to recover his attorneys' fees pursuant to Chapters 37 and 38 of the Texas Civil Practice and Remedies Code. Recovery of such fees is based on demand letters to Defendants, including Plaintiff's demand letter to Defendant Bank, dated December 23, 2014, which Plaintiff intends to use as an exhibit as evidence in support of his claim for attorney fees

## 194.2(d)

Plaintiff's economic damages further include the just amount owed to Mr. Ortiz for his claims against the Bank, which consists of the total of late charges, attorney fees, and related fees wrongfully charged to Mr. Ortiz when his payments of interest were wrongfully alleged to be overdue. The amount is calculated by totaling all such amounts, which are evidenced by the exhibits admitted in the first trial that disclose or itemize such amounts.

## 194.2(e)

Persons having knowledge of relevant facts are as follows:

**Joel Mohrman; Stephanie Laird Tolson; John Verner**; 1001 McKinney Street, Suite 1500, Houston, Texas 77002; 713-520-1900. These attorneys work at the law firm of McGlinchey Stafford, PLLC, and presently represent Defendants and did so at the time that Defendants' rescission document at issue was concealed from, and then later discovered by or disclosed to, Plaintiff.

**Kari Robinson**; 1301 McKinney Street, Suite 3700, Houston, Texas 77010; 713-286-7161; **Dan Patton**. 3939 Washington Ave.,, Suite 203, Houston, Texas 77007; 281-377-3311 These attorneys formerly worked at the law firm of McGlinchey Stafford, PLLC, and represented Defendants and did so at the time that Defendants' rescission document at issue was concealed from, and then later discovered by or disclosed to, Plaintiff.

AND ALL PERSONS DISCLOSED BY DEFENDANTS.

## 194.2(f)

The testimony of previously-designated expert Mark Sikes will include all matters to which he testified at the first trial of this case as well as all damages related to lost value, rents, profits, and/or use of the Real Property up to and including through the time of the second trial of this case, as applicable.

# TAB – T

Filed 10 April 12 P4:56
Loren Jackson - District Clerk
Harris County
ED101J015740384
By: Charleta Johnson

CAUSE NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| VS. | § | |
| | § | |
| FRED LOMBARDO; | § | OF HARRIS COUNTY, TEXAS |
| NATIONAL CITY HOME LOAN SERVICES, | § | |
| INC. DBA FIRST FRANKLIN LOAN SERVICES; | § | |
| NATIONAL CITY BANK OF INDIANA; | § | |
| KEYSTONE ASSET MANAGEMENT, INC., and | § | |
| RICHARD HOWELL DBA ALEXANDER | § | |
| HUNTER PROPERTIES AKA ALEXANDER | §. | |
| HUNTER PROPERTIES, INC. | § | |
| Defendants | § | 164TH JUDICIAL DISTRICT |

## PLAINTIFF'S EIGHTH AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

Albert Ortiz ("ORTIZ"), Plaintiff in this cause, complains of Fred Lombardo ("Lombardo");

National City Home Loan Services, Inc. d/b/a First Franklin Loan Services ("HLS"), National City

Bank of Indiana ("BANK"), and Keystone Asset Management, Inc. ("Keystone"), the Defendants,

and for causes of action respectfully shows the Court as follows:

### DISCOVERY

1. Discovery in this case is intended to be conducted under a Level 2 Discovery

Control Plan pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

### JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

2. This Court has jurisdiction over the claims stated herein in that this Court has

general jurisdiction and specific jurisdiction over the Defendants. The amount claimed by

Plaintiff is within the jurisdictional limits of this Court. Venue is proper in Harris County,

pursuant to Subdivisions (1), (3), and/or (4) of Section 15.002(a) of the Texas Civil Practice and

Remedies Code. Plaintiff generally avers that all conditions precedent to filing the claims herein

: 01209

have been performed or have occurred or the conditions have been excused because of the conduct of the Defendants.

## PARTIES

3.      Plaintiff Albert Ortiz is an individual who resides in Harris County.

4.      Each of the Defendants has heretofore appeared by filing an answer in this cause.

## NATURE OF ACTION

5.      On or about March 15, 2004, Plaintiff ORTIZ purchased a home in Harris County, Texas. The home in question is located at 105 Birdsall, Houston, Harris County, Texas 77007 (the "Real Property") and is legally described as follows to-wit:

LOT SIX (6), IN BLOCK ONE (I) OF VILLAS OF BAYOU BEND.
A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING D
TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM
CODE NO. 417080 OF THE MAP RECORDS OF HARRIS
COUNTY, TEXAS.

6.      ORTIZ borrowed $475,000 from lender First Franklin Financial Corp., a subsidiary of Defendant BANK. The Promissory Note evidencing the loan was subsequently assigned to Defendant BANK. The loan was collateralized by a Deed of Trust. Both the Promissory Note and Deed of Trust were signed on or about March 15, 2004. A true and correct copy of the Promissory Note in question is attached hereto as Exhibit "A" and is incorporated herein by reference, the same as if fully set forth at length. A true and correct copy of the Deed of Trust in question is attached hereto as Exhibit "B" and is incorporated herein by reference, the same as if fully set forth at length.

7.      Pursuant to the terms of the Promissory Note and Deed of Trust in question, any and all notices and/or communications to ORTIZ were to be sent to the address of the real property made the subject of this suit, unless ORTIZ designated – in writing – a different (substitute) address to lender. In fact, ORTIZ provided such written notification to Defendants contemporaneous with

: 01210

his execution of the Promissory Note and Deed of Trust (March 15, 2004). ORTIZ designated his office address of:

6300 Dixie Dr.
Houston, TX 77087
ATTN: A. ORTIZ

This written designation of address to receive Notices was made in writing in accordance with the terms of the Promissory Note and Deed of Trust. A true and correct copy of the Designation of Substitute Address (Titled: *MAILING ADDRESS CONFIRMATION / PAYMENT LETTER*) is attached hereto as Exhibit "C", and is incorporated herein by reference, the same as if fully set forth at length.

8. The actions of Defendant HLS giving rise to this lawsuit were undertaken while HLS served as "Loan Servicer" or "Mortgage Servicer" for and on behalf of Defendant BANK. HLS specifically serviced the ORTIZ loan, more fully described above for and on behalf of Defendant BANK. HLS was – at all times complained of herein – acting within the course and scope of its duties as agent, servant or employee for and on behalf of Defendant BANK. All actions complained of herein were undertaken at the direction, instruction, approval and/or knowledge of Defendant BANK.

9. Less than a year into the loan, beginning in early, 2005, a series of disputes arose between ORTIZ and HLS. Defendant HLS wrongfully accused ORTIZ of not having insurance on the Real Property and charged ORTIZ for force-placed insurance for several months. HLS also reported ORTIZ to the credit bureaus for not paying for such insurance and charged him late fees even though the cost of the insurance was not properly chargeable to ORTIZ.

10. ORTIZ had to hire counsel to have the payment and credit reporting problems corrected. HLS admitted its mistake and entered into two separate agreements with ORTIZ in

: 01211

which HLS and/or BANK agreed to remove the negative credit reporting and re-adjust ORTIZ'S payments on his mortgage. HLS violated the agreement(s) and continued to wrongfully report him as paying late for at least one of the months in question. True and correct copies of these agreements are attached hereto as Exhibits "D" and "E", respectively, and are incorporated herein by reference, the same as if fully set forth at length.

11. Later in 2005, ORTIZ discovered that he was again being charged for force placed insurance purchased by HLS and/or BANK and that charges for the insurance were being added to his monthly mortgage payment. The force placed insurance had again been purchased without any prior knowledge of ORTIZ. His loan payments again were being applied to pay for the force-placed insurance. ORTIZ also discovered that his credit report again showed delinquencies with HLS and/or BANK that were supposed to have been corrected under his agreements with them.

12. Extremely frustrated at this point, ORTIZ advised HLS that he was suspending making any further monthly mortgage payments until this latest problem was fully resolved. He made it clear that he was not wholly refusing to pay but was refusing to pay only until the problem was fully resolved. The problem was not resolved despite substantial efforts by ORTIZ.

13. HLS – rather than honoring its agreements with ORTIZ, and still acting in the course and scope of its duties as Mortgage Servicer for Defendant BANK – declared the real property made the basis of this suit "abandoned" by ORTIZ. They locked Ortiz out of his home in or around Thanksgiving in -November of 2005 and refused to allow Ortiz re-entry into his home. Without verification from ORTIZ, Defendant HLS alleged that ORTIZ had abandoned the Real Property and, without notice to ORTIZ, took possession of the Real Property, had the locks changed, refused to provide ORTIZ with a key to the new locks, and not once was ORTIZ able to access the Real Property prior to its foreclosure several months later (more on the foreclosure, below).

: 01212

14.    At the time he was locked out of his house by Defendant(s), ORTIZ was in the midst of extensive renovations and improvements to the Real Property made the basis of this suit. In fact, ORTIZ did not ever abandon the Real Property and had given notice of this fact to HLS. ORTIZ – at all times – denied that he ever abandoned the Real Property. He advised HLS of this fact before the locks were changed and advised them repeatedly thereafter that he had not abandoned the Real Property.

15. ORTIZ was advised by HLS that he could not gain entry to or possession of the Real Property until he paid certain amounts on the Real Property that were alleged to have been past due. Months later, HLS promised to give ORTIZ a key to the Real Property, but HLS then reneged on the promise.

16.    In addition, ORTIZ had various valuable possessions and belongings still locked up at the Real Property that he was not been able to retrieve. Such items included various building materials for the on-going renovations, exercise equipment, and other personal items.

17.    Seven months later, on or about the 6th day of June, 2006, Defendants foreclosed on ORTIZ'S home. Defendant BANK purchased ORTIZ'S home at a non-judicial foreclosure proceeding (Substitute Trustee's Sale). A true and correct copy of the Substitute Trustee's Deed is attached hereto as Exhibit "F" and is incorporated herein by reference, the same as if fully set forth at length

18.    Prior to and in connection with the foreclosure, Defendants HLS and/or BANK failed to provide proper notice to ORTIZ as required, including failing to provide proper notices of default, intent to accelerate the note, acceleration of the note, and notice of the foreclosure sale. All notices were sent to the wrong address as they were not sent to the address designated by ORTIZ as the proper address for receipt of notices from Defendants HLS and/or BANK.

: 01213

19. Following the foreclosure, Defendant HLS and BANK twice agreed that BANK and HLS fully released ORTIZ from any and all obligations ORTIZ may have had to his lender (Defendant BANK), agreed to *waive any and all claims and demands of liability or obligation* on the part of ORTIZ and agreed that *no further sums would be demanded or litigated* (emphasis added) by lender. The first such waiver was executed on behalf of Defendants on June 27, 2006, and a second was executed on July 6, 2006. True and correct copies of these agreements are attached hereto as Exhibits "G" and "H", respectively, and are incorporated herein by reference, the same as if fully set forth at length.

20. The Real Property was foreclosed upon without Ortiz ever being allowed to regain possession and/or access to the Real Property prior to it being foreclosed upon. Sometime after the foreclosure of the Real Property, ORTIZ was finally able to retrieve some of the items, while others had been removed or stolen from the Real Property and have never been restored to ORTIZ.

21. Additionally, prior to the foreclosure and the acceleration of the note, Defendant BANK entered into an oral contract with ORTIZ that it would forbear from foreclosing on the Real Property and release its lien on the Real Property in return for receipt of the proceeds of ORTIZ'S sale of the Real Property to a third party for $330,000, which was the value of the Real Property according to Defendant BANK's appraisal. Defendant BANK breached and repudiated the contract and made additional demands of ORTIZ before it would comply with the contract. After entering the contract, Defendant BANK also later stated that the contract was conditional upon a final decision as to whether the Real Property was still appraising at $330,000 and/or whether it would require more than $330,000 to release its lien and forgo the foreclosure. Defendant BANK later declared that the $330,000 sale price was not enough and then foreclosed on the Real Property.

: 01214

22.     Defendant Lombardo is an employee of Defendant HLS, which was attempting to collect a debt from ORTIZ. Defendant HLS misapplied ORTIZ'S payments, wrongfully charged him late fees, and wrongfully reported him to the credit bureaus. As a result, ORTIZ for a time suspended making any further mortgage payments. Defendant HLS later admitted it was wrong to have charged him the late fees and made negative credit reporting about ORTIZ. Defendant Lombardo had ORTIZ enter into an agreement with Defendants HLS and BANK in which ORTIZ would resume payments and Defendants HLS and BANK agreed to correct the late fee charges and negative credit reporting. Defendant Lombardo assured ORTIZ that he would personally oversee the process to make sure the negative credit reporting was removed. ORTIZ fully paid all payments that had been suspended and became current on his loan. However, ORTIZ'S credit report was never properly fixed. Defendant Lombardo therefore made false representations to ORTIZ to collect the debt and violated the Texas DTPA.

23.     Defendant Lombardo also slandered the credit of ORTIZ so as to cause ORTIZ to suffer damage to his credit reputation and other damages. Defendant Lombardo, individually and as agent for Defendants HLS and BANK, also participated in and/or was responsible, in whole or in part, for wrongfully refusing ORTIZ entry or possession of the Real Property unless he made payments allegedly past due and/or signed a release.

24.     Defendant Keystone is an entity that was hired by one or more of the other Defendants and that had access to and/or possession of the Real Property as it was responsible for maintaining and/or managing the Real Property after ORTIZ had been locked out of the Real Property. Defendant Howell is an individual and an agent of Keystone who also had access to, custody, control and/or possession of the Real Property as he was retained to attempt to market and sell the Real Property for one or more of the Defendants after it was purchased at foreclosure.

: 01215

Plaintiff ORTIZ asserts that, upon further investigation and discovery, the evidence will show that Defendant Keystone and/or Defendant Howell is liable to ORTIZ based on claims of theft, conversion, unlawful debt collection, trespass to personalty, trespass, breach of bailment, negligence, invasion of privacy and/or conspiracy to commit conversion in connection with the personal property at the Real Property, some of which was never restored to ORTIZ after the foreclosure of the Real Property. Such acts and/or omissions of Defendants Keystone and/or Howell were committed as agents of and/or on behalf of Defendants HLS and/or BANK or such acts and/or omissions were ratified or adopted by and/or the benefits of same were accepted by Defendants HLS and/or BANK. Defendants HLS and/or BANK are therefore similarly liable for all of the aforesaid claims of ORTIZ.

25. On October 28, 2008, this Court granted Plaintiff an interlocutory summary judgment ruling that Defendant BANK'S foreclosure of the Real Property was wrongful and that title to the Real Property should be restored to Ortiz.

26. Rather than comply with this Court's Order restoring the Real Property in question to ORTIZ, Defendants still hold possession of same, refuse to allow ORTIZ entry to his home, fail to restore title to the Real Property into ORTIZ'S name and – in complete disregard of Court Order and prior Agreements, have chosen to again attempt to not only collect on a debt that no longer is due and owing, but has sought to "re-foreclose" on ORTIZ'S home.

27. This time, Defendant HLS, acting on behalf of Defendant BANK, demanded that ORTIZ make house payments for the two-plus years that he had been wrongfully deprived of title to the Real Property as a result of the wrongful foreclosure. Defendants alleged, among other things, that ORTIZ again owned the Real Property, even though it would still not let him have possession of it. Defendants alleged that ORTIZ was in default for not making house payments and insuring

: 01216

the Real Property even though Defendant BANK still owned and possessed the Real Property. Defendant BANK wrongfully held title to the Real Property for well over two years due to its wrongful foreclosure and then told ORTIZ that because he had not made any mortgage payments to Defendant BANK while he had been locked out of his house, Defendant BANK was going to accelerate his note and foreclose on the Real Property yet a second time. A true and correct copy of Defendants' latest demand Notice to ORTIZ is attached hereto as Exhibit "I" and is incorporated herein by reference, the same as if fully set forth at length.

28. When ORTIZ refused to make such payments, Defendant BANK accelerated the Note and again posted the Real Property for foreclosure. ORTIZ made multiple requests to Defendant BANK that it refrain from proceeding with the threatened foreclosure because of, among other reasons, the fact that Defendant BANK still held title to the Real Property and the fact that the order signed by the Court provided that title to the Real Property should be restored to ORTIZ.; however, Defendant BANK refused or failed to respond to all such requests.

29. The Real Property was posted for foreclosure sale despite Defendant BANK still holding title to the Real Property and despite the Court's order providing that title to the Real Property should be restored to ORTIZ. Without notice to or knowledge of ORTIZ, either Defendant BANK elected to not proceed with the foreclosure sale or there was no buyer of the Real Property at the foreclosure sale. Despite ORTIZ'S multiple requests and his expression of his grave concerns that the Real Property would again wrongfully being transferred, Defendant BANK refused ORTIZ'S requests for a copy of a substitute trustee's deed and any other information that would have evidenced the foreclosure sale, or lack thereof. A true and correct copy of Defendants' Notice of Substitute Trustee's Sale is attached hereto as Exhibit "J" and is incorporated herein by reference, the same as if fully set forth at length.

: 01217

## BREACH OF CONTRACT / DEED OF TRUST

30.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The Note and/or Deed of Trust executed in connection with the loan for the purchase of the Real Property constitute a valid and enforceable contract. Ortiz performed, tendered performance of, or was excused from performing his contractual obligations under such contract. The conduct of Defendant BANK as set forth herein constitutes a breach of contract by said Defendant under Texas law and caused damages to ORTIZ.

31.     Defendant BANK failed to comply with the Deed of Trust. Said Defendant breached the Deed of Trust by wrongfully accusing ORTIZ of abandoning the Real Property, when ORTIZ gave notice that it had not been abandoned, then taking possession of the Real Property or causing others to take possession of the Real Property, and changing the locks to exclude ORTIZ from occupying the Real Property and continuing to exclude him when they knew the Real Property was not abandoned. Defendant further failed to comply with the Deed of Trust by entering into the Real Property without notice to ORTIZ, changing the locks to the Real Property without notice to ORTIZ, refusing to provide ORTIZ with a key to the new locks, and/or ousting, excluding and dispossessing ORTIZ of the Real Property without notice to ORTIZ. These acts violated the Deed of Trust as they were not reasonable or appropriate, as required by the Deed of Trust, to protect Defendant's interest in the Real Property and rights under the Deed of Trust. Defendant further failed to comply with the Deed of Trust by misapplying payments in violation of the Deed of Trust.

32.     Defendant BANK also failed to comply with the Deed of Trust and the requirements for sending notices to ORTIZ regarding the Deed of Trust, the Real Property, and/or the note affiliated with same. Prior to and in connection with the foreclosure, Defendants HLS and/or BANK failed to provide proper notice to ORTIZ as required, including failing to provide proper

: 01218

notices of default, intent to accelerate the note, acceleration of the note, and notice of the foreclosure sale. All notices were sent to the wrong address as they were not sent to the address designated by ORTIZ as the proper address for receipt of notices from Defendants HLS and/or BANK. Because it did not follow the provisions and requirements of the deed of trust, Defendant BANK failed to conduct the foreclosure sale properly and, thus, violated the contract executed between the parties.

33. Defendant BANK also entered into an oral contract with ORTIZ that it would forbear from foreclosing on the Real Property and release its lien on the Real Property in return for receipt of the proceeds of ORTIZ'S sale of the Real Property to a third party for $330,000, which was the value of the Real Property according to Defendant's appraisal. Such contract constituted a valid and enforceable contract. ORTIZ performed, tendered performance of, or was excused from performing his contractual obligations under such contract. Said Defendant breached the contract. Defendant repudiated the contract and made additional demands of ORTIZ before it would comply with the contract. After entering the contract, Defendant also later stated that the contract was conditional upon a final decision as to whether the Real Property was still appraising at $330,000 and/or whether it would require more than $330,000 to release its lien and forgo the foreclosure. Defendant subsequently breached the contract by declaring that the $330,000 sale price was not enough and then foreclosing on the Real Property.

### FRAUD / FRAUDULENT INDUCEMENT

34. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The conduct of Defendant BANK and/or Defendant HLS constitutes fraud and/or fraudulent inducement by said Defendants under Texas law and caused damages to ORTIZ.

: 01219

35.     ORTIZ alleges that, upon further investigation and discovery, the evidence will show that said Defendant(s) constitutes fraud and/or fraudulent inducement in that said Defendant(s) entered into the oral contract with ORTIZ knowing at the time that their promise to perform was false and that they had no intention of performing. Defendant(s) had a duty to refrain from inducing ORTIZ to enter into a contract by using a false representation. Defendant(s) made a material representation; the representation was false; when the representation was made, Defendant(s) knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; Defendant(s) made the representation with the intent that ORTIZ should act upon it; ORTIZ acted in reliance on the representation; and ORTIZ thereby suffered injury. ORTIZ entered into a binding contract based on Defendant(s) false representation. The binding contract was the Defendant BANK's oral contract with ORTIZ that it would forbear from foreclosing on the Real Property and release its lien on the Real Property in return for receipt of the proceeds of ORTIZ'S sale of the Real Property to a third party for $330,000, which was the value of the Real Property according to Defendant's appraisal. Pleading further, ORTIZ alleges fraudulent conduct on the part of the Defendant(s). The above-described wrongful conduct by Defendant(s) constitutes fraud as it is the successful employment of deception, cunning, or artifice to circumvent, cheat, or defraud ORTIZ to his injury.

## PROMISSORY ESTOPPEL

36.     Pleading in the alternative, and without waiving the foregoing, ORTIZ alleges Defendants BANK and/or HLS are liable under the theory of promissory estoppel in that said Defendant(s) made the above-described promise to ORTIZ that they would not foreclose on and would release their lien on the Real Property in return for receipt of the proceeds of ORTIZ'S sale of the Real Property to a third party for $330,000, which was the value of the Real Property

: 01220

according to Defendant's appraisal. It was reasonably foreseeable to said Defendant(s) that ORTIZ would rely on the promise, ORTIZ did reasonably and substantially rely on the promise to his detriment in electing to forgo reinstating the loan to prevent the foreclosure, and injustice can only be avoided by enforcing the promise of said Defendant(s).

## WRONGFUL FORECLOSURE / DTPA VIOLATION

37. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The subsequent foreclosure upon the Real Property constituted a wrongful foreclosure by Defendants HLS and/or BANK under Texas law. Defendants posted the Real Property for foreclosure and foreclosed upon the Real Property on June 6, 2006. Ortiz alleges that the foreclosure upon the Real Property was wrongful and as a result, the foreclosure sale and the trustee's deed evidencing the sale is void. Prior to and in connection with the foreclosure, Defendants HLS and/or BANK failed to provide proper notice to ORTIZ as required, including failing to provide proper notices of default, intent to accelerate the note, acceleration of the note, and notice of the foreclosure sale. All notices were sent to the wrong address as they were not sent to the address designated by ORTIZ as the proper address for receipt of notices from Defendants HLS and/or BANK. Such failures concerning notices constitute a defect in the foreclosure proceedings and/or an irregularity in the conduct of the foreclosure sale.

38. ORTIZ further alleges that he was not in default so as to justify foreclosure, that he justifiably suspended his performance, that said Defendants' actions constituted a material breach discharging him of further performance and/or said Defendants' conduct estopped them from the remedy of foreclosure. Said Defendant(s)' foreclosure was also wrongful because equity prevented acceleration of ORTIZ'S debt under the facts of this case due to the conduct of

: 01221

said Defendant(s). Defendant(s) misapplied ORTIZ'S payments, wrongfully locked ORTIZ out of the Real Property, permanently excluded him from it, and took over possession of it. Defendant(s) took possession and/or control of ORTIZ'S personalty, deprived him of it, attempted to sell it, and refused for months demands to return it until finally allowing ORTIZ to recover some of it while some of it was denied and some of it was damaged. Defendant(s) agreed and/or promised to forebear from foreclosing on the Real Property and to release its lien on the Real Property in return for receipt of the proceeds of ORTIZ'S sale of the Real Property to a third party for $330,000, which was the value of the Real Property according to Defendant's appraisal, and then failed to comply with the contract and/or fulfill the promise and/or the contract was made with no intention of performing it and the time it was made. Moreover, Defendants exercised the option to accelerate, not for the purpose of protecting the debt or preserving the security therefor given that Defendants had dispossessed ORTIZ of and secured the Real Property and at the time already had entered an agreement to receive approximately 70 percent of the debt years before its maturity. In light of the facts of this case, even if ORTIZ was in default, which he denies, the default was the result of Defendants' conduct and the acceleration of ORTIZ'S mortgage was wrongful as it was inequitable, unfair, unreasonable, unjust, oppressive, fraudulent and/or in bad faith. Such foreclosure based on an absence of default by ORTIZ or a default that was the result of Defendants' conduct, as well as the wrongful acceleration of ORTIZ'S mortgage, constitutes a defect in the foreclosure proceedings and/or an irregularity in the conduct of the foreclosure sale.

39. ORTIZ seeks to have the Court set aside the foreclosure sale and to recover title to the Real Property. The conduct of said Defendant(s) described above and in locking him out and dispossessing him of the Real Property prior to foreclosure further constitutes an

: 01222

unconscionable action or course of action under the Texas Deceptive Practices—Consumer Protection Act ("DTPA") that was a producing cause of damages to ORTIZ and for which said Defendant(s) are liable to ORTIZ under the DTPA. ORTIZ is a consumer under the DTPA, and said Defendant(s) can be sued under the DTPA. Said Defendant(s) conduct constitutes an unconscionable action or course of action in violation of and actionable under Section 17.50 of the DTPA and/or false, misleading, or deceptive acts or practices in the conduct of trade or commerce that are unlawful and in violation of Section 17.46 of the DTPA. As a result, under the DTPA, ORTIZ seeks up to three times his damages for Defendants' knowing and/or intentional unlawful conduct. ORTIZ alleges a cause of action for violation of the DTPA against said Defendant(s), seeking to recover for all damages caused thereby, including actual damages, statutory damages, or both.

## UNLAWFUL DEBT COLLECTION / FRAUD

40. The above-described conduct of Defendants HLS, BANK, Lombardo and/or Keystone constitutes a violation of the Texas debt collection statutes as well as unreasonable and unfair debt collection in violation of the common law of the state of Texas.

41. The wrongful changing of locks at and/or entry to the Real Property, the ouster, exclusion, and dispossession of ORTIZ from the Real Property, and/or wrongful removal and and/or retaining of ORTIZ'S personal property by one or more of said Defendants involved fraudulent or misleading representations, deceptive means, and/or coercion or attempted coercion by violence and/or criminal action, including criminal trespass and/or theft. Defendants HLS and/or BANK and Defendants Keystone and/or Lombardo, as agents of Defendants HLS and/or BANK, engaged in such action in attempting to collect a debt or alleged debt of ORTIZ and thus violated Chapter 392 of the Texas Finance Code (the Texas Debt Collection Practices Act or

: 01223

DCPA), including Section 392.301 of the DCPA. Such a violation is also actionable under the Texas Consumer Protection—Deceptive Practices Act (DTPA). Under the DTPA, ORTIZ seeks up to three times his damages for Defendants' knowing and/or intentional unlawful conduct. ORTIZ alleges a cause of action for violation of the DCPA and/or the DTPA against said Defendant(s), seeking to recover for all damages caused thereby, including his actual damages, statutory damages, or both. Such action, along with Defendant(s)' actions in wrongfully refusing ORTIZ entry or possession of the Real Property unless he made payments allegedly past due and/or signed a release, also constitutes an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which ORTIZ seeks to recover his damages from said Defendant(s).

Furthermore, said Defendant(s) entered into the Real Property without notice to ORTIZ, changed the locks to the Real Property without notice to ORTIZ, refused to provide ORTIZ with a key to the new locks, and/or ousted, excluded and dispossessed ORTIZ of the Real Property without notice to ORTIZ, These acts were deceptive, fraudulent, and/or misleading practices by said Defendant(s) and employed the use of false representations or deceptive means. Said Defendant (s) engaged in such action in collection of an actual or alleged consumer debt of ORTIZ and thus violated Chapter 392 of the Texas Finance Code (the Texas Debt Collection Practices Act or DCPA), including Section 392.304 of the DCPA. Such a violation is also actionable under the Texas Consumer Protection—Deceptive Practices Act (DTPA). Under the DTPA, ORTIZ seeks up to three times his damages for Defendants' knowing and/or intentional unlawful conduct. ORTIZ alleges a cause of action for violation of the DCPA and/or the DTPA against said Defendant(s), seeking to recover for all damages caused thereby, including his actual damages, statutory damages, or both. Such actions also constitute an unfair and unreasonable debt collection practice that is

: 01224

prohibited by and actionable under Texas common law for which ORTIZ seeks to recover his damages from said Defendant(s).

Moreover, said Defendant(s) actions also constitute fraud by omission and/or fraudulent conduct in that said Defendant(s) failed to inform or notify ORTIZ prior to their entry to the Real Property and their lock-out, ouster, exclusion and/or dispossession of ORTIZ from the Real Property that they intended to exercise their purported rights or remedies under the Deed of Trust concerning securing of the Real Property and protecting their rights or interests related thereto. Such omissions constituted false representations, said Defendant(s) knew they were false when made, said Defendant(s) intended ORTIZ to act on such representations, ORTIZ relied on such representations to his detriment and suffered damages as a result. Pleading further, ORTIZ alleges fraudulent conduct on the part of said Defendant(s). The above-described wrongful conduct by said Defendant(s) constitutes fraud as it is the successful employment of deception, cunning, or artifice to circumvent, cheat, or defraud ORTIZ to his injury.

42.    Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. Shortly after the Court granted an interlocutory summary judgment in this cause stating that title to the Real Property was restored to ORTIZ, Defendant HLS, acting on behalf of Defendant BANK, sent notices to ORTIZ that it was again threatening to accelerate his Note and to post the Real Property for foreclosure sale due to alleged default by ORTIZ. This time, Defendant HLS demanded that ORTIZ make house payments for the two-plus years that he had been wrongfully deprived of title to the Real Property as a result of the wrongful foreclosure. When ORTIZ refused to make such payments, Defendant BANK stated that it had accelerated the Note and again posted the Real Property for foreclosure.

: 01225

43. Defendants HLS and BANK informed ORTIZ that, because he had not made any mortgage payments to Defendant BANK while he had been locked out of his house and deprived of title to the Real Property for well over two years due to Defendant(s)' wrongful foreclosure, Defendant BANK was going to again accelerate his note and foreclose on the Real Property. Such wrongful conduct of said Defendants involved fraudulent, false, or misleading representations, deceptive means, and/or coercion or attempted coercion in attempting to collect a debt or alleged debt of ORTIZ. Such conduct also threatened action prohibited by law and the waivers executed by Defendants. Furthermore, by such conduct, Defendant HLS and Defendant Bank were unfairly and unconscionably attempting to collect interest or a charge, fee, or expense incidental to the Note and/or Deed of Trust that was not expressly authorized by same or was not legally chargeable to ORTIZ. Moreover, Defendants HLS and Bank committed fraudulent, deceptive or misleading debt collection violations by misrepresenting the character, extent, or amount of ORTIZ'S Note balance, or misrepresenting the status of ORTIZ'S Note balance in this judicial proceeding in that they alleged that ORTIZ was obligated for further payments on the Note even after said Defendants waived all such payments and agreed ORTIZ was not so obligated.

Furthermore, said Defendant(s) threatened to accelerate ORTIZ'S note and foreclose on him again even though they knew that ORTIZ no longer owned the Real Property at the time. These acts were deceptive, fraudulent, and/or misleading practices by said Defendant(s) and employed the use of false representations or deceptive means. In connection with such debt collection, said Defendant(s) also demanded usurious amounts and/or unfairly or unconscionably engaged in collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation that was not expressly authorized by the agreement creating the obligation or legally chargeable to ORTIZ, and further falsely accused and/or threatened to falsely accuse one or more persons of fraud

Page **18** of **30**

01226

and/or the commission of a crime. Said Defendant (s) engaged in such action in collection of an actual or alleged consumer debt of ORTIZ and thus violated Chapter 392 of the Texas Finance Code (the Texas Debt Collection Practices Act or DCPA), including Sections 392.301, 392.303, and 392.304 of the DCPA. Such a violation is also actionable under the Texas Consumer Protection— Deceptive Practices Act (DTPA). Under the DTPA, ORTIZ seeks up to three times his damages for Defendants' knowing and/or intentional unlawful conduct. ORTIZ alleges a cause of action for violation of the DCPA and/or the DTPA against said Defendant(s), seeking to recover for all damages caused thereby, including his actual damages, statutory damages, or both. Such actions also constitute an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which ORTIZ seeks to recover his damages from said Defendant(s).

Defendant HLS and Defendant BANK engaged in such action and thus violated Chapter 392 of the DCPA, including Sections 392.301, 392.303, and 392.304 of the DCPA. Such a violation is also actionable under the DTPA, per Section 392.404 of the DTPA. Under the DTPA, ORTIZ seeks up to three times his damages for Defendants' knowing and/or intentional unlawful conduct. ORTIZ alleges a cause of action for violation of the DCPA and/or the DTPA against said Defendant(s), seeking to recover for all damages caused thereby, including his actual damages, statutory damages, or both. Such action also constitutes an unfair and unreasonable debt collection practice that is prohibited by and actionable under Texas common law for which ORTIZ seeks to recover his damages from said Defendant(s).

## TRESPASS TO REALTY

44. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The above-described conduct of Defendants

: 01227

HLS, BANK, and/or Keystone constitutes a trespass. ORTIZ owned and had a lawful right to possess the Real Property. Defendants HLS, BANK, and/or Keystone are liable to ORTIZ for the intentional tort of trespass upon realty by entering the Real Property without ORTIZ'S consent, intentionally causing one or more third persons to enter the Real Property, and/or entering or causing others to enter the Real Property in excess of any authority to enter the Real Property. Such entry was physical, intentional, and voluntary. ORTIZ was wholly deprived of any possession of the Real Property and was permanently locked out for several months while he still owned the Real Property up until its foreclosure in June of 2006. Such action exceeded any authority conferred on Defendants by the Deed of Trust or otherwise. Such action of Defendants interfered with and/or caused injury to ORTIZ'S right of possession of the Real Property and thus constitutes a trespass. ORTIZ alleges a cause of action for trespass against said Defendant(s), seeking to recover for damage to his realty and/or loss of the use and enjoyment of same.

## CONVERSION AND TRESPASS TO PERSONALTY

45. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The above-described conduct constitutes conversion of ORTIZ'S personal property and/or trespass to personalty by Defendants HLS and/or BANK. ORTIZ owned, possessed, or had the right to immediate possession of the items and belongings located at the Real Property. Such property was personal property. All items located at the Real Property, including all items identified by ORTIZ in response to Defendants' discovery requests in this cause, were converted by and/or the subject of the trespass to personalty committed by Defendants HLS and/or BANK. Said Defendant(s) have engaged in an unauthorized and wrongful assumption and exercise of control and dominion over the personal property of ORTIZ, to the exclusion of or inconsistent with his rights in the property as its true owner. Said Defendant(s)

: 01228

have injured ORTIZ'S personalty or interfered with his possession of same, unlawfully. As a direct and proximate result of such wrongful conduct, ORTIZ has been damaged to the effect that he no longer has the personal property at issue and has lost the benefit of its use. Said Defendant(s) should be held liable for such conversion, and the Court should order that said Defendant(s) return the personal property converted or pay ORTIZ damages such that he will be compensated for loss of such personal property. ORTIZ therefore asserts an action to recover the personal property, and alternatively for damages suffered as a result of the conversion.

## CONVERSION AND TRESPASS TO PERSONALTY

46.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. Plaintiff ORTIZ pleads and alleges that, upon further investigation and discovery, the evidence will show that Defendant Keystone and/or Defendant Howell is liable to ORTIZ for trespass to personalty, conversion and/or conspiracy to commit conversion in connection with the personal property at the Real Property that was never restored to ORTIZ after the foreclosure of the Real Property. It is alleged that the evidence will show that said Defendant(s) have engaged in an unauthorized and wrongful assumption and exercise of control and dominion over the personal property of ORTIZ, to the exclusion of or inconsistent with his rights in the property as its true owner and/or that said Defendant(s) have injured ORTIZ'S personalty or interfered with his possession of same, unlawfully. As a direct and proximate result of such wrongful conduct, ORTIZ has been damaged to the effect that he no longer has the personal property at issue and has lost the benefit of its use. Said Defendant(s) should be held liable for such conversion, and the Court should order that said Defendant(s) return the personal property converted or pay ORTIZ damages such that he will be compensated for loss of such personal property. ORTIZ therefore asserts an action to recover the personal property, and

: 01229

alternatively for damages suffered as a result of the conversion. ORTIZ pleads and alleges that said Defendant(s) is liable to ORTIZ for conspiracy to commit conversion. ORTIZ alleges that, upon further investigation and discovery, the evidence will show that said Defendant(s) conspired with Defendant HLS and/or BANK with respect to the conversion of such Defendant(s) in that Defendant Keystone and/or Defendant Howell assisted, encourage, or participated with the conversion of such Defendant(s).

## THEFT

47. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. Upon further investigation and discovery, the evidence will show that the above-described conduct constitutes theft of ORTIZ'S personal property by Defendants HLS, BANK, Keystone and/or Howell for which they are liable to ORTIZ pursuant to Chapter 134 of the Texas Civil Practice and Remedies Code, the Texas Theft Liability Act. Said Defendant(s) have engaged in theft by unlawfully appropriating the personal property of ORTIZ by taking it without Ortiz's effective consent, as described by the Penal Code. ORTIZ had a possessory right to the property that was the subject of such theft. Said Defendant(s) appropriated the property with the intent to deprive ORTIZ of the property. Said Defendant(s) violated Section 31.03 of the Texas Penal Code. As a direct and proximate result of such wrongful conduct, ORTIZ has been damaged and seeks to recover from said Defendant(s) the amount of his actual damages and, in addition thereto, damages not to exceed $1,000.00 for each such theft, in accord with the Texas Theft Liability Act. Said Defendant(s) should be held liable for such theft and all such damages; ORTIZ therefore asserts an action for same.

## UNLAWFUL DEBT COLLECTION

: 01230

48.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. Defendant Lombardo's wrongful conduct constitutes an unfair debt collection practice in violation of Section 392.304 of the DCPA and, per 392.404 of the DCPA, constitutes a violation of the Texas DTPA, and said Defendant is therefore liable to ORTIZ for all damages of ORTIZ that were caused by the wrongful actions of said Defendant, including ORTIZ'S actual damages, statutory damages, or both.. Defendant Lombardo's wrongful conduct caused injury to ORTIZ'S credit, and said Defendant is therefore liable to ORTIZ for all such damages of ORTIZ that were caused by the wrongful actions of said Defendant. As a result, under the DTPA, ORTIZ seeks up to three times his damages for Defendants' knowing and/or intentional unlawful conduct. ORTIZ alleges a cause of action for violation of the DTPA against said Defendant(s), seeking to recover for all damages caused thereby, including actual damages, statutory damages, or both.

## BREACH OF BAILMENT

49.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. A bailor-bailee relationship and implied bailment contract existed between ORTIZ and Defendants Howell, Keystone, HLS and/or BANK in that Howell, acting individually and/or as agent for or on behalf of one or more of the other Defendants, knowingly took possession, custody, and/or control of ORTIZ'S personalty, thereby creating an implied bailment. The property that was the subject of the bailment agreement included all items located at the Real Property, including all items identified by ORTIZ in response to Defendants' discovery requests in this cause, All parties to the bailment contract were to benefit. Defendants Howell, Keystone, HLS and/or BANK owed a duty to exercise ordinary care with respect to ORTIZ'S personal property. Said Defendant(s) committed a breach of their bailment obligations

: 01231

and ORTIZ is entitled to recover and makes a claim for his damages incurred as a result. ORTIZ seeks recovery of his damages in connection with his personalty that was not returned to him and his personalty that was returned in a damaged state caused by the negligence of Defendants Howell, Keystone, HLS and/or BANK.

## NEGLIGENCE

50.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. Defendant Howell, acting individually and/or as agent for or on behalf of one or more of the other Defendants, knowingly took possession, custody, and/or control of ORTIZ'S personalty, In so doing Defendants Howell, Keystone, HLS and/or BANK had a duty to use reasonable care in handling, protecting and/or preserving the personalty and/or maintaining custody, control, and/or possession of the personalty. Defendants Howell, Keystone, HLS and/or BANK breached that duty and proximately caused damages to ORTIZ when it allowed ORTIZ'S personalty to become lost or damaged. ORTIZ pleads a claim for negligence against Defendants Howell, Keystone, HLS and/or BANK and seeks recovery of his damages resulting therefrom.

## INVASION OF PRIVACY

51.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. The above-complained of acts of Defendants Keystone, HLS and/or BANK and/or of Defendant Howell, acting individually and/or as agent or on behalf of one or more of the other Defendants, involving ORTIZ'S personalty and/or realty constituted an invasion of privacy against ORTIZ as they were an intentional intrusion, physically or otherwise, upon ORTIZ'S solitude, seclusion, or private affairs or concerns, which would be highly offensive to a reasonable person. ORTIZ'S invasion of privacy claim thus includes an

: 01232

intrusion on seclusion by said Defendant(s). Defendants Howell, Keystone, HLS and/or BANK committed an invasion of privacy and ORTIZ is entitled to recover and makes a claim for his damages, including mental anguish or suffering, incurred as a result.

## BREACH OF CONTRACT / WAIVER LETTER AGREEMENTS

52.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ entered into contracts with Defendants HLS and BANK when they executed letter agreements with ORTIZ. Such agreements are valid, enforceable contracts and constitute valid covenants not to sue and/or releases. ORTIZ performed, tendered performance of, or was excused from performing his obligations under such contracts. By such contracts, said Defendants agreed to release and waive all claims against ORTIZ concerning the Real Property and ORTIZ'S Note and/or Deed of Trust executed in connection with the loan for the purchase of the Real Property. Said Defendants further agreed that they would not demand or litigate any further sums from ORTIZ. Said Defendants failed to comply with the contracts by litigating claims against ORTIZ in this cause, including claims for further sums they alleged were due from ORTIZ, and by making demand for further sums from ORTIZ. The conduct of said Defendants constitutes a breach of contract by said Defendants under Texas law and caused damages to ORTIZ.

## REQUEST FOR DECLARATORY RELIEF

53.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ requests that the Court declare that ORTIZ owes no further debt whatsoever to Defendant BANK under his note and deed of trust with BANK or otherwise, regardless of whether this Court sets aside the foreclosure sale of the Real Property and provides for ORTIZ'S recovery of title to the Real Property. After ORTIZ filed suit

: 01233

against Defendant BANK to challenge the foreclosure of the Real Property, Defendant BANK entered into an agreement with ORTIZ in which it released ORTIZ from and/or waived any debt that ORTIZ may have owed to BANK in connection with its loan to ORTIZ or otherwise. However, Defendant BANK contends the release and/or waiver applies only as to any deficiency on the note subsequent to the foreclosure and does not prevent it from foreclosing its lien under the Deed of Trust after title is fully restored to ORTIZ. Thus, a conflict exists regarding this issue and the agreement and waiver existing between the parties. ORTIZ requests a declaratory judgment that ORTIZ owes no further debt whatsoever to Defendant BANK under his note and deed of trust with BANK or otherwise and that BANK has no, and is prohibited from attempting to pursue or enforce any, further claims or demands of any kind against ORTIZ related to the Real Property, regardless of whether this Court sets aside the foreclosure sale of the Real Property and provides for ORTIZ'S recovery of title to the Real Property. ORTIZ requests a declaratory judgment to resolve this controversy and remove the resulting uncertainty. See Tex. Civ. Prac. & Rem. Code Ann. §§37.003, 37.004.

54. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ further requests, under Chapter 37 of the Texas Civil Practice and Remedies Code, that the Court declare that:

1. Based on the waiver agreements that are the subject of this suit, ORTIZ is entitled to title to the Real Property, free and clear of any liens by Defendants, including, but not limited to those arising from the Promissory Note and Deed of Trust made the subject of this suit.

2. Defendants are not entitled to judicial or non-judicial foreclosure of the Real Property upon title to the Real Property being fully and finally restored to Ortiz.

3. The waiver agreements that are the subject of this suit do not fail for "lack of consideration"

: 01234

4. There was no fraud or any violation of any ethics rule governing attorneys committed in connection with Defendants' execution of the waiver agreements that are the subject of this suit.

## QUIET TITLE CLAIM

55. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ requests that the Court cancel the Deed of Trust related to the Real Property and, upon title to the Real Property being fully and finally restored to ORTIZ, remove the cloud on the title to the Real Property created by said Deed of Trust.

## DEFAMATION PER SE

56. Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegations made hereinabove in this petition. ORTIZ alleges a cause of action, upon information and belief, against Defendant(s) for defamation per se. ORTIZ alleges that, upon further investigation and discovery, the evidence will show that Defendant(s) made one or more false statements to third parties about ORTIZ that constitute defamation per se. Such statement(s) were defamatory because they tend to injure ORTIZ'S reputation and thereby expose him to public hatred, contempt, ridicule, or financial injury or to impeach his honesty, integrity, virtue, or reputation and/or the words are so obviously hurtful to ORTIZ'S reputation that they require no proof of their injurious character to make them actionable. Upon information and belief, such statement(s) would include without limitation falsely stating that ORTIZ failed and/or refused to pay a debt without justification or excuse or otherwise defaulted on his Note or Deed of Trust, falsely stating that ORTIZ abandoned the Real Property, falsely stating that the Real Property was subject to a valid foreclosure, and/or falsely stating that ORTIZ was properly locked-out of, ousted, excluded and/or dispossessed of the Real Property. General damages are presumed without requiring specific evidence of harm to ORTIZ'S reputation thereby entitling him to recover, at a minimum, nominal damages. ORTIZ alleges a cause of action against Defendant(s) for the

: 01235

defamatory per se statements and is entitled to recover actual damages for injury to his reputation and for mental anguish.

## PUNITIVE DAMAGES

57.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition.  Defendants' actions against ORTIZ were done with malice and/or the committing of fraud.  Defendants are therefore liable to ORTIZ for punitive damages within the jurisdictional limits of the Court.

## ATTORNEYS' FEES

58.     Plaintiff ORTIZ realleges and incorporates by reference all of the factual statements and allegation made hereinabove in this petition.  As a result of Defendant BANK's failure to comply with the Deed of Trust, ORTIZ retained an attorney to prosecute his claims.  Ortiz is entitled to an award of attorneys' fees for prosecution of this action under the DTPA, Chapter 392 of the Texas Finance Code, Chapters 37 and/or 38 of the Texas Civil Practice and Remedies Code, and/or Chapter 134 of the Texas Civil Practice and Remedies Code.  ORTIZ is also entitled to an award of attorneys' fees under Chapter 37 of the Texas Civil Practice and Remedies Code for defending against Defendant(s)' claims for declaratory judgment brought thereunder.  ORTIZ is entitled to a further award of attorneys' fees should a party appeal and final judgment ultimately be awarded in favor of ORTIZ.  Should it be necessary for a party to petition the Texas Supreme Court for review, ORTIZ further requests that, upon final judgment for ORTIZ, the Court award an additional amount as attorneys' fees for representing ORTIZ during such review.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff ORTIZ respectfully requests of the Court the following:

: 01236

1.    Judgment against Defendants for all damages, including mental anguish, actual, economic, statutory, consequential and exemplary damages, in a sum within the jurisdictional limits of the Court and not in excess of $50,000,000.00;

2.    Judgment against Defendant BANK setting aside the foreclosure sale of the Real Property and providing for ORTIZ'S recovery of title to the Real Property.

3.    Judgment against Defendant BANK declaring that ORTIZ owes no further debt whatsoever to Defendant BANK under his note and deed of trust with BANK or otherwise, regardless of whether this Court sets aside the foreclosure sale of the Real Property and provides for ORTIZ'S recovery of title to the Real Property.

4.    Judgment against Defendants for recovery of personal property of ORTIZ that was converted;

5.    Prejudgment interest as provided by law;

6.    Interest after judgment as allowed by law until paid;

7.    All costs of suit and attorneys' fees; and

8.    Such other and further relief, in law and in equity, to which Plaintiff ORTIZ may be entitled.

Respectfully submitted,

THE JUNELL LAW FIRM, P.C.

_____/s/ Mark A. Junell_____
Mark A. Junell (SBN 24032610)
3900 Essex, Suite 390
Houston, Texas 77027
281-768-3530 Phone
832-213-1830 Fax
mark@sandersjunell.com

: 01237

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served in accordance with the Texas Rules of Civil Procedure upon the following on this the 12th day April, 2010:

**Via Facsimile**
Daniel Patton/Kari S. Robinson
McGlinchey Stafford PLLC
1001 McKinney Street, Suite 1500
Houston, TX 77002
*Facsimile: 713-520-1025*

**Via Facsimile**
Kristin Brauchle
Brockman, Brauchle & Evans, PLLC
2020 Southwest Freeway, Ste 323
Houston, Texas 77098
*Facsimile: 713-533-0303*

_____/s/ Mark A. Junell_____

: 01238

# TAB – U

*REPORTER'S RECORD*

TRIAL COURT CAUSE NO. 2006-61178

| | | |
|---|---|---|
| ALBERT ORTIZ | ) | IN THE DISTRICT COURT |
| | ) | |
| | ) | |
| | ) | |
| VS. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| | ) | |
| | ) | |
| FRED LOMBARDO | ) | 164TH JUDICIAL DISTRICT |

_____

**MOTIONS HEARING**

_____

On the 31st day of October, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Alexandra Smoots-Hogan, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype machine.

**APPEARANCES**


**MR. GARY MICHAEL BLOCK**
SBOT NO. 02497200
Gary Block Attorney At Law
6942 Fm 1960 Rd E #132
Humble, TX   77346
Telephone: 713-443-7722

            AND

**MR. MICHAEL CHALAN DONOVAN**
Law Offices of Michael Chalan Donovan
SBOT NO. 00796478
6300 Dixie Drive
Houston, TX   77087
Telephone: 713-956-4043


                              Counsel for Plaintiff




**MR. JOEL W. MOHRMAN**
SBOT NO. 14253500
**MS. STEPHANIE LAIRD 'STEPHANIE TOLSON' TOLSON**
SBOT NO. 11795430
McGlinchey Stafford
1001 McKinney St Ste 1500
Houston, TX   77002
Telephone: 713-520-1900


                              Counsel for Defendant

*(Proceedings commence.)*

THE COURT: All right. We're on the record in Cause Number 2006-61178, *Albert Ortiz vs. Fred Lombardo.* And appearances for the record, Counsel.

MR. MOHRMAN: Your Honor, Joel Mohrman for the Defendants and, also, Ms. Stephanie Tolson.

MR. BLOCK: Gary Michael Block for Mr. Ortiz, as well as Michael Donovan.

THE COURT: All right. All right. Here's the first thing I think, just off the top of my head: I don't understand why we just don't whittle the Petition down to what's left.

Because if you acknowledge the fact -- which I read in whatever Mr. Donovan --

MR. BLOCK: Yes.

THE COURT: -- that there's things that I already took out of the case, that the Court of Appeals didn't send back down to us, so why are they still in the Petition?

MR. BLOCK: They're -- yeah. In other words, do an --

THE COURT: Clean it up.

MR. BLOCK: -- an amended. So basically what -- what I did was, I just made a list of -- in categories --

THE COURT: Uh-huh.

MR. BLOCK: -- okay, of what's been non-suited, what we claimed as a non-suit, what we claim that we all agree the Court of Appeals did or didn't do.

THE COURT: Uh-huh.

MR. BLOCK: And then that leaves -- I've listed, based on Mr. Donovan's response, six, I'll call them, causes of action. And I'll just lump them into three different categories.

THE COURT: Uh-huh.

MR. BLOCK: Breach of contract, which the Court of Appeals allows both sides to proceed with. And it's just new facts dealing with breaches of contract. Negligent breach of contract which stems from the same as the breach of contract -- negligent performance of a contract, I'm sorry, which is -- it's just a re-pleading, negligent-wise, of the breach of contract.

So if you look -- and I think I've got this right. Well, before you make your face, Judge, if you look at Paragraph 61 and 62.

THE COURT: Uh-huh.

MR. BLOCK: And I've done something else for you that'll make things kind of easy, based on what you just said --

THE COURT: Uh-huh.

MR. BLOCK: -- which is -- do y'all just -- it might be easier for you to follow, too. (Handed)

It's basically the -- the causes of action that are remaining in the -- to be argued in the Summary Judgment in the 10th Amended Original Petition.

THE COURT: Uh-huh.

MR. BLOCK: Okay? So if you look at Paragraph 61, it's a claim of breach of contract. And then negligent performance of that is identified in Paragraph 58 just as a negligence cause of action.

If you look at Paragraph 62, it's the same, only pled as a negligent performance of a contract under the same essential set of facts as 6, breach of contract.

Okay? So you can -- you can just lump those together. You may not like the negligent performance causes of action.

THE COURT: I mean, I can save you the dead tree that he's going to file, because I can already smell it coming down the pike, which is: "You can't have negligence and breach of contract. You must pick one." Is that what you're about to say?

MR. MOHRMAN: Yes, Your Honor.

THE COURT: I figured. Okay.

MR. BLOCK: So they're pled alternatively.

THE COURT: I've just never let anybody go to trial like that.

MR. BLOCK: So then saying that, let's let the facts develop a little further before we make our -- if you would, our -- our choice of how we're going to approach it at trial, negligent -- negligence or breach of contract itself.

It's going to be the same discovery. It's going to be the same testimony from witnesses.

THE COURT: Uh-huh.

MR. BLOCK: And if you're scrunching up your face on that, I'd like to just go ahead and move to the other --

THE COURT: Okay. I'll hear those.

MR. BLOCK: -- two or three -- okay. That's just going to leave two -- two other claims, because I've got -- we'll lump the negligent cause of action and the breach of contract cause of action kind of as --

THE COURT: Let me ask you a question.

MR. BLOCK: Sure.

THE COURT: All this stuff (indicating) is going to go out --

MR. BLOCK: It's already out.

THE COURT: -- of the Petition?

MR. BLOCK: It's already out.

THE COURT: Did you file an amended one and then --

MR. BLOCK: No, not yet because of this -- because of this hearing. But either the Court of Appeals or the non-suits that we filed --

THE COURT: Uh-huh.

MR. BLOCK: -- 1 through 17, are already gone. So yes, we will amend.

THE COURT: Okay.

MR. BLOCK: Okay?

THE COURT: That's why -- that's the only reason we're standing here.

MR. BLOCK: I -- I -- I got that.

THE COURT: Okay.

MR. BLOCK: I got that. So we're also standing here because we still have six claims that they are claiming are gone through Summary Judgment. Okay?

THE COURT: No, no. I think the issue is: What is live to be tried?

MR. BLOCK: I -- I got it. But it's being done as Summary Judgment, as a matter of law, based on what the Court of Appeals mandated. What is remaining? What are we allowed to plead?

THE COURT: You can call it whatever vehicle you want to call it. I -- I -- my issue and what I think really the whole point of the Summary Judgment was, was to get rid of these 17 things that shouldn't have been in that

Petition and then to figure out which of all of this is still live; which, we already know these are live, but --

MR. BLOCK: Yes.

THE COURT: And frankly --

MR. BLOCK: Right.

THE COURT: -- without him even re-filing that which I know he's about to file, I can already tell you what's going to happen with the negligent versus, you know, breach of contract. I can already tell you what's going to happen with that.

MR. BLOCK: Okay. So then let's move on to -- to what I have listed as Number 5, which is declaratory relief --

THE COURT: Okay.

MR. BLOCK: -- which is Paragraph 63 of the Petition.

THE COURT: Okay.

MR. BLOCK: We're seeking declaratory relief, which is exactly what Defendants have pled in their Amended Counterclaim. They've alleged four different causes of action for declaratory relief, branding (phonetic) never in front of this Court before.

We have one for declaratory relief. And if you're gonna get --

THE COURT: Is this the recision argument

that we did at trial?

MR. BLOCK: No.

MR. MOHRMAN: Your Honor --

THE COURT: Is that it?

MR. MOHRMAN: May I respond, Your Honor?

THE COURT: To that little limited portion, yes.

MR. MOHRMAN: Yes, Your Honor. Yes, the recision deed, as you may recall, popped up in their expert's records. We put it up; they got excited about that. They wanted to amend their Petition right before trial, adding what the Court described as sort of a double trespass.

To try to hide a double -- you said, "You've already got the causes of action there, so use those. I'm not going to allow this amendment." And in fact, as an exhibit was the recision deed.

THE COURT: Uh-huh.

MR. MOHRMAN: Witnesses including Mr. Ortiz were questioned about it. And Mr. Jamail made a good bit of his final argument on the recision deed.

THE COURT: Uh-huh. Yes. But that didn't come -- that didn't come there.

MR. BLOCK: It is not part -- no, it is not part of the mandate, either excluded or included. The --

the mandate is silent on that because that issue, this Court -- it was like three days before trial or maybe during the trial.

Oh, you're giving her a copy of the mandate? I've got it. Thank you.

MR. MOHRMAN: (Handed to Court.)

THE COURT: Okay.

MR. BLOCK: As this Court put it and put it already today, too, "Let's not kill a whole bunch more trees." So you didn't allow the trial amendment on the recision.

THE COURT: But I still let you effectively try that issue.

MR. BLOCK: We -- we -- we were allowed to present evidence.

THE COURT: And it went to the jury, didn't it?

MR. BLOCK: But not on the declaratory relief that we were seeking then. It was not in the live pleading at trial. It was not tried by consent. The jury did not get a charge --

THE COURT: Are you sure about that?

MR. BLOCK: Yes, ma'am; yes, ma'am.

MR. MOHRMAN: Your Honor, may I respond?

THE COURT: Sure.

*MR. MOHRMAN:* How could it not be tried by consent? It was an exhibit. It was testified to. It was talked about. And all the causes of action which they allege now, that relate supposedly to this recision deed, are the same causes of actions.

As the Court heard then and is still true now, they're the same causes of action. You don't need to plead them twice. It was tried. And whatever went to the jury went to the jury.

*MR. BLOCK:* Judge, what --

*MR. MOHRMAN:* When you have a trial, you're supposed to bring everything you've got to that trial. And then the Court makes its judgment based upon the jury verdict. It goes up to the Court of Appeals and it comes back.

And the whole process is designed to narrow the issues, and that's what the Court of Appeals did. So if you look at that mandate, Judge, it says, number one, "Here's how we -- here's where we think the Court got it wrong," and it lists several things.

*THE COURT:* Uh-huh.

*MR. MOHRMAN:* And then it says, "Here's where the Court got it right. All these things are gone. All of these torts are all gone."

And then it says, "Court -- Trial Court, here is what

you retry," and it lists them. And it doesn't list anything about retrying torts that have already been tried.

Whether or not it relates to the recision deed or not, they got their shot at it. You can't -- I'll make this the final point, Judge.

*THE COURT:* Uh-huh.

*MR. MOHRMAN:* You can go to trial on, say, ten causes of action; you win some, you lose some. It goes to the Court of Appeals. The Court of Appeals comes back down, after a final trial, and says, "This is what we think needs to be retried."

You can't, after that appeal, then say, "You know something? I wish I had added this cause of action back at that first trial. Now I'm gonna expand this case into something that's very different than what it was at trial." We narrow; we don't expand.

And that's what they're trying to do. They're trying to come back and not get a second bite at the apple but really restart this case. I heard Mr. Block say a second ago, "Well, we need to determine the facts. We need to do discovery."

No, we've already done that. We have been down that road, Judge. The Court of Appeals says, "Retry these issues and that's it."

And I think, with all due respect to the Court, that's

what the Court should do.

MR. BLOCK: Now, as to the dec action, again, Mr. Mohrman has got four dec action -- causes of action amended in his counterclaim. This dec action was not presented to the jury, because the Court wouldn't allow us to.

It wasn't done as a breach of contract. It wasn't done as a tort. It was a dec action. We tried to get a Triple T, "Trespass to Try Title," cause of action. The Court didn't allow those. There was no jury issue presented on those.

There was evidence presented. We got to present that deed, that -- that -- that recision deed, which mysteriously appeared a few days before trial.

But it was never adjudicated to a final judgment. There was -- there was nothing done through the Court of Appeals mandate. You can look at the mandate, Judge, and see.

And I'm going to bring up one last point on that before I move on to the last, which is the gross negligence -- the punitive damage claim. There is nothing that prevents this Court from barring us again at trial but letting us go forward, at least at this point, with -- with this declaratory judgment action, as the Court may allow Defendants to move forward with their declaratory action.

There's no difference.

And then lastly, I'm just going to go into the punitive damage, which is Paragraph 66. That is a ground of recovery, not a new cause of action.

THE COURT: Uh-huh.

MR. MOHRMAN: Your Honor --

THE COURT: Uh-huh.

MR. MOHRMAN: -- may I respond?

THE COURT: Sure.

MR. MOHRMAN: Your Honor, whether or not this Court allowed them to present a jury issue on a particular cause of action or not, it has still been tried. If the Court said, "I'm sorry, I'm not going to give you that, a jury issue on that," then that has been tried.

And you have made a legal decision that that wasn't evidence, or it's not legally cognizable, or whatever it was, and so it didn't go to the jury.

If they thought that that was wrong and, in fact, the Court should have allowed them to have a jury issue on that, then it was their duty to appeal that. If they chose not to appeal it, it's just as final as if the Court had submitted an issue and it had been decided against them.

The idea that simply because this Court made, in the exercise of its judicial discretion, a decision that, "These are going to the jury and these aren't," and somehow

everything that didn't go to the jury, which they didn't appeal, now can come back and we'll give it another shot is ridiculous.

MR. BLOCK: And if the Court is going to take out our dec action, then take out theirs as well. It's the same dang thing, Judge, identical. There's --

MR. MOHRMAN: Your Honor --

MR. BLOCK: There's no difference.

MR. MOHRMAN: And I'll be -- if -- if -- if they want to file a motion to that extent, I'm happy to respond to that. I think there are differences, but it's really, quite honestly, not even before the Court at this point in time.

THE COURT: Well, that's what I was about to say, that you would need to file your own motion.

MR. BLOCK: I got that, too, Judge.

THE COURT: So -- and I'm not stopping you from filing your own motion on it, but yeah, the dec action is gone. All that 1 through 17 is gone; the dec action is gone.

I will tell you at this point: Make your decision, by the next time that we meet, as to whether or not you want negligent performance or breach of contract. But I just don't see in this mandate where you even get that far. Because to me, in the mandate, it's real simple, breach of

contract.

MR. BLOCK: Yeah. So then that would be what I've listed as 3 and 4, versus 1 and 2.

THE COURT: Right.

MR. MOHRMAN: Well, Your Honor, to be honest with you --

THE COURT: Uh-huh.

MR. MOHRMAN: -- I've prepared them an absolute detail of what -- 3 and 4 that are listed there. They have things like -- again, it's like good faith and fair dealing and all sorts of other things.

If you look, for example -- let me get to this section here. If you look at the top of this second page, Paragraph 61 --

THE COURT: Uh-huh.

MR. MOHRMAN: -- you start to go into all these various statutory claims. And then at the very bottom, he says, "The violation of Defendant's bank obligation, under Chapter 1 of the Texas Business and Commerce Code, to act in good faith in the performance and enforcement of a party's contract."

So I would argue he doesn't get to plead new causes of action like that. What -- what I would suggest that we do, Your Honor, is -- it seems like, after all of this running and -- and, you know, wanting to have a new Petition at the

last hearing and then pulling it back, and now filing a new Petition and now non-suiting it -- and, oh, one other thing I would like to address before we leave here, just this -- this new lawsuit that they filed out there.

THE COURT: Uh-huh.

MR. MOHRMAN: But -- and now they pull it back. And now, evidently after we spent ungodly amounts of money to deal with this issue and brief it and bring it to this Court, now they all of a sudden say, "Oh, yeah, 1 through 17, you're right. Let's go ahead and get rid of those. And oh, yes, we all agree on 1 through 3."

And so now -- but we have these 1 through 6 distinctions. I think that those distinctions are things that are outside of what they tried to try the first time, and they don't get to expand them.

What the Court said -- what the Appellate Court said, I think, is, "Retry the contract action. You don't get the statute of limitations defense, but you can do other affirmative defenses."

And so to the extent they want to have an affirmative defense, they get to do that. But you don't get to plead new theories on your contract cause of action, new affirmative theories.

THE COURT: Here -- here's what I'm going to say: I frankly am going to wholeheartedly agree with you,

but I am going to give you this guidance and heads-up. I have not looked at whatever it is that's in your counterclaim that you have filed.

To the extent that it's anything outside of something that I already saw before the last time, that the Court of Appeals sent back to me, I'm going to take it out.

MR. MOHRMAN: Okay, Judge, I understand.

THE COURT: Now, admittedly, once he files the motion asking me to take it out --

MR. BLOCK: Sure.

THE COURT: -- but I'm going to take it out. So I frankly think this case, in all honesty, is limited to these three things and nothing else.

MR. MOHRMAN: And Your Honor, I will represent to the Court that I will go back and look at my counterclaim and re-evaluate it. And if I think that's the case, then I will just stipulate.

MR. BLOCK: Yeah. And if the Court is correct, then that would -- in the next category, 3 and 4 would stay in.

THE COURT: No, because 3 and 4 allege different causes, different theories, under that breach of contract action.

MR. BLOCK: It's still a breach of contract. And if you look at the mandate --

THE COURT: But it's not -- the mandate is "Retry Ortiz's claim against National City for breach of contract and National City claims against Ortiz for breach of contract and judicial foreclosure...with the exception of Ortiz's limitations defense...permitting the parties to assert defenses"...

I don't read that to mean that then you get to allege new breach of contract things that we didn't talk about the first time. I read that to mean, "Go back and retry whatever your breach of contract claim was at the time of trial."

MR. BLOCK: And here's the trouble with -- with the way you're reading that: If you're wrong, we get the joy of trying this thing a third time here. And I think that's what's going to end up happening --

THE COURT: Okay. Well, I may be wrong.

MR. BLOCK: And --

THE COURT: I may be wrong. I don't think I am, but I may be wrong. But I think that the Court of Appeals never envisioned that telling me to retry your claim on breach of contract would somehow expand to your claim that you already have here, that was up on appeal, and add to it some other stuff that we didn't add in the first time.

I refuse to believe that that's what the Court of Appeals intended. What I do think the Court of Appeals

intended by that phrase is the exact stuff we had at the time of trial. That breach of contract claim, what we handled at that time of trial, that's what gets -- gets a chance to be retried.

It's just like whatever his breach of contract claim was at the time of trial is what we get a chance to retry. And I'm not going outside of that. I have no intention of going outside of that. So it's going to be 1, 2, 3.

MR. BLOCK: Okay. So to make it clear, we just -- and I don't want to have to keep coming back here -- we will --

THE COURT: Crystal.

MR. BLOCK: Yeah. We will re-plead our causes of actions.

THE COURT: Uh-huh.

MR. BLOCK: And if there's any issues, then we'll -- we can waive 21 days and just come in front of the Judge if there's special exceptions or whatever, if there is --

THE COURT: It's going to irk me to no end --

MR. BLOCK: I got it, Judge.

THE COURT: -- to no end. See how nice I've been right now? I haven't started screaming or frothing at the mouth or any of that stuff, right? We've been very nice and calm.

I'm even going to go you one better, okay? I'm going to implore you -- no, order you to go back to your office and look at your pleading. And if it is outside of 1, 2, 3 and what just came out of my mouth, and he has to come back down here and say, "Now they went outside the blah, blah, blah, blah, blah," I'm going to start handing out money to everybody.

Does that make sense?

MR. MOHRMAN: Yes, Your Honor.

MR. BLOCK: Yes, sounds good.

THE COURT: Real crystal. Okay? It's 1, 2, 3; that's it. And if it wasn't around back when we tried this sucker the first time, it better not be here.

MR. BLOCK: Okay.

THE COURT: And if it is, then I start to get angry and start to hand out money. Understand?

MR. BLOCK: Yes, Your Honor.

THE COURT: Crystal?

MR. BLOCK: Crystal.

THE COURT: Okay. Great.

MR. MOHRMAN: Your Honor, a couple -- three things just as housekeeping measures.

THE COURT: Uh-huh.

MR. MOHRMAN: Number one, with regard to what was done here, would it be helpful to the Court for me to

prepare an order saying what the Court has said so we get it done? I mean, here's my concern: Mr. Block and Mr. Donovan go back. They file a new Petition, which is beyond the deadline at this point in time, I'll point out.

I mean, we had a pleading deadline, and then it isn't in accordance with 1, 2 and 3 and we have to come back. What I would prefer is that the Court just issue an order, just exactly what the Court said a second ago, "It's 1, 2, 3. All this other stuff is gone," and then we're done. And it doesn't matter what's in the Petition because we're done.

THE COURT: If you want to fashion an order, that's fine.

MR. MOHRMAN: Okay.

THE COURT: It might get tweaked --

MR. MOHRMAN: That's fine.

THE COURT: -- but yes.

MR. MOHRMAN: Obviously.

THE COURT: But it's gonna get tweaked to what just came out of my mouth.

MR. MOHRMAN: I understand, Judge. And I will try to get it as -- I'm going to get the transcript, and I'm gonna try to get it as exactly as what the Court just said. And if I get it wrong, well, obviously the Court will issue the order that's correct.

THE COURT: Okay.

MR. MOHRMAN: Secondly, I think Ms. -- we've had, I don't know, between 8 and 10 attorneys representing Mr. Ortiz in this case.

THE COURT: Uh-huh.

MR. MOHRMAN: You may remember at the last hearing we had, Mr. Rayschlager (phonetic) and Mr. Medina, they refused -- they made an appearance here, made an announcement, but refused to get on the pleadings and they refused to accept service of anything.

Mr. Block has now come back to join the party. And if Mr. Block is here, I want him here. Because I've been told that I can only serve Mr. Donovan, nobody else. And if Mr. Block is here, I don't want him in and out, playing temporary lawyer. I want to know who's on the other side.

MR. BLOCK: I hate to quote Hilary Clinton but, "What difference does it make?" E-mail Mike Donovan. I mean, it's going to go to -- to whoever it needs to go to.

MR. MOHRMAN: Here's the difference, Judge. As the Court knows, Mr. Donovan is a Supreme Court fact witness in this case.

THE COURT: Uh-huh.

MR. MOHRMAN: And he has been accused of professional impropriety in this case. And the Court has said, "You're not gonna be at trial. You're not gonna be actually representing, in court, people who can be here.

But you're not gonna be in trial, representing people in court."

And I think the case law is clear that he can help fashion pleadings and give advice to his client, but he can't represent the client in court, arguing here or in front of the -- the jury.

So I need to know who is going to be the attorney in charge, who is going to handle this case, so that we don't keep having a carousel of attorneys that pop up here.

THE COURT: Well, here's what I think: And I will say I have been a little troubled that the only name on the signature block on all of these things has been him (indicating Mr. Donovan). I frankly don't care which one of you is -- well, outside of I don't want him doing it.

But it gives me much heartburn that his name is the only name on the signature clock. So pick somebody, throw them up on the piece of paper. Now, if this person changes in 30 days, fine, whatever. I get that's gonna happen. But at this exact juncture --

MR. DONOVAN: Judge, very well.

THE COURT: -- I don't want to just see his name. I want to see somebody else's name. So whoever it's gonna be --

MR. BLOCK: Not a problem, Judge.

THE COURT: -- throw their name on there.

Okay?

MR. BLOCK: We have one other motion in front of us, which is a simpler motion, which is --

MR. MOHRMAN: Judge -- Judge, one other thing before we get to this other motion, because I think it's related to what we've been doing here. And that is: They have filed a new lawsuit against us in Harris County District Court, which is essentially a copy of a lawsuit in front of this Court.

You may have seen -- I'm sure you saw that they've non-suited everything and they said, "Well, put this new lawsuit in. And what we'll do is we'll then consolidate it back into this case, and our claims will be revived again."

THE COURT: Uh-huh.

MR. MOHRMAN: I know that lawsuit is not before this Court, but --

THE COURT: Nor is the Motion to Consolidate that you appear to be orally making.

MR. MOHRMAN: Right, Judge. Not -- I know they've argued that, Judge. But could the Court perhaps give us some guidance about its view of the propriety of that, so that we know --

THE COURT: Well, I think that --

MR. MOHRMAN: -- whether that can go forward.

THE COURT: -- goes to what I think about the

successor motion.

MR. MOHRMAN: Okay.

THE COURT: My attitude about all this I think I've made pretty clear today. That attitude is not going to change about anything in this case. If we didn't have it before, we're not going to have it now.

MR. BLOCK: And keeping that in mind, we've got one party that I believe Mr. Mohrman has admitted is a successor interest, although he has not supplemented discovery to show successor interest names.

B.O.A. is in dispute, Bank of America. And that one was not a party. We're thinking it's a successor in interest. They're claiming here, "Oh, they're not a successor in interest," but they have filed pleadings in federal court saying they are.

So I don't know how they want to approach it. I don't mind carrying the successor issue forward for the time being, but let's wait and see what happens with the other cause of action.

And if it's a successor in interest, or whatever it is in that new lawsuit, if it comes back into this court, either consolidate it or -- under a new cause of action or it stays in the 133rd. When this comes before you, we'll deal with that, Judge.

MR. MOHRMAN: Your Honor, very briefly, with

regard to S.P.S., which is the servicer -- excuse me, P & C, which is the bank that ultimately took over with regard to servicing this account and actually holds -- you know, they have S.P.S. as their servicer. We don't have any problem with P & C being put in. They actually hold the note.

THE COURT: Uh-huh.

MR. MOHRMAN: So they need to be there, probably, in that situation. As the Court may remember, the S.P.S., the new servicer, who went in after the lawsuit and went back into their house again, that was after we had already gotten rid of the note at that point in time.

And they sued them and they got, I guess, a settlement, because there was a Motion to Dismiss with Prejudice that was signed, an Order of Dismissal.

With regard to Bank of America, however, Bank of America only came in after this judgment, and their only connection is that the prior servicer, H.L.S., ultimately merged up into Bank of America.

There's already a judgment against H.L.S. Bank of America has nothing to do with this case. At any time, in any form or fashion in this case, Bank of America had nothing to do with it. The only connection is that H.L.S. ultimately went up into Bank of America's --

MR. BLOCK: Okay.

MR. MOHRMAN: They got -- excuse me.

MR. BLOCK: Sorry.

MR. MOHRMAN: They got a judgment. And it doesn't look like --

THE COURT: When did H.L.S. go into Bank of America?

MR. MOHRMAN: When -- after the case.

THE COURT: So while it was up on appeal?

MR. MOHRMAN: Correct.

THE COURT: Okay. What's the big deal?

MR. BLOCK: B.O.A. is substituted in. That's the big deal.

MR. MOHRMAN: Why?

THE COURT: Why?

MR. BLOCK: Because B.O.A. is the successor in interest.

THE COURT: So let me ask you this question: So you're telling me you're somehow all going to instruct the witnesses to stop calling H.L.S., "H.L.S." and call it "B.O.A." because all the documents are gonna say, "H.L.S."? All the testimony is going to say, "H.L.S." And then you're just gonna say, "Bank of America," just --

MR. BLOCK: No. They're -- it --

THE COURT: -- because you want to say, "Bank of America"?

MR. BLOCK: No. It's a matter of the final

judgment and who our final judgment --

THE COURT:  And at the time of judgment, then maybe we can have this discussion.

MR. BLOCK:  Okay.

THE COURT:  But as of right now, it's so not gonna happen.

MR. BLOCK:  Okay.

THE COURT:  Okay.  Anything else?

MR. BLOCK:  That's it.  Thank you, Judge.

MR. MOHRMAN:  Thank you, Your Honor.

MR. BLOCK:  Good seeing you.

THE COURT:  Have a good day.

MR. BLOCK:  Happy Halloween.

THE COURT:  Thank you.

(Proceedings concluded.)

STATE OF TEXAS

COUNTY OF HARRIS

I, Sheryl E. Stapp, Deputy Official Reporter in and for the 164th District Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered, admitted, and/or requested by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $___250.00__ and was paid by ___McGlinchey Stafford_____.

WITNESS MY OFFICIAL HAND on this the __25th___ day of _____November_____, 2014.

Sheryl E. Stapp, C.S.R., R.P.R.
Digitally signed by Sheryl E. Stapp, C.S.R., R.P.R.
DN: cn=Sheryl E. Stapp, C.S.R., R.P.R., o, ou, email=ssdepo@aol.com, c=US
Date: 2014.11.25 11:41:54 -06'00'

SHERYL E. STAPP, C.S.R., R.P.R.
Texas C.S.R. #6227 -- Exp. 12/31/14
Deputy Official Court Reporter
164th Judicial District Court
201 Caroline, 12th Floor
Houston, Texas 77002
Telephone: 713-368-6264

# TAB – V

STATE OF TEXAS          §

                                       §

COUNTY OF HARRIS        §

## VERIFICATION

Before me, the undersigned notary, on this day personally appeared Stephanie Laird Tolson, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

1. My name is Stephanie Laird Tolson. I am over 18 years of age, of sound mind, and capable of making this verification. The facts in this verification are within my personal knowledge and are true and correct.

2. I am the attorney for Respondents. All documents included with the Response to the Writ of Mandamus are true copies.

                                      STEPHANIE LAIRD TOLSON

**SWORN TO AND SUBSCRIBED BEFORE ME** on the 6th day of January, 2015, to certify which witness my hand and seal of office.



                          **NOTARY PUBLIC, STATE OF TEXAS**